NO. 14-1682

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

LIGHTSPEED MEDIA CORPORATION,
*Plaintiff,*

v.

ANTHONY SMITH, et al.,
*Defendants-Appellees,*

Appeal of:
PAUL DUFFY, JOHN STEELE, & PAUL HANSMEIER,
*Appellants.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-DRH-SCW

**Opening Brief & Required Short Appendix of
Appellants Paul Duffy, John Steele & Paul Hansmeier**

Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

## CIRCUIT RULE 26.1    DISCLOSURE STATEMENT

Appellate Court No: 14-1682

Short Caption: Lightspeed Media Corp. v. Smith, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

John Steele, in propria persona

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

N/A

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature:  s/ John Steele                           Date: 4-17-14

Attorney's Printed Name:  John Steele

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes  ◯    No  ⊗

Address:  1111 Lincoln Road Suite 400

Phone Number:  612-466-0870                    Fax Number:  N/A

E-Mail Address:  johnlsteele33140@gmail.com

rev. 01/08 AK

## CIRCUIT RULE 26.1    DISCLOSURE STATEMENT

Appellate Court No: 13-3801

Short Caption: Lightspeed v. Smith

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be filed in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Paul Duffy, pro se

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

No such individuals has appeared for Paul Duffy in this action

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ _[signature]_    Date: January 27, 2014

Attorney's Printed Name: Paul Duffy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No  X

Address: 2 N. LaSalle Street, 13th Floor

Chicago, IL 60602

Phone Number: (312) 952-6136    Fax Number: N/A

E-Mail Address: pduffy@pduffygroup.com

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: <u>14-1682</u>

Short Caption: <u>Lightspeed Media Corp. v. Smith, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[　]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Paul Hansmeier, in propria persona</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>N/A</u>

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

<u>N/A</u>

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>N/A</u>

Attorney's Signature: <u>s/  Paul Hansmeier</u>    Date: <u>4-17-14</u>

Attorney's Printed Name: <u>Paul Hansmeier</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No ☒

Address: <u>100 South Fifth Street, Suite 1900</u>

<u>Minneapolis, MN 55402</u>

Phone Number: <u>612-234-5744</u>    Fax Number: <u>N/A</u>

E-Mail Address: <u>mail@classjustice.org</u>

rev. 01/08 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES ......................................................................................ii

Jurisdictional Statement ........................................................................................ 1

Statement of the Issues .......................................................................................... 1

Statement of the Case and Facts ........................................................................... 2

Standard of Review ................................................................................................. 4

Summary of the Argument ..................................................................................... 4

ARGUMENT ............................................................................................................ 6

I.      The District Court's Imposition of a \$26,102.58 Fine Failed to Satisfy the Requirements of Due Process ......................................................... 6

II.    The District Court Erred by Ruling That Only GAAP-Compliant Statements of Inability to Comply Can Satisfy the Burden of Production for This Defense ................................................................... 8

III.   The District Court Erred by Concluding as a Matter of Law That a District Court Lacks the Discretion to Impose Sanctions in the Form of an Ordinary Money Judgment ..................................................... 12

IV.   Duffy, Steele and Hansmeier Should Not Have Been Held in Contempt Because Comcast, AT&T and Smith Relied Exclusively on Legal Argument to Support The Contempt Petition .................................. 15

V.    The District Court's Evaluation of the *Mine Workers* Factors was Clearly Erroneous ................................................................................. 16

       A.    Character and Magnitude of the Harm................................. 16

       B.    Ability to Pay ...................................................................... 18

CONCLUSION....................................................................................................... 19

Certificate of Compliance ..................................................................................... 20

Statutory Addendum ............................................................................................ 21

REQUIRED SHORT APPENDIX .......................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
  499 F.3d 737 (7th Cir. 2007) .................................................................................4

*BASF Corp. v. Old World Trading Co.*,
  979 F.2d 615 (7th Cir. 1992). ............................................................... 12

*Cleveland Hair Clinic v. Puig*,
  106 F.3d 165 (7th Cir. 1997) ........................................................ 12, 13

*FM Industries, Inc. v. Citicorp. Credit Services, Inc.*,
  614 F.3d 335 (7th Cir. 2010) ................................................................ 14

*FTC v. Trudeau*,
  579 F.3d 754 (7th Cir. 2009) ................................................. 6, 7, 12, 15

*In re Grand Jury Proceedings (Grand Jury empaneled June 2000)*,
  280 F.3d 1103 (7th Cir. 2002) ............................................................... 4

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
  512 U.S. 821 (1994) ..................................................................... 4, 5, 7

*McPhaul v. United States*,
  364 U.S. 372 (1960) ............................................................................. 8

*Motorola, Inc. v. Computer Display Int'l., Inc.*,
  739 F.2d 1149 (7th Cir. 1984) ............................................................... 1

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*,
  525 F.3d 533 (7th Cir. 2008) ............................................................... 15

*See Cleveland Hair Clinic v. Puig*,
  104 F.3d 123 (7th Cir. 1997) ............................................................... 13

*Shakman v. City of Chicago*,
  426, F.3d 925 (7th Cir. 2005) ................................................................ 4

*Shalala v. Gurnsey Mem'l Hosp.*,
  514 U.S. 87 (1995) .............................................................................. 10

*U2 Home Entm't, Inc. v. Wei Ping Yuan*,
    245 Fed. Appx. 28 (2d Cir. 2007) .......................................................... 4

*United States v. Rylander*,
    460 U.S. 752 (1983) ................................................................................ 8

*United States v. United Mine Workers of America*,
    330 U.S. 258 (1947) .............................................................................. 16

**Statutes**

28 U.S.C. § 1291 ......................................................................................... 1

28 U.S.C. § 1331 ......................................................................................... 1

28 U.S.C. § 1332 ......................................................................................... 1

28 U.S.C. § 1441 ......................................................................................... 1

28 U.S.C. § 1446 ......................................................................................... 1

**Rules**

Fed. R. Civ. P. 41(a)(1) ............................................................................. 1

Fed. R. Crim. P. 42(a) ............................................................................... 7

**Other Authorities**

American Institute of CPAs,
    COMPILATION OF FINANCIAL STATEMENTS, AR §80.18 (2009) ................................. 11

Emily Chasan,
    *Four Reasons Non-GAAP Metrics Are Exploding*, CFO JOURNAL
    (June 25, 2013, 4:36 PM ET),
    http://blogs.wsj.com/cfo/2013/06/25/four-reasons-non-gaap-metrics-
    are-exploding/. .................................................................................... 10

John D. Rossi, III,
    *How Enron Jumped the GAAP*, Vol 51. No. 2, MORAVIAN COLLEGE
    MAGAZINE (2002) ................................................................................. 10

## Jurisdictional Statement

Appellants Paul Duffy, John Steele and Paul Hansmeier appeal from an order of the district court holding them in civil contempt and fining each of them one-third of $26,102.58. On March 21, 2013 the plaintiff voluntarily dismissed the underlying litigation under Rule 41(a)(1). On November 27, 2013 the district court entered a post-judgment sanctions order. On March 24, 2014 the district court entered an order finding Duffy, Steele and Hansmeier in contempt of the sanctions order. On March 31, 2014 Duffy, Steele and Hansmeier filed a timely notice of appeal.[1] App. 29.

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291; *see also Motorola, Inc. v. Computer Display Int'l., Inc.*, 739 F.2d 1149, 1154 (7th Cir. 1984) (stating that a post-judgment order finding a party in civil contempt disposes of all the issues raised, and is thus final and appealable, if it includes both a finding of contempt and the imposition of a sanction).

## Statement of the Issues

1. Whether the district court's imposition of a $26,102.58 contempt fine failed to satisfy the requirements of due process.

2. Whether the district court erred by holding that CPA-prepared statements of financial condition cannot satisfy the burden of production for inability to pay unless they are prepared in accordance with GAAP.

---

[1] The required short appendix is 29 pages and is cited as "App. __". The separate appendix, the pagination of which begins where the pagination of the required short appendix leaves off, is cited in the same manner. Other portions of the record are cited as "R. __".

3.   Whether the district court erred in holding that district courts lack the discretion to impose a monetary sanction in the form of an ordinary money judgment.

4.   Whether the district court erred by holding Duffy, Steele and Hansmeier in contempt even though the proponents of contempt did not present any evidence.

5.   Whether the district court properly applied the *Mine Workers* factors in weighing the equities of the civil contempt sanction.

## Statement of the Case and Facts

This case arises out of Comcast, AT&T and Smith's attempt to hold Duffy, Steele and Hansmeier in civil contempt for violating a sanctions order entered by a now-retired district judge on November 27, 2013. App. 16. In relevant part, the sanctions order reads:

> It is **ORDERED** that pursuant to 28 U.S.C. § 1927, Paul Duffy, Paul Hansmeier, John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

App. 28 (emphasis in original).

After the order issued, counsel for Smith began engaging in judgment enforcement discovery. *See* R. 116 at Ex. 1. Counsel issued dozens of subpoenas for the financial records of Duffy, Steele and Hansmeier—as well as fifteen other persons and entities—whom counsel unilaterally labeled "aliases" of Duffy, Steele and Hansmeier. Counsel for Comcast, AT&T and Smith did not disclose what portion of the $261,025.11 "total judgment" has been satisfied through these judgment enforcement efforts. *See* R. 107.

On December 27, 2013 Smith, Comcast and AT&T filed a joint motion for contempt against Duffy, Steele and Hansmeier. *Id.* The motion was not accompanied by an affidavit, declaration or other exhibits. *Id.* Duffy and Hansmeier filed oppositions to the motion for contempt. R. 111, 113. Steele filed a motion to stay the sanctions order pending appeal. R. 115. The district court scheduled an order to show cause hearing for February 13, 2014. R. 112.

At the hearing, neither Smith, Comcast nor AT&T presented any evidence. *See* App. 30–70. Indeed, at no time during the proceedings did any of these parties present evidence in support of the contempt petition. *See id.*; R. 107. The district court polled Duffy and Hansmeier to determine whether either of them had paid off the sanctions order. *See* App. 37–38 (Hansmeier), 49–50. Both of them responded that they had not. *Id.* The district court did not poll Steele. *See* App. 30–70. No witnesses were called at the hearing, including Duffy, Steele or Hansmeier, or witnesses for the fifteen "aliases" identified by Smith's counsel. *See id.* At the conclusion of the hearing, the district court ordered Duffy, Steele and Hansmeier to submit a CPA-prepared statement of financial condition within ten days to verify their respective assertions of inability to pay. App. 68. Each of them made a timely submission. App. 7.

The district court found Duffy, Steele and Hansmeier in civil contempt of the sanctions order. App. 8. The court rejected Duffy, Steele and Hansmeier's CPA-prepared statements of financial condition—apparently, because they were not prepared in accordance with GAAP. *See* App. 7. It further found that all of the elements of civil contempt were satisfied, and that every equitable consideration cut as strongly as possible against Duffy, Steele and Hansmeier. *See* App. 5–11.

In addition to finding them in contempt, the district court fined each of Duffy, Steele and Hansmeier 10% of Comcast, AT&T and Smith's previously-accrued attorneys' fees—or $26,102.58. App. 12. The district court

stated, "[t]his remedial sanction contemplates the attorney's fees and costs incurred by defendants during the course of litigating this contempt motion." The district court "acknowledge[d] that a lodestar calculation is traditionally used," but determined that "requiring defense counsel to provide billing statements would most certainly cause delay and further litigation thereby negating the goals of the order and only further harming the defendants." *Id.* The district court did not explain the methodology it used to calculate this amount. *See id.*

## Standard of Review

Although this Court reviews contempt findings for abuse of discretion, *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2007), it is axiomatic that a district court abuses its discretion when it commits an error of law. *See, e.g., Shakman v. City of Chicago*, 426, F.3d 925, 932 (7th Cir. 2005). Moreover, this Court is "not bound by the trial court's designation of whether the [contempt] sanction was civil or criminal." *In re Grand Jury Proceedings (Grand Jury empaneled June 2000)*, 280 F.3d 1103, 1107-08 (7th Cir. 2002). Rather, the Court must "discover the purpose of the contempt proceeding, whether it was to punish or coerce compliance." *Id.* at 1107 n.2. This determination is critical, as it has long been recognized that the contempt power is uniquely "liable to abuse" by district court courts. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). In sum, "review of a contempt order for abuse of discretion is more rigorous than would be the case in other situations in abuse of discretion review is conducted." *U2 Home Entm't, Inc. v. Wei Ping Yuan*, 245 Fed. Appx. 28, 29 (2d Cir. 2007) (internal quotations omitted).

## Summary of the Argument

It has long been recognized that the contempt power is "uniquely … liable to abuse." *Bagwell*, 512 U.S. at 831. In contempt proceedings,

"[u]nlike most areas of law," the "offending judge" holds the sole responsibility for "identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct," which "often strikes at the most vulnerable and human qualities of a judge's temperament." *Id.* To mitigate these risks, courts have established strict limits on the exercise of the civil contempt power—limits that the district court violated here.

*First*, the attorneys' fees sanction imposed by the district court is neither "compensatory" nor "coercive"—and thus is impermissibly punitive in nature. The fine is not coercive, because it sanctions Duffy, Steele and Hansmeier for *past* conduct and provides no opportunity for them to purge the sanction by *future* compliance. And the fine is not compensatory as it lacks a "key ingredient" of a compensatory sanction—an explanation by the district court of the methodology used to compute its amount. Because the attorneys' fees sanction imposed below fails to qualify as a civil sanction, it must be reversed.

*Second*, the district court determined that Duffy, Steele and Hansmeier's statements of financial condition did not meet the burden of production for the defense of inability to pay. Its apparent basis for doing so was the fact that the statements were not prepared in conformity with "generally accepted accounting principles." Yet, GAAP does not necessarily even exist for statements of inability to pay, it does not reflect economic reality and the district court did not ask for the statements to be prepared in accordance with GAAP. For all of these reasons, the district court's insistence on GAAP statements was error, and the contempt finding must be reversed.

*Third*, the district court erred by concluding that the district judge who entered the sanctions order lacked the discretion to impose a sanction in form of an ordinary money judgment. It is well-established that district courts have broad discretion to fashion sanctions. Nothing in this Court's

precedent does (or should) be read as limiting that discretion in the manner the district court did.

*Fourth*, Comcast, AT&T and Smith relied exclusively on legal argument during the contempt proceedings. Their failure to introduce evidence leads axiomatically to the conclusion that they failed to establish the elements of contempt by clear and convincing evidence.

*Fifth*, the district court erred in weighing the equities of a contempt sanction, and in particular the factors set forth in *United Mine Workers*. The district court's findings simply have no support in the record.

## ARGUMENT

### I.    The District Court's Imposition of a $26,102.58 Fine Failed to Satisfy the Requirements of Due Process.

The district court's first error is quite clear: The district court imposed a punitive sanction—the 10% attorneys' fees sanction—without criminal proceedings. This is a bright-line basis for reversal. *FTC v. Trudeau*, 579 F.3d 754, 770 (7th Cir. 2009).

This Court's decision in *Trudeau* is dispositive. In *Trudeau*, the district court adjudged infomercialist, Kevin Trudeau in "civil" contempt and imposed a $37.6 million "remedial" sanction on him. *Id.* at 768. The district court stated that the figure "represent[s] a reasonable approximation of the loss consumers suffered as a result of defendant's deceptive infomercials." *Id.* at 771. But the district court did not explain, "the method it used to calculate the award, why the court chose that method, and how the evidence of record supports the figures plugged into that method." *Id.* This Court vacated the sanction, and remanded with instructions to make these findings. *Id.*

The error present in *Trudeau* is present in this case. First, the contempt proceedings, "had none of the bells and whistles of a criminal trial."

*Id.* at 769. There was, for example, no elaborate notice, appointment of a prosecutor, or jury trial. *See* Fed. R. Crim. P. 42(a). Thus, for the district court's 10% attorneys' fees sanction to stand, this Court must conclude that it was a "civil" one. *Trudeau*, 579 F.3d at 769. A sanction is "civil", if it is coercive or compensatory. *Id.*

The 10% attorneys' fees sanction was not coercive, because neither Duffy, Steele nor Hansmeier had an opportunity to purge. *Id.* at 770. "So for the sanction to stand, it must 'compensate the complainant for losses sustained.'" *Id.* at 770 (citing *Bagwell*, 512 U.S. at 828). Yet, just as in *Trudeau*, the 10% attorneys' fee sanction is missing a "key ingredient" of a compensatory sanction—namely, an explanation of the method used to calculate the award. *Trudeau*, 579 F.3d at 770. The district court did not explain the methodology it used to arrive at the 10% multiplier. App. 12. "This information is crucial to ensuring that the award is not greater than necessary. If any part of it winds up being punitive instead of remedial, then criminal proceedings are required to sustain it." *Id.* Indeed, "a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt … [where] the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance" requires criminal proceedings. *Bagwell*, 512 U.S. at 829 (1994).

All this Court has is the district court's statement that, "this remedial sanction contemplates the attorney's fees and costs incurred by defendants during the course of litigating the contempt motion."[2] App. 12. Nothing in the contempt order explains what method the district court used to determine the 10% multiplier. *See* App. 12. Did the district court account for the possibility that one of the Defendants may have taken the laboring

---

[2] This statement is remarkably similar to the district court's statement that was rejected by this Court in *Trudeau* as insufficient. *See Trudeau*, 579 F.3d at 771 ("All we have is a statement that the $37,616,161 figure represent[s] a reasonable approximation of the loss consumers suffered as a result of defendant's deceptive infomercials.") (internal quotation marks omitted).

oar during the contempt proceedings, with the others enjoying the ride? How did the district court account for the fact that Smith appeared later in the baseline proceedings than Comcast and AT&T? Did the district court conclude that each of Duffy, Steele and Hansmeier "harmed" the Defendants in the exact same manner in perfect proportion to 10% of the Defendants' prior activities in the case? We are left to guess the answer to these questions.

Ultimately, the district court's 10% multiplier might be reasonable. But so might a lesser figure. The district court, must explain why it chose the calculation method it did and how the record supports its calculations. This Court's precedent requires it to vacate the attorneys' fees sanction and to remand for the additional findings identified in this section.

## II. The District Court Erred by Ruling That Only GAAP-Compliant Statements of Inability to Comply Can Satisfy the Burden of Production for This Defense

In civil contempt proceedings, defendants may, of course, assert the defense of a "present inability to comply with the order in question." *United States v. Rylander*, 460 U.S. 752, 758 (1983). In raising this defense, the defendant bears the burden of production. *McPhaul v. United States*, 364 U.S. 372, 379 (1960).

During the contempt proceedings, Duffy, Steele and Hansmeier each asserted this defense. App. 6–7. The district court ordered each of them to produce a certified public accountant-prepared statement of financial condition within seven days. App. 7. Each of them did. *Id.* Without asking the other side to weigh in, the district court flat-out rejected the statements—in effect, concluding that the statements did not satisfy the burden of production. *Id.*

In rejecting the statements, the district court did not say very much. It said, "attached to each statement was a letter from [Duffy, Steele and

Hansmeier's] CPA" indicating "a departure from generally accepted accounting principles." *Id.* It further said that the same letter stated that Duffy, Steele and Hansmeier "elected to omit substantially all of the disclosures required by generally accepted accounting principles." *Id.* Based on these boilerplate disclaimers, apparently, the district court labeled the statements "incomplete" and "suspicious." *Id.* That is all the district court did. *See id.*

The district court did not find that Duffy, Steele or Hansmeier failed to disclose assets. It did not find that they had assets they failed to apply to the sanctions order. It did not find that they were otherwise able to comply with the sanctions order.

To be sure, the statements were non-GAAP. But the district court's minimal findings leave unanswered a key question: So what? As the Supreme Court has opined:

> GAAP does not necessarily parallel economic reality. R. Kay & D. Searfoss, Handbook of Accounting and Auditing, ch. 5., p. 7 (2d ed. 1989). Financial accounting is not a science. It addresses many questions as to which the answers are uncertain, and is a "process [that] involves continuous judgments and estimates." *Id.*, at ch. 5, pp. 7–8.
>
> * * *
>
> GAAP is not the lucid or encyclopedic set of pre-existing rules that the dissent might perceive it to be. Far from a single source accounting rulebook, GAAP "encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time." Kay & Searfoss, at ch. 5, p. 7 (1994 Update). GAAP changes and, even at any one point, is often indeterminate. "[T]he determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles." *Ibid.* There are 19 different GAAP sources, any number of which might present conflicting treatments of a particular accounting question. *Id.*, at ch. 5, pp. 6–7.

*Shalala v. Gurnsey Mem'l Hosp.*, 514 U.S. 87, 100−101 (1995).

Recent history teaches that GAAP is not dispositive of reliability. *See, e.g.,* John D. Rossi, III, *How Enron Jumped the GAAP*, Vol 51. No. 2, MO-RAVIAN COLLEGE MAGAZINE (2002) (describing how Enron gamed GAAP through the use of 3,000 special purpose-entities). Inversely, non-GAAP is not dispositive of unreliability; the use of non-GAAP metrics in financial reporting reportedly "explod[ed]" in 2013, and this "explosion" could not occur without the U.S. Securities and Exchange Commission's blessing. *See* Emily Chasan, *Four Reasons Non-GAAP Metrics Are Exploding*, CFO JOURNAL     (June     25,     2013,     4:36     PM     ET), http://blogs.wsj.com/cfo/2013/06/25/four-reasons-non-gaap-metrics-are-exploding/.

We are left to speculate why the district court was insistent on GAAP. Did the district court—as the dissent was criticized for doing in *Gurnsey*—assume that GAAP is a "lucid or encyclopedic set of pre-existing rules", and that non-GAAP statements are categorically unreliable? Or did it have a different concern? A lack of findings precludes an informed answer to these questions.

Indeed, it is not even clear what a "generally accepted accounting prin-ciple" is under the circumstances present here—namely, a demonstration of *inability* to pay. As the Court observed in *Gurnsey*, "the determination that a particular accounting principle is generally accepted may be diffi-cult because no single source exists for all principles." *Gurnsey*, 514 U.S. at 101. To the extent GAAP does not exist for statements of *inability* to pay, the district court's insistence on GAAP-conformity was inappropriate.

The district court may have misunderstood the particulars of GAAP. For example, the district court labeled the statements, "incomplete." Per-haps the district court applied this label based on the CPA's disclaimer that Duffy, Steele and Hansmeier, "elected to omit substantially all the

disclosures required by [GAAP]." App. 7. Yet, omitting GAAP is not tantamount to omitting asset disclosures. To use an extreme example, did the district court believe that the statements were "incomplete" because they failed to disclose Duffy, Steele and Hansmeier's financial exposure to natural disasters? It bears mentioning that a CPA may not omit disclosures if the omission is "undertaken with the intention of misleading those who might reasonably be expected to use such financial statements." American Institute of CPAs, COMPILATION OF FINANCIAL STATEMENTS, AR §80.18 (2009).

It also bears mentioning that the district court's verbal instruction to submit statements did not mention GAAP. *See* App. 66−68. The district court should have signaled that it was insistent on GAAP statements. If it had, Duffy, Steele and Hansmeier could have obtained clarification from the district court on what GAAP is, with respect to statements of inability to pay. The district court's unexpected GAAP requirement echoes of "moving the goalposts."

The district court's inadequate findings are a likely consequence of its decision to bypass the adversary process. It should have allowed the Defendants to challenge the statements (if they could) and then allowed Duffy, Steele and Hansmeier an opportunity to respond. The district court may have reached the same result—albeit with enough findings to give this Court a basis for affirming—or it may have ruled differently.

Without any limiting principles, the district court determined that non-GAAP statements of financial condition are insufficient to satisfy the burden of production for an "inability to pay" defense. Because: (a) "GAAP does not necessarily parallel economic reality"; and (b) GAAP, by all appearances, does not even exist for statements of inability to pay, the district court erred. Because the district court erred in its consideration of Duffy, Steele and Hansmeier's "inability to pay" defense, this Court should vacate the contempt order.

## III.  The District Court Erred by Concluding as a Matter of Law That a District Court Lacks the Discretion to Impose Sanctions in the Form of an Ordinary Money Judgment

This case is unusual, in that the district court was not interpreting its own order, but that of a district judge who left the bench about a week after issuing the sanctions order.

To succeed on a contempt petition, the proponent must demonstrate by clear and convincing evidence that the allegedly-violated "order sets forth an unambiguous command." *See Trudeau*, 579 F.3d at 763. In relevant part, the order at issue reads as follows:

> It is **ORDERED** that pursuant to 28 U.S.C. § 1927, Paul Duffy, Paul Hansmeier, John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

App. 28 (emphasis in original). The foregoing order takes the precise form of a money judgment. It expressly invokes the word "judgment,"; it entitles Smith, AT&T and Comcast to the sums stated in the order, with interest as provided by law; it provides that payment shall be made within 14 days—the exact time period set forth in Fed. R. Civ. P. 62(a)—after which assets may be seized and sold. *See BASF Corp. v. Old World Trading Co.*, 979 F.2d 615, 616 (7th Cir. 1992).

The district court concluded otherwise, and ruled that this language gave rise to an equitable decree. App. 6. The district court did not analyze the language of the sanctions order. *See id.* The only explanation offered by the district court for its conclusion was its citation, without further analysis, to *Cleveland Hair Clinic v. Puig*, 106 F.3d 165 (7th Cir. 1997) (hereinafter "*Cleveland Hair Clinic II*"). Specifically, the district court cited to this Court's statement in *Cleveland Hair Clinic II* that, "[u]se of the

contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment." *Id.* at 166. In effect, then, the district court interpreted *Cleveland Hair Clinic II* as standing for the proposition that the predecessor district judge, as a matter of law, lacked the discretion to impose a sanction in the form of an ordinary money judgment.

There are two problems with the district court's reading of *Cleveland Hair Clinic II*. First, the district court did not acknowledge or address the ambiguity in the cited language. Is the clause, "which is not an ordinary money judgment," restrictive, or non-restrictive? In other words, was it this Court's holding in *Cleveland Hair Clinic II* that *all* sanctions for misconduct are, without exception, equitable decrees? Or was it this Court's holding that the specific sanction giving rise to the *Cleveland Hair Clinic II* appeal was an equitable decree. The district court did not address this issue. To be sure, the language of the sanctions order at issue in *Cleveland Hair Clinic II* reads like an equitable decree: the district court ordered $174,121 to be paid to the aggrieved parties, "forthwith." *See Cleveland Hair Clinic v. Puig*, 104 F.3d 123, 124 (7th Cir. 1997) (hereinafter "*Cleveland Hair Clinic I*"). The sanctions order in this case reads much differently.

Second, the district court over-reads this Court's holding in *Cleveland Hair Clinic II*. Nothing in *Cleveland Hair Clinic II* affirmatively states that district courts, as a matter of law, lack the discretion to impose sanctions in the form of an ordinary money judgment. Such a holding would run contrary to the broad discretion vested in district courts in fashioning an appropriate sanction.

If this Court reaches the issue, the better holding is that district courts should retain the discretion to impose sanctions in the form of ordinary money judgments. This is true for several reasons. First, district courts regularly impose sanctions in the form of ordinary money judgments. For

example, the sanctions award underlying this Court's decision in *FM Industries, Inc. v. Citicorp. Credit Services, Inc.*, 614 F.3d 335 (7th Cir. 2010), was an ordinary money judgment, and was enforced through the seizure and sale of assets. Second, the decision of whether to make a sanction an equitable decree or an ordinary money judgment is a building block for district courts to use in fashioning an appropriate sanction. For example, when imposing sanctions on a joint and several basis, as the district court did in this case, perhaps it is more reasonable to enter the sanctions as an ordinary money judgment—given that one member of the "joint and several" group may have no ability to force another to comply with the order. Finally, there is no obvious benefit to be gained by divesting district courts of this discretion.

It bears emphasizing that it was Comcast, AT&T and Smith's burden to show by "clear and convincing evidence" that the prior district judge's order set forth "an unambiguous command." But they presented no evidence on this issue. They did not cite to anything from the record indicating what the prior district judge's intent was. They also did not seek clarification from the former district judge or the new district judge regarding the sanction order's meaning. Also, until they filed their contempt petition, Smith was aggressively searching out assets to seize and sell, just as one would do with an ordinary money judgment.

Regardless, the plain language of the sanctions order reads like an ordinary money judgment. This Court's precedent is not clear enough to convert this language into an "unambiguous command" to pay within 14 days or face contempt. The first element of civil contempt—an unambiguous command—is unsatisfied. This Court should vacate the contempt order.

### IV.   Duffy, Steele and Hansmeier Should Not Have Been Held in Contempt Because Comcast, AT&T and Smith Relied Exclusively on Legal Argument to Support The Contempt Petition

To prove contempt, Comcast, AT&T and Smith were required to show—by clear and convincing evidence—the following elements as to each of Duffy, Steele and Hansmeier: (a) an unambiguous command; (b) a violation of that command; (c) lack of substantial compliance with the command; and (d) a failure to take reasonable and diligent steps to comply. *See Trudeau*, 579 F.3d at 763 (citing *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)).

Comcast, AT&T and Smith relied exclusively on legal argument during the contempt proceedings. They did not present evidence of any kind. Critically, there is no evidence in the record of what percentage of the sanctions order, if any, remains unsatisfied or what steps Duffy, Steele and Hansmeier took to comply with the order. It would have been very easy for Comcast, AT&T and Smith to develop a record on these points. But they didn't. Critically, Comcast, AT&T and Smith failed to call Duffy, Steele and Hansmeier as witnesses.

The lack of evidence in the record is manifest in the contempt order. For example, in support of its conclusion that "Duffy, Hansmeier, and Steele failed to make a reasonable and diligent effort to comply with the Sanctions Order", the district court does not cite to the record. App. 6. Thus, at least one of the elements of civil contempt has no support in the record. This is well short of "clear and convincing evidence."

While the district court observed that during the proceedings, Duffy, Steele and Hansmeier "admitted on the record to noncompliance, each stating that they had not paid the sanction amount to defendant or otherwise sought a supersedeas bond," this is a necessary, but not sufficient, finding in support of civil contempt. It does not establish an unambiguous command, it does not show a lack of substantial compliance, and it does

15

not speak to what steps Duffy, Steele and Hansmeier took in an attempt to comply with the order, much less establish by "clear and convincing evidence" that these steps were not "reasonable and diligent."

Because Comcast, AT&T and Smith elected to rely exclusively on legal argument, instead of evidence, they did not satisfy their burden of proving the elements of civil contempt by clear and convincing evidence. The contempt order must be vacated.

## V.    The District Court's Evaluation of the *Mine Workers* Factors was Clearly Erroneous

The district court considered the factors stated in *United States v. United Mine Workers of America*, 330 U.S. 258 (1947) in imposing its sanction. Remarkably, the district court found that *every single* factor cut as strongly as possible against Duffy, Steele and Hansmeier. The district court's application of the *Mine Workers* factors was an abuse of its discretion because its findings have no support in the record.

### A.    Character and Magnitude of the Harm

The district court's conclusion that Duffy, Steele and Hansmeier "willfully violated" the sanctions order is supported by little more than its statement that, "Plaintiff's attorneys have made no effort to comply." App. 8–9. This statement is purely conclusory and is not supported by citation to the record. The district court's criticism of Duffy, Steele and Hansmeier for "not address[ing] the Court regarding the Sanctions Order" leaves unanswered a critical question: In what manner, exactly, should Duffy, Steele and Hansmeier have "address[ed] the Court?" Under the circumstances, there is no obvious manner in which they should have—but did not—address the district court. If the sanctions order imposed an ordinary money judgment, all Duffy, Steele and Hansmeier could do is file a notice of appeal. If they wished to stay enforcement of the judgment they could post a supersedeas bond.

As for the magnitude of the harm, the district court is wrong to link the magnitude of harm flowing from an alleged violation of a sanctions order to the merits of the litigation giving rise to the sanctions order. These concepts are totally unrelated. The district court's statement that "plaintiff's counsel made no effort to comply with the order to address the Court" ignores the critical point that there was no "order to address the Court."

The district court's criticism of the "behavior of plaintiff's counsel … at the show cause hearing" marks a low point of the contempt order. App. 9–10. Without distinguishing among Duffy, Steele and Hansmeier, the district court accuses each of them of demonstrating "clear disrespect of the Court" and of presenting "misrepresentations and half-truths" to the Court, all while lamenting its inability to "nail down any specific lies" they told. *Id.*

The district court's criticism is misplaced in at least two independent respects. First, its sole citation in support of its criticism is a statement made by Steele—not Hansmeier or Duffy. App. 10 n.1. Thus, the district court attributes "clear disrespect of the Court" to Hansmeier and Duffy for something that—as a matter of record—they did not do.

Second, the district court's criticism of Steele's statement is representative of the shortcomings in the contempt proceedings. At the contempt hearing, counsel for AT&T, Bart Huffman, referenced a Forbes.com blog post for the proposition that Duffy, Steele and Hansmeier had publicly touted "making millions of dollars." *Id.* Huffman shirked Duffy and Hansmeier's challenges to identify a single "public touting" either of them had engaged in. App. 52. As for Steele, the article referenced by Huffman was blog post on Forbes.com. Rather than attempt to admit the blog post into evidence, or call Steele as a witness, Huffman just referenced the blog post—not to mention mischaracterized it.

After the hearing, apparently, the district court did a Google search for the article Huffman was referencing. True to Steele's word, the blog post did not support the proposition that Huffman was trying to establish. Steele's reference to a "few million dollars" in the article was an obvious reference to *gross* revenues, not *net* revenues. Nothing in the article establishes what portion of those gross revenues—after accounting for expenses, client payments, taxes and profits interests—Steele received. Yet, the Court criticized Steele for not providing a "full, truthful explanation" of a statement that was attributed to him in the blog post approximately one-and-a-half years prior. If the district court wanted an explanation of statements in the blog post, it should have insisted that Huffman do his job and present it to the Court at the hearing—rather than rely on post-hearing *ex parte* Google searches.

## B.    Ability to Pay

The district court's statement that it "took into consideration plaintiff's counsel's ability to pay" is not supported by the record. The district court rejected out-of-hand the statements of financial condition submitted by Duffy, Steele and Hansmeier because they were non-GAAP. App. 10−11. It went no further in its consideration of Duffy, Steele and Hansmeier's ability to pay.

The district court's taking of judicial notice of a bond posted in another proceeding gets everything backwards. App. 11. By posting a bond in another proceeding, Duffy, Steele and Hansmeier had *less* money to apply to a bond in this proceeding. What the district court should have taken judicial notice of is: When ordered to post a bond in the referenced proceeding, Duffy, Steele and Hansmeier did so without claiming an inability to pay, as they would have done in this case if they did, in fact, have an ability to pay.

**CONCLUSION**

This Court should vacate the district court's finding of contempt and its imposition of sanctions.


DATED: May 23, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744
*In propria persona*

/s/ Paul Duffy  (with consent)
Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136
*In propria persona*

/s/ John Steele  (with consent)
John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131
*In propria persona*

**Certificate of Compliance**
**With Type-Volume Limitation, Typeface**
**Requirements, And Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,646 words, including headings, footnotes, and quotations, and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2013 with 12-point Century Schoolbook font.

DATED: May 23, 2014

                                         /s/ Paul Hansmeier
                                         Paul Hansmeier
                                         100 South Fifth Street, Suite 1900
                                         Minneapolis, MN 55402
                                         612-234-5744

## Statutory Addendum

**Fed. R. Crim. P. 42(a):**

(a) Disposition After Notice. Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

> (1) *Notice.* The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:
>
>> (A) state the time and place of the trial;
>>
>> (B) allow the defendant a reasonable time to prepare a defense; and
>>
>> (C) state the essential facts constituting the charged criminal contempt and describe it as such.

(2) *Appointing a Prosecutor.* The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.

(3) *Trial and Disposition.* A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

# REQUIRED SHORT APPENDIX

**REQUIRED SHORT APPENDIX**

**Table of Contents**

| Document description | Location in Record | Page No. |
|---|---|---|
| Circuit Rule 30(d) Statement | N/A | ii |
| Contempt Memorandum and Order | Dkt. 136 | App. 001 |
| Memorandum and Order Granting Motion for Attorney Fees | Dkt. 65 | App. 014 |
| Sanctions Memorandum and Order | Dkt. 100 | App. 016 |
| Notice of Appeal | Dkt. 140 | App. 029 |

i

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), the undersigned certifies that the material required by Circuit Rule 30(a) is included in the required short appendix. All other material required by Circuit Rule 30(b) is included in the separately-bound appendix.

DATED: May 23, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LIGHTSPEED MEDIA CORP.,**

    **Plaintiff,**

**vs.**                            **No.   3:12-cv-889-DRH-SCW**

**ANTHONY SMITH, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

This matter is before the Court on Defendants Anthony Smith ("Smith"), Comcast Cable Communications LLC and Comcast Corporate Representative #1 (together, "Comcast"), and SBC Internet Services, Inc. d/b/a AT&T Internet Services' ("AT&T") (collectively "defendants") joint motion for contempt, or in the alternative, for an order to plaintiff's counsel to show cause why they each should not be held in contempt (Doc. 107).   Plaintiff's counsel Paul Duffy ("Duffy") and Paul Hansmeier ("Hansmeier") responded (Docs. 111, 113).   At the direction of the Court (Docs. 112, 117), defendants filed a reply (Doc. 119).   On February 13, 2014, the Court held a hearing on the issues (Doc. 123).   For the following reasons, the defendants' motion will be **GRANTED.**

### I.   Background

On December 14, 2011, Lightspeed Media Corporation ("Lightspeed") filed suit in the Circuit Court of the Twentieth Judicial District in St. Clair County.

Page **1** of **13**

Lightspeed owns or operates one or more paid-subscription adult entertainment websites.   In its first complaint, Lightspeed alleged that John Doe and more than 6,600 "co-conspirators" had gained unauthorized access to its website.   On December 16, 2011, the circuit court granted an *ex parte* motion for leave to obtain discovery by subpoena, from dozens of Internet Service Providers ("ISPs"), of information personally identifying the defendants.    AT&T and Comcast subsequently filed motions to quash the subpoenas and/or for a protective order. On May 22, 2013, the Illinois Supreme Court directed the circuit court to vacate its order denying the motion to quash.

On August 3, 2012, Lightspeed filed an amended complaint.   Lightspeed contended that Smith accessed content from Lightspeed's password-protected websites without authorization.   Lightspeed asserted that AT&T and Comcast improperly opposed Lightspeed's discovery, failed to act to protect Lightspeed's websites, and conspired with their customers to Lightspeed's detriment. Specifically, Lightspeed alleged 10 Counts: Computer Fraud and Abuse (Count I), Conversion (Count II), Unjust Enrichment (Count III), Unjust Enrichment (Count IV), Count V (Breach of Contract), Civil Conspiracy (Count VI), Civil Conspiracy (Count VII), Illinois Consumer Fraud and Deceptive Practices Act (Count VIII), Aiding and Abetting (Count X).   AT&T removed this action to federal court on August 9, 2012.

Plaintiff thereafter filed an emergency motion for Discovery prior to the Rule 26(f) Conference (Doc. 9) requesting the ISP information.   Judge G. Patrick

App. 002

Murphy held a hearing on the issue and denied the motion (Doc. 23).   Defendants each filed motions to dismiss (Docs. 26, 28, 36).   Prior to the resolution of the motions to dismiss, Lightspeed entered a notice of voluntary dismissal on March 21, 2013.   Defendants subsequently moved for attorney's fees pursuant to 28 U.S.C. § 1927 (Docs. 61, 78, 82).   Judge Murphy granted Defendant Smith's motion (Doc. 65) and counsel (Duffy, Hansmeier, and John Steele ("Steele")) sought reconsideration of that order (Docs. 66, 68, 74).   On November 13, 2013, Judge Murphy held a hearing on the motions for reconsideration and the motions for attorney's fees by ComCast and AT&T (Doc. 96) in which he deferred ruling.

On November 27, 2013, Judge Murphy denied the motions to vacate, or in the alternative, reconsider the order granting Smith's motion for attorney fees, granted ComCast's and AT&T's motions for attorney's fees, and ordered that pursuant to 28 U.S.C. § 1927, Duffy, Hansmeier, and Steele are jointly and severally liable, and shall pay within 14 days of the order (December 11, 2013), attorney fees and costs to Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,00252.11 with interest as provided by law (Doc. 100).   Duffy, Hansmeier, and Steele filed a notice of Appeal on December 12, 2013.

On December 27, 2013, defendants filed a joint motion for contempt, or in the alternative, for an order to plaintiffs' counsel to show cause why they each should not be held in contempt (Doc. 107).   Plaintiff's counsel Duffy and Hansmeier responded (Doc. 111, 113), Steele filed a motion to stay the sanction's

order (Doc. 114), and, at the direction of the Court (Docs. 112, 118), defendants filed a reply (Doc. 119).

Defendants request 1) an order holding in contempt plaintiffs' counsel Steele, Duffy, and Hansmeier or, in the alternative, 2) an order requiring Duffy, Hansmeier and Steele to show cause why they should not each be held in contempt for their failure to timely comply with the fee order.   In their reply, defendants focus on the contempt.   They specifically request that this Court hold Duffy, Hansmeier and Steele in contempt of Court, and also order them to pay the defendants attorneys' fees incurred in seeking this finding of contempt, along with interest and additional daily fines for each day the sanctioned attorneys fail to make any and all payment(s) ordered.

Plaintiff's counsels' responses assert three points: (1) defendants have not submitted any evidence regarding compliance (Doc. 113 at 2), (2) the order is a money judgment and therefore not properly enforceable through contempt proceedings (Doc. 111 at 3-5; Doc. 113 at 2-4), and (3) defendants have otherwise failed to establish the elements of civil contempt (Doc. 111 at 5-6).   Hansmeier further asserts that in the alternative, the Court should grant plaintiff's counsel leave to seek a stay of the November 27, 2013 order (Doc. 113 at 4-6).

The Court held a hearing on defendants' motion for contempt on February 13, 2014 (Doc. 124).   During the proceedings, plaintiff's counsel admitted on the record to noncompliance, each stating that they had not paid the sanction amount to defendants or otherwise sought a supersedeas bond.   The Court also addressed

App. 004

plaintiff's counsels' argument that the Court should consider the sanctions order as a money judgment, concluding that the Court's order was not a money judgment but instead a sanctions order. The Court deferred ruling on the motion for contempt and directed plaintiff's counsel to file asset statements from a certified public accountant on or before February 24, 2014. The Court also considered Steele's motion to stay (Doc. 114) and heard arguments from the parties. The Court denied Steele's motion to stay on the record and addressed and similarly dismissed Hansmeier's stay request (Doc. 124).

## II.    Analysis

### A.    Civil Contempt

Federal courts have both inherent and statutory authority to punish for contempt and to coerce compliance with their orders. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 831-833 (1994). To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

There is no debate as to whether plaintiff's counsel significantly violated Judge Murphy's November 27, 2013 order (hereinafter "Sanctions Order"). As previously indicated, plaintiff's counsel has not made a single payment.

Furthermore, Duffy, Hansmeier, and Steele failed to make a reasonable and diligent effort to comply with the Sanctions Order.   While Steele filed a motion to stay the Sanctions Order, this motion was not accompanied by a supersedeas bond and was filed untimely.   *See* Fed. R. Civ. P. 62(d).

The key issue here is whether the Sanctions Order was "an unambiguous command."   Plaintiff's counsel asserted that the Sanctions Order is a money judgment, not an equitable decree.   At the show cause hearing, the Court held that the Sanctions Order was an equitable decree, specifically a sanctions order. However, plaintiff's counsel argues that this confusion is the primary reason they did not comply with the Sanctions Order.   The Court finds this argument disingenuous.   Seventh Circuit case law is quite clear.   *See Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) ("Use of contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.")   Furthermore, if plaintiff's counsel was confused, they could have filed a motion to clarify with Judge Murphy.

**B.   Inability to Pay**

At the show cause hearing, plaintiff's counsel emphatically indicated an inability to pay.   Specifically, "I can't pay what I don't have" (Show Cause Hr'g Tr. 22:16-17 (Hansmeier)).   Also, "[I]t's extremely important because if the Court issues sanction order for, I don't know, a billion dollars, we can't pay it.   And I don't believe that there's any case law to establish that – there's not a debtor's prison.   I mean if we can't pay it, we can't pay it" (Show Cause Hr'g Tr. 19:10-15

App. 006

(Steele)).   Plaintiff's counsel again pointed to their confusion over the nature of the Sanctions Order as the reason why they had not yet supplied the Court with their financial information.   The Court therefore directed plaintiff's counsel to provide asset statements prepared by a certified public accountant on or before February 24, 2014.   Plaintiff's counsel timely submitted financial condition statements to the Court *in camera*.

"Inability to pay is a valid defense in a contempt proceeding, but the party raising the defense has the burden of proving its inability to pay." *In re Re. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).   In the case where there has been no attempt to comply with the Court's order, plaintiff's counsel must show a "complete inability to pay." *Id.* Plaintiff's counsel, "stated differently, . . . [has] the burden of establishing clearly, *plainly*, and *unmistakably* that compliance is *impossible*." *Id.* (internal citations and quotations omitted) (emphasis in original).

The Court finds that plaintiff's counsel has not met its burden.   They submitted incomplete, and to say the least suspicious, statements of financial condition.   Attached to each statement was a letter from their certified public accountant ("CPA").   In these letters, the CPA indicates a departure from generally accepted accounting principles.   He further notes that plaintiff's counsel elected to omit substantially all of the disclosures required by generally accepted accounting principles.   The Court finds these statements insufficient to establish plaintiff's counsel's inability to pay.

Page **7** of **13**

Plaintiff's counsel significantly violated an unambiguous order of the Court. They also failed meet their burden regarding their inability to pay defense. Accordingly, the Court finds plaintiff's counsel Paul Duffy, Paul Hansmeier, and John Steele in civil contempt and defendants' joint motion for contempt (Doc. 107) is **GRANTED.**

C.     **Civil Contempt Sanction**

"Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy."   *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001).   Remedial sanctions compensate the complainant for his losses caused by the contemptuous conduct.   *Id.*   Coercive sanctions aim to coerce the contemnor's compliance with a court order.   *Id.*   A coercive sanction must afford the contemnor the opportunity to "purge", to avoid punishment by complying with the order.   *Id.*   The factors to be considered by the court in imposing a civil contempt sanction include: (1) Harm from noncompliance, (2) Probable effectiveness of the sanction, (3) Contemnor's financial resources and the burden the sanctions may impose; and (4) Contemnor's willfulness in disregarding the court's order.   *United States v. United Mine Workers of America*, 330 U.S. 258, 303-304 (1947).

The Court must "consider the character and magnitude of the harm threatened by continued contumacy . . . ."   *Id.* at 304.   As to the character of the harm, the Court finds that plaintiff's counsel *wilfully* violated the Sanctions Order.

App. 008

Plaintiff's attorneys have made no effort to comply.   In fact, until defendants filed the current contempt motion, plaintiff's counsel had not addressed the Court regarding the Sanctions Order, merely filing a notice of appeal.   While a violation need not be willful for the Court to impose civil contempt sanctions, willfulness inherent in the contemptuous act is a major consideration in determining the appropriate sanctions.   *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt"); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989); *In re Federal Facilities Reality Trust,* 227 F.2d 657, 658 (7th Cir. 1955).

The Court also finds the magnitude of harm significant.   As indicated in the Sanctions Order, this case is "baseless" (Doc. 100 at 9).   Judge Murphy ordered sanctions for attorney's fees and costs because plaintiff "unreasonably and vexatiously multiplied the proceedings in this matter" (Doc. 100 at 10).   Plaintiff's counsel's failure to address the Sanctions Order further multiplies the proceedings. Not only is the magnitude of the harm significant in financial terms for the defendant in added attorney's fees and costs of the contempt motion but also in regards to the integrity of the Court.   The Court again notes that plaintiff's counsel made no effort to comply with the order to address the Court.   Also, the Court cannot ignore the behavior of plaintiff's counsel before the undersigned at the show cause hearing.   While the Court was unable to nail down any specific lies due, in significant   part,   to   plaintiff's   counsel   excellent   "attorney   speak",   the

misrepresentations and half-truths presented indicate plaintiff's counsel's clear disrespect of the Court.[1]   Furthermore, as the Court indicated at the hearing in regards to Steele's motion to stay, "[W]ith respect to talking about the community, the community has to worry about lawyers who file unreasonable and vexatious claims.   That's where the harm to the community is . . . .   The community is worried about lawyers, worried about lawyers that file these kind[s] of lawsuits. So if, in fact, Judge Murphy is right – and for the time being until the Seventh Circuit says something differently, I have to assume he is – the community is worried about guys like you" (Show Cause Hr'g Tr. 38:6-15).

The Court is also directed to review plaintiff's counsel's financial resources. *United Mine Workers of Am.*, 330 U.S. at 304 ("[A] court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed . . . as a means of securing future compliance, consider the amount of [the party's] financial resources and the consequent seriousness of the burden to that particular [party].") As previously discussed, the Court has taken into consideration plaintiff's counsel's

---

[1] For example, in the show cause hearing, the parties addressed plaintiff's counsel's financial means.   The Court specifically asked why plaintiff's counsel had not yet submitted their financial information to the Court.   Hansmeier indicated that he had not provided this information as of yet because they were unsure as to whether the Court was going to rule the order a sanction's order or a money judgment.   Again, Hansmeier indicated "I can't pay what I don't have."   Bart Huffman, Attorney for AT&T, then indicated that plaintiff's counsel had mentioned that they have made millions of dollars.   Steele objected to this characterization, and asked Mr. Huffman to indicate where he would have publically touted making millions of dollars.   Mr. Huffman responded that he believed there was an article in FORBES. To which Mr. Steele responded, "No, absolutely, I never did, and I resent being told that I've said something that's not true.   If Mr. Huffman would like to present something that I personally made money of a certain amount, feel free, but it will never come, Your Honor" (Show Cause Hr'g Tr. 23:16-20).   After a quick Google search, the Court quickly comes across the following article: Kashmir Hill, *How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'* FORBES, Oct. 15, 2012, *available at* http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/.   Therein, Mr. Steele states in response to the article's author suggestion that he has made $15 million settling these suits, "Maybe a little less. We don't track the amount we've recovered.   More than a few million."   The Court notes that while it is true this is not a "certain amount", it is disingenuous to imply destitution given the statement and, at the very least, the Court deserved a full, truthful explanation of the statement.

ability to pay.  The Court also now takes judicial notice of the same attorneys' ability to post a $101,650.00 supersedeas bond, Supersedeas Undertaking for Appeal, *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-08333-ODW-JCx (C.D. Cal. May 23, 2013), ECF No. 174, as well as their subsequent ability to post an additional bond in the amount of $135,933.66, Supersedeas Undertaking, *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-08333-ODW-JCx (C.D. Cal. July 23, 2013), ECF No. 229.  Plaintiff's counsel clearly had the ability to pay in those instances and they failed to provide the Court with the information it needed in order to adequately make an accurate assessment regarding their current ability to pay.

As a preliminary matter, the Court **DIRECTS** plaintiff's counsel to pay interest on the sanction amounts pursuant to the Sanctions Order as provided by law.   For clarification, the Court interprets this provision of the Sanctions Order as follows.   The Court will apply the federal interest rate as contemplated in 28 U.S.C. § 1961, 18 U.S.C. § 3612, and 40 U.S.C. § 258(e)(1).   These sections direct the Court to compute interest from the first day on which the defendant is liable for interest at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the first day on which the defendant is liable for interest.   Plaintiff's counsel became liable for interest on December 11, 2013.  Therefore the .13% interest rate from the week ending December 6, 2013 will apply.  Plaintiff's counsel is responsible for the entire time period from the date of liability to the date of compliance, including those days during which this motion was

Page **11** of **13**

pending.

The Court believes that both coercive and remedial sanctions are warranted in this case.  *See United Mine Workers of Am.*, 330 U.S. at 302-303; *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 349 (7th Cir. 1976); *Dowell*, 257 F.3d at 699.   The Court has determined this to be the most effective way to ensure compliance with the Sanctions Order and to uphold the integrity of the Court.

The Court sanctions plaintiff's attorneys in the amount of 10% of the original sanction amounts equally divided among Duffy, Steele, and Hansmeier.   This sanction is to be paid to the defendants as follows: $7,236.70 to Smith, $11,963.75 to AT&T, and $6,902.13 to ComCast, for a total amount of $26,102.58.   This remedial sanction contemplates the attorney's fees and costs incurred by defendants during the course of litigating this contempt motion.   The Court acknowledges that a lodestar calculation is traditionally used.   However, requiring defense counsel to provide billing statements would most certainly cause delay and further litigation thereby negating the goals of this order and only further harming the defendants.   The previous clarification regarding interest does not apply to this sanction.

Finally, plaintiff's counsel shall comply with the Sanctions Order and this order within 7 days, on or before March 31, 2014.   Compliance is construed by the Court as follows.   Plaintiff's counsel may make payment to all of the defendants of the ordered amounts in full.   Plaintiff's counsel may also file a motion to stay and

accompanying supersedeas bond of the full amount.   Fed. R. Civ. P. 62(d).   Bonds

or payments of partial amounts will not be considered compliance with this Court's

order.   Failure to comply with this order in that timeframe shall result in a $500

per day per attorney fine for up to 30 days.   After 30 days, this amount shall

increase to $1,000 per day per attorney.

The Court notes that defendant, Smith filed a "Renewed Motion for

Contempt" on March 20, 2014, as the Court was finishing up the final draft of this

order.   The Court will consider that motion as a motion for an additional sanction

for contempt since it relates directly to representations made in Court and in the

financial statements by plaintiff's counsel.   Counsel, Steele, Duffy and Hansmeier,

shall respond to the March 20 motion, no later than April 20, 2014.   Upon

reviewing those responses, the Court will consider whether to require another

hearing and the range of sanctions that it may be considering, if any.

**IT IS SO ORDERED.**

Digitally signed
by David R.
Herndon
Date: 2014.03.24
13:04:51 -05'00'

**Chief Judge**
**United States District Court**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   **CIVIL NO. 12-889-GPM** |
| | ) |
| ANTHONY SMITH, et al., | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

Under 28 U.S.C. §1927, "an attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1183 (7th Cir. 1992). While there is no catch-all definition for either 'unreasonably' or 'vexatiously,' the Seventh Circuit has upheld sanctions under this statute when counsel acted recklessly, raised baseless claims despite notice of the frivolous nature of these claims, or otherwise showed indifference to statutes, rules, or court orders. *Id.* at 1184. Now before this Court is Defendant's motion for attorney fees because Plaintiff raised baseless claims despite knowledge those claims were frivolous and pressed for a meritless 'emergency' discovery hearing (Doc. 61). The Court agrees with Defendant. The litigation smacked of bullying pretense. The Court has read all the papers and is particularly informed by the in-court hearing on Plaintiff's "emergency" motion held before the undersigned (Doc. 23). The motion for attorney

App. 014

fees made pursuant to 28 U.S.C. §1927 is **GRANTED**.   Defendant Anthony Smith is

**ORDERED** to file an itemization of fees on or before November 8, 2013.

**IT IS SO ORDERED.**

**DATED**: October 30, 2013


/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge

App. 015

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORP., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 12-889-GPM |
| | ) | |
| ANTHONY SMITH, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Currently before the Court are motions to vacate, or in the alternative reconsider the order granting fees and costs to Defendant Anthony Smith filed by Paul Duffy, Paul Hansmeier, and John Steele (Docs. 66, 68, 74).  Also before the Court are motions for fees and costs filed by Defendants ComCast Cable Communications, LLC ("ComCast") and SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") (Docs. 78, 82), as well as itemizations of fees and costs filed by Smith, ComCast, and AT&T (Docs. 90, 97, 98).

The Court initially reserved ruling on these motions (*See* Doc. 96); for the reasons set forth below, the Court now denies the motions to vacate or reconsider filed by Duffy, Hansmeier, and Steele, and grants the motions for attorney fees filed by ComCast and AT&T.

## BACKGROUND

On March 21, 2013, this matter was voluntarily dismissed by Plaintiff Lightspeed Media Corp. (Docs. 59, 60).  Following the dismissal, the Court granted Defendant Anthony Smith's motion requesting attorney fees and costs because Plaintiff filed and pursued claims against Smith

that Plaintiff knew were baseless from the start (Doc. 65).   The Court granted Smith his fees and

costs under 28 U.S.C. § 1927 to be paid by Plaintiff's counsel: John Steele, Paul Duffy, and Paul

Hansmeier (Doc. 65).   The Court's order granting Mr. Smith attorney fees was entered on

October 30, 2013 (Doc. 65).   The very next day, Paul Hansmeier filed a motion to vacate, or in the

alternative reconsider, the order (Docs. 66, 67) arguing that he should not be liable for Smith's

attorney fees.   John Steele and Paul Duffy then filed similar motions on November 4, 2013 (Docs.

68, 69), and November 7, 2013 (Docs. 74, 75), respectively.   Defendant Anthony Smith filed a

response in opposition to Duffy, Hansmeier, and Steele's motions (Doc. 92).

After the Court granted Smith's request for fees and costs, Defendants ComCast and

AT&T then filed motions also requesting fees and costs (Docs. 78, 82).   Hansmeier filed a

response in opposition to ComCast and AT&T's motions (Doc. 86), as did Steele (Doc. 88).

Smith filed a reply to Hansmeier and Steele's responses (Doc. 93).

A hearing was held on November 13, 2013 on all of the above motions (Doc. 70).   Duffy

and Steele appeared at the hearing in person, and Hansmeier appeared by phone (Doc. 96).

## DISCUSSION

## I.  MOTIONS TO VACATE, OR IN THE ALTERNATIVE RECONSIDER ORDER GRANTING ATTORNEY FEES TO DEFENDANT ANTHONY SMITH

The Court will first address the motions to vacate, or in the alternative, reconsider its order

granting fees and costs to Anthony Smith under 28 U.S.C. § 1927 filed by Plaintiff's current

attorney of record, Paul Duffy, and former attorneys of record, Paul Hansmeier and John Steele

(Docs. 66, 68, 74).   Because the motions fail to state any grounds warranting relief under Rule

60(b), the motions to vacate or reconsider are denied.

### A.  Legal Standard

Technically, a "Motion to Reconsider" does not exist under the Federal Rules of Civil Procedure.  But such motions are routinely filed, and they are generally treated as motions to alter or amend judgment under Rule 59(e), or motions for relief from a judgment or order under Rule 60(b).  *See e.g.*, *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994).   At issue here is the Court's order granting Smith's request for attorney fees (Doc. 65), which is only an interim order because the Court has not yet determined the amount of attorney fees that Smith is entitled to.   *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 456 (7th Cir. 2005).   Since the order is not a final order and no judgment has been entered, Rule 59(e) is not applicable.   Therefore, the motions filed by Duffy, Hansmeier, and Steele must be evaluated under Rule 60(b).

"Relief under Rule 60(b) is an extraordinary remedy that is to be granted only in exceptional circumstances."  *Talano v. N.W. Med. Faculty Found., Inc.,* 273 F.3d 757, 762 (7th Cir. 2001).   Rule 60(b) permits a court to grant relief based on one of six specific grounds listed in the rule.   *Talano*, 273 F.3d at 762; FED. R. CIV. P. 60(b).   The request for relief "must be shaped to the specific grounds . . . listed in Rule 60(b)—they cannot be general pleas for relief."   *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992).

### B.  Paul Duffy's Motion to Vacate or Reconsider (Doc. 74)

The Court turns first to Duffy's motion to vacate or reconsider because it can be easily dismissed as he does not state a proper legal basis for relief under Rule 60(b).   In his motion, Duffy argues that the Court should reconsider its order granting attorney fees to Anthony Smith because he took only "five discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Doc. 75).   In the alternative, if Duffy's actions

App. 018

were sanctionable, Smith failed to identify any "excess" expenses directly traceable to Duffy's actions (Doc. 75).

Duffy's motion is not based on any of the grounds specified in Rule 60(b). Instead, Duffy merely takes umbrage with the Court's analysis of the evidence and its ruling, and rehashes old arguments that he made and the Court denied in his response to Anthony Smith's motion for attorney fees (*Compare* Doc. 63 *with* Docs. 74, 75). Neither of these things warrants relief under Rule 60(b). *Karraker v. Rent–A–Center, Inc.,* 411 F.3d 831, 837 (7th Cir. 2005) (Rule 60(b) motion is not the time to rehash previously rejected arguments); *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995) (Rule 60 "was designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law.")

Because Duffy's motion fails to state any grounds for relief within the scope of Rule 60(b), his motion to vacate or reconsider (Doc. 74) is **DENIED**.

### C. Paul Hansmeier and John Steele's Motions to Vacate or Reconsider (Docs. 66, 68)

The Court next turns to the motions to vacate or reconsider filed by Hansmeier and Steele. These motions can be considered in tandem because they are largely identical. Like Duffy, Hansmeier and Steele argue that that the Court should reconsider its order granting attorney fees to Anthony Smith because they took only a small number of "discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Docs. 67, 69). As previously stated, these arguments do not translate into a legal basis warranting relief under Rule 60(b).

Hansmeier and Steele also argue that the Court should vacate its order because it imposed

sanctions on them without giving them notice or an opportunity to be heard in violation of their right to due process (Docs. 67, 69).   Specifically, they claim that they were not apprised of Smith's motion for attorney fees until after the District Court had entered its order imposing sanctions on October 30, 2013 because Smith failed to serve them.   Smith's motion for attorney fees was electronically filed on April 5, 2013, and the CM/ECF system sent notice to all attorneys of record (Doc. 61).   Hansmeier and Steele claim that since they were no longer attorneys of record (*See* Doc.s 56, 58), they did not receive the notice (Doc. 67, 69).

"[T]he requirements of due process of law are applicable to a proceeding to impose sanctions, entitling a party or attorney to notice and opportunity to respond[.]"   *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1494 (7th Cir. 1989).   Despite their protestations, the Court finds that Hansmeier and Steele both received all the process they were due.

First and foremost, Steele's claim that he never got notice of Smith's motion for fees is baseless.   A review of CM/ECF records reveals that notice of Smith's motion for attorney fees (Doc. 61) went to numerous email addresses, including: docket@wefightpiracy.com—an email address used by both Steele and Paul Duffy.[1]   Therefore, it is irrefutable that Steele had actual notice of Smith's motion for attorney fees prior to the Court's order granting the motion.

Second, Smith served Paul Duffy, Plaintiff's lead attorney, with his motion for attorney fees; and service on Duffy was effective for all of Plaintiff's counsel, past and present, including Steele and Hansmeier.   Rule 5 does not require motions to be served on all counsel of record, but merely requires that the pleadings be served on all parties.   *See* FED. R. CIV. P. 5(a)(1).   Furthermore, service is not required on each of several counsel appearing on behalf of a party.

---

[1] Prior to his termination as counsel for Plaintiff, Steele received electronic notices from the CM/ECF system at three email addresses: (1) jlsteele@wefightpiracy.com, (2) docket@wefightpiracy.com, and (3) nawersal@wefightpiracy.com (*See, e.g.*, Doc. 57).   He now receives electronic notices at johnlsteele33140@gmail.com (Doc. 88).

*Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1063 (5th Cir. 1990).  "Service upon one, but not all, of its counsel is effective service." *Id.* (serving "local" counsel and not "lead" counsel complied with Rule 5 because the Rule does not "require service on each of several counsel appearing on behalf of a party"); *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995) (serving motion for summary judgment only on plaintiff's attorney who had recently entered an appearance and not on attorney who had represented plaintiff from the outset complied with Rule 5 because the rule does not require service on both attorneys of record).

Here, Smith served his motion for attorney fees on Duffy, and that is all he was required to do.  He did not have to also personally serve Steele and Hansmeier.  This is particularly true since Duffy, Steele, and Hansmeier are all associated with the same law firm: Prenda Law, Inc. The docket sheet indicates Paul Duffy's firm is Prenda Law; Steele listed his firm as Prenda Law on his entry of appearance and his motion to withdraw (Docs. 20, 57); and Hansmeier indicated that he was "of counsel" to Prenda Law, Inc. (Doc. 50).   The Court also takes judicial notice that Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW (C.D. Cal. March 8, 2013), ECF No. 83).

Aside from being from the same firm, there is other evidence suggesting these three men worked in concert with one another.  First, Duffy, Steele, and Hansmeier used each other's CM/ECF login information, and/or filed documents on behalf of one another.   For example, both Steele and Hansmeier used Duffy's CM/ECF login information to enter their appearances, or Duffy attempted to do so for them (*See* Doc. 11, 15); Hansmeier also used Steele's CM/ECF login

information to file his motion to continue, or Steele filed it on Hansmeier's behalf (Doc. 73).

Second, the similarities in documents filed by Duffy, Steele, and Hansmeier indicate an ongoing

relationship.   For example, in the instant motions to vacate/reconsider, the three men use identical

formatting from the caption, to the font, and the signature block, and the substance is largely the

same (*Compare* Docs. 66, 67, 67-1 *with* Docs. 68, 68-1, 68-2, 69 *with* Docs. 74, 75).   Third, the

Court takes judicial notice that several other federal courts have found Duffy, Steele, and

Hansmeier to be in cahoots.   Most notably, Judge Otis Wright in the Central District of California

found that Steele, Hansmeier, and Duffy were "starving attorneys" with "shattered law practices"

who conspired to use copyright laws to "plunder the citizenry," and he adopted into his findings a

chart showing the relationship between these men and others associated with Prenda Law.

*Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *1–*2, *5

(C.D. Cal. May 6, 2013).   *See also AF Holdings, LLC v. John Doe(s)*, Case No.

12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67 (noting Judge Wright's

findings, but stating "[i]t would not be a wise use of the Court's limited resources to *sua sponte*

attempt to fully untangle the relationship between Hansmeier, Steele, Duffy, [and others]"); *AF*

*Holdings, LLC v. Navasca*, Case No. 12-cv-02396-EMC, 2013 WL 5701104, at *2 (N.D. Cal. Oct.

16, 2013) (adopting Judge Wright's findings with respect to AF Holdings, Steele, and Hansmeier's

"alter ego relationship, their conduct, and their business model"); *AF Holdings, LLC v.*

*Chowdhury*, Case No. 12-cv-12105-JLT (D. Mass. October 22, 2013), ECF No. 34 (finding AF

Holdings, LLC was "an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L.

Steele, Paul A. Duffy, and Paul R. Hansmeier, and its paralegal, Mark Lutz").

        Based on this information, the Court has no doubt that Duffy, Steele, and Hansmeier are

closely associated and acted in concert to file and prosecute this frivolous lawsuit.   Therefore, Smith's service on Duffy was also effective for Steele and Hansmeier.  As such, Steel and Hansmeier had adequate notice of Smith's motion, and the deadline for response papers, but chose to disregard it.

However, assuming arguendo that Steele and Hansmeier did not have notice or an opportunity to be heard before the Court imposed sanctions, the due process violation was subsequently cured when the Court reheard the issue on November 13 at Steele and Hansmeier's request.   Steele and Hansmeier had ample notice of the November 13 hearing, and they knew that they could sanctioned and ordered to pay Anthony Smith's attorney fees.   The written briefs that Steele and Hansmeier filed in advance of that hearing, and the statements they made at the hearing itself gave them the opportunity to confront the Court's belief that they had engaged in sanctionable conduct and to try to convince the Court that they should not be sanctioned.   "So it was essentially a no-harm, no-foul situation because, generally speaking, 'procedural errors are cured by holding a new hearing in compliance with due process requirements.'"   *In re Hancock*, 192 F.3d 1083, 1086 (7th Cir. 1999), *quoting Batanic v. Immigration and Naturalization Service*, 12 F.3d 662, 667 (7th Cir. 1993) (holding imposition of sanctions was a deprivation of due process, however said deprivation was cured when the court stayed the sanctions order and scheduled another hearing).  *See also Wright v. CompGeeks.com*, 429 F. App'x 693, 698 (10th Cir. 2011); *Powell v. Cadwell*, 42 F. App'x 821, 822 (7th Cir. 2002); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000).

Because Hansmeier and Steele's motions fail to state any grounds for relief within the scope of Rule 60(b), and they were not deprived of due process with respect to the imposition of

sanctions, their motions to vacate or reconsider (Docs. 66, 68) are **DENIED**.

## II.  MOTIONS FOR ATTORNEY FEES

The Court will next address the motions for attorney fees and costs under § 1927 filed by Defendants ComCast and AT&T (Docs. 78, 82).   Under 28 U.S.C. §1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   28 U.S.C. § 1927.   The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys, and to ensure that those who create unnecessary costs also bear them."   *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (internal citations omitted).   While there is no catch-all definition for either 'unreasonably' or 'vexatiously,' the Seventh Circuit has upheld sanctions under this statute when counsel acted recklessly, raised baseless claims despite notice of the frivolous nature of these claims, or otherwise showed indifference to statutes, rules, or court orders.   *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir. 1992).

ComCast and AT&T argue that fees are appropriate here because Plaintiff raised baseless claims against them, despite knowledge those claims were frivolous, in an effort to obtain the discovery that the Illinois Supreme Court had previously thwarted (Docs. 78, 82).   Furthermore, Plaintiff continued to advance its baseless claims until the Court ruled that no discovery would be forthcoming until the motions to dismiss filed by Defendants were ruled on (Docs. 78, 82).   Rather than waiting for the Court's ruling, however, Plaintiff dismissed all of its claims (Docs. 78, 82).

The Court agrees with ComCast and AT&T.   By naming ComCast and AT&T as

App. 024

Defendants without any valid claims in an attempt to make an end run around the Illinois Supreme Court's denial of discovery, Plaintiff unreasonably and vexatiously multiplied the proceedings in this matter.   Namely, Defendants' attorneys were forced to respond to and appear for a hearing on Plaintiff's emergency motion for expedited discovery, to file various motions to dismiss, to appear for a scheduling and discovery conference, and to file a motion to stay discovery.

The Court also finds that Duffy, Hansmeier, and Steele exhibited a "serious and studied disregard for the orderly process of justice." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006), *quoting Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir. 1994).   These men have shown a relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts,[2] and being referred to state and federal bars,[3] the United States Attorney in at least two districts,[4] one state Attorney General,[5] and the Internal Revenue Service.[6]   For example, at the November 13 hearing, Hansmeier skirted the Court's direct questions, Steele made feigned protestations, and both flat-out lied about their association with Prenda Law, Inc. in the face of

---

[2]  *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67 (ordering AF Holdings and Prenda Law to repay settlement money and all attorney fees and costs incurred by defendants); *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5–6 (C.D. Cal. May 6, 2013) (jointly and severally liable for defendant's attorney fees and costs in the amount of $81, 319.72); *AF Holdings, LLC v. Chowdhury*, Case No. 12-cv-12105-JLT (D. Mass. October 22, 2013), ECF No. 34 (jointly and severally liable for defendant's in the amount of $21,393.60, with fees and costs trebled for a total judgment of $64,180.80).
[3]  *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)
[4]  *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)
[5]  *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67
[6]  *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)

App. 025

documentary evidence on the record in this case, and their sworn declarations in other cases.[7]

Accordingly, the imposition of attorneys' fees under § 1927 is appropriate here—from the inception of the claims through the present.   *See Overnite Transp. Co. v. Chi. Indus. Tire Co.,* 697 F.2d 789, 794 (7th Cir.1983) (§ 1927 can reach the filing of the complaint where the lawsuit was legally meritless from the outset, and counsel should have known that it was); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184–85 (7th Cir. 1992) (§ 1927 sanctions appropriate where counsel pursued baseless claim despite receiving notice that claims were frivolous).

## III.    ITEMIZATIONS OF FEES AND COSTS

For the reasons stated above, and in accordance with the Court's previous order (Doc. 65), Defendants have been awarded reasonable attorney fees and costs under 28 U.S.C. § 1927 for all time expended from the filing of the amended complaint and the removal of the case to federal court in August 2012.

Anthony Smith seeks a total of $72,367.00 in attorney fees and costs (Doc. 90).   This total includes $72,150.40 in attorney fees for 187.2 hours of work done by Smith's attorneys from the time Smith was served with summons in August 2012 through May 2013 (Doc. 90-1).   The hours were billed at a rate of $409.00 per hour for partners Dan Booth and Jason Sweet and $200.00 per hour for (Doc. 90-1).   This total also includes $216.20 in costs (Doc. 90-1).

SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") seeks a total of $119,637.05 in attorney fees and costs (Doc. 97).   This total includes $870.29 in costs and $38,987.83 in attorney fees for the law firm of Hepler Broom for approximately 158.7 hours of

---

[7] Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW (C.D. Cal. March 8, 2013), ECF No. 83).

work from the time the case was removed to federal court in August 2012 through November 2013 (Doc. 97-1).   The hours were billed at various billing rates ranging from $295.00 to $110.00 per hour (Doc. 97-1).   The total sought by AT&T also includes $864.92 in costs and $80,524.50 in attorney fees for the law firm of Locke Lord, LLP for approximately 215 hours of work from the time the case was removed to federal court in August 2012 through November 2013(Doc. 97-2). The hours were billed at various billing rates ranging from $250 to $555 per hour (Doc. 97-2).

ComCast Cable Communications, LLC seeks a total of $69,021.26 in attorney fees and costs (Doc. 98).   This total includes $806.98 in costs and $57,144.28 in attorney fees for the law firm of Davis Wright Tremaine, LLP ("DWT") for approximately 132 hours of work from the time the case was removed to federal court in August 2012 through April 2013 (Doc. 98-1).   The hours were billed at various billing rates ranging from $531.00 to $212.50 per hour (Doc. 98-1).   This total also includes $11,070.00 in attorney fees for the law firm of Lashley & Baer, P.C. for 36.9 hours of work at a billing rate of $300.00 per hour (Doc. 98-2).

The Court notes that Paul Duffy, Paul Hansmeier, and John Steele had an opportunity to respond, and did respond, to Smith, AT&T, and ComCast's general requests for fees and costs (Docs. 63, 66, 68, 74, 86).   Duffy, Hansmeier, and Steele have not filed responses to the specific itemizations, but having reviewed the itemizations and declarations in support thereof, the Court finds a response is not necessary because no further information is required for this ruling.

After carefully considering the itemizations of fees and costs and the declarations in support thereof submitted by the attorneys for Smith, AT&T, and ComCast, the Court finds the time spent and the amounts charged by Smith, AT&T, and ComCast to be reasonable.   The Court has also carefully considered the interrelationship between Duffy, Hansmeier, and Steele.   The

Page 12 of 13

Court finds, that these men acted in concert throughout the entirety of the proceedings in this matter, share total responsibility for their actions, and are jointly and severally liable for the fees and costs of Defendants.

## CONCLUSION

The motions to vacate, or in the alternative, to reconsider the order granting Anthony Smith's motion for attorney fees filed by Paul Duffy (Doc. 74), Paul Hansmeier (Doc. 66), and John Steele (Doc. 68) are **DENIED.**

The motions for attorney fees and costs filed by Defendants ComCast Cable Communications, LLC (Doc. 78) and SBC Internet Services, Inc. d/b/a AT&T Internet Services (Doc. 82) are **GRANTED**.

It is **ORDERED** that pursuant to 28 U.S.C § 1927, Paul Duffy, Paul Hansmeier, and John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

**IT IS SO ORDERED.**

DATED: November 27, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge

Page 13 of 13

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LIGHTSPEED MEDIA CORP.,** | Civ. No. 12-889 DRH |
| *Plaintiff,* | |
| *v.* | **NOTICE OF APPEAL** |
| **ANTHONY SMITH, et al.,** | |
| *Defendants.* | |

Notice is hereby given that John Steele, Paul Duffy and Paul Hansmeier hereby appeal to the United States Court of Appeals for the Seventh Circuit from a final order finding them in contempt of court and imposing contempt sanctions, entered in this action on the 24th day of March, 2014 at docket number 136.

Dated: March 31, 2014

/s/ Paul Duffy (with consent)
Paul Duffy
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

/s/ Paul Hansmeier
Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

/s/ John Steele (with consent)
John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131