NO. 14-1682

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

LIGHTSPEED MEDIA CORPORATION,
*Plaintiff*,

v.

ANTHONY SMITH, et al.,
*Defendants-Appellees*,

Appeal of:
PAUL DUFFY, JOHN STEELE, & PAUL HANSMEIER,
*Appellants.*

---

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-DRH-SCW

---

**Opening Brief & Required Short Appendix of
Appellants Paul Duffy, John Steele & Paul Hansmeier**

---

Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 14-1682

Short Caption: Lightspeed Media Corp. v. Smith, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   [  ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

John Steele, in propria persona

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

N/A

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ John Steele                    Date: 4-17-14

Attorney's Printed Name: John Steele

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ◯   **No** ◉

Address: 1111 Lincoln Road Suite 400

Phone Number: 612-466-0870          Fax Number: N/A

E-Mail Address: johnlsteele33140@gmail.com

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 13-3801

Short Caption: Lightspeed v. Smith

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [   ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Paul Duffy, pro se

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

No such individuals has appeared for Paul Duffy in this action

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

      N/A

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

      N/A

Attorney's Signature: s/ [signature]       Date: January 27, 2014

Attorney's Printed Name: Paul Duffy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** X

Address: 2 N. LaSalle Street, 13th Floor

Chicago, IL 60602

Phone Number: (312) 952-6136       Fax Number: N/A

E-Mail Address: pduffy@pduffygroup.com

rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 14-1682

Short Caption: Lightspeed Media Corp. v. Smith, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Paul Hansmeier, in propria persona

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

N/A

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/  Paul Hansmeier                  Date: 4-17-14

Attorney's Printed Name: Paul Hansmeier

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No ✕

Address: 100 South Fifth Street, Suite 1900

Minneapolis, MN 55402

Phone Number: 612-234-5744              Fax Number: N/A

E-Mail Address: mail@classjustice.org

rev. 01/08 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES ......................................................................ii

Jurisdictional Statement ........................................................................ 1

Statement of the Issues ......................................................................... 3

Statement of the Case ........................................................................... 3

Standard of Review ............................................................................... 6

Summary of the Argument..................................................................... 7

ARGUMENT ......................................................................................... 9

I.      The District Court's Imposition of a $26,102.58 Fine Failed to Satisfy the Requirements of Due Process......................................................... 9

II.     The District Court Erred by Ruling That Only GAAP-Compliant Statements of Inability to Comply Can Satisfy the Burden of Production for This Defense .............................................................. 12

III.    The District Court Erred by Concluding as a Matter of Law That a District Court Lacks the Discretion to Impose Sanctions in the Form of an Ordinary Money Judgment ......................................................... 16

IV.    Duffy, Steele and Hansmeier Should Not Have Been Held in Contempt Because Comcast, AT&T and Smith Relied Exclusively on Legal Argument to Support The Contempt Petition ................................... 20

V.      The District Court's Evaluation of the *Mine Workers* Factors was Clearly Erroneous ............................................................................ 22

     A.     Character and Magnitude of the Harm............................... 22

     B.     Ability to Pay ................................................................... 25

CONCLUSION..................................................................................... 26

Certificate of Compliance .................................................................... 27

Statutory Addendum ........................................................................... 28

REQUIRED SHORT APPENDIX ........................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Autotech Techs. LP v. Integral Research & Dev. Corp.,*
499 F.3d 737 (7th Cir. 2007) ................................................................ 6

*BASF Corp. v. Old World Trading Co.,*
979 F.2d 615 (7th Cir. 1992). ............................................................ 17

*Cleveland Hair Clinic v. Puig,*
106 F.3d 165 (7th Cir. 1997) ........................................................ 17, 18

*FM Industries, Inc. v. Citicorp. Credit Services, Inc.,*
614 F.3d 335 (7th Cir. 2010) .............................................................. 19

*FTC v. Trudeau,*
579 F.3d 754 (7th Cir. 2009) .......................................... 9, 10, 17, 20

*In re Grand Jury Proceedings (Grand Jury empaneled June 2000),*
280 F.3d 1103 (7th Cir. 2002) .............................................................. 6

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
512 U.S. 821 (1994) ............................................................ 6, 7, 10

*McPhaul v. United States,*
364 U.S. 372 (1960) .......................................................................... 12

*Motorola, Inc. v. Computer Display Int'l., Inc.,*
739 F.2d 1149 (7th Cir. 1984) .............................................................. 2

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.,*
525 F.3d 533 (7th Cir. 2008) .............................................................. 20

*Shakman v. City of Chicago,*
426, F.3d 925 (7th Cir. 2005) .............................................................. 6

*Shalala v. Gurnsey Mem'l Hosp.,*
514 U.S. 87 (1995) .......................................................................... 13

*U2 Home Entm't, Inc. v. Wei Ping Yuan,*
245 Fed. Appx. 28 (2d Cir. 2007) ........................................................ 7

*United States v. Rylander,*
    460 U.S. 752 (1983) ...................................................................................... 12

*United States v. United Mine Workers of America,*
    330 U.S. 258 (1947) ...................................................................................... 22

**Statutes**

28 U.S.C. § 1291 .................................................................................................. 1

28 U.S.C. § 1331 .................................................................................................. 1

28 U.S.C. § 1332 .................................................................................................. 1

28 U.S.C. § 1441 .................................................................................................. 1

28 U.S.C. § 1446 .................................................................................................. 1

**Rules**

Fed. R. Civ. P. 41(a)(1) ........................................................................................ 1

Fed. R. Crim. P. 42(a) ........................................................................................ 10

**Other Authorities**

American institute of CPAs,
    Compilation of Financial Statements, AR §80.18 (2009) ................................. 15

Emily Chasan,
    *Four Reasons Non-GAAP Metrics Are Exploding*, CFO Journal
    (June 25, 2013, 4:36 PM ET),
    http://blogs.wsj.com/cfo/2013/06/25/four-reasons-non-gaap-metrics-
    are-exploding/. .................................................................................................. 14

John D. Rossi, III,
    *How Enron Jumped the GAAP*, Vol 51. No. 2, Moravian College
    Magazine (2002) ............................................................................................. 14

## Jurisdictional Statement

Appellants Paul Duffy, John Steele and Paul Hansmeier appeal from an order of the district court holding them in civil contempt and fining each of them one-third of $26,102.58. On March 21, 2013 the plaintiff voluntarily dismissed the underlying litigation under Rule 41(a)(1). On November 27, 2013 the district court entered a post-judgment sanctions order. On March 24, 2014 the district court entered an order finding Duffy, Steele and Hansmeier in contempt of the sanctions order. On March 31, 2014 Duffy, Steele and Hansmeier filed a timely notice of appeal.[1] App. 29.

The U.S. District Court for the Southern District of Illinois (the "district court") had federal question and diversity jurisdiction over the subject matter of this action pursuant to a Notice of Removal filed by Defendant SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") on August 9, 2012, which cited 28 U.S.C. §§ 1331, 1332, 1441, and 1446. R. 02. Federal question jurisdiction was based upon Plaintiff's assertion of claims under the Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030, and supplemental jurisdiction over Plaintiff's state law claims was based upon the relation of the state law claims to the CFAA claims such that they formed

---

[1] The required short appendix is 29 pages and is cited as "App. __". The separate appendix, the pagination of which begins where the pagination of the required short appendix leaves off, is cited in the same manner. Other portions of the record are cited as "R. __".

part of the same case or controversy. *Id.* at 3. Diversity jurisdiction was based upon Plaintiff's allegations of having been damaged in the amount of $774,850 and upon Plaintiff's request for actual damages in an amount exceeding $200,000. *Id.* at 5. Plaintiff is an Arizona corporation with its principal place of business in Arizona; Defendant AT&T is a California corporation with its principal place of business in Texas; and Defendant Comcast Cable Communications, LLC ("Comcast") is a limited liability company organized under Delaware law, whose sole member is Comcast Holdings Corp., a Pennsylvania corporation with its principal place of business in Pennsylvania. *Id.* at 4. No other parties were joined and served at the time of removal, including Defendant Smith, a citizen of the state of Illinois. *Id.* at 4–5.

The United States Court of Appeals for the Seventh Circuit has jurisdiction, pursuant to 28 U.S.C. § 1921, to hear an appeal from a post-judgment order that includes both a finding of contempt and the imposition of a sanction. *See also Motorola, Inc. v. Computer Display Int'l., Inc.*, 739 F.2d 1149, 1154 (7th Cir. 1984) (stating that a post-judgment order finding a party in civil contempt disposes of all the issues raised, and is thus final and appealable, if it includes both a finding of contempt and the imposition of a sanction). The contempt order giving rise to the appeal was associated with both of these features. *See* App. 1, 12 (finding Duffy, Steele and Hansmeier in civil contempt and imposing a sanction).

## Statement of the Issues

1. Whether the district court's imposition of a $26,102.58 contempt fine failed to satisfy the requirements of due process.

2. Whether the district court erred by holding that CPA-prepared statements of financial condition cannot satisfy the burden of production for inability to pay unless they are prepared in accordance with GAAP.

3. Whether the district court erred in holding that district courts lack the discretion to impose a monetary sanction in the form of an ordinary money judgment.

4. Whether the district court erred by holding Duffy, Steele and Hansmeier in contempt even though the proponents of contempt did not present any evidence.

5. Whether the district court properly applied the *Mine Workers* factors in weighing the equities of the civil contempt sanction.

## Statement of the Case

This case arises out of Comcast, AT&T and Smith's attempt to hold Duffy, Steele and Hansmeier in civil contempt for violating a sanctions order entered by a now-retired district judge on November 27, 2013. App. 16. In relevant part, the sanctions order reads:

It is **ORDERED** that pursuant to 28 U.S.C. § 1927, Paul Duffy, Paul Hansmeier, John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

App. 28 (emphasis in original).

After the order issued, counsel for Smith began engaging in judgment enforcement discovery. *See* R. 116 at Ex. 1. Counsel issued dozens of subpoenas for the financial records of Duffy, Steele and Hansmeier—as well as fifteen other persons and entities—whom counsel unilaterally labeled "aliases" of Duffy, Steele and Hansmeier. *See id.* Counsel for Comcast, AT&T and Smith did not disclose what portion of the $261,025.11 "total judgment" has been satisfied through these judgment enforcement efforts. *See* R. 107.

On December 27, 2013 Smith, Comcast and AT&T filed a joint motion for contempt against Duffy, Steele and Hansmeier. *Id.* The motion was not accompanied by an affidavit, declaration or other exhibits. *Id.* Duffy and Hansmeier filed oppositions to the motion for contempt. R. 111, 113. Steele filed a motion to stay the sanctions order pending appeal. R. 115. The district court scheduled an order to show cause hearing for February 13, 2014. R. 112.

At the hearing, neither Smith, Comcast nor AT&T presented any evidence. *See* App. 30−70. Indeed, at no time during the proceedings did any

of these parties present evidence in support of the contempt petition. *See id.*; R. 107. The district court polled Duffy and Hansmeier to determine whether either of them had paid off the sanctions order. *See* App. 37−38 (Hansmeier), 49−50. Both of them responded that they had not. *Id.* The district court did not poll Steele. *See* App. 30−70. No witnesses were called at the hearing, including Duffy, Steele or Hansmeier, or witnesses for the fifteen "aliases" identified by Smith's counsel. *See id.* At the conclusion of the hearing, the district court ordered Duffy, Steele and Hansmeier to submit a CPA-prepared statement of financial condition within ten days to verify their respective assertions of inability to pay. App. 68. Each of them made a timely submission. App. 7.

The district court found Duffy, Steele and Hansmeier in civil contempt of the sanctions order. App. 8. The court rejected Duffy, Steele and Hansmeier's CPA-prepared statements of financial condition—apparently, because they were not prepared in accordance with GAAP. *See* App. 7. It further found that all of the elements of civil contempt were satisfied, and that every equitable consideration cut as strongly as possible against Duffy, Steele and Hansmeier. *See* App. 5−11.

In addition to finding them in contempt, the district court fined each of Duffy, Steele and Hansmeier 10% of Comcast, AT&T and Smith's previously-accrued attorneys' fees—or $26,102.58. App. 12. The district court stated, "[t]his remedial sanction contemplates the attorney's fees and costs

incurred by defendants during the course of litigating this contempt motion." The district court "acknowledge[d] that a lodestar calculation is traditionally used," but determined that "requiring defense counsel to provide billing statements would most certainly cause delay and further litigation thereby negating the goals of the order and only further harming the defendants." *Id.* The district court did not explain the methodology it used to calculate this amount. *See id.*

## Standard of Review

Although this Court reviews contempt findings for abuse of discretion, *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2007), it is axiomatic that a district court abuses its discretion when it commits an error of law. *See, e.g., Shakman v. City of Chicago*, 426, F.3d 925, 932 (7th Cir. 2005). Moreover, this Court is "not bound by the trial court's designation of whether the [contempt] sanction was civil or criminal." *In re Grand Jury Proceedings (Grand Jury empaneled June 2000)*, 280 F.3d 1103, 1107-08 (7th Cir. 2002). Rather, the Court must "discover the purpose of the contempt proceeding, whether it was to punish or coerce compliance." *Id.* at 1107 n.2. This determination is critical, as it has long been recognized that the contempt power is uniquely "liable to abuse" by district court courts. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). In sum, "review of a contempt order for abuse of discretion

is more rigorous than would be the case in other situations in abuse of dis-
cretion review is conducted." *U2 Home Entm't, Inc. v. Wei Ping Yuan*, 245
Fed. Appx. 28, 29 (2d Cir. 2007) (internal quotations omitted).

## Summary of the Argument

It has long been recognized that the contempt power is "uniquely … lia-
ble to abuse." *Bagwell*, 512 U.S. at 831. In contempt proceedings, "[u]nlike
most areas of law," the "offending judge" holds the sole responsibility for
"identifying, prosecuting, adjudicating, and sanctioning the contumacious
conduct," which "often strikes at the most vulnerable and human qualities
of a judge's temperament." *Id.* To mitigate these risks, courts have estab-
lished strict limits on the exercise of the civil contempt power—limits that
the district court violated here.

*First*, the attorneys' fees sanction imposed by the district court is neither
"compensatory" nor "coercive"—and thus is impermissibly punitive in na-
ture. The fine is not coercive, because it sanctions Duffy, Steele and Hans-
meier for *past* conduct and provides no opportunity for them to purge the
sanction by *future* compliance. And the fine is not compensatory as it lacks
a "key ingredient" of a compensatory sanction—an explanation by the dis-
trict court of the methodology used to compute its amount. Because the at-
torneys' fees sanction imposed below fails to qualify as a civil sanction, it
must be reversed.

*Second*, the district court determined that Duffy, Steele and Hansmeier's statements of financial condition did not meet the burden of production for the defense of inability to pay. Its apparent basis for doing so was the fact that the statements were not prepared in conformity with "generally accepted accounting principles." Yet, GAAP does not necessarily even exist for statements of inability to pay, it does not reflect economic reality and the district court did not ask for the statements to be prepared in accordance with GAAP. For all of these reasons, the district court's insistence on GAAP statements was error, and the contempt finding must be reversed.

*Third*, the district court erred by concluding that the district judge who entered the sanctions order lacked the discretion to impose a sanction in form of an ordinary money judgment. It is well-established that district courts have broad discretion to fashion sanctions. Nothing in this Court's precedent does (or should) be read as limiting that discretion in the manner the district court did.

*Fourth*, Comcast, AT&T and Smith relied exclusively on legal argument during the contempt proceedings. Their failure to introduce evidence leads axiomatically to the conclusion that they failed to establish the elements of contempt by clear and convincing evidence.

*Fifth*, the district court erred in weighing the equities of a contempt sanction, and in particular the factors set forth in *United Mine Workers*. The district court's findings simply have no support in the record.

## ARGUMENT

### I. The District Court's Imposition of a $26,102.58 Fine Failed to Satisfy the Requirements of Due Process.

The district court's first error is quite clear: The district court imposed a punitive sanction—the 10% attorneys' fees sanction—without criminal proceedings. This is a bright-line basis for reversal. *FTC v. Trudeau*, 579 F.3d 754, 770 (7th Cir. 2009).

This Court's decision in *Trudeau* is dispositive. In *Trudeau*, the district court adjudged infomercialist, Kevin Trudeau in "civil" contempt and imposed a $37.6 million "remedial" sanction on him. *Id.* at 768. The district court stated that the figure "represent[s] a reasonable approximation of the loss consumers suffered as a result of defendant's deceptive infomercials." *Id.* at 771. But the district court did not explain, "the method it used to calculate the award, why the court chose that method, and how the evidence of record supports the figures plugged into that method." *Id.* This Court vacated the sanction, and remanded with instructions to make these findings. *Id.*

The error present in *Trudeau* is present in this case. First, the contempt proceedings, "had none of the bells and whistles of a criminal trial." *Id.* at

769. There was, for example, no elaborate notice, appointment of a prosecutor, or jury trial. *See* Fed. R. Crim. P. 42(a). Thus, for the district court's 10% attorneys' fees sanction to stand, this Court must conclude that it was a "civil" one. *Trudeau*, 579 F.3d at 769. A sanction is "civil", if it is coercive or compensatory. *Id.*

The 10% attorneys' fees sanction was not coercive, because neither Duffy, Steele nor Hansmeier had an opportunity to purge. *Id.* at 770. "So for the sanction to stand, it must 'compensate the complainant for losses sustained.'" *Id.* at 770 (citing *Bagwell*, 512 U.S. at 828). Yet, just as in *Trudeau*, the 10% attorneys' fee sanction is missing a "key ingredient" of a compensatory sanction—namely, an explanation of the method used to calculate the award. *Trudeau*, 579 F.3d at 770. The district court did not explain the methodology it used to arrive at the 10% multiplier. App. 12. "This information is crucial to ensuring that the award is not greater than necessary. If any part of it winds up being punitive instead of remedial, then criminal proceedings are required to sustain it." *Id.* Indeed, "a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt … [where] the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance" requires criminal proceedings. *Bagwell*, 512 U.S. at 829 (1994).

All this Court has is the district court's statement that, "this remedial sanction contemplates the attorney's fees and costs incurred by defendants

during the course of litigating the contempt motion."[2] App. 12. Nothing in the contempt order explains what method the district court used to determine the 10% multiplier. *See* App. 12. Did the district court account for the possibility that one of the Defendants may have taken the laboring oar during the contempt proceedings, with the others enjoying the ride? How did the district court account for the fact that Smith appeared later in the baseline proceedings than Comcast and AT&T? Did the district court conclude that each of Duffy, Steele and Hansmeier "harmed" the Defendants in the exact same manner in perfect proportion to 10% of the Defendants' prior activities in the case? We are left to guess the answer to these questions.

Ultimately, the district court's 10% multiplier might be reasonable. But so might a lesser figure. The district court, must explain why it chose the calculation method it did and how the record supports its calculations. This Court's precedent requires it to vacate the attorneys' fees sanction and to remand for the additional findings identified in this section.

---

[2] This statement is remarkably similar to the district court's statement that was rejected by this Court in *Trudeau* as insufficient. *See Trudeau*, 579 F.3d at 771 ("All we have is a statement that the $37,616,161 figure represent[s] a reasonable approximation of the loss consumers suffered as a result of defendant's deceptive infomercials.") (internal quotation marks omitted).

**II.    The District Court Erred by Ruling That Only GAAP-Compliant Statements of Inability to Comply Can Satisfy the Burden of Production for This Defense**

In civil contempt proceedings, defendants may, of course, assert the defense of a "present inability to comply with the order in question." *United States v. Rylander*, 460 U.S. 752, 758 (1983). In raising this defense, the defendant bears the burden of production. *McPhaul v. United States*, 364 U.S. 372, 379 (1960).

During the contempt proceedings, Duffy, Steele and Hansmeier each asserted this defense. App. 6–7. The district court ordered each of them to produce a certified public accountant-prepared statement of financial condition within seven days. App. 7. Each of them did. *Id.* Without asking the other side to weigh in, the district court flat-out rejected the statements—in effect, concluding that the statements did not satisfy the burden of production. *Id.*

In rejecting the statements, the district court did not say very much. It said, "attached to each statement was a letter from [Duffy, Steele and Hansmeier's] CPA" indicating "a departure from generally accepted accounting principles." *Id.* It further said that the same letter stated that Duffy, Steele and Hansmeier "elected to omit substantially all of the disclosures required by generally accepted accounting principles." *Id.* Based on these boilerplate

disclaimers, apparently, the district court labeled the statements "incomplete" and "suspicious." *Id.* That is all the district court did. *See id.*

The district court did not find that Duffy, Steele or Hansmeier failed to disclose assets. It did not find that they had assets they failed to apply to the sanctions order. It did not find that they were otherwise able to comply with the sanctions order.

To be sure, the statements were non-GAAP. But the district court's minimal findings leave unanswered a key question: So what? As the Supreme Court has opined:

> GAAP does not necessarily parallel economic reality. R. Kay & D. Searfoss, Handbook of Accounting and Auditing, ch. 5., p. 7 (2d ed. 1989). Financial accounting is not a science. It addresses many questions as to which the answers are uncertain, and is a "process [that] involves continuous judgments and estimates." *Id.*, at ch. 5, pp. 7–8.
>
> * * *
>
> GAAP is not the lucid or encyclopedic set of pre-existing rules that the dissent might perceive it to be. Far from a single source accounting rulebook, GAAP "encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time." Kay & Searfoss, at ch. 5, p. 7 (1994 Update). GAAP changes and, even at any one point, is often indeterminate. "[T]he determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles." *Ibid.* There are 19 different GAAP sources, any number of which might present conflicting treatments of a particular accounting question. *Id.*, at ch. 5, pp. 6–7.

*Shalala v. Gurnsey Mem'l Hosp.*, 514 U.S. 87, 100–101 (1995).

Recent history teaches that GAAP is not dispositive of reliability. *See, e.g.,* John D. Rossi, III, *How Enron Jumped the GAAP*, Vol 51. No. 2, MORA-VIAN COLLEGE MAGAZINE (2002) (describing how Enron gamed GAAP through the use of 3,000 special purpose-entities). Inversely, non-GAAP is not dispositive of unreliability; the use of non-GAAP metrics in financial reporting reportedly "explod[ed]" in 2013, and this "explosion" could not oc-cur without the U.S. Securities and Exchange Commission's blessing. *See* Emily Chasan, *Four Reasons Non-GAAP Metrics Are Exploding*, CFO JOUR-NAL (June 25, 2013, 4:36 PM ET), http://blogs.wsj.com/cfo/2013/06/25/four-reasons-non-gaap-metrics-are-exploding/.

We are left to speculate why the district court was insistent on GAAP. Did the district court—as the dissent was criticized for doing in *Gurnsey*—assume that GAAP is a "lucid or encyclopedic set of pre-existing rules", and that non-GAAP statements are categorically unreliable? Or did it have a different concern? A lack of findings precludes an informed answer to these questions.

Indeed, it is not even clear what a "generally accepted accounting prin-ciple" is under the circumstances present here—namely, a demonstration of *inability* to pay. As the Court observed in *Gurnsey*, "the determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles." *Gurnsey*, 514 U.S. at 101.

To the extent GAAP does not exist for statements of *inability* to pay, the district court's insistence on GAAP-conformity was inappropriate.

The district court may have misunderstood the particulars of GAAP. For example, the district court labeled the statements, "incomplete." Perhaps the district court applied this label based on the CPA's disclaimer that Duffy, Steele and Hansmeier, "elected to omit substantially all the disclosures required by [GAAP]." App. 7. Yet, omitting GAAP is not tantamount to omitting asset disclosures. To use an extreme example, did the district court believe that the statements were "incomplete" because they failed to disclose Duffy, Steele and Hansmeier's financial exposure to natural disasters? It bears mentioning that a CPA may not omit disclosures if the omission is "undertaken with the intention of misleading those who might reasonably be expected to use such financial statements." American Institute of CPAs, COMPILATION OF FINANCIAL STATEMENTS, AR §80.18 (2009).

It also bears mentioning that the district court's verbal instruction to submit statements did not mention GAAP. *See* App. 66–68. The district court should have signaled that it was insistent on GAAP statements. If it had, Duffy, Steele and Hansmeier could have obtained clarification from the district court on what GAAP is, with respect to statements of inability to pay. The district court's unexpected GAAP requirement echoes of "moving the goalposts."

The district court's inadequate findings are a likely consequence of its decision to bypass the adversary process. It should have allowed the Defendants to challenge the statements (if they could) and then allowed Duffy, Steele and Hansmeier an opportunity to respond. The district court may have reached the same result—albeit with enough findings to give this Court a basis for affirming—or it may have ruled differently.

Without any limiting principles, the district court determined that non-GAAP statements of financial condition are insufficient to satisfy the burden of production for an "inability to pay" defense. Because: (a) "GAAP does not necessarily parallel economic reality"; and (b) GAAP, by all appearances, does not even exist for statements of inability to pay, the district court erred. Because the district court erred in its consideration of Duffy, Steele and Hansmeier's "inability to pay" defense, this Court should vacate the contempt order.

## III.   The District Court Erred by Concluding as a Matter of Law That a District Court Lacks the Discretion to Impose Sanctions in the Form of an Ordinary Money Judgment

This case is unusual, in that the district court was not interpreting its own order, but that of a district judge who left the bench about a week after issuing the sanctions order.

To succeed on a contempt petition, the proponent must demonstrate by clear and convincing evidence that the allegedly-violated "order sets forth

an unambiguous command." *See Trudeau*, 579 F.3d at 763. In relevant part, the order at issue reads as follows:

> It is **ORDERED** that pursuant to 28 U.S.C. § 1927, Paul Duffy, Paul Hansmeier, John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

App. 28 (emphasis in original). The foregoing order takes the precise form of a money judgment. It expressly invokes the word "judgment,"; it entitles Smith, AT&T and Comcast to the sums stated in the order, with interest as provided by law; it provides that payment shall be made within 14 days—the exact time period set forth in Fed. R. Civ. P. 62(a)—after which assets may be seized and sold. *See BASF Corp. v. Old World Trading Co.*, 979 F.2d 615, 616 (7th Cir. 1992).

The district court concluded otherwise, and ruled that this language gave rise to an equitable decree. App. 6. The district court did not analyze the language of the sanctions order. *See id.* The only explanation offered by the district court for its conclusion was its citation, without further analysis, to *Cleveland Hair Clinic v. Puig*, 106 F.3d 165 (7th Cir. 1997) (hereinafter "*Cleveland Hair Clinic II*"). Specifically, the district court cited to this Court's statement in *Cleveland Hair Clinic II* that, "[u]se of the contempt power is an appropriate way to enforce a sanction for misconduct, which is

not an ordinary money judgment." *Id.* at 166. In effect, then, the district court interpreted *Cleveland Hair Clinic II* as standing for the proposition that the predecessor district judge, as a matter of law, lacked the discretion to impose a sanction in the form of an ordinary money judgment.

There are two problems with the district court's reading of *Cleveland Hair Clinic II*. First, the district court did not acknowledge or address the ambiguity in the cited language. Is the clause, "which is not an ordinary money judgment," restrictive, or non-restrictive? In other words, was it this Court's holding in *Cleveland Hair Clinic II* that *all* sanctions for misconduct are, without exception, equitable decrees? Or was it this Court's holding that the specific sanction giving rise to the *Cleveland Hair Clinic II* appeal was an equitable decree. The district court did not address this issue. To be sure, the language of the sanctions order at issue in *Cleveland Hair Clinic II* reads like an equitable decree: the district court ordered $174,121 to be paid to the aggrieved parties, "forthwith." *See Cleveland Hair Clinic v. Puig*, 104 F.3d 123, 124 (7th Cir. 1997) (hereinafter "*Cleveland Hair Clinic I*"). The sanctions order in this case reads much differently.

Second, the district court over-reads this Court's holding in *Cleveland Hair Clinic II*. Nothing in *Cleveland Hair Clinic II* affirmatively states that district courts, as a matter of law, lack the discretion to impose sanctions

in the form of an ordinary money judgment. Such a holding would run contrary to the broad discretion vested in district courts in fashioning an appropriate sanction.

If this Court reaches the issue, the better holding is that district courts should retain the discretion to impose sanctions in the form of ordinary money judgments. This is true for several reasons. First, district courts regularly impose sanctions in the form of ordinary money judgments. For example, the sanctions award underlying this Court's decision in *FM Industries, Inc. v. Citicorp. Credit Services, Inc.*, 614 F.3d 335 (7th Cir. 2010), was an ordinary money judgment, and was enforced through the seizure and sale of assets. Second, the decision of whether to make a sanction an equitable decree or an ordinary money judgment is a building block for district courts to use in fashioning an appropriate sanction. For example, when imposing sanctions on a joint and several basis, as the district court did in this case, perhaps it is more reasonable to enter the sanctions as an ordinary money judgment—given that one member of the "joint and several" group may have no ability to force another to comply with the order. Finally, there is no obvious benefit to be gained by divesting district courts of this discretion.

It bears emphasizing that it was Comcast, AT&T and Smith's burden to show by "clear and convincing evidence" that the prior district judge's order set forth "an unambiguous command." But they presented no evidence on

this issue. They did not cite to anything from the record indicating what the prior district judge's intent was. They also did not seek clarification from the former district judge or the new district judge regarding the sanction order's meaning. Also, until they filed their contempt petition, Smith was aggressively searching out assets to seize and sell, just as one would do with an ordinary money judgment.

Regardless, the plain language of the sanctions order reads like an ordinary money judgment. This Court's precedent is not clear enough to convert this language into an "unambiguous command" to pay within 14 days or face contempt. The first element of civil contempt—an unambiguous command—is unsatisfied. This Court should vacate the contempt order.

## IV. Duffy, Steele and Hansmeier Should Not Have Been Held in Contempt Because Comcast, AT&T and Smith Relied Exclusively on Legal Argument to Support The Contempt Petition

To prove contempt, Comcast, AT&T and Smith were required to show—by clear and convincing evidence—the following elements as to each of Duffy, Steele and Hansmeier: (a) an unambiguous command; (b) a violation of that command; (c) lack of substantial compliance with the command; and (d) a failure to take reasonable and diligent steps to comply. *See Trudeau*, 579 F.3d at 763 (citing *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)).

Comcast, AT&T and Smith relied exclusively on legal argument during the contempt proceedings. They did not present evidence of any kind. Critically, there is no evidence in the record of what percentage of the sanctions order, if any, remains unsatisfied or what steps Duffy, Steele and Hansmeier took to comply with the order. It would have been very easy for Comcast, AT&T and Smith to develop a record on these points. But they didn't. Critically, Comcast, AT&T and Smith failed to call Duffy, Steele and Hansmeier as witnesses.

The lack of evidence in the record is manifest in the contempt order. For example, in support of its conclusion that "Duffy, Hansmeier, and Steele failed to make a reasonable and diligent effort to comply with the Sanctions Order", the district court does not cite to the record. App. 6. Thus, at least one of the elements of civil contempt has no support in the record. This is well short of "clear and convincing evidence."

While the district court observed that during the proceedings, Duffy, Steele and Hansmeier "admitted on the record to noncompliance, each stating that they had not paid the sanction amount to defendant or otherwise sought a supersedeas bond," this is a necessary, but not sufficient, finding in support of civil contempt. It does not establish an unambiguous command, it does not show a lack of substantial compliance, and it does not speak to what steps Duffy, Steele and Hansmeier took in an attempt to

comply with the order, much less establish by "clear and convincing evidence" that these steps were not "reasonable and diligent."

Because Comcast, AT&T and Smith elected to rely exclusively on legal argument, instead of evidence, they did not satisfy their burden of proving the elements of civil contempt by clear and convincing evidence. The contempt order must be vacated.

## V.     The District Court's Evaluation of the *Mine Workers* Factors was Clearly Erroneous

The district court considered the factors stated in *United States v. United Mine Workers of America*, 330 U.S. 258 (1947) in imposing its sanction. Remarkably, the district court found that *every single* factor cut as strongly as possible against Duffy, Steele and Hansmeier. The district court's application of the *Mine Workers* factors was an abuse of its discretion because its findings have no support in the record.

### A.     Character and Magnitude of the Harm

The district court's conclusion that Duffy, Steele and Hansmeier "willfully violated" the sanctions order is supported by little more than its statement that, "Plaintiff's attorneys have made no effort to comply." App. 8–9. This statement is purely conclusory and is not supported by citation to the record. The district court's criticism of Duffy, Steele and Hansmeier for "not address[ing] the Court regarding the Sanctions Order" leaves unanswered

a critical question: In what manner, exactly, should Duffy, Steele and Hansmeier have "address[ed] the Court?" Under the circumstances, there is no obvious manner in which they should have—but did not—address the district court. If the sanctions order imposed an ordinary money judgment, all Duffy, Steele and Hansmeier could do is file a notice of appeal. If they wished to stay enforcement of the judgment they could post a supersedeas bond.

As for the magnitude of the harm, the district court is wrong to link the magnitude of harm flowing from an alleged violation of a sanctions order to the merits of the litigation giving rise to the sanctions order. These concepts are totally unrelated. The district court's statement that "plaintiff's counsel made no effort to comply with the order to address the Court" ignores the critical point that there was no "order to address the Court."

The district court's criticism of the "behavior of plaintiff's counsel … at the show cause hearing" marks a low point of the contempt order. App. 9–10. Without distinguishing among Duffy, Steele and Hansmeier, the district court accuses each of them of demonstrating "clear disrespect of the Court" and of presenting "misrepresentations and half-truths" to the Court, all while lamenting its inability to "nail down any specific lies" they told. *Id.*

The district court's criticism is misplaced in at least two independent respects. First, its sole citation in support of its criticism is a statement made by Steele—not Hansmeier or Duffy. App. 10 n.1. Thus, the district court attributes "clear disrespect of the Court" to Hansmeier and Duffy for something that—as a matter of record—they did not do.

Second, the district court's criticism of Steele's statement is representative of the shortcomings in the contempt proceedings. At the contempt hearing, counsel for AT&T, Bart Huffman, referenced a Forbes.com blog post for the proposition that Duffy, Steele and Hansmeier had publicly touted "making millions of dollars." *Id.* Huffman shirked Duffy and Hansmeier's challenges to identify a single "public touting" either of them had engaged in. App. 52. As for Steele, the article referenced by Huffman was blog post on Forbes.com. Rather than attempt to admit the blog post into evidence, or call Steele as a witness, Huffman just referenced the blog post—not to mention mischaracterized it.

After the hearing, apparently, the district court did a Google search for the article Huffman was referencing. True to Steele's word, the blog post did not support the proposition that Huffman was trying to establish. Steele's reference to a "few million dollars" in the article was an obvious reference to *gross* revenues, not *net* revenues. Nothing in the article establishes what portion of those gross revenues—after accounting for expenses, client payments, taxes and profits interests—Steele received. Yet, the Court

criticized Steele for not providing a "full, truthful explanation" of a statement that was attributed to him in the blog post approximately one-and-a-half years prior. If the district court wanted an explanation of statements in the blog post, it should have insisted that Huffman do his job and present it to the Court at the hearing—rather than rely on post-hearing *ex parte* Google searches.

## B.    Ability to Pay

The district court's statement that it "took into consideration plaintiff's counsel's ability to pay" is not supported by the record. The district court rejected out-of-hand the statements of financial condition submitted by Duffy, Steele and Hansmeier because they were non-GAAP. App. 10–11. It went no further in its consideration of Duffy, Steele and Hansmeier's ability to pay.

The district court's taking of judicial notice of a bond posted in another proceeding gets everything backwards. App. 11. By posting a bond in another proceeding, Duffy, Steele and Hansmeier had *less* money to apply to a bond in this proceeding. What the district court should have taken judicial notice of is: When ordered to post a bond in the referenced proceeding, Duffy, Steele and Hansmeier did so without claiming an inability to pay, as they would have done in this case if they did, in fact, have an ability to pay.

## CONCLUSION

This Court should vacate the district court's finding of contempt and its imposition of sanctions.

DATED: June 18, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744
*In propria persona*

/s/ Paul Duffy  (with consent)
Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136
*In propria persona*

/s/ John Steele  (with consent)
John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131
*In propria persona*

## Certificate of Compliance
## With Type-Volume Limitation, Typeface
## Requirements, And Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P.
   32(a)(7)(B) because this brief contains 5,864 words, including headings,
   footnotes, and quotations, and excluding the parts of the brief exempted
   by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P.
   32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R.
   App. P. 32(a)(6) because this brief has been prepared in a proportionately
   spaced typeface using Microsoft Office Word 2013 with 12-point Century
   Schoolbook font.

DATED: June 18, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

## Statutory Addendum

Fed. R. Crim. P. 42(a):

(a) Disposition After Notice. Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

(1) *Notice.* The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:

(A) state the time and place of the trial;

(B) allow the defendant a reasonable time to prepare a defense; and

(C) state the essential facts constituting the charged criminal contempt and describe it as such.

(2) *Appointing a Prosecutor.* The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.

(3) *Trial and Disposition.* A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal con-

tempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

# REQUIRED SHORT APPENDIX

# REQUIRED SHORT APPENDIX

## Table of Contents

| Document description | Location in Record | Page No. |
|---|---|---|
| Circuit Rule 30(d) Statement | N/A | ii |
| Contempt Memorandum and Order | Dkt. 136 | App. 001 |
| Memorandum and Order Granting Motion for Attorney Fees | Dkt. 65 | App. 014 |
| Sanctions Memorandum and Order | Dkt. 100 | App. 016 |
| Notice of Appeal | Dkt. 140 | App. 029 |

**CIRCUIT RULE 30(d) STATEMENT**

Pursuant to Circuit Rule 30(d), the undersigned certifies that the material required by Circuit Rule 30(a) is included in the required short appendix. All other material required by Circuit Rule 30(b) is included in the separately-bound appendix.


DATED: June 18, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LIGHTSPEED MEDIA CORP.,**

    **Plaintiff,**

**vs.**                         **No.   3:12-cv-889-DRH-SCW**

**ANTHONY SMITH, et al.,**

    **Defendants.**

### MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

This matter is before the Court on Defendants Anthony Smith ("Smith"), Comcast Cable Communications LLC and Comcast Corporate Representative #1 (together, "Comcast"), and SBC Internet Services, Inc. d/b/a AT&T Internet Services' ("AT&T") (collectively "defendants") joint motion for contempt, or in the alternative, for an order to plaintiff's counsel to show cause why they each should not be held in contempt (Doc. 107).   Plaintiff's counsel Paul Duffy ("Duffy") and Paul Hansmeier ("Hansmeier") responded (Docs. 111, 113).   At the direction of the Court (Docs. 112, 117), defendants filed a reply (Doc. 119).   On February 13, 2014, the Court held a hearing on the issues (Doc. 123).   For the following reasons, the defendants' motion will be **GRANTED.**

### I.   Background

On December 14, 2011, Lightspeed Media Corporation ("Lightspeed") filed suit in the Circuit Court of the Twentieth Judicial District in St. Clair County.

App. 001

Lightspeed owns or operates one or more paid-subscription adult entertainment websites.   In its first complaint, Lightspeed alleged that John Doe and more than 6,600 "co-conspirators" had gained unauthorized access to its website.   On December 16, 2011, the circuit court granted an *ex parte* motion for leave to obtain discovery by subpoena, from dozens of Internet Service Providers ("ISPs"), of information personally identifying the defendants.   AT&T and Comcast subsequently filed motions to quash the subpoenas and/or for a protective order. On May 22, 2013, the Illinois Supreme Court directed the circuit court to vacate its order denying the motion to quash.

On August 3, 2012, Lightspeed filed an amended complaint.   Lightspeed contended that Smith accessed content from Lightspeed's password-protected websites without authorization.   Lightspeed asserted that AT&T and Comcast improperly opposed Lightspeed's discovery, failed to act to protect Lightspeed's websites, and conspired with their customers to Lightspeed's detriment. Specifically, Lightspeed alleged 10 Counts: Computer Fraud and Abuse (Count I), Conversion (Count II), Unjust Enrichment (Count III), Unjust Enrichment (Count IV), Count V (Breach of Contract), Civil Conspiracy (Count VI), Civil Conspiracy (Count VII), Illinois Consumer Fraud and Deceptive Practices Act (Count VIII), Aiding and Abetting (Count X).   AT&T removed this action to federal court on August 9, 2012.

Plaintiff thereafter filed an emergency motion for Discovery prior to the Rule 26(f) Conference (Doc. 9) requesting the ISP information.   Judge G. Patrick

App. 002

Murphy held a hearing on the issue and denied the motion (Doc. 23).   Defendants each filed motions to dismiss (Docs. 26, 28, 36).   Prior to the resolution of the motions to dismiss, Lightspeed entered a notice of voluntary dismissal on March 21, 2013.   Defendants subsequently moved for attorney's fees pursuant to 28 U.S.C. § 1927 (Docs. 61, 78, 82).   Judge Murphy granted Defendant Smith's motion (Doc. 65) and counsel (Duffy, Hansmeier, and John Steele ("Steele")) sought reconsideration of that order (Docs. 66, 68, 74).   On November 13, 2013, Judge Murphy held a hearing on the motions for reconsideration and the motions for attorney's fees by ComCast and AT&T (Doc. 96) in which he deferred ruling.

On November 27, 2013, Judge Murphy denied the motions to vacate, or in the alternative, reconsider the order granting Smith's motion for attorney fees, granted ComCast's and AT&T's motions for attorney's fees, and ordered that pursuant to 28 U.S.C. § 1927, Duffy, Hansmeier, and Steele are jointly and severally liable, and shall pay within 14 days of the order (December 11, 2013), attorney fees and costs to Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,00252.11 with interest as provided by law (Doc. 100).   Duffy, Hansmeier, and Steele filed a notice of Appeal on December 12, 2013.

On December 27, 2013, defendants filed a joint motion for contempt, or in the alternative, for an order to plaintiffs' counsel to show cause why they each should not be held in contempt (Doc. 107).   Plaintiff's counsel Duffy and Hansmeier responded (Doc. 111, 113), Steele filed a motion to stay the sanction's

order (Doc. 114), and, at the direction of the Court (Docs. 112, 118), defendants filed a reply (Doc. 119).

Defendants request 1) an order holding in contempt plaintiffs' counsel Steele, Duffy, and Hansmeier or, in the alternative, 2) an order requiring Duffy, Hansmeier and Steele to show cause why they should not each be held in contempt for their failure to timely comply with the fee order.   In their reply, defendants focus on the contempt.   They specifically request that this Court hold Duffy, Hansmeier and Steele in contempt of Court, and also order them to pay the defendants attorneys' fees incurred in seeking this finding of contempt, along with interest and additional daily fines for each day the sanctioned attorneys fail to make any and all payment(s) ordered.

Plaintiff's counsels' responses assert three points: (1) defendants have not submitted any evidence regarding compliance (Doc. 113 at 2), (2) the order is a money judgment and therefore not properly enforceable through contempt proceedings (Doc. 111 at 3-5; Doc. 113 at 2-4), and (3) defendants have otherwise failed to establish the elements of civil contempt (Doc. 111 at 5-6).   Hansmeier further asserts that in the alternative, the Court should grant plaintiff's counsel leave to seek a stay of the November 27, 2013 order (Doc. 113 at 4-6).

The Court held a hearing on defendants' motion for contempt on February 13, 2014 (Doc. 124).   During the proceedings, plaintiff's counsel admitted on the record to noncompliance, each stating that they had not paid the sanction amount to defendants or otherwise sought a supersedeas bond.   The Court also addressed

App. 004

plaintiff's counsels' argument that the Court should consider the sanctions order as a money judgment, concluding that the Court's order was not a money judgment but instead a sanctions order. The Court deferred ruling on the motion for contempt and directed plaintiff's counsel to file asset statements from a certified public accountant on or before February 24, 2014. The Court also considered Steele's motion to stay (Doc. 114) and heard arguments from the parties. The Court denied Steele's motion to stay on the record and addressed and similarly dismissed Hansmeier's stay request (Doc. 124).

## II.   Analysis

### A.   Civil Contempt

Federal courts have both inherent and statutory authority to punish for contempt and to coerce compliance with their orders. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 831-833 (1994). To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

There is no debate as to whether plaintiff's counsel significantly violated Judge Murphy's November 27, 2013 order (hereinafter "Sanctions Order"). As previously indicated, plaintiff's counsel has not made a single payment.

Furthermore, Duffy, Hansmeier, and Steele failed to make a reasonable and diligent effort to comply with the Sanctions Order.   While Steele filed a motion to stay the Sanctions Order, this motion was not accompanied by a supersedeas bond and was filed untimely.   *See* Fed. R. Civ. P. 62(d).

The key issue here is whether the Sanctions Order was "an unambiguous command."   Plaintiff's counsel asserted that the Sanctions Order is a money judgment, not an equitable decree.   At the show cause hearing, the Court held that the Sanctions Order was an equitable decree, specifically a sanctions order. However, plaintiff's counsel argues that this confusion is the primary reason they did not comply with the Sanctions Order.   The Court finds this argument disingenuous.   Seventh Circuit case law is quite clear.   *See Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) ("Use of contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.")   Furthermore, if plaintiff's counsel was confused, they could have filed a motion to clarify with Judge Murphy.

**B.     Inability to Pay**

At the show cause hearing, plaintiff's counsel emphatically indicated an inability to pay.   Specifically, "I can't pay what I don't have" (Show Cause Hr'g Tr. 22:16-17 (Hansmeier)).   Also, "[I]t's extremely important because if the Court issues sanction order for, I don't know, a billion dollars, we can't pay it.   And I don't believe that there's any case law to establish that – there's not a debtor's prison.   I mean if we can't pay it, we can't pay it" (Show Cause Hr'g Tr. 19:10-15

Page **6** of **13**

(Steele)).   Plaintiff's counsel again pointed to their confusion over the nature of the Sanctions Order as the reason why they had not yet supplied the Court with their financial information.   The Court therefore directed plaintiff's counsel to provide asset statements prepared by a certified public accountant on or before February 24, 2014.   Plaintiff's counsel timely submitted financial condition statements to the Court *in camera*.

"Inability to pay is a valid defense in a contempt proceeding, but the party raising the defense has the burden of proving its inability to pay." *In re Re. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).   In the case where there has been no attempt to comply with the Court's order, plaintiff's counsel must show a "complete inability to pay." *Id.* Plaintiff's counsel, "stated differently, . . . [has] the burden of establishing clearly, *plainly*, and *unmistakably* that compliance is *impossible*." *Id.* (internal citations and quotations omitted) (emphasis in original).

The Court finds that plaintiff's counsel has not met its burden.   They submitted incomplete, and to say the least suspicious, statements of financial condition.   Attached to each statement was a letter from their certified public accountant ("CPA").   In these letters, the CPA indicates a departure from generally accepted accounting principles.   He further notes that plaintiff's counsel elected to omit substantially all of the disclosures required by generally accepted accounting principles.   The Court finds these statements insufficient to establish plaintiff's counsel's inability to pay.

App. 007

Plaintiff's counsel significantly violated an unambiguous order of the Court. They also failed meet their burden regarding their inability to pay defense. Accordingly, the Court finds plaintiff's counsel Paul Duffy, Paul Hansmeier, and John Steele in civil contempt and defendants' joint motion for contempt (Doc. 107) is **GRANTED.**

**C.      Civil Contempt Sanction**

"Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy."   *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001).   Remedial sanctions compensate the complainant for his losses caused by the contemptuous conduct.   *Id.*   Coercive sanctions aim to coerce the contemnor's compliance with a court order.   *Id.*   A coercive sanction must afford the contemnor the opportunity to "purge", to avoid punishment by complying with the order.   *Id.*   The factors to be considered by the court in imposing a civil contempt sanction include: (1) Harm from noncompliance, (2) Probable effectiveness of the sanction, (3) Contemnor's financial resources and the burden the sanctions may impose; and (4) Contemnor's willfulness in disregarding the court's order.   *United States v. United Mine Workers of America*, 330 U.S. 258, 303-304 (1947).

The Court must "consider the character and magnitude of the harm threatened by continued contumacy . . . ."   *Id.* at 304.   As to the character of the harm, the Court finds that plaintiff's counsel *wilfully* violated the Sanctions Order.

App. 008

Plaintiff's attorneys have made no effort to comply.   In fact, until defendants filed the current contempt motion, plaintiff's counsel had not addressed the Court regarding the Sanctions Order, merely filing a notice of appeal.   While a violation need not be willful for the Court to impose civil contempt sanctions, willfulness inherent in the contemptuous act is a major consideration in determining the appropriate sanctions.   *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt"); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989); *In re Federal Facilities Reality Trust,* 227 F.2d 657, 658 (7th Cir. 1955).

The Court also finds the magnitude of harm significant.   As indicated in the Sanctions Order, this case is "baseless" (Doc. 100 at 9).   Judge Murphy ordered sanctions for attorney's fees and costs because plaintiff "unreasonably and vexatiously multiplied the proceedings in this matter" (Doc. 100 at 10).   Plaintiff's counsel's failure to address the Sanctions Order further multiplies the proceedings. Not only is the magnitude of the harm significant in financial terms for the defendant in added attorney's fees and costs of the contempt motion but also in regards to the integrity of the Court.   The Court again notes that plaintiff's counsel made no effort to comply with the order to address the Court.   Also, the Court cannot ignore the behavior of plaintiff's counsel before the undersigned at the show cause hearing.   While the Court was unable to nail down any specific lies due, in significant part, to plaintiff's counsel excellent "attorney speak", the

App. 009

misrepresentations and half-truths presented indicate plaintiff's counsel's clear disrespect of the Court.[1]   Furthermore, as the Court indicated at the hearing in regards to Steele's motion to stay, "[W]ith respect to talking about the community, the community has to worry about lawyers who file unreasonable and vexatious claims.   That's where the harm to the community is . . . .   The community is worried about lawyers, worried about lawyers that file these kind[s] of lawsuits. So if, in fact, Judge Murphy is right – and for the time being until the Seventh Circuit says something differently, I have to assume he is – the community is worried about guys like you" (Show Cause Hr'g Tr. 38:6-15).

The Court is also directed to review plaintiff's counsel's financial resources. *United Mine Workers of Am.*, 330 U.S. at 304 ("[A] court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed . . . as a means of securing future compliance, consider the amount of [the party's] financial resources and the consequent seriousness of the burden to that particular [party].") As previously discussed, the Court has taken into consideration plaintiff's counsel's

---

[1] For example, in the show cause hearing, the parties addressed plaintiff's counsel's financial means.   The Court specifically asked why plaintiff's counsel had not yet submitted their financial information to the Court.   Hansmeier indicated that he had not provided this information as of yet because they were unsure as to whether the Court was going to rule the order a sanction's order or a money judgment.   Again, Hansmeier indicated "I can't pay what I don't have."   Bart Huffman, Attorney for AT&T, then indicated that plaintiff's counsel had mentioned that they have made millions of dollars.   Steele objected to this characterization, and asked Mr. Huffman to indicate where he would have publically touted making millions of dollars.   Mr. Huffman responded that he believed there was an article in FORBES. To which Mr. Steele responded, "No, absolutely, I never did, and I resent being told that I've said something that's not true.   If Mr. Huffman would like to present something that I personally made money of a certain amount, feel free, but it will never come, Your Honor" (Show Cause Hr'g Tr. 23:16-20).   After a quick Google search, the Court quickly comes across the following article: Kashmir Hill, *How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'* FORBES, Oct. 15, 2012, *available at* http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/.   Therein, Mr. Steele states in response to the article's author suggestion that he has made $15 million settling these suits, "Maybe a little less. We don't track the amount we've recovered.   More than a few million."   The Court notes that while it is true this is not a "certain amount", it is disingenuous to imply destitution given the statement and, at the very least, the Court deserved a full, truthful explanation of the statement.

ability to pay.  The Court also now takes judicial notice of the same attorneys' ability to post a $101,650.00 supersedeas bond, Supersedeas Undertaking for Appeal, *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-08333-ODW-JCx (C.D. Cal. May 23, 2013), ECF No. 174, as well as their subsequent ability to post an additional bond in the amount of $135,933.66, Supersedeas Undertaking, *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-08333-ODW-JCx (C.D. Cal. July 23, 2013), ECF No. 229.  Plaintiff's counsel clearly had the ability to pay in those instances and they failed to provide the Court with the information it needed in order to adequately make an accurate assessment regarding their current ability to pay.

As a preliminary matter, the Court **DIRECTS** plaintiff's counsel to pay interest on the sanction amounts pursuant to the Sanctions Order as provided by law.   For clarification, the Court interprets this provision of the Sanctions Order as follows.   The Court will apply the federal interest rate as contemplated in 28 U.S.C. § 1961, 18 U.S.C. § 3612, and 40 U.S.C. § 258(e)(1).   These sections direct the Court to compute interest from the first day on which the defendant is liable for interest at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the first day on which the defendant is liable for interest.   Plaintiff's counsel became liable for interest on December 11, 2013. Therefore the .13% interest rate from the week ending December 6, 2013 will apply. Plaintiff's counsel is responsible for the entire time period from the date of liability to the date of compliance, including those days during which this motion was

pending.

The Court believes that both coercive and remedial sanctions are warranted in this case.   *See United Mine Workers of Am.*, 330 U.S. at 302-303; *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 349 (7th Cir. 1976); *Dowell*, 257 F.3d at 699.   The Court has determined this to be the most effective way to ensure compliance with the Sanctions Order and to uphold the integrity of the Court.

The Court sanctions plaintiff's attorneys in the amount of 10% of the original sanction amounts equally divided among Duffy, Steele, and Hansmeier.   This sanction is to be paid to the defendants as follows: $7,236.70 to Smith, $11,963.75 to AT&T, and $6,902.13 to ComCast, for a total amount of $26,102.58.   This remedial sanction contemplates the attorney's fees and costs incurred by defendants during the course of litigating this contempt motion.   The Court acknowledges that a lodestar calculation is traditionally used.   However, requiring defense counsel to provide billing statements would most certainly cause delay and further litigation thereby negating the goals of this order and only further harming the defendants.   The previous clarification regarding interest does not apply to this sanction.

Finally, plaintiff's counsel shall comply with the Sanctions Order and this order within 7 days, on or before March 31, 2014.   Compliance is construed by the Court as follows.   Plaintiff's counsel may make payment to all of the defendants of the ordered amounts in full.   Plaintiff's counsel may also file a motion to stay and

App. 012

accompanying supersedeas bond of the full amount.   Fed. R. Civ. P. 62(d).   Bonds

or payments of partial amounts will not be considered compliance with this Court's

order.   Failure to comply with this order in that timeframe shall result in a $500

per day per attorney fine for up to 30 days.   After 30 days, this amount shall

increase to $1,000 per day per attorney.

The Court notes that defendant, Smith filed a "Renewed Motion for

Contempt" on March 20, 2014, as the Court was finishing up the final draft of this

order.   The Court will consider that motion as a motion for an additional sanction

for contempt since it relates directly to representations made in Court and in the

financial statements by plaintiff's counsel.   Counsel, Steele, Duffy and Hansmeier,

shall respond to the March 20 motion, no later than April 20, 2014.   Upon

reviewing those responses, the Court will consider whether to require another

hearing and the range of sanctions that it may be considering, if any.

**IT IS SO ORDERED.**

Digitally signed
by David R.
Herndon
Date: 2014.03.24
13:04:51 -05'00'

**Chief Judge**
**United States District Court**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LIGHTSPEED MEDIA CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 12-889-GPM** |
| | ) | |
| **ANTHONY SMITH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

Under 28 U.S.C. §1927, "an attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1183 (7th Cir. 1992).   While there is no catch-all definition for either 'unreasonably' or 'vexatiously,' the Seventh Circuit has upheld sanctions under this statute when counsel acted recklessly, raised baseless claims despite notice of the frivolous nature of these claims, or otherwise showed indifference to statutes, rules, or court orders. *Id.* at 1184.   Now before this Court is Defendant's motion for attorney fees because Plaintiff raised baseless claims despite knowledge those claims were frivolous and pressed for a meritless 'emergency' discovery hearing (Doc. 61).   The Court agrees with Defendant.   The litigation smacked of bullying pretense.   The Court has read all the papers and is particularly informed by the in-court hearing on Plaintiff's "emergency" motion held before the undersigned (Doc. 23).   The motion for attorney

App. 014

fees made pursuant to 28 U.S.C. §1927 is **GRANTED**.   Defendant Anthony Smith is

**ORDERED** to file an itemization of fees on or before November 8, 2013.

**IT IS SO ORDERED.**

**DATED**: October 30, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 12-889-GPM |
| | ) | |
| ANTHONY SMITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

Currently before the Court are motions to vacate, or in the alternative reconsider the order granting fees and costs to Defendant Anthony Smith filed by Paul Duffy, Paul Hansmeier, and John Steele (Docs. 66, 68, 74). Also before the Court are motions for fees and costs filed by Defendants ComCast Cable Communications, LLC ("ComCast") and SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") (Docs. 78, 82), as well as itemizations of fees and costs filed by Smith, ComCast, and AT&T (Docs. 90, 97, 98).

The Court initially reserved ruling on these motions (*See* Doc. 96); for the reasons set forth below, the Court now denies the motions to vacate or reconsider filed by Duffy, Hansmeier, and Steele, and grants the motions for attorney fees filed by ComCast and AT&T.

## <u>BACKGROUND</u>

On March 21, 2013, this matter was voluntarily dismissed by Plaintiff Lightspeed Media Corp. (Docs. 59, 60). Following the dismissal, the Court granted Defendant Anthony Smith's motion requesting attorney fees and costs because Plaintiff filed and pursued claims against Smith

App. 016

that Plaintiff knew were baseless from the start (Doc. 65).   The Court granted Smith his fees and costs under 28 U.S.C. § 1927 to be paid by Plaintiff's counsel: John Steele, Paul Duffy, and Paul Hansmeier (Doc. 65).   The Court's order granting Mr. Smith attorney fees was entered on October 30, 2013 (Doc. 65).   The very next day, Paul Hansmeier filed a motion to vacate, or in the alternative reconsider, the order (Docs. 66, 67) arguing that he should not be liable for Smith's attorney fees.   John Steele and Paul Duffy then filed similar motions on November 4, 2013 (Docs. 68, 69), and November 7, 2013 (Docs. 74, 75), respectively.   Defendant Anthony Smith filed a response in opposition to Duffy, Hansmeier, and Steele's motions (Doc. 92).

After the Court granted Smith's request for fees and costs, Defendants ComCast and AT&T then filed motions also requesting fees and costs (Docs. 78, 82).   Hansmeier filed a response in opposition to ComCast and AT&T's motions (Doc. 86), as did Steele (Doc. 88).   Smith filed a reply to Hansmeier and Steele's responses (Doc. 93).

A hearing was held on November 13, 2013 on all of the above motions (Doc. 70).   Duffy and Steele appeared at the hearing in person, and Hansmeier appeared by phone (Doc. 96).

## DISCUSSION

## I.   MOTIONS TO VACATE, OR IN THE ALTERNATIVE RECONSIDER ORDER GRANTING ATTORNEY FEES TO DEFENDANT ANTHONY SMITH

The Court will first address the motions to vacate, or in the alternative, reconsider its order granting fees and costs to Anthony Smith under 28 U.S.C. § 1927 filed by Plaintiff's current attorney of record, Paul Duffy, and former attorneys of record, Paul Hansmeier and John Steele (Docs. 66, 68, 74).   Because the motions fail to state any grounds warranting relief under Rule 60(b), the motions to vacate or reconsider are denied.

### A. Legal Standard

Technically, a "Motion to Reconsider" does not exist under the Federal Rules of Civil Procedure.   But such motions are routinely filed, and they are generally treated as motions to alter or amend judgment under Rule 59(e), or motions for relief from a judgment or order under Rule 60(b).   *See e.g.*, *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994).   At issue here is the Court's order granting Smith's request for attorney fees (Doc. 65), which is only an interim order because the Court has not yet determined the amount of attorney fees that Smith is entitled to.   *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 456 (7th Cir. 2005).   Since the order is not a final order and no judgment has been entered, Rule 59(e) is not applicable.   Therefore, the motions filed by Duffy, Hansmeier, and Steele must be evaluated under Rule 60(b).

"Relief under Rule 60(b) is an extraordinary remedy that is to be granted only in exceptional circumstances."  *Talano v. N.W. Med. Faculty Found., Inc.,* 273 F.3d 757, 762 (7th Cir. 2001).   Rule 60(b) permits a court to grant relief based on one of six specific grounds listed in the rule.   *Talano*, 273 F.3d at 762; FED. R. CIV. P. 60(b).   The request for relief "must be shaped to the specific grounds . . . listed in Rule 60(b)—they cannot be general pleas for relief."  *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992).

### B. Paul Duffy's Motion to Vacate or Reconsider (Doc. 74)

The Court turns first to Duffy's motion to vacate or reconsider because it can be easily dismissed as he does not state a proper legal basis for relief under Rule 60(b).   In his motion, Duffy argues that the Court should reconsider its order granting attorney fees to Anthony Smith because he took only "five discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Doc. 75).   In the alternative, if Duffy's actions

were sanctionable, Smith failed to identify any "excess" expenses directly traceable to Duffy's actions (Doc. 75).

Duffy's motion is not based on any of the grounds specified in Rule 60(b).   Instead, Duffy merely takes umbrage with the Court's analysis of the evidence and its ruling, and rehashes old arguments that he made and the Court denied in his response to Anthony Smith's motion for attorney fees (*Compare* Doc. 63 *with* Docs. 74, 75).   Neither of these things warrants relief under Rule 60(b). *Karraker v. Rent–A–Center, Inc.,* 411 F.3d 831, 837 (7th Cir. 2005) (Rule 60(b) motion is not the time to rehash previously rejected arguments); *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995) (Rule 60 "was designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law.")

Because Duffy's motion fails to state any grounds for relief within the scope of Rule 60(b), his motion to vacate or reconsider (Doc. 74) is **DENIED**.

### C.  Paul Hansmeier and John Steele's Motions to Vacate or Reconsider (Docs. 66, 68)

The Court next turns to the motions to vacate or reconsider filed by Hansmeier and Steele. These motions can be considered in tandem because they are largely identical.  Like Duffy, Hansmeier and Steele argue that that the Court should reconsider its order granting attorney fees to Anthony Smith because they took only a small number of "discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Docs. 67, 69).   As previously stated, these arguments do not translate into a legal basis warranting relief under Rule 60(b).

Hansmeier and Steele also argue that the Court should vacate its order because it imposed

App. 019

sanctions on them without giving them notice or an opportunity to be heard in violation of their right to due process (Docs. 67, 69).  Specifically, they claim that they were not apprised of Smith's motion for attorney fees until after the District Court had entered its order imposing sanctions on October 30, 2013 because Smith failed to serve them.  Smith's motion for attorney fees was electronically filed on April 5, 2013, and the CM/ECF system sent notice to all attorneys of record (Doc. 61).  Hansmeier and Steele claim that since they were no longer attorneys of record (*See* Doc.s 56, 58), they did not receive the notice (Doc. 67, 69).

"[T]he requirements of due process of law are applicable to a proceeding to impose sanctions, entitling a party or attorney to notice and opportunity to respond[.]"  *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1494 (7th Cir. 1989).  Despite their protestations, the Court finds that Hansmeier and Steele both received all the process they were due.

First and foremost, Steele's claim that he never got notice of Smith's motion for fees is baseless.  A review of CM/ECF records reveals that notice of Smith's motion for attorney fees (Doc. 61) went to numerous email addresses, including: docket@wefightpiracy.com—an email address used by both Steele and Paul Duffy.[1]  Therefore, it is irrefutable that Steele had actual notice of Smith's motion for attorney fees prior to the Court's order granting the motion.

Second, Smith served Paul Duffy, Plaintiff's lead attorney, with his motion for attorney fees; and service on Duffy was effective for all of Plaintiff's counsel, past and present, including Steele and Hansmeier.  Rule 5 does not require motions to be served on all counsel of record, but merely requires that the pleadings be served on all parties.  *See* FED. R. CIV. P. 5(a)(1).  Furthermore, service is not required on each of several counsel appearing on behalf of a party.

---

[1] Prior to his termination as counsel for Plaintiff, Steele received electronic notices from the CM/ECF system at three email addresses: (1) jlsteele@wefightpiracy.com, (2) docket@wefightpiracy.com, and (3) nawersal@wefightpiracy.com (*See, e.g.,* Doc. 57).  He now receives electronic notices at johnlsteele33140@gmail.com (Doc. 88).

App. 020

*Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1063 (5th Cir. 1990). "Service upon one, but not all, of its counsel is effective service." *Id.* (serving "local" counsel and not "lead" counsel complied with Rule 5 because the Rule does not "require service on each of several counsel appearing on behalf of a party"); *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995) (serving motion for summary judgment only on plaintiff's attorney who had recently entered an appearance and not on attorney who had represented plaintiff from the outset complied with Rule 5 because the rule does not require service on both attorneys of record).

Here, Smith served his motion for attorney fees on Duffy, and that is all he was required to do. He did not have to also personally serve Steele and Hansmeier. This is particularly true since Duffy, Steele, and Hansmeier are all associated with the same law firm: Prenda Law, Inc. The docket sheet indicates Paul Duffy's firm is Prenda Law; Steele listed his firm as Prenda Law on his entry of appearance and his motion to withdraw (Docs. 20, 57); and Hansmeier indicated that he was "of counsel" to Prenda Law, Inc. (Doc. 50). The Court also takes judicial notice that Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW (C.D. Cal. March 8, 2013), ECF No. 83).

Aside from being from the same firm, there is other evidence suggesting these three men worked in concert with one another. First, Duffy, Steele, and Hansmeier used each other's CM/ECF login information, and/or filed documents on behalf of one another. For example, both Steele and Hansmeier used Duffy's CM/ECF login information to enter their appearances, or Duffy attempted to do so for them (*See* Doc. 11, 15); Hansmeier also used Steele's CM/ECF login

information to file his motion to continue, or Steele filed it on Hansmeier's behalf (Doc. 73). Second, the similarities in documents filed by Duffy, Steele, and Hansmeier indicate an ongoing relationship. For example, in the instant motions to vacate/reconsider, the three men use identical formatting from the caption, to the font, and the signature block, and the substance is largely the same (*Compare* Docs. 66, 67, 67-1 *with* Docs. 68, 68-1, 68-2, 69 *with* Docs. 74, 75). Third, the Court takes judicial notice that several other federal courts have found Duffy, Steele, and Hansmeier to be in cahoots. Most notably, Judge Otis Wright in the Central District of California found that Steele, Hansmeier, and Duffy were "starving attorneys" with "shattered law practices" who conspired to use copyright laws to "plunder the citizenry," and he adopted into his findings a chart showing the relationship between these men and others associated with Prenda Law. *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *1–*2, *5 (C.D. Cal. May 6, 2013). *See also AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67 (noting Judge Wright's findings, but stating "[i]t would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully untangle the relationship between Hansmeier, Steele, Duffy, [and others]"); *AF Holdings, LLC v. Navasca*, Case No. 12-cv-02396-EMC, 2013 WL 5701104, at *2 (N.D. Cal. Oct. 16, 2013) (adopting Judge Wright's findings with respect to AF Holdings, Steele, and Hansmeier's "alter ego relationship, their conduct, and their business model"); *AF Holdings, LLC v. Chowdhury*, Case No. 12-cv-12105-JLT (D. Mass. October 22, 2013), ECF No. 34 (finding AF Holdings, LLC was "an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L. Steele, Paul A. Duffy, and Paul R. Hansmeier, and its paralegal, Mark Lutz").

Based on this information, the Court has no doubt that Duffy, Steele, and Hansmeier are

closely associated and acted in concert to file and prosecute this frivolous lawsuit.  Therefore, Smith's service on Duffy was also effective for Steele and Hansmeier.  As such, Steel and Hansmeier had adequate notice of Smith's motion, and the deadline for response papers, but chose to disregard it.

However, assuming arguendo that Steele and Hansmeier did not have notice or an opportunity to be heard before the Court imposed sanctions, the due process violation was subsequently cured when the Court reheard the issue on November 13 at Steele and Hansmeier's request.  Steele and Hansmeier had ample notice of the November 13 hearing, and they knew that they could sanctioned and ordered to pay Anthony Smith's attorney fees.  The written briefs that Steele and Hansmeier filed in advance of that hearing, and the statements they made at the hearing itself gave them the opportunity to confront the Court's belief that they had engaged in sanctionable conduct and to try to convince the Court that they should not be sanctioned.  "So it was essentially a no-harm, no-foul situation because, generally speaking, 'procedural errors are cured by holding a new hearing in compliance with due process requirements.'"  *In re Hancock*, 192 F.3d 1083, 1086 (7th Cir. 1999), *quoting Batanic v. Immigration and Naturalization Service*, 12 F.3d 662, 667 (7th Cir. 1993) (holding imposition of sanctions was a deprivation of due process, however said deprivation was cured when the court stayed the sanctions order and scheduled another hearing).  *See also Wright v. CompGeeks.com*, 429 F. App'x 693, 698 (10th Cir. 2011); *Powell v. Cadwell*, 42 F. App'x 821, 822 (7th Cir. 2002); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000).

Because Hansmeier and Steele's motions fail to state any grounds for relief within the scope of Rule 60(b), and they were not deprived of due process with respect to the imposition of

sanctions, their motions to vacate or reconsider (Docs. 66, 68) are **DENIED**.

## II. MOTIONS FOR ATTORNEY FEES

The Court will next address the motions for attorney fees and costs under § 1927 filed by Defendants ComCast and AT&T (Docs. 78, 82). Under 28 U.S.C. §1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys, and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (internal citations omitted). While there is no catch-all definition for either 'unreasonably' or 'vexatiously,' the Seventh Circuit has upheld sanctions under this statute when counsel acted recklessly, raised baseless claims despite notice of the frivolous nature of these claims, or otherwise showed indifference to statutes, rules, or court orders. *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir. 1992).

ComCast and AT&T argue that fees are appropriate here because Plaintiff raised baseless claims against them, despite knowledge those claims were frivolous, in an effort to obtain the discovery that the Illinois Supreme Court had previously thwarted (Docs. 78, 82). Furthermore, Plaintiff continued to advance its baseless claims until the Court ruled that no discovery would be forthcoming until the motions to dismiss filed by Defendants were ruled on (Docs. 78, 82). Rather than waiting for the Court's ruling, however, Plaintiff dismissed all of its claims (Docs. 78, 82).

The Court agrees with ComCast and AT&T. By naming ComCast and AT&T as

Defendants without any valid claims in an attempt to make an end run around the Illinois Supreme

Court's denial of discovery, Plaintiff unreasonably and vexatiously multiplied the proceedings in

this matter.   Namely, Defendants' attorneys were forced to respond to and appear for a hearing on

Plaintiff's emergency motion for expedited discovery, to file various motions to dismiss, to appear

for a scheduling and discovery conference, and to file a motion to stay discovery.

The Court also finds that Duffy, Hansmeier, and Steele exhibited a "serious and studied

disregard for the orderly process of justice." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717,

720 (7th Cir. 2006), *quoting Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.

1994).   These men have shown a relentless willingness to lie to the Court on paper and in person,

despite being on notice that they were facing sanctions in this Court, being sanctioned by other

courts,[2] and being referred to state and federal bars,[3] the United States Attorney in at least two

districts,[4] one state Attorney General,[5] and the Internal Revenue Service.[6]   For example, at the

November 13 hearing, Hansmeier skirted the Court's direct questions, Steele made feigned

protestations, and both flat-out lied about their association with Prenda Law, Inc. in the face of

---

[2] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67 (ordering AF Holdings and Prenda Law to repay settlement money and all attorney fees and costs incurred by defendants); *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5–6 (C.D. Cal. May 6, 2013) (jointly and severally liable for defendant's attorney fees and costs in the amount of $81, 319.72); *AF Holdings, LLC v. Chowdhury*, Case No. 12-cv-12105-JLT (D. Mass. October 22, 2013), ECF No. 34 (jointly and severally liable for defendant's in the amount of $21,393.60, with fees and costs trebled for a total judgment of $64,180.80).
[3] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)
[4] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)
[5] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67
[6] *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)

App. 025

documentary evidence on the record in this case, and their sworn declarations in other cases.[7]

Accordingly, the imposition of attorneys' fees under § 1927 is appropriate here—from the inception of the claims through the present. *See Overnite Transp. Co. v. Chi. Indus. Tire Co.,* 697 F.2d 789, 794 (7th Cir.1983) (§ 1927 can reach the filing of the complaint where the lawsuit was legally meritless from the outset, and counsel should have known that it was); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184–85 (7th Cir. 1992) (§ 1927 sanctions appropriate where counsel pursued baseless claim despite receiving notice that claims were frivolous).

## III.   ITEMIZATIONS OF FEES AND COSTS

For the reasons stated above, and in accordance with the Court's previous order (Doc. 65), Defendants have been awarded reasonable attorney fees and costs under 28 U.S.C. § 1927 for all time expended from the filing of the amended complaint and the removal of the case to federal court in August 2012.

Anthony Smith seeks a total of $72,367.00 in attorney fees and costs (Doc. 90).   This total includes $72,150.40 in attorney fees for 187.2 hours of work done by Smith's attorneys from the time Smith was served with summons in August 2012 through May 2013 (Doc. 90-1).   The hours were billed at a rate of $409.00 per hour for partners Dan Booth and Jason Sweet and $200.00 per hour for (Doc. 90-1).   This total also includes $216.20 in costs (Doc. 90-1).

SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") seeks a total of $119,637.05 in attorney fees and costs (Doc. 97).   This total includes $870.29 in costs and $38,987.83 in attorney fees for the law firm of Hepler Broom for approximately 158.7 hours of

---

[7] Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW (C.D. Cal. March 8, 2013), ECF No. 83).

work from the time the case was removed to federal court in August 2012 through November 2013 (Doc. 97-1).   The hours were billed at various billing rates ranging from $295.00 to $110.00 per hour (Doc. 97-1).   The total sought by AT&T also includes $864.92 in costs and $80,524.50 in attorney fees for the law firm of Locke Lord, LLP for approximately 215 hours of work from the time the case was removed to federal court in August 2012 through November 2013(Doc. 97-2). The hours were billed at various billing rates ranging from $250 to $555 per hour (Doc. 97-2).

    ComCast Cable Communications, LLC seeks a total of $69,021.26 in attorney fees and costs (Doc. 98).   This total includes $806.98 in costs and $57,144.28 in attorney fees for the law firm of Davis Wright Tremaine, LLP ("DWT") for approximately 132 hours of work from the time the case was removed to federal court in August 2012 through April 2013 (Doc. 98-1).   The hours were billed at various billing rates ranging from $531.00 to $212.50 per hour (Doc. 98-1).   This total also includes $11,070.00 in attorney fees for the law firm of Lashley & Baer, P.C. for 36.9 hours of work at a billing rate of $300.00 per hour (Doc. 98-2).

    The Court notes that Paul Duffy, Paul Hansmeier, and John Steele had an opportunity to respond, and did respond, to Smith, AT&T, and ComCast's general requests for fees and costs (Docs. 63, 66, 68, 74, 86).   Duffy, Hansmeier, and Steele have not filed responses to the specific itemizations, but having reviewed the itemizations and declarations in support thereof, the Court finds a response is not necessary because no further information is required for this ruling.

    After carefully considering the itemizations of fees and costs and the declarations in support thereof submitted by the attorneys for Smith, AT&T, and ComCast, the Court finds the time spent and the amounts charged by Smith, AT&T, and ComCast to be reasonable.   The Court has also carefully considered the interrelationship between Duffy, Hansmeier, and Steele.   The

Court finds, that these men acted in concert throughout the entirety of the proceedings in this matter, share total responsibility for their actions, and are jointly and severally liable for the fees and costs of Defendants.

## **CONCLUSION**

The motions to vacate, or in the alternative, to reconsider the order granting Anthony Smith's motion for attorney fees filed by Paul Duffy (Doc. 74), Paul Hansmeier (Doc. 66), and John Steele (Doc. 68) are **DENIED.**

The motions for attorney fees and costs filed by Defendants ComCast Cable Communications, LLC (Doc. 78) and SBC Internet Services, Inc. d/b/a AT&T Internet Services (Doc. 82) are **GRANTED**.

It is **ORDERED** that pursuant to 28 U.S.C § 1927, Paul Duffy, Paul Hansmeier, and John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

**IT IS SO ORDERED.**

DATED: November 27, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LIGHTSPEED MEDIA CORP.,** | Civ. No. 12-889 DRH |
| *Plaintiff,* | |
| *v.* | **NOTICE OF APPEAL** |
| **ANTHONY SMITH, et al.,** | |
| *Defendants.* | |

Notice is hereby given that John Steele, Paul Duffy and Paul Hansmeier hereby appeal to the United States Court of Appeals for the Seventh Circuit from a final order finding them in contempt of court and imposing contempt sanctions, entered in this action on the 24th day of March, 2014 at docket number 136.

Dated: March 31, 2014

/s/ Paul Duffy (with consent)
Paul Duffy
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

/s/ Paul Hansmeier
Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

/s/ John Steele (with consent)
John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

NO. 14-1682

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

LIGHTSPEED MEDIA CORPORATION,
Plaintiff,

v.

ANTHONY SMITH, et al.,
Defendants-Appellees,

Appeal of:
PAUL DUFFY, JOHN STEELE, & PAUL HANSMEIER,
Appellants.

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-GPM-SCW

**Separate Appendix of Appellants
Paul Duffy, John Steele & Paul Hansmeier**

Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

# APPENDIX

## Table of Contents

| Document description | Location in Record | Page No. |
| --- | --- | --- |
| Circuit Rule 30(d) Statement | N/A | ii |
| Transcript of February 13, 2014 Show Cause Hearing | N/A | App. 030 |

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), the undersigned certifies that the material required by Circuit Rule 30(a) is included in the required short appendix. All other material required by Circuit Rule 30(b) is included in the separately-bound appendix.


DATED: June 18, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

```
1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF ILLINOIS
2

3    LIGHTSPEED MEDIA CORPORATION, )
                                    )
4                     Plaintiff,    )
                                    )
5         vs.                       ) No. 12-cv-00889-DRH
                                    )
6    ANTHONY SMITH, ET AL.,         )
                                    ) February 13, 2014
7                     Defendant.    )

8

9                      TRANSCRIPT OF PROCEEDINGS
                         SHOW CAUSE HEARING
                BEFORE THE HONORABLE DAVID R. HERNDON
10            CHIEF UNITED STATES DISTRICT COURT JUDGE

11   APPEARANCES:

12   For the Plaintiff:        Paul A. Duffy, Esq.
                               Prenda Law, Inc.
13                             161 N. Clark St., Suite 3200
                               Chicago, IL  60601
14                             (312) 880-9160

15                             John L. Steele, Esq.
                               Paul Hansmeier, Esq.
16                             Steele Hansmeier PLLC
                               161 N. Clark St., Suite 4700
17                             Chicago, IL  60601
                               (312) 880-9160

18

19   For the Defendant:        Troy A. Bozarth, Esq.
     SBC Internet Services     Hepler Broom LLC
20                             130 N. Main Street
                               Edwardsville, IL  62025
21                             (618) 656-0184

22                             Bart Westcott Huffman, Esq.
                               Locke Lord LLP - Austin
23                             100 Congress Ave., Suite 300
                               Austin, TX  78701
24                             (512) 305-4746

25
```

```
 1   For the Defendant:        Andrew G. Toennies, Esq.
     ComCast                   Lashly & Baer PC
 2                             714 Locust St.
                               St. Louis, MO  63101
 3                             (314) 436-8347

 4                             John D. Seiver, Esq.
                               Davis Wright Tremaine LLP
 5                             1919 Pennsylvania Ave. NW
                               Washington, DC  20006
 6                             (202) 973-4200

 7

 8   For the Defendant:        Daniel G. Booth, Esq.
     Anthony Smith             Jason E. Sweet, Esq.
 9                             Booth Sweet LLP
                               32R Essex Street
10                             Cambridge, MA  02139
                               (617) 250-8602
11

12

13

14

15

16

17

18

19   Court Reporter:           Laura A. Blatz, CSR, RPR, CCR
                               U.S. District Court
20                             750 Missouri Avenue
                               East St. Louis, IL  62201
21                             (618) 482-9481

22

23

24

25        Proceedings recorded by mechanical stenography;
     transcript produced by computer.
```

1      *(Court convened)*

2            THE COURT:  Let the record reflect that we're in

3      open court.  We've called the case of *Lightspeed Media vs.*

4      *Anthony Smith*, 12-889.  Who's on the phone?

5            MR. DUFFY:  Paul Duffy.

6            THE COURT:  Paul Duffy, I heard.  Who else?

7            MR. HUFFMAN:  Bart Huffman for AT&T.

8            MR. SWEET:  Jason Sweet for Anthony Smith.

9            MR. BOOTH:  Dan Booth for Anthony Smith.

10           THE COURT:  The one I kind of think I heard was

11     Bart Huffman.  Was that the second person that spoke?

12           MR. HUFFMAN:  Yes, Your Honor.  Bart Huffman

13     representing AT&T.

14           THE COURT:  I think on the phone we have

15     Paul Duffy, Daniel Booth, Jason Sweet, and Bart Huffman,

16     correct?

17           UNIDENTIFIED SPEAKER:  Correct, Your Honor.

18           THE COURT:  Who do we have in the courtroom to my

19     left?

20           MR. HANSMEIER:  Paul Hansmeier.

21           MR. STEELE:  Your Honor, John Steele.

22           MR. TOENNIES:  Andrew Toennies for ComCast.

23           MR. BOZARTH:  Troy Bozarth, Your Honor, for AT&T.

24           THE COURT:  Okay.  Mr. Bozarth's the only one I

25     recognize out of the whole bunch.

1          Okay.  So now, we've called this on Defendants'

2    motions for rule to show cause why Plaintiff's counsel

3    should not be held in contempt.  I inherited this case from

4    Judge Murphy, who's enjoying his golden years, now left us

5    behind, but not before he entered an order assessing certain

6    sanctions against Plaintiff's counsel.  So who's going to

7    argue on behalf of the motions?  And we've got, I think,

8    more than one motion.  But who's going to argue on behalf of

9    the motion?  Let's take first the ComCast -- the

10   Anthony Smith ComCast and SBC motion at Doc. 107.  Who's

11   going --

12          MR. BOZARTH:  Judge, I'm going to start off on that

13   one.

14          THE COURT:  Make sure you speak into the

15   microphone, Mr. Bozarth, so everyone on the phone can hear

16   you.

17          MR. BOZARTH:  Absolutely.  Thank you, Judge.

18          This is a joint motion brought on behalf of all

19   Defendants that were assessed fees in Judge Murphy's

20   November 27th, '13 order.

21          THE COURT:  Let me just stop you right there.  Can

22   everybody hear Mr. Bozarth?

23          MR. DUFFY:  Your Honor, this is Paul Duffy.  I

24   cannot hear him.

25          THE COURT:  Make sure the green light's on on the

1    base there, Mr. Bozarth.

2         *MR. BOZARTH:*  Green light's on.

3         Your Honor, this motion was brought on behalf of

4    all of the parties that were awarded fees under

5    Judge Murphy's 11/27/13 order.  This case, as you're

6    probably aware, has quite a long history, and the

7    culmination, at least in this court before Judge Murphy, was

8    a hearing where we had all parties present, including

9    Mr. Hansmeier, Mr. Duffy, Mr. Steele, at least on the phone

10   or in person.  Judge Murphy heard argument and then took the

11   matter under advisement.

12        On 11/2/0107, he entered his order.  That order was

13   extremely clear, and it provided for fees and costs in an

14   amount certain to be paid to my client, to ComCast, and to

15   Mr. Smith as well.  The order also provided for 14 days for

16   that to occur.  The 14 days elapsed and there was no

17   filings, no payment.  And clearly, the next step from our

18   perspective would be seeking to enforce that order with the

19   Court that entered it.

20        Under Seventh Circuit law this is clearly a case of

21   contempt.  The order was clear.  The order was not complied

22   with and there's been no excuse provided or even an

23   attempted excuse provided, so we would ask that the Court

24   enter a contempt finding and take steps necessary to insure

25   that the order is complied with.

1    THE COURT:  All right.  So is anybody else going to

2    speak in favor of the motion for rule to show cause?

3        MR. TOENNIES:  Judge, Andy Toennies for ComCast,

4    here in the courtroom.

5        One motion to stay was filed by Mr. Steele out of

6    time.  No bond was posted by the attorneys who were

7    sanctioned.  Just the one motion.  They did file an appeal,

8    obviously.  That's all that's been done by the sanctioned

9    parties in this case.

10        THE COURT:  All right.  So -- and Mr. Duffy, are

11    you going to argue the opposing side?

12        MR. DUFFY:  I think Mr. Hansmeier is going to take

13    the lead.

14        MR. HANSMEIER:  Thank you, Your Honor.

15        The elements of civil contempt are well established

16    in the Seventh Circuit.  I think that none of the sanctioned

17    attorneys disputes the fact that if Judge Murphy's order was

18    entered in the form of an equitable decree, we, as officers,

19    have an obligation to follow it to the extent we're able to

20    do so.

21        I think what the points of contention are between

22    our side and their side boil down to two points.  The first

23    point is:  What does this order say?  In our papers we have

24    made extensive argument to the effect that this is not an

25    equitable decree but that this particular sanctions order

1  was entered in the form of money judgment, and we point to

2  several different factors that would suggest that this is

3  the case.

4         The first factor we point to is the language of the

5  order itself where it says:  *For a total judgment of the*

6  *sanctions amount with interest as provided by law.*  And when

7  we read that order -- we read it and we continued to read it

8  as money judgment.  The point of ambiguity in the order that

9  was referenced by opposing counsel here was the 14-day time

10  for compliance that they referenced.  However, the 14-day

11  time for compliance mirrors Rule 62's 14-day time for stay

12  of the execution, and we read that -- or at least when we

13  read the order we interpreted that as the 14 days elapses

14  and they have their rights as provided under law that the

15  automatic stay expires and they have the ability to sieze

16  and sell assets as any judgment creditor does.

17         Further lending to our interpretation of the order

18  of judgment as this being a money judgment versus an

19  equitable decree is the conduct of the counsel for the

20  moving parties themselves.  While they're appearing before

21  this Court and saying, *Look, this is an order to pay, this*

22  *is an equitable decree, and contempt is appropriate,* at the

23  same time they're taking steps to enforce the judgment just

24  as a judgment creditor would.

25         Currently before the Court is a motion to quash,

1    which includes exemplars of the subpoenas they've been

2    issuing in order to enforce their judgment.  Furthermore,

3    they've been holding themselves out to these third party

4    banks and other institutions from which they're seeking to

5    enforce the judgment with as judgment creditors, so on the

6    one hand appears calling this order a contempt but on the

7    other hand they're invoking the power and name of the court

8    to compel third parties to disclose information under the

9    rubric of a judgment creditor.

10          And finally, with respect to the final element,

11   ability to comply, if this Court does, in fact, interpret

12   the judgment or Judge Murphy's order as an equitable decree

13   versus a money judgment, I personally would ask for leave

14   from the Court to submit financial documentation under seal

15   so that I may show I do not, in fact, have a quarter of a

16   million dollars to satisfy this payment amount with.  I

17   certainly recognize my obligation to do everything in my

18   power, and I certainly fully intend to do so, but I simply

19   do not have $250,000, would simply ask for the opportunity

20   to present that to the Court so the Court can evaluate my

21   financial status.

22         *THE COURT:*  So they acknowledge they haven't paid

23   these monies, right?

24         *MR. HANSMEIER:*  Your Honor, I can only speak for

25   myself.  I have not paid the other side $250,000, that's

1    correct.

2            THE COURT:  The basis for the fee, the order to pay

3    the fees, was 20 United States Code, Section 1927, correct?

4            MR. HANSMEIER:  That's correct, Your Honor.

5            THE COURT:  And in order to make such an order, the

6    Court would have had to make a finding that the actions of

7    counsel were unreasonable and vexatious, am I correct?

8            MR. HANSMEIER:  That is correct, Your Honor.

9            THE COURT:  So the basis of the finding of the

10   Court, in essence, would be a sanction?

11           MR. STEELE:  Your Honor, John Steele speaking.

12   Yes, I agree with that.

13           One thing that I personally am having trouble

14   understanding, and why the order doesn't appear clear to me,

15   as I'm trying to understand, under the applicable statute

16   and rule, the individual attorneys have to be allocated,

17   *Okay, this is what you did vexatious and this is why you're*

18   *liable for this amount*, and so on.  I'm not clear as to what

19   part of this case, given that I appeared merely for one oral

20   argument, what percentage of the $250,000 which covers the

21   entire case, that I'm responsible for.  It's undisputed and

22   I don't think anyone contests it.  Most of the people -- I

23   think the three attorneys sanctioned weren't even in this

24   case, at least I know I wasn't, except the morning of one

25   oral argument which I shortly thereafter withdrew, so I

1    don't understand what portion that I should be responsible

2    for.

3            And it's clear, I think no one would dispute that

4    the statute's extremely clear that the Court has to say, *You*

5    *are responsible for this action, you did this wrong, and*

6    *this is the amount of money you should pay,* and this other

7    attorney over here, *This is what you did wrong.  This is*

8    *what you should pay.*

9            And I'm confused, with all due respect, and I would

10   second Mr. Hansmeier saying, and hopefully -- in the

11   unfortunate event that this Court does rule it as an

12   equitable decree, I would also like to have the opportunity

13   to submit documentation under seal that I do not have the

14   ability to write a check for $250,000 on a case that I

15   stepped in for oral argument as a favor which I was not

16   compensated for in the first place.

17           THE COURT:  Well, perhaps you are in complete

18   disagreement with Judge Murphy, but it seems that your --

19   the answer to your question comes in the last sentence

20   before the conclusion where he says:

21           *The Court finds that these men acted in concert*

22           *throughout the entirety of the proceedings in this*

23           *matter, shared total responsible for their actions*

24           *and are jointly and severally liable for the fees and*

25           *costs of Defendants.*

1      MR. STEELE:  I understand that.  We didn't -- the

2  way that this proceeded was, I was not -- and I don't

3  believe Mr. Hansmeier, I don't know Mr. Duffy -- we didn't

4  even know this was occurring until after the judge had ruled

5  on the matter.  I find it hard to believe that we've not had

6  an opportunity to even contest this until today.  And I

7  believe the record makes it clear -- I mean with all due

8  respect to Judge Murphy, the record is clear as to when I

9  appeared in this case, which was long after the case was

10  filed, and the other -- at least one other attorney in this

11  case, actually the one that did file the case and the one

12  that was throughout the whole case, was found not to have

13  conducted any sanctionable conduct.  And the one hearing I

14  appeared with that counsel I'm found to be liable for

15  $250,000.  I don't know what I said during that 20-minute

16  hearing to deserve that, and I'll respect Judge Murphy.  I'm

17  sure he had a reason for saying this, but I don't --

18      THE COURT:  Well --

19      MR. HUFFMAN:  Your Honor, this is Bart Huffman.  If

20  the Court wants to entertain discussion on this, I'd be

21  happy to recount in detail Mr. Steele's involvement

22  throughout this proceeding, beginning in state court and

23  beginning with the Prenda law firm being primary counsel and

24  my interaction with local counsel as local counsel

25  throughout, but I agree with Your Honor that Judge Murphy

1    has already considered this issue.

2         *THE COURT:*  Well, I'm not going to entertain

3    argument on it.  What I was about to say is he can --

4    Mr. Steele confuses me with the Seventh Circuit.  You know,

5    I'm not here to rehash this order entered by Judge Murphy.

6    And you're really getting away from the question that I

7    asked, which was the basis for Judge Murphy's ruling when

8    you look at the statute upon which he drew for his authority

9    here ultimately is that he's imposing a sanction.

10         Now, as such, a sanction is not a money judgment.

11    The Seventh Circuit is clear on that.  So it looks to me

12    like any way you slice this, even if you disagree with --

13    even as you disagree with Judge Murphy's findings and

14    conclusions, what you have here is a sanction based on

15    unreasonable and vexatious conduct which he found you all to

16    share responsibility in, and he imposes a sanction.  The

17    amount that he found, and it results in a sanction, which

18    is, under Seventh Circuit jurisprudence, not a money

19    judgment.

20         *MR. HANSMEIER:*  Your Honor, may I present argument

21    on that very specific point?

22         *THE COURT:*  Yes.

23         *MR. HANSMEIER:*  I went back -- I think what the

24    Court is drawing its conclusion that a money judgment -- or

25    I'm sorry, that a sanction is clearly not a money judgment

1  might be the *Cleveland Hair Clinic* case presented in the

2  movant's reply brief.  And to the extent that's where the

3  Court is drawing its conclusion that Seventh Circuit

4  precedent is clear, my argument on that point would be that

5  in that case the Seventh Circuit doesn't say that a sanction

6  must take the form of an equitable decree.

7        In that case the lower court had ordered the

8  attorneys to pay a sum of money to the other side, I believe

9  it was $174,000 or $100,000 forthwith.  In other words, in

10  the case below it was clear that the order was imposing an

11  obligation on the attorneys to do something right now, right

12  away, no questions asked.  And if you read the very specific

13  language cited by the movants in their brief, what I think

14  the Seventh Circuit was saying in that case was not that

15  this -- a sanction must be an equitable decree and District

16  Courts have no discretion whatsoever to issue a sanction in

17  the form of a money judgment.  I think what the

18  Seventh Circuit was saying, well, in this case we have

19  what's clearly an equitable decree an order to do something,

20  and when that's occurring then it's not a money judgment,

21  it's not enforceable as a money judgment.

22        As further support for this proposition I looked at

23  some of the sanctions orders that underlie some of the

24  seminal 1927 Seventh Circuit decisions.  For example, in

25  *FM Industries vs. Citicorp Credit Services*, if you review

1    the sanctions order that was entered in that case, it was in

2    the form of money judgment and it was enforced through writs

3    of execution, citations to discover assets and so forth.

4         And so I think it's not necessarily -- I guess to

5    sum up my argument, I think the Seventh Circuit has never

6    foreclosed the possibility and never limited a District

7    Court's very, very, very broad discretion to enter sanctions

8    however it chooses to do so, so for that reason I think it's

9    important to look at the language of the order rather than

10    arriving at the conclusion that because it's a sanction,

11    therefore, must be an equitable decree.

12         THE COURT:  Mr. Bozarth, you have any additional

13    argument?

14         MR. BOZARTH:  No.  Just -- I don't think that the

15    order could be any clearer, Judge.  What we just heard

16    Counsel say was that it was an equitable decree in the

17    *Cleveland Clinic* matter because it said to pay forthwith, so

18    therefore, there was a time that they were supposed to do

19    something with immediacy.  Our order here says pay within 14

20    days.  I think it's even clearer than the case he was just

21    trying to.

22         THE COURT:  The part of the order that talks about

23    interest is provided by law.  What specifically does the law

24    provide as far as interest is concerned and what does that

25    do in this particular order as far as making it equitable

1   versus a money judgment?

2          *MR. HANSMEIER:*  Your Honor, I'm not familiar --

3          *THE COURT:*  I was actually asking Mr. Bozarth.

4          *MR. HANSMEIER:*  I apologize.

5          *MR. TOENNIES:*  I think it's 5 percent in Illinois

6   on a judgment, if I understand what you're asking.  On an

7   order like this there would be 5 percent beginning on the

8   date of the order or the date that it began to run.  That's

9   my understanding.

10         *THE COURT:*  You say in Illinois.  Are you applying

11  an Illinois state statute or the federal interest?

12         *MR. TOENNIES:*  Illinois state.

13         *THE COURT:*  And why would you apply Illinois state

14  versus the federal procedural?

15         *MR. TOENNIES:*  Just seemed to me that would be

16  applicable here, unless the Court chooses to apply the

17  federal statute, that's appropriate as well.

18         *THE COURT:*  I thought the federal interest rate on

19  judgments had something to do with the prime interest rate

20  or something like that.  But does that -- getting back to

21  Mr. Hansmeier's argument, does that -- by operation of the

22  language of the order, does that take this from equity to a

23  money judgment because he specifically provided for interest

24  as provided by law?

25         *MR. BOZARTH:*  Judge, I don't believe so.  I think

1  when you look at what Judge Murphy was trying to do in this

2  order, he was trying to make the aggrieved parties whole.

3  They had been engaged in litigation for a substantial amount

4  of time and he found that that litigation was frivolous and

5  should not have been brought.  Frankly, as many other

6  federal judges around the country have found dealing with

7  these particular counsel, the fact that he chose to set an

8  amount certain, and then maybe fortuitously looking that

9  that amount might not be paid as we're sitting here today,

10 and wanted to create a mechanism that would increase that

11 amount over time.  I don't think it automatically turns it

12 into a judgment just because he is using that terminology.

13 I think he can make an equitable decree and set an amount

14 certain and then increase that amount as it goes forward if

15 it's not paid, if it's not complied with.  In essence that's

16 really kind of the first contempt type push, as judges often

17 do, to try to get these things paid.

18          *THE COURT:*  So that's where the part comes in, the

19 sanction on top of the sanction where you ask in your prayer

20 for relief that I impose an additional sanction of so much

21 in addition to the interest, so much per day, or every day

22 it's not paid, a thousand dollars or something like that?

23          *MR. BOZARTH:*  That's something that other judges

24 have done in particular cases with these lawyers to try to

25 get these paid.  I don't know if we specifically asked for

1 | it but I think also would be appropriate, the time that the

2 | counsel has spent trying to get it paid and preparing for

3 | this hearing today and our motion because it's not

4 | insignificant and there has been no basis whatsoever put

5 | forward, a motion for clarification, some -- anything.  It's

6 | just, *We aren't paying it.*

7 | THE COURT:  Now, on the subject that Mr. Hansmeier

8 | and Mr. Steele brought up about if I do find them, as well

9 | as Mr. Duffy, in contempt, they make a personal plea for

10 | time or for me to look at their net worth statements in

11 | camera.  My question is, one:  Are their net worth

12 | statements relevant?  And two:  Were they ordered to pay in

13 | the California situation and did they, in fact, pay there?

14 | $100,000 or something?

15 | MR. STEELE:  Your Honor, I can answer what we paid.

16 | MR. BOZARTH:  I think -- I was not in that

17 | litigation.  I think there's probably other counsel on the

18 | phone and these parties that could probably answer.

19 | THE COURT:  So answer the relevance part.  Answer

20 | the question I have about relevance.

21 | MR. BOZARTH:  I don't think it's relevant.

22 | THE COURT:  So what did you pay there?

23 | MR. STEELE:  Your Honor, just clarification, some

24 | earlier comments.  The only time there's been a contempt I'm

25 | aware of in these kind of issues was in DC, which was a

1    different case, which we won, and the ISP'sSP's were found

2    in contempt, and the judge stated, pending their appeal,

3    which is currently pending.  So as far as California goes,

4    the judge, you know, issued sanctions order which we

5    appealed and filed a bond for, even though the sanctions

6    order was -- the request was $40,000.  We had to file a

7    $250,000 bond, which I still don't quite understand why, but

8    just to be able to appeal that matter, and we understand

9    that certain judges have looked at that California order and

10   sort of adopted it, but many have not.

11        And the insinuation that every judge in the country

12   who's ever dealt with any of these cases has found against

13   us is completely wrong.  There's been many judges that have

14   said this is not improper and vexatious, so I don't want

15   this -- it's important to point out to the Court, this is

16   not some situation where there's a universal agreement.  In

17   fact, there's very, very large disagreement between the

18   various judges, some who are in favor, and the exact same

19   counsel that's on the phone today is appealing it and some

20   courts have ruled against us.

21        But I don't want to get into my motion to stay, but

22   as far as what we paid, we've paid $250,000 bond in

23   California so that we could appeal that matter, just like

24   we've appealed this matter.  But this matter -- the courts

25   that have dismissed motions for sanctions and so on in

1  various states like Arizona and Illinois and whatnot, we

2  haven't had to, obviously, post any bond or whatever the --

3  the matter has been thrown out.  And one or two courts there

4  has been a sanctions order issued.  Normally it's done

5  without us knowing about it, like on an ex parte basis like

6  here, but I do think it's very relevant how much money we're

7  able to post for, or pay for the sanction or post for a bond

8  because inability to pay is most certainly a prong of the

9  sanctions order.

10         With all due respect to opposing counsel, it's

11 extremely important because if the Court issues sanction

12 order for, I don't know, a billion dollars, we can't pay it.

13 And I don't believe that there's any case law to establish

14 that -- there's not a debtor's prison.  I mean if we can't

15 pay it, we can't pay it.  I do think it's very important.

16         MR. HUFFMAN:  Your Honor, if I can just interject

17 that Mr. Steele is incorrect that the ISP's were ever found

18 in contempt.

19         UNIDENTIFIED SPEAKER:  Judge Howell, two years ago,

20 denied a Motion to Quash.  That is pending appeal.

21 Mr. Steele has withdrawn from that case.  And frankly, that

22 case, we would argue incorrect as of the timing and

23 certainly incorrect under today's standards, but that would

24 be shown in the -- but the ISP's were certainly never, ever

25 found in contempt of any --

1      *MR. STEELE:*  Your Honor, I was personally there

2   while Mr. Huffman asked the Court to issue a 50-dollar

3   sanction, de minimis sanction, so that he could appeal it

4   without having to incur liability of his client.

5      *MR. HUFFMAN:*  Well, yes, we asked for a friendly

6   contempt perhaps in the alternative, but that wasn't

7   necessary because the Court granted the interlocutory

8   appeal.  I understand Mr. Steele's trying to twist things

9   somehow in his favor, but that has no basis for reality.

10      *THE COURT:*  Okay.  Thanks, Mr. Huffman.

11      Okay.  Well, Mr. Duffy, you're on the phone.  You

12   haven't paid anything toward the -- with respect to the

13   order?

14      *MR. DUFFY:*  Well, Your Honor, I would just like to

15   amplify the judge did include interest.  That would suggest

16   there would be post-judgment interest to be added to it, to

17   the amounts referenced in the order, and Judge Murphy did

18   refer to it.  He used the term "judgment" when he referred

19   to the award that he mentioned in his order, so I think

20   there's -- you know, there's evidence suggesting that

21   Judge Murphy himself intended that to be a judgment in

22   connection with the case.  It was the last issue pending in

23   that litigation, and he addressed it by what he himself

24   referred to as a judgment in connection with a 1927 order.

25      *THE COURT:*  So that's a "yes"?  You haven't paid

1    anything?

2        *MR. DUFFY:*  I'm sorry, Your Honor.  I couldn't hear

3    you.

4        *THE COURT:*  You have not paid anything toward the

5    order Judge Murphy ordered?

6        *MR. DUFFY:*  I have not.  And I would like, if the

7    Court does term it's an equitable order, the opportunity to

8    submit financial information demonstrating my inability to

9    pay it.

10       *THE COURT:*  Is there a reason why none of the three

11   of you have submitted your financial affidavits regarding

12   your financial assets prior to now?

13       *MR. HANSMEIER:*  Your Honor, I can only speak on

14   behalf of myself, but I think they point to the fact that

15   none of the money's been paid, that no one's complying with

16   this order and so forth, but up until this point I've had a

17   genuine belief that this is a judgment.  I continue to

18   believe it's a judgment, and that, frankly, that's one of

19   the reasons or one of the elements of contempt is how clear

20   the order is.

21       And it does feel like a little bit of a bait and

22   switch on the one hand for the order to say a judgment of

23   this amount of money with interest provided by law as every

24   other judgment I've read has always stated, and then to come

25   in and find out now this is actually going to be an

 1   equitable decree.  And if that's how the Court interprets

 2   and rules, we have a duty and absolute obligation to comply,

 3   but until we were able to receive clarification of what this

 4   order actually is, it's hard to know how to actually respond

 5   to or deal with the order.

 6        And so in direct answer to your question, why

 7   haven't we submitted financial affidavits, the reason is we

 8   still don't know how the Court is going to interpret this

 9   order, and certainly once the order becomes clear and

10   there's no ambiguity as to what it says -- and I would argue

11   it's clear that's the judgment.  But once it becomes clear

12   what it is, we have an obligation to comply with it or show

13   why we can't comply, and so that's the reason I personally

14   have not submitted a financial affidavit.  I'm still waiting

15   to find out what this order is, and when I do, I will

16   fulfill my obligations to pay what I can, but I can't pay

17   what I don't have.

18        *MR. HUFFMAN:*  Your Honor, just briefly.  The

19   judgment -- they aren't parties.  They were sanctioned as

20   attorneys, officers of the court that have caused other

21   parties to needlessly incur expense.  They weren't

22   awarded -- we weren't awarded a money judgment against an

23   opposing party, so in the first instance makes sense that

24   this would be a judgment because they're sanctioned

25   attorneys.

1    Secondly, these are lawyers that they've made

2   millions of dollars across the country and when they were

3   sanctioned per day in Judge Wright's court in situation,

4   they went ahead and posted the bond at that time and somehow

5   had the money to do so, so I think we know what's really

6   going on.

7        MR. HANSMEIER:  I would ask Mr. Huffman to point

8   out the publication where I have publicly touted millions of

9   dollars that I've made.

10        MR. DUFFY:  Your Honor, I would like to say that

11   that statement is simply false as pertains to me.  I've

12   never made any statement --

13        UNIDENTIFIED SPEAKER:  I think Mr. Steele was in

14   Forbes.com describing the enterprise which you all have been

15   repeatedly found to be intimately involved.

16        MR. STEELE:  No, absolutely, I never did, and I

17   resent being told that I've said something that's not true.

18   If Mr. Huffman would like to present something that I

19   personally made money of a certain amount, feel free, but it

20   will never come, Your Honor.

21        The behavior of the opposing parties indicate that

22   they believe it's a judgment too; otherwise, if they do

23   believe it's an equitable relief, simultaneously subpoenaed

24   every bank, me, my family, and my former clients, and

25   everyone that possibly has, and they're treating it like a

1    judgment.  It seems a bit disingenuous to treat it like a

2    judgment from day one and simultaneously argue it's not a

3    judgment in front of you.

4         *UNIDENTIFIED SPEAKER:*  -- any subpoenas in contrast

5    hasn't either.

6         *THE COURT:*  Okay.  So --

7         *MR. SWEET:*  Your Honor, this is Jason Sweet,

8    attorney for Anthony Smith.

9         I would just note that in Mr. Steele's motion to

10   stay, the criteria he sets forth for the stay is for

11   injunctive relief, not for a money judgment.  So it's a

12   little disingenuous for him to stand up and argue that they

13   think it's a money judgment when in their pleadings they're

14   arguing for injunctive relief.

15        *MR. STEELE:*  Your Honor, if we want to -- I'm

16   assuming that we would deal with my motion to stay after

17   this, but if Your Honor would like to begin discussing that,

18   of course I can address those questions.  And I do believe

19   it's important to address the motion to stay for the reasons

20   I outlined in my motion, but again, the point is that I'm

21   not familiar with an equitable judgment -- an equitable

22   order that states things such as interest rates and uses the

23   word "judgment" and so on.

24        To the extent if this Court were to find that

25   somehow, you know, we're just obligated to pay a quarter

1  million dollars in 14 days, then I would believe that it's

2  very important to allow me to argue and the other side to

3  address my motion to stay.

4  　　　　*THE COURT:*  Okay.  So first of all, the finding of

5  this Court is that Judge Murphy's order is not a money

6  judgment; it is a judgment based on a sanction, and,

7  therefore, was equitable in nature.  The order required that

8  the -- that Mr. Duffy, Mr. Hansmeier, and Mr. Steele,

9  jointly and severally, were to pay $261,025.11 no later than

10  14 days after the entry of that order, which was

11  November 27th, 2013.

12  　　　　The question remains whether the respondents are

13  guilty of a civil contempt, and, therefore, subject to

14  sanction by the Court.  The Court, in reviewing such an

15  issue, must look at these factors:  Harm from noncompliance,

16  probable; effectiveness of such a sanction; the contemptors'

17  financial resources and the burden of sanctions may impose;

18  and the contemptors' willfullness in disregarding the

19  Court's orders.

20  　　　　So since I don't know the financial resources of

21  Messrs. Duffy , Hansmeier and Steele, I will give them seven

22  days to submit affidavits regarding their financial

23  resources and take the matter of the contempt -- the

24  petition for rule to show cost or motion for rule to show

25  cause under advisement.

1          Are the Defendants prepared to talk about

2    Mr. Steele's Motion for Stay?

3          *MR. BOZARTH:*  Your Honor, if you would like to take

4    that up.

5          *THE COURT:*  Mr. Bozarth says "yes".

6          So Mr. Steele, clearly you filed your motion quite

7    late.  Do you not think it's an untimely motion?

8          *MR. STEELE:*  Well, Your Honor, the IPF's filed

9    their Motion for Sanctions nine months after the case was

10   closed.  I think that the only untimely filing in this

11   matter has been the IFP's sudden Motion for Sanctions.  I

12   think the motion to stay, if it's appropriate, is

13   appropriate whenever -- I guess I don't want to repeat

14   myself -- whenever it's appropriate.  I think that for the

15   reasons outlined -- I don't want to repeat, you know, the --

16         *THE COURT:*  Your motion to stay -- regardless of

17   when they filed their Motion for Sanction, your Motion for

18   Stay is related apparently to Judge Murphy's order, which

19   was entered on November the 27th.  Your motion to stay was

20   filed -- when was it filed?  It was filed January the 29th,

21   which was over a month after the Motion for Contempt was

22   filed.

23         *MR. STEELE:*  Yes.  I reached out -- during that

24   time immediately after the order was issued, I did reach out

25   to the ISP's and tried -- you know, and made an effort to

1    try to resolve this matter in some way, which was

2    unsuccessful.  And you know, obviously, once the Motion for

3    Contempt was filed, my options to seek relief from this

4    Court pending the appeal, which had already been filed, was

5    to ask for a stay, and I do believe that a motion to stay is

6    appropriate at any time as long as the criteria for a stay

7    is met.

8         Quite frankly, you know, there are many times in

9    which it's just to have a stay -- it's not necessarily

10   appropriate to have a stay at one point but yet later on it

11   would be appropriate.

12        *MR. HANSMEIER:*  Your Honor, if I may just add -- I

13   also requested the alternative relief of a stay in my

14   motion.  I would say that the timing of the stay -- you

15   referenced the point that it's 30 days after or roughly 30

16   days after the Motion for Contempt was filed.  That is a bit

17   of a product of their own making because I think there's

18   reference to Mr. Duffy's brief, the -- our opening brief to

19   the U.S. Court of Appeals for the Seventh Circuit was due 30

20   days after they filed their motion, which I think is one of

21   the reasons that explains the timing of their motion.

22        So certainly you want to seek a stay as soon as you

23   possibly can to minimize any form of prejudice to the

24   opposing party.  But in this case we did file -- I mean I

25   requested alternative relief because the interim I was

1    working very diligently on that opening brief.  And I'm not

2    aware of a specific timing for seeking a stay.  I would

3    suppose that, unless I'm wrong, and there is a specific

4    deadline for seeking a stay, I suppose it would be, you look

5    to the equities.  And I'm not sure what the prejudice to the

6    respondent parties of a stay would be at this time,

7    specifically since they're seeking to hold people in

8    contempt.

9            THE COURT:  Mr. Bozarth?

10           MR. BOZARTH:  Well, Judge, the parties, defendants

11   have not filed a specific response to this motion, and one

12   of the reasons why we have not is because we don't feel that

13   their request has been perfected.  They haven't issued or

14   put up a bond.  There's multiple issues that we think make a

15   stay inappropriate, but to point went out I think the --

16           UNIDENTIFIED SPEAKER:  Your Honor, I'm sorry.

17   John Seiver.  Could the Court ask everyone to speak up.

18   It's very difficult to hear the last two speakers.

19           MR. BOZARTH:  Sorry, John.

20           What we're dealing with, Judge -- and I think

21   you're beginning to get a fairly clear picture of what my

22   client has been dealing with for a number of years -- is

23   really a legal shell game.  You're going to get shortly,

24   presumably some affidavits that are going to say something

25   about the financial condition of these gentlemen.  What

1    relevance that has and what accuracy that has I think is

2    rightly potentially in question.

3         With regard to the motion to stay itself, I think

4    the fact that it was brought extremely late after they were

5    put to the task of having to comply with the order is a bit

6    telling.  They tell you that they are not sure what the

7    order meant but are waiting until today to do something

8    about it.  That's some 60-plus days after they were ordered

9    to pay.

10        When you look at just the factors of the motion

11   itself, which we've already dealt with several of them,

12   Judge Murphy talks about the due process that was afforded

13   in his order.  That's one of the things that -- their

14   likelihood of success, that they were not afforded due

15   process.  Judge Murphy deals with that in the order.

16        I think the failure to perform the inquiry about

17   individual acts, Judge Murphy, as you pointed out, has dealt

18   with that, that they acted in concert, that these actions

19   were not baseless.  Again, from my client's perspective, in

20   essence -- and we haven't really dealt with this too much,

21   but Judge Murphy found that their likelihood of success on

22   the merits at the appeal is somewhere between slim and less

23   than none.

24        Now, they actually sued my client in this case,

25   which was removed to federal court, for exercising its

1  rights in getting a subpoena quashed in the Illinois Supreme

2  Court.  That's basically the conspiratorial conduct that was

3  alleged to have been undertaken by my client.  And when you

4  look at all of it in totality and what they've done, that's

5  the reason I think why Judge Murphy entered the order that

6  he did.  So to say that this was not baseless, and other

7  courts around the country have entertained it, my client has

8  not been sued as a co-conspirator in an effort to extract

9  discovery, which was what happened in this case and what

10 Judge Murphy found.

11      MR. STEELE:  Your Honor, I haven't had an

12 opportunity to even --

13      THE COURT:  Stop talking over other people.

14 Please.  I will -- stop talking over other people.  He's

15 talking.

16      MR. STEELE:  Apologize, Your Honor.  I didn't know

17 that he was still talking.  I thought he was finished.

18      MR. BOZARTH:  So to state that this claim had merit

19 again is just trying to rehash.  What we're dealing with is

20 kind of a run-out-the-clock scenario, which is why it's so

21 important for this matter to not be stayed and for this

22 order to be entered compelling them to do the things that

23 they're supposed to do.

24      I can tick through the rest of them, but one of the

25 things I think, again, that Mr. Steele put in his motion was

1   public interest and he only showed up at one hearing.

2   Your Honor, this litigation had gone on for approximately a

3   year in state court before it was removed.  Mr. Steele was

4   in court all the time.  To tell this Court, *I was only -- I*

5   *only showed up for one hearing as a favor*, Your Honor, what

6   judges have found, these gentlemen are not giving courts the

7   true story, and you can -- I can cite you to orders.

8   They're in our papers.  It's literally a say or do anything

9   in front of the judge that they're looking at that day to

10  try to get out of it, and it just has to stop sometime.  My

11  client has paid exorbitant amounts of money to their

12  attorneys, and that needs to be -- so this should not be

13  stayed, Judge.

14          *THE COURT:*  Mr. Steele, talk into the microphone.

15          *MR. STEELE:*  Yes, Your Honor.

16          Obviously, I disagree with the concept that anyone

17  is misleading this Court, from either myself or the other

18  people subject to the sanctions motion, and it's simply just

19  not the case that there's some unanimity amongst federal

20  judges that this is somehow improper.  It's simply a fact

21  that other Illinois federal judges had said the proper way

22  to do this type of litigation is to actually name the ISP's.

23  The July in the Northern District of Illinois, Judge Baker,

24  said in his order we have had judges that have ruled in our

25  favor.  It's simply a fact from the record.  So the idea

1    that this is just some universally accepted fact that we've

2    done something improper is simply not true.  And so I

3    would -- you know, in arguing my motion to stay, I mean with

4    all due respect to Judge Murphy, it's not -- I don't think

5    it's fair -- if we're appealing the process by which the

6    sanctions order was issued to rely on the actual judge we're

7    appealing from to determine it was okay and thus my motion

8    to stay is improper seems a bit circular.  I mean if the

9    judge did something improper such as under -- clearly under

10   Seventh Circuit case law the judge is required to show what

11   I did wrong and how I should be -- and I mean obviously the

12   judge decided not to follow that, and that's fine.  I mean

13   that's his -- he's obviously the judge.  But that's a very

14   valid point to appeal.

15        I mean and the fact that there were certain

16   terminations made mostly before I knew there was a motion

17   for sanctions in this case, because I was no longer in the

18   case at the time it was filed, it doesn't seem at all fair

19   and due process.  Simply saying that I received due process

20   does not mean I did, and so I think it's important for this

21   Court to -- of course, its duty to make sure that the orders

22   are just, that the process has been followed and not simply

23   say, *Well, someone else says the process was followed*

24   *properly so I'm not going to second guess that*.  I mean

25   it's -- certain things are on the record.  It's just a fact

1   that whether or not I filed the complaint in this case,

2   whether I appeared in state court in a different case, how

3   is that relevant to my conduct in this case I'll never

4   understand.  And so trying the lump things in and cherry

5   pick certain orders from one or two judges that are also

6   under appeal doesn't seem to be a fair way of analyzing my

7   motion to stay.

8          We have to look at several prongs, including harm.

9   I know we're looking at bankrupting attorneys that have not

10  been disciplined by any bar association whatever, for the

11  conduct.  I think that's important to understand.  In fact,

12  one of ours is already cleared, one of the attorneys in this

13  matter, I believe Mr. Duffy.  So the point is that the harm

14  is simple, that this Court could, on one hand, bankrupt

15  various people that are clearly crying out that they did not

16  even get due process here, and I think that's very

17  dangerous, versus several Fortune 50 companies that probably

18  aren't going to really go under if they don't get this for a

19  few months when the Seventh Circuit is going to rule on

20  this.  They have -- and from what I understand, Mr. Smith, I

21  believe the original defendant in this case, hasn't even

22  been billed by his attorneys, from our understanding, and

23  hasn't paid any money, so I don't see any harm there either.

24         All we're asking for -- all I'm asking for, and I

25  believe Mr. Hansmeier and Mr. Duffy also, is simply to stay

1    this pending the determination by the appellate court for

2    the already filed appeal that we have been very timely on.

3    We have burned midnight oil, so to speak, to get as fast as

4    we can to appeal this matter, to appropriately address this,

5    to contact the other side.  I'm not -- I know personally I'm

6    not hiding out or not addressing these issues.  This is very

7    concerning.  This is literally life changing, for not only

8    me, but I'm sure for several other people here, and this is

9    something that's very, very serious, and to simply say, *Well*

10   *you were afforded due process because the person that you're*

11   *claiming didn't give it to you said he did*.  That's not good

12   enough, with all due respect to this Court.

13       If you review my motion to stay, it lays out very

14   clearly the harm and it also lays out the serious defects in

15   how this has progressed.  And I don't want to second

16   guess -- I know this is not a Motion Reconsider.  I'm not

17   asking this Court to entertain a Motion to Reconsider.  In

18   fact, obviously, it's on appeal so it can't be changed.  But

19   all I'm asking for is -- there are other judges, there are

20   other districts that have ruled in our favor.  There's

21   judges that have denied their Motion for Sanctions.  I

22   believe they even agreed to that simple statement.  I can

23   certainly provide it to the Court, orders denying their

24   Motion for Sanctions on the same issues.

25       And so my point is, there's a disagreement amongst

1    judges.  It's simply a fact of the court record that Judge

2    Howell in DC, that -- I don't remember the judge's name in

3    Arizona, but there's other courts that have said, *No,*

4    *they're right*, and, of course, they're appealing those

5    decisions right now, at least the one in DC.  And that's

6    fine, but with this disagreement, how can Judge Baker in the

7    Northern District say, *Well, to do this properly you have to*

8    *name and serve the ISP's.*  That's the way you got to do it

9    in that district, but down here doing that causes me to be

10   liable for a quarter million dollars in sanctions by just

11   appearing for oral argument.

12          So I believe that there are very serious equitable

13   reasons to look at this and say, okay, what's the harm of

14   waiting a couple more months to let the appellate court

15   review this?  I doubt that AT&T and, you know, ComCast are

16   going to be unduly harmed by a brief stay.  I know for a

17   fact that I will be incredibly harmed, and I believe,

18   talking to some of the other attorneys, that this is

19   literally a life-changing in a negative way event.

20          Obviously I can go on.  I do not want to waste this

21   Court's time but I do want to make it very clear that this

22   constant insinuation that we are somehow misleading the

23   Court is, simply, I don't believe accurate, and I think that

24   my arguments that I raised -- that I will not obviously go

25   through point-by-point because obviously this Court has read

1  my motion to stay -- points out the serious issues, the

2  serious due process questions, the fact that, you know, the

3  Court even asked the attorneys if they'd like to actually go

4  back and fix the service problem that they had, and they

5  said, *No, we'll just be fine with this*, that there are so

6  many problems with finding a sanction order of such a

7  magnitude, such an amount, against people that were not even

8  in the case at the time it was filed, and there's absolutely

9  no evidence that I'm aware of that we received notice on all

10  these things.

11      I do not want to argue and rehash and have a motion

12  to reconsider impromptu.  I'm very respectful to the Court

13  and I do not want the Court to think I'm trying to do that.

14  The motion to stay is simply an analysis of the prongs

15  necessary motion to stay, whether it's likelihood of success

16  on the merits, the harm, and obviously the public.

17  Obviously, if someone can file a Motion for Sanctions

18  against somebody and they never even know that there's a

19  current pending Motion for Sanctions, that's a real problem,

20  I believe, for our judicial system.

21      So I do think all the prongs necessary for a motion

22  to stay have been met here, and there's interest accruing on

23  it, so obviously -- I believe it's a judgment.  Obviously

24  this Court just recently said it doesn't believe its a

25  judgment, but there's an interest accruing on whatever this

 1  is going to be called, and so if we're wrong and somehow it

 2  doesn't matter that -- well, I don't want to characterize

 3  the -- if it's wrong then we'll --

 4       *THE COURT:*  I've got another setting at 10, so --

 5  the problem with your motion is it should have been -- if

 6  you didn't understand the order, first of all, why didn't

 7  you file a motion to clarify with Judge Murphy?  Your

 8  order -- your motion to stay should have been filed in

 9  conjunction with your notice of appeal and you should have

10  been talking about a bond.  You guys were afraid of a bond

11  because you've already filed a bond in another jurisdiction.

12  You didn't want to file a bond, so you didn't file a motion

13  to stay, didn't file a bond.  You didn't want to touch that.

14  You didn't think about a motion to stay until this contempt

15  motion came in, so that's why you were too late.  Your

16  likelihood of success on the merits is next to nil.  You're

17  not going to win your appeal.

18       When you're talking about harm, if you wanted to

19  talk about harm you'd have filed your profits and loss or

20  your net worth statement with your motion to stay.  You

21  haven't provided me with the advantage of being able to look

22  at what you're talking about in terms of what harm this is

23  going to do to you.  And let me revise what I said earlier

24  about what you need to provide me so that I can decide the

25  contempt motion.  I don't want your affidavit.  I want your

1   assets statement from a certified public accountant.  I

2   don't want it from you.  After looking at Judge Murphy's

3   order, I want that from a certified public accountant.  I

4   want a certified profits and loss or certified net worth

5   statement.

6           So with respect to talking about the community, the

7   community has to worry about lawyers who file unreasonable

8   and vexatious claims.  That's where the harm to the

9   community is when you talk about harm to the community.  The

10  community is worried about lawyers, worried about lawyers

11  that file these kind of lawsuits.  So if, in fact,

12  Judge Murphy is right -- and for the time being until the

13  Seventh Circuit says something differently, I have to assume

14  he is -- the community is worried about guys like you.  So

15  that's where we are with the community.  So your motion to

16  stay is denied.

17          You did everything wrong when you're talking about

18  a motion to stay.  If you'd have done it right I probably

19  would have been in a very good position to say, well, I got

20  some question about whether or not you're going to prevail

21  on appeal, but as far as the playing field is concerned

22  here, maybe we'll do the motion to -- maybe we'll stay this

23  thing and see what the Seventh Circuit says.  But you didn't

24  do it right, which leads me to believe that Judge Murphy was

25  right all along.  So motion to stay is denied.

1          Now, since you've got to go to a certified public

2     accountant I'll give you ten days instead of seven for that

3     certified statement as to your net worth, but get that to me

4     so that I can decide this other thing.  I have to take that

5     under advisement.

6          This hearing is adjourned.

7     **(Court adjourned)**

8                         *   *   *   *

1                          REPORTER'S CERTIFICATE

2

3          I, Laura A. Blatz, RPR, Official Court Reporter for the
     U.S. District Court, Southern District of Illinois, do
     hereby certify that I reported in shorthand the proceedings
4    contained in the foregoing 39 pages, and that the same is a
     full, true, correct, and complete transcript from the record
5    of proceedings in the above-entitled matter.

6          Dated this 27th day of February, 2014.

7

8                              /s/
                               _____
9                              LAURA A. BLATZ, RPR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

☑

# CERTIFICATE OF SERVICE

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on _____June 18, 2014_____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ _Paul Hansmeier_____

☐

# CERTIFICATE OF SERVICE

**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                          address:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

s/_____