**No. 14-1682**

# In the
# United States Court of Appeals
# for the Seventh Circuit

LIGHTSPEED MEDIA CORPORATION,

*Plaintiff,*

v.

ANTHONY SMITH, et al.,

*Defendants-Appellees,*

APPEAL OF:  JOHN STEELE, PAUL DUFFY,
and PAUL HAMSMEIER,

*Attorneys.*

_____

Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-000889-DRH-SCW.
The Honorable **David R. Herndon**, Judge Presiding.

## BRIEF OF DEFENDANTS-APPELLEES

DANIEL G. BOOTH
JASON E. SWEET
BOOTH SWEET LLP
32R Essex Street
Studio 1A
Cambridge, MA 02139
(617) 250-8602

*Attorneys for Appellee
Anthony Smith*

BART W. HUFFMAN
CHARLES M. SALMON
LOCKE LORD LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
(512) 305-4700

HUGH S. BALSAM
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0403

*Attorneys for Appellee
SBC Internet Services, LLC
(f/k/a SBC Internet Services,
Inc. d/b/a AT&T Internet
Services)*

JOHN D. SEIVER
RONALD G. LONDON
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue N.W.
Suite 800
Washington, DC 20006-3401
(202) 973-4200

*Attorneys for Appellee
Comcast Cable Communications LLC
and Comcast Corporate
Representative No. 1*

 

CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: _____14-1682_____

Short Caption: Lightspeed Media Corporation v. Anthony Smith, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

   **[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):
      SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services)
      AT&T Corporate Representative No. 1

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      Locke Lord LLP

      HeplerBroom LLC

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services) is wholly owned by BellSouth Corporation, which is wholly owned by AT&T Inc., a publicly held company.

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

      No publicly held company owns 10% or more of the stock of AT&T Inc.

Attorney's Signature: _/s/ Bart W. Huffman_____        Date: _____04/23/2014_____

Attorney's Printed Name:  Bart W. Huffman

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).   Yes __X__   No _____

Address:   600 Congress Avenue, Suite 2200, Austin, TX 78701

Phone Number:  (512) 305-4746           Fax Number:  (512) 391-4741

E-Mail Address:  bhuffman@lockelord.com

rev. 01/08 AK

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 14-1682

Short Caption: Lightspeed Media Corporation v. Anthony Smith, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   [  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Anthony Smith

_____

_____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Booth Sweet LLP

_____

_____

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   _____

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

   _____

Attorney's Signature: s/ Dan Booth                              Date: 04/23/2014

Attorney's Printed Name: Dan Booth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ✕   No _____

Address: 32R Essex Street

              Cambridge, MA 02139

Phone Number: (617) 250-8629              Fax Number: (617) 250-8883

E-Mail Address: dbooth@boothsweet.com

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: __14-1682__

Short Caption: __Lightspeed Media Corporation v. Anthony Smith, et al.__

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

  **[   ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

  __SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a AT&T Internet Services)__

  __AT&T Corporate Representative No. 1__

  _____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  __Locke Lord LLP__

  __HeplerBroom LLC__

  _____

(3)  If the party or amicus is a corporation:

  i)  Identify all its parent corporations, if any; and __SBC Internet Services, LLC (f/k/a SBC Internet Services, Inc. d/b/a__

     __AT&T Internet Services) is wholly owned by BellSouth Corp., wholly owned by AT&T, Inc. a publically held company__

  ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

     __No publicly held company owns 10% or more of the stock of AT&T Inc.__

Attorney's Signature: __/s/ Hugh S. Balsam__   Date: __June 20, 2014__

Attorney's Printed Name: __June 20, 2014 Hugh S. Balsam__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** __✕__

Address: __111 South Wacker Drive__

  __Chicago, Illinois 60606__

Phone Number: __(312) 443-0403__   Fax Number: __(312) 443-0336__

E-Mail Address: __hbalsam@lockelord.com__

rev. 01/08 AK

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __14-1682__

Short Caption: __Lightspeed Media Corporation v. Anthony Smith, et al.__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

    [   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    Comcast Cable Communications, LLC

    Comcast Corporate Representative #1

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Lashly & Baer, P.C.

    Davis Wright Tremaine LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and
    Comcast Cable Comunications, LLC is wholly owned by Comcast Holdings Corporation, which is wholly owned by Comcast Corporation, whose stock is publicly traded.

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

    No publicly held company owns 10% or more of the stock of Comcast Corporation.

Attorney's Signature: __s/ John D. Seiver__    Date: __4/25/14__

Attorney's Printed Name: __John D. Seiver__

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes __X__    No _____

Address: __1919 Pennsylvania Avenue, NW, Suite 800, Washington, DC 20006__

Phone Number: __202-973-4212__    Fax Number: __202-972-4412__

E-Mail Address: __johnseiver@dwt.com__

rev. 01/08 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ................................................................ i

TABLE OF AUTHORITIES .............................................................................................. vii

JURISDICTIONAL STATEMENT .......................................................................................1

STATEMENT OF THE ISSUE ...........................................................................................2

STATEMENT OF THE CASE .............................................................................................2

SUMMARY OF THE ARGUMENT ......................................................................................5

STANDARD OF REVIEW .................................................................................................6

ARGUMENT ..................................................................................................................6

    I.     The contempt award complied with due process ...........................................6

          A.     The sanctions should be affirmed as remedial and coercive .............7

          B.     Imposition of a 10% sanction rather than a lodestar attorney-fee did not transform a coercive and remedial contempt order into a punitive order .........................................................................9

    II.    The district court properly rejected appellant's deficient financial statements ..........................................................................................12

          A.     It was appropriate for the district court to make a contempt finding based in part on appellants' departures from GAAP ..........14

          B.     Rejection of appellants' non-GAAP compliant financials is supported by other indicia of unreliability .......................................16

    III.    The district court properly enforced the sanctions order through contempt rather than state procedures to recover on a money judgment ...........................................................................................21

A.    A sanction against counsel for misconduct is not an ordinary money judgment ...................................................................................21

B.    Contempt is an appropriate way to enforce sanctions for misconduct, especially to redress appellants' noncompliance with court orders...................................................................................23

IV.    The contempt order was based on ample evidence of record......................25

V.    The district court's application of the *United Mine Workers* factors was within its discretion and not clearly erroneous.....................................28

CONCLUSION ........................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

*A. Bauer Mech., Inc. v. Joint Arbitration Bd.,*
    562 F.3d 784 (7th Cir. 2009) ...................................................................11, 12

*Alexander v. Chicago Park Dist.,*
    927 F.2d 1014 (7th Cir. 1991) ................................................................ 27-28

*Anderson v. Litscher,*
    281 F.3d 672 (7th Cir. 2002) ..........................................................................13

*Autotech Techs., LP v. Integral Research & Dev. Corp.,*
    499 F.3d 737 (7th Cir. 1999) ..........................................................................25

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,*
    279 F.Supp.2d 3411 (S.D.N.Y. 2003)............................................................15

*Ben-Shalom v. Sec'y of Army,*
    826 F.2d 722 (7th Cir. 1987) ..........................................................................29

*Bluestone Energy Design, Inc. v. FERC,*
    74 F.3d 1288 (D.C. Cir. 1996) ........................................................................15

*California Pub. Emps.' Ret. Sys. v. Chubb Corp.,*
    394 F.3d 126 (3d Cir. 2004) ............................................................................15

*Cannon v. Loyola Univ. of Chicago,*
    676 F.Supp. 823 (N.D. Ill. 1987) ...................................................................25

*Castillo v. St. Paul Fire & Marine Ins. Co.,*
    938 F.2d 776 (7th Cir. 1991) ............................................................................9

*Cefalu v. Village of Elk Grove,*
    211 F.3d 416 (7th Cir. 2000) ..........................................................................20

*Central States, S.E. & S.W. Areas Health & Welfare Fund,*
    745 F.3d 283 (7th Cir. 2014) ..........................................................................14

vii

*Cleveland Hair Clinic,*
106 F.3d 165 (7th Cir. 1997) ........................................................................ *passim*

*Connolly v. J.T. Ventures,*
851 F.2d 930 (7th Cir. 1988) ........................................................................10

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) ........................................................................................1

*D. Patrick, Inc. v. Ford Motor Co.,*
8 F.3d 455 (7th Cir. 1993) ...........................................................................28

*De Manez v. Bridgestone Firestone N. Am. Tire, LLC,*
533 F.3d 578 (7th Cir. 2008) ..........................................................................1

*Domanus v. Lewicki,*
742 F.3d 290 (7th Cir. 2014) ...............................................................13, 20

*Dunn v. Gull,*
990 F.2d 348 (7th Cir. 1993) ..........................................................................1

*Evans v. City of Evanston,*
941 F.2d 473 (7th Cir. 1991) ........................................................................11

*Federal Mktg. Co. v. Virginia Impression Prods. Co.,*
823 A.2d 513 (D.C. Ct. App. 2003) .............................................................11

*Florin v. Nationsbank of Ga., N.A.,*
60 F.3d 1245 (7th Cir. 1995) ........................................................................11

*Frankl v. HTH Corp.,*
832 F.Supp.2d 1179 (D. Haw. 2011) ..........................................................14

*FTC v. Trudeau,*
579 F.3d 754 (7th Cir. 2009) ............................................................... *passim*

*Garbie v. DaimlerChrysler Corp.,*
211 F.3d 407 (7th Cir. 2000) ........................................................................31

*Hicks v. Feiock,*
    485 U.S. 624 (1988) ................................................................................7

*In re Enron Corp. Secs. Litig.,*
    235 F.Supp.2d 549 (S.D. Tex. 2002) ....................................................21

*In re Grand Jury Proceedings,*
    894 F.2d 881 (7th Cir. 1989) ................................................................24

*In re Grand Jury Proceedings,*
    280 F.3d 1103 (7th Cir. 2001) ................................................................9

*In re Petition of Boehringer Ingelheim Pharms., Inc.,*
    745 F.3d 216 (7th Cir. 2014) ................................................................18

*In re Resource Tech. Corp.,*
    624 F.3d 376 (7th Cir. 2010) .......................................................... *passim*

*Jewel Tea Co. v. Kraus,*
    204 F.2d 549 (7th Cir. 1953) ...........................................................6, 12

*Jolly Grp., Ltd. v. Medline Indus., Inc.,*
    435 F.3d 717 (7th Cir. 2006) ................................................................19

*Jones v. Union Pac. R.R. Co.,*
    302 F.3d 735 (7th Cir. 2002) ................................................................13

*Kuhns v. Board of Gov'rs of Fed. Reserve Sys.,*
    930 F.2d 39 (D.C. Cir. 1991) ................................................................16

*Laborers' Pension Fund v. Dirty Work Unlimited, Inc.,*
    919 F.2d 491 (7th Cir. 1990) ................................................................24

*Leman v. Krentler-Arnold Hinge Last Co.,*
    284 U.S. 448 (1932) ..............................................................................11

*Loftus v. Southeastern Penn. Trans. Auth.,*
    8 F.Supp.2d 464 (E.D. Pa. 1998), aff'd, 187 F.3d 626 (3d Cir. 1999) ...................22, 23, 24

*Luedtke Eng'g Co. v. Indiana Limestone Co.,*
   740 F.2d 598 (7th Cir. 1984) ..................................................................20

*Lulaj v. Wackenhut Corp.,*
   512 F.3d 760 (6th Cir. 2008) ..................................................................12

*McComb v. Jacksonville Paper Co.,*
   336 U.S. 187 (1949)........................................................................24, 27

*McPhaul v. United States,*
   364 U.S. 372 (1960).............................................................................13

*Mertens v. Hewitt Assocs.,*
   508 U.S. 248 (1993).............................................................................22

*Norstrom v. Wahl,*
   41 F.2d 910 (7th Cir. 1930) ..................................................................11

*Oxford Capital Ill., LLC v. Sterling Payroll Fin., LLC,*
   No. 01 C 1173, 2001 U.S. Dist. LEXIS 19246 (N.D. Ill. Nov. 26, 2001) ..............................26

*Pearle Vision, Inc. v. Romm,*
   541 F.3d 751 (7th Cir. 2008) .............................................................26-27

*People Who Care v. Rockford Bd. of Educ.,*
   111 F.3d 528 (7th Cir. 1997) ..................................................................22

*Powers v. Chicago Trans. Auth.,*
   846 F.2d 1139 (7th Cir. 1998) ................................................................18

*Prenda Law, Inc. v. Godfread,*
   No. 13-cv-4341 (N.D. Ill. Feb. 3, 2014) .................................................19

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus.,*
   525 F.3d 533 (7th Cir. 2008) ...................................................................6

*Reich v. Sea Sprite Boat Co.,*
   50 F.3d 413 (7th Cir. 1995) ...................................................................28

*Resolution Trust Corp. v. Ruggiero,*
   994 F.2d 1221 (7th Cir. 1993) ................................................................24

*Retired Chicago Police Ass'n v. City of Chicago,*
   1994 WL 201184 (N.D. Ill. May 17, 1994), *aff'd,* 76 F.3d 856 (7th Cir. 1996)...............24, 25

*Rickels v. City of South Bend,*
   33 F.3d 785 (7th Cir. 1994) ...................................................................31

*SEC v. First Choice Mgmt. Servs.,*
   678 F.3d 538 (7th Cir. 2012) ..................................................................6

*Securities & Exch. Comm'n v. First Choice Mgmt. Servs., Inc,*
   709 F.3d 685 (7th Cir. 2013) .................................................................11

*SEC v. Hyatt,*
   621 F.3d 687 (7th Cir. 2010) ...................................................................7

*Shakman v. Democratic Org. of Cook Cnty.,*
   533 F.2d 344 (7th Cir. 1976) ...................................................................7

*Shalala v. Guernsey Mem'l Hosp.,*
   514 U.S. 87 (1995)...............................................................................20

*Shillitani v. United States,*
   384 U.S. 364 (1966)..............................................................................24

*Souza v. Southworth,*
   564 F.2d 609 (1st Cir. 1977)...................................................................31

*Squillacote v. Local 248, Meat & Allied Food Workers,*
   534 F.2d 735 (7th Cir. 1976) ..................................................................10

*Tomazzoli v. Sheedy,*
   804 F.2d 93 (7th Cir. 1986) ...................................................................11

*Tonya K. v. Board of Educ. of City of Chicago,*
   847 F.2d 1243 (7th Cir. 1988) ................................................................22

xi

*Unisplay S.A. v. American Elec. Sign Co.,*
  No. CS 92-214-JLQ, 1994 WL 16780688 (E.D. Wash. July 1, 1994)....................................14

*United States v. Casey,*
  444 F.3d 1071 (9th Cir. 2006) .........................................................................................22

*United States v. Dowell,*
  257 F.3d 694 (7th Cir. 2001) .................................................................................7, 8, 26

*United States v. Lippitt,*
  180 F.3d 873 (7th Cir. 1999) .......................................................................................9

*United States v. Rylander,*
  460 U.S. 752 (1983)................................................................................13, 17, 29

*United States v. United Mine Workers of Am.,*
  330 U.S. 258 (1947)...............................................................................5, 6, 28

*U.S. ex rel. Thom v. Jenkins,*
  760 F.2d 736 (7th Cir. 1985) ...........................................................................16-17, 18

**STATUTES & RULES**

18 U.S.C. § 1030 ...........................................................................................................1

28 U.S.C. § 1291 ...........................................................................................................1

28 U.S.C. § 1331 ...........................................................................................................1

28 U.S.C. § 1367(a) ......................................................................................................1

28 U.S.C. § 1927 ..........................................................................................1, 2, 23, 24

17 C.F.R. § 201.4-01(a)(1) ..........................................................................................15

17 C.F.R. § 201.10-01(a) .............................................................................................15

Fed. R. App. P. 28(a)(8)(A)..........................................................................................13

Fed. R. Civ. P. 69 ...................................................................................................24

Ill. Rev. Stat. ch. 110A, ¶ 277(e) ..........................................................................25

**OTHER AUTHORITIES**

3 C. Wright, Federal Practice and Procedure § 704, at 159 (1969) ..........................7

Black's Law Dictionary 848 (7th ed. 1999) ............................................................22

Emily Chasan, *Four Reasons Non-GAAP Metrics Are Exploding*,
   CFO Journal (June 25, 2013) ...............................................................................20

John D. Rossi, III, *How Enron Jumped the GAAP*, Moravian College Magazine,
   Vol. 51 No. 2 (2002) ...........................................................................................21

# JURISDICTIONAL STATEMENT

Appellants' jurisdictional statement is not complete and correct.

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331, because the complaint alleged violations of 18 U.S.C. § 1030, and supplemental jurisdiction over the plaintiff's additional state-law claims, which were all part of the same case or controversy, under 28 U.S.C. § 1367(a).  Plaintiff voluntarily dismissed all claims without prejudice.  The district court had retained jurisdiction to consider sanctions. *Dunn v. Gull*, 990 F.2d 348, 350 (7th Cir. 1993) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)).  The district court sanctioned three of plaintiffs' attorneys under 28 U.S.C. § 1927.  They now appeal an order that imposed further sanctions against them and held them in civil contempt for failing to pay the earlier sanctions award.

This Court has subject-matter jurisdiction under 28 U.S.C. § 1291 because an order imposing specific sanctions on plaintiff's counsel after a case is dismissed without prejudice is a final order for purposes of appeal.  *De Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 583-84 (7th Cir. 2008).  The appeal is timely because the district court entered the contempt order on March 24, 2014 and appellants filed their notice of appeal on March 31, 2014.

## STATEMENT OF THE ISSUE

Whether it was within the district court's discretion, and not clearly erroneous, to find the appellants in civil contempt for their nonpayment of a sanctions order where:

- the sanctions order set forth an unambiguous command to pay;

- the contemnors admitted they violated that command by not paying any amount of the sanctions;

- there was therefore no compliance, let alone substantial compliance, with the sanctions order; and

- the contemnors made no effort to timely or properly comply with the sanctions order.

## STATEMENT OF THE CASE

This is the second appeal arising out of the district court's imposition of monetary sanctions under 28 U.S.C. § 1927 against three attorneys representing plaintiff Lightspeed Media Corp. for knowingly filing baseless legal claims and unreasonably and vexatiously multiplying the proceedings in the district court. Judge Murphy imposed the sanctions, representing fees and costs that defendants – Anthony Smith and two Internet service providers, AT&T Internet Services and Comcast Cable Communications LLC, appellees here – incurred in combatting the baseless lawsuit the sanctioned attorneys filed. The sanctions award was for $261,025.11, and the judge held all three of Lightspeed's attorneys – Paul Duffy, John Steele, and Paul Hansmeier –

jointly and severally liable for that amount.  *See generally* D.E. 65, 100; App. 1-3.  The three attorneys sought review of the sanctions award, which is presently the subject of an earlier appeal to this Court (No. 13-3801) D.E. 102.  Before the contempt proceedings, the sanctioned attorneys did not pay the sanctions award pending that appeal, post a supersedeas bond, or obtain a stay in the district court.

Because there was no stay or bond posted, the defendants moved for a finding of contempt or for an order requiring the attorneys to show cause why they should not be held in contempt for not paying any of the sanctions award.  D.E. 107.  The motion asked the court to hold respondents in contempt and order them to pay the attorneys' fees and costs incurred in moving for contempt, plus interest and additional daily fines until the sanctions award is paid in full.  (*Id*.)  The parties briefed the contempt motion and the district court – now Chief Judge Herndon, Judge Murphy having retired – held a show-cause hearing.  D.E. 123, 127.

At the hearing, the sanctioned attorneys admitted they had not paid any part of the award.  (App. 37, 39, 50.)  They argued – contrary to established law of this Circuit – that the sanctions award was not an equitable decree but rather was a money judgment, rendering the remedy of contempt unavailable for nonpayment.  (*E.g.*, App. 36.)  They also claimed an inability to pay the award.  (*E.g.*, App. 37.)

The district court gave each of the attorneys the opportunity to submit a financial statement from a certified public accountant documenting their averred inability to pay.

(App. 66-67.)  Each attorney submitted a financial statement for in camera review.

(App. 7.)  Defendants have not had access to the statements, but the judge was not

impressed because, he said, the statements contained material omissions.  (*Id.*)

Chief Judge Herndon issued an opinion on March 24, 2014 holding that:

- it is undisputed the sanctioned attorneys did not pay any of the sanctions order (App. 5);

- under this Court's clear-cut precedent, an order of sanctions for misconduct is an equitable decree, not a money judgment, and thus contempt lies for nonpayment (App. 6);

- all of the financial statements that the attorneys proffered omitted substantially all of the disclosures required by generally acceptable accounting principles ("GAAP") and thus did not satisfy the burden of proof to establish inability to pay the sanctions award (App. 7); and

- civil contempt is appropriate (App. 8-11).

The court directed the attorneys to pay interest plus coercive and remedial sanctions as

follows:

- interest on the sanctions award under the federal interest rate running from the date of liability to the date of compliance (App. 11);

- an amount totaling $26,102.58, representing 10% of the original sanctions award, to cover defendants' additional costs incurred in litigating the contempt motion (App. 12); and

- a daily fine beginning March 31, 2014 if the attorneys failed to pay the full award or obtain and post a bond (App. 12-13).

This time Steele (but not the other two attorneys) obtained and posted a

supersedeas bond in the amount of $287,300 (covering the original sanctions amount

plus the interest and $26,102.58 awarded as additional costs in the order that is the subject of this appeal), and the judge stayed enforcement of the sanctions and contempt orders pending appeal.  D.E. 148, 149.

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion or clearly err in the contempt order. Appellants do not argue that their noncompliance with the sanctions order was anything other than complete, knowing, and willful.  Instead, the sanctioned attorneys argue – wrongly in every respect – that their contempt was improperly punished; that the district court misunderstood their burden of production, or its own sanctions order; that their contempt was not sufficiently proved; and that the contempt order was otherwise inequitable.  But the contempt order properly imposed compensatory and coercive civil sanctions, not punitive criminal sanctions.  The district court also properly found that the attorneys failed to meet their burden of proof (not just production) regarding their defense of inability to pay.  The district court properly construed its sanctions order not as a money judgment but as a sanctions order enforceable through contempt, consistent with this Court's precedent.  Finally, there was undisputed evidence of appellants' contempt of the sanctions order, and the record easily supports the district court's application of the equitable *United Mine Workers* factors in imposing the contempt sanctions.

**STANDARD OF REVIEW**

The "action of the trial court upon a charge of contempt is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous." *Jewel Tea Co. v. Kraus*, 204 F.2d 549, 551 (7th Cir. 1953) (quotation marks and citation omitted). As this Court has explained:

> We do not disturb a district court's decision regarding a contempt petition unless we find that it abused its discretion. *Stotler & Co. v. Able,* 870 F.2d 1158, 1163 (7th Cir. 1989). Put another way, we "must affirm if the district court's determination is plausible in light of the record in its entirety." *Zeige Distrib. Co., Inc. v. All Kitchens, Inc.*, 63 F.3d 609, 612 (7th Cir. 1995) (citations omitted).

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 541-42 (7th Cir. 2008).

**ARGUMENT**

**I.     The contempt award complied with due process.**

The contempt order is not reversible as imposing a punitive sanction without criminal proceedings – rather, the district court imposed only "coercive and remedial sanctions." (App. 12.) Civil contempt sanctions may be coercive, compensatory, or both. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947). (*See also* App. 8.) For civil contempt, criminal proceedings are not required (*contra* App. Br. 8); all that is necessary is "notice and an opportunity to be heard." *SEC v. First Choice Mgmt. Servs.*, 678 F.3d 538, 544 (7th Cir. 2012); *accord SEC v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010). Appellants concede that they received such process. (App. Br. 3-4.) And as shown

below, there is no basis for appellants' claim that the 10% sanction was unwarranted or punitive.  (App. Br. 8-9.)

### A.    The sanctions should be affirmed as remedial and coercive.

The contempt order here was not punitive inasmuch as the "real distinction between criminal and civil contempt is the nature of the relief asked and the purpose of that relief."  *Shakman v. Democratic Org. of Cook Cnty.*, 533 F.2d 344, 348-49 (7th Cir. 1976) (quoting 3 C. Wright, Federal Practice and Procedure § 704, at 159 (1969)).  "[C]onclusions about the purposes for which relief is imposed are properly drawn from an examination of the character of the relief itself."  *Hicks v. Feiock*, 485 U.S. 624, 636 (1988).  If an order's "purpose is to assure future compliance or to compensate [] for injury caused by the respondent's violation," the "nature of the relief is remedial."  *Shakman*, 533 F.2d at 349.

As to the contempt order's remedial purpose, an obligation to pay money "is remedial when it is paid to the complainant, and punitive when it is paid to the court."  *Hicks*, 485 U.S. at 632.  Here, the district court ordered the amounts be paid only to Smith, AT&T, and Comcast.  (App. 12.)  As the court explained, its action "contemplated[] the attorney's fees and costs incurred by defendants during the course of litigating this contempt motion" be reimbursed.  (*Id*.)  Citing this Court's decision in *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001), the district court explained that "[r]emedial sanctions compensate the complainant for his losses caused by the

contemptuous conduct." (App. 8.) In this respect, the requirement to pay 10% of the

sanctions previously imposed served to "compensate [defendants/appellees] for losses

sustained as a result of the contumacy." *Dowell*, 257 F.3d at 699. (*See also* App. 9 ("the

magnitude of the harm [is] significant in financial terms for the defendant[s] in added

attorney's fees and costs of the contempt motion").)

The additional payment also served as a coercive measure to redress appellants'

noncompliance with the sanctions order, which was ongoing as of the contempt order.

In response to appellants' violation of the sanctions order by failing to pay, the

contempt order required payment of the $261,025.11 imposed in the sanctions order,

with a 10% sanction ($26,102.58) plus interest, with further daily fines starting at

$500/day and rising to $1000/day if noncompliance continued. (App. 11-13.) This

combination was coercive insofar as it was "the most effective way to ensure

compliance with the Sanctions Order and to uphold the integrity of the Court," (*id*. 12),

which proved correct because, just seven days later, appellants filed a motion to

approve a $287,300 supersedeas bond. D.E. 141.

Appellants argue that "[t]he fine is not coercive, because it sanctions Duffy,

Steele and Hansmeier for past conduct and provides no opportunity for them to purge

the sanction by future compliance." (App. Br. 6, 9 (citing *FTC v. Trudeau*, 579 F.3d 754,

770 (7th Cir. 2009).) But the only "fines" were the coercive daily obligations that

appellants avoided by posting bond. Any claim that appellants had no opportunity to

purge is wrong, as they could limit the amount owed by promptly paying or, as Steele ultimately did, by posting a bond.  All that is required for a contempt sanction to be coercive, and therefore civil, is that the contemnor be "able to avoid the penalty, *or some part of it*, by complying." *Trudeau*, 579 F.3d at 770 (emphasis added).  Appellants thus could have purged the contempt any time they wanted.  Indeed, this Court has affirmed civil contempt sanctions that "could be purged by paying the expenses and fees of the defense." *Castillo v. St. Paul Fire & Marine Ins. Co.*, 938 F.2d 776, 780 (7th Cir. 1991). Because appellants "retained the ability to purge [their] contempt by paying the fine, the contempt order was civil," *In re Grand Jury Proceedings*, 280 F.3d 1103, 1108 (7th Cir. 2001) (citing with approval *United States v. Lippitt*, 180 F.3d 873, 877 (7th Cir. 1999)), and there are no grounds for their claim to the contrary.

> **B.  Imposition of a 10% sanction rather than a lodestar attorney-fee did not transform a coercive and remedial contempt order into a punitive order**.

The contempt order's penalty was not "greater than necessary" and thus punitive simply because the district court based the amount on 10% of the fees imposed in the sanctions order rather than ordering a new round of briefing on attorneys' fees. (App. Br. 9 (quoting *Trudeau*, 579 F.3d at 770).)  Complaints that "[t]he district court did not explain the methodology it used," (*id*.), have no basis in fact.  The court used an alternative to traditional lodestar calculation because "requiring defense counsel to provide billing statements would most certainly cause delay and further litigation thereby negating the goals of this order and only further harming the defendants."

(App. 12.)   This falls squarely within this Court's allowance of "broad discretion to fashion contempt remedies … 'based on the nature of the harm and the probable effect of alternative sanctions.'"   *Trudeau*, 579 F.3d at 771 (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir. 1988)).

The "error present in Trudeau" is not implicated by the contempt order here. (App. Br. 9.)  In *Trudeau*, a few months after initially assessing $5.1 million in contempt sanctions against the defendant, the district court modified the amount to $37.6 million, an increase the FTC had never requested.  579 F.3d at 762.  The key problems that this Court identified, *i.e.*, that it was accordingly "left clueless as to how or why the award ballooned" or "[w]hat kinds of 'loss' [] that figure approximate[d]," *id*. at 770-71, are not present here.  There was no unprompted revision of the sanctions order, just the relief defendants requested in their contempt motion, *see* D.E. 107 at 5, to compensate for having to seek the contempt finding in the first instance, as the district court explained. (App. 12.)  Further, in *Trudeau*, the order was to pay the FTC rather than defrauded consumers so, unlike here, it "look[ed] more like a criminal fine than a compensatory sanction."  579 F.3d at 774.

Moreover, a full lodestar analysis was unnecessary.  This Court has long held that direct evidence of expenses is not required in imposing sanctions.  *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 748 (7th Cir. 1976).  When sanctioning civil contempt, costs and attorney's fees are "matters such as courts are

often called to pass upon, even in the absence of opinion evidence as to amount."

*Norstrom v. Wahl*, 41 F.2d 910, 914 (7th Cir. 1930). As "civil contempt is an equitable

action," *Trudeau*, 579 F.3d at 775, there is "no reason why equitable principles should

not control the measure of [compensatory] relief." *Leman v. Krentler-Arnold Hinge Last*

*Co.*, 284 U.S. 448, 457 (1932). "There is no one correct formula for determining a fee

award," *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986) (per curiam), and this Court

will not disturb such fee awards on appeal "[s]o long as the method selected is not

arbitrary and is likely to arrive at a fair fee." *Evans v. City of Evanston*, 941 F.2d 473, 477

(7th Cir. 1991). *Cf. Federal Mktg. Co. v. Virginia Impression Prods. Co.*, 823 A.2d 513, 530

n.10 (D.C. Ct. App. 2003). Indeed, the Court has endorsed "the percentage of recovery

method" as an alternative to the lodestar, *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245,

1246 n.2 (7th Cir. 1995), which is exactly what the district court used here, with the

recovery being the fees previously awarded in the sanctions order plus a percentage to

recognize the added expense of having to seek a contempt finding.

The 10% figure in any event reasonably approximated the two primary lodestar

factors, hours incurred and the counsel's billing rates, *e.g., A. Bauer Mech., Inc. v. Joint*

*Arbitration Bd.*, 562 F.3d 784, 793 (7th Cir. 2009), which the district court had already

established and found reasonable in the sanctions order. (App. 27.) *See also First Choice*

*Mgmt. Servs.*, 709 F.3d at 688 (affirming $600,000 civil contempt sanction "based on

evidence of the costs that had been presented earlier in this protracted proceeding").

The district court also had sufficient evidence of counsel's rates based on the sanctions order evidence, and after 15 years on the federal bench (and seven before that on the state bench), Chief Judge Herndon knew well how much time defense counsel could reasonably have taken to litigate the contempt, without having to examine new billing statements.  *See*, *e.g.*, *Jewel Tea*, 204 F.2d at 551; *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 768 (6th Cir. 2008) ("Calculation of fees will always involve some approximation, and the judge based his decision on his long experience as a judge and a private practitioner."). The district court thus had ample grounds to support its determination that the 10% figure was a reasonable civil sanction.

As this Court has noted, it is proper to "defer to the district court's assessment because it was familiar with the case and therefore in the best position to assess its complexity and the appropriate amount of time required for each task."  *A. Bauer Mech.*, 562 F.3d at 793.  Appellants acknowledge "the … 10% multiplier might be reasonable." (App. Br. 10.)  That being the case, there was no abuse of discretion.

## II.     The district court properly rejected appellants' deficient financial statements.

In the district court and again here, appellants claim they should not be held in contempt because they cannot pay appellees the amounts due under the sanctions order.  (App. Br. 11-15, 24; App. 6-7.)  However, the district court correctly rejected that claim, holding that appellants failed to carry their "burden of establishing clearly, plainly, and unmistakably that compliance is impossible," *i.e.*, a "complete inability to

pay."  (App. 7 (quoting *In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010).)  *Cf.*

*Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (impossibility standard sets a high

bar).  Though appellants recognize this standard (App. Br. 11 (citing *United States v.*

*Rylander*, 460 U.S. 752, 758 (1983); *McPhaul v. United States*, 364 U.S. 372, 379 (1960)), they

erroneously claim they were faulted only for failing to "satisfy the burden of

production," (*id*.) (emphasis added), when in fact, the district court found they failed to

satisfy their burden of proof on their professed inability to pay.  (App. 8.)  Moreover,

they utterly fail to discuss or even cite the critical case relied on below (*Resource Tech.*).

Appellants' extended discussion about GAAP seems intended to mask a larger,

and fatal, flaw in their argument.  That is, nowhere do they even contend, much less

explain why, their financial statements established a total inability to pay the sanctions

the district court levied.  This is no minor slip – rather, it means appellants have waived

on appeal any argument that they lack any ability to pay.  The "argument" section of

any appellants' brief "must" contain their "contentions and the reasons for them, with

citations to the authorities and parts of the record on which the appellant relies."  Fed.

R. App. P. 28(a)(8)(A).  And, of course, arguments not raised in the appellants' brief are

forfeited on appeal.  *See*, *e.g., Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 741, 744 (7th Cir.

2002); *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002).  Thus, appellants were

obliged – but failed – to point out how the evidence they submitted, such as it was,

establishes their inability to pay. The "issue" of GAAP compliance is now a non-issue,

because the larger point of appellants' inability to pay is no longer in this appeal.

In any event, as appellants note, the court ordered them to furnish statements

prepared by a CPA (App. Br. 4 (citing App. 7)), but upon doing so, "[t]hey submitted

incomplete, and to say the least suspicious, statements of financial condition." (App. 7.)

Each financial statement apparently included a CPA letter indicating not only a

departure from GAAP, but omission of "substantially all of the disclosures [GAAP]

required." The court thus properly exercised its discretion to find "these statements

insufficient to establish [appellants'] inability to pay." (*Id*.)

### A. It was appropriate for the district court to make a contempt finding based in part on appellants' departures from GAAP.

As this Court recently confirmed, in contempt proceedings, district courts are

fully justified in rejecting plainly deficient financial statements. *Central States, S.E. &

S.W. Areas Health & Welfare Fund*, 745 F.3d 283, 287 (7th Cir. 2014). It is not unusual for

district courts to cite accepted accounting principles in determining ability to pay. *See,

e.g., Unisplay S.A. v. American Elec. Sign Co.*, No. CS 92-214-JLQ, 1994 WL 16780688, at *2

(E.D. Wash. July 1, 1994) (refusing to stay execution of judgment in part because

"according to the plaintiff's [CPA], the financial[s] … were not prepared according to

accepted accounting principles"); *Frankl v. HTH Corp.*, 832 F.Supp.2d 1179, 1213 (D.

Haw. 2011) (finding failure to prove inability to pay, and thus contempt, where party

"should have known that the limited financial information [] provided was wholly

insufficient to support [a] plea of poverty"); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 279 F.Supp.2d 341, 348, 350-51 (S.D.N.Y. 2003) ("Self-serving, conclusory statements with incomplete financial records do not show an inability to pay ….").

Federal agencies also rely on GAAP for assessment of financial condition.  *See, e.g., Bluestone Energy Design, Inc. v. FERC*, 74 F.3d 1288, 1295 (D.C. Cir. 1996) ("Bluestone's own [CPA] discredited the financial statement … as a departure from [GAAP] and noting the omission of substantially all of the information ordinarily included in financial statements.") (quotation marks omitted).  *Compare* D.E. 136 at 7 ("CPA indicates a departure from [GAAP and] further notes [appellants] elected to omit substantially all … disclosures").  As a sister Circuit noted, "[f]inancial results reported in violation of GAAP are presumptively misleading."  *California Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 152 n.16 (3d Cir. 2004) (citing 17 C.F.R. § 201.10-01(a)).  In fact, under the SEC rule that *Chubb* applies, financials not prepared in accord with GAAP are presumed misleading or inaccurate "despite footnote or [] other disclosures," 17 C.F.R. § 201.4-01(a)(1), which explanatory material was missing altogether from appellants' financial statements.  (*See* App. 7 (appellants "omit[ted] substantially all … disclosures [GAAP] required").  In the context of this prevailing framework, it was well within the district court's discretion to reject appellants' financial statements.

Appellants raise the sophistry that "GAAP, by all appearances, does not even exist for statements of inability to pay."  (App. Br. 15.)  GAAP certainly exists for

statements of financial worth, which is what the district court requested.  (App. 67-68.)

"Even [appellant's] brief in this court does not reveal the principles [] followed in

determining what liabilities to report and in what amounts" so "whatever accounting

system [they were] using, it was not GAAP."  *Kuhns v. Board of Gov'rs of Fed. Reserve

Sys.*, 930 F.2d 39, 41 (D.C. Cir. 1991) (affirming that petitioner failed to provide reliable

financial information showing net worth).  There is no mystery as to the GAAP

applicable here.  *See* AICPA Statement of Position (SOP) 82-1, Accounting and Financial

Reporting for Personal Financial Statements.

## B.  Rejection of appellants' non-GAAP compliant financials is supported by other indicia of unreliability.

Appellants also are wrong in claiming "all the district court did" on the issue of

inability to pay was reject their financials for departing from GAAP and omitting

substantially all GAAP-required disclosures.  (App. Br. 12 (quoting App. 6-7).)  In

considering appellants' ability to pay the $261,000 sanction levied in this case, or to

comply by posting a supersedeas bond, the court also took notice of appellants' ability

to post a supersedeas bond of over $100,000 in a different case, and to similarly post

nearly $136,000 in yet another.  (App. 11 ("counsel clearly had the ability to pay in those

instances and they failed to provide … information [the Court] needed … to adequately

make an accurate assessment regarding their current ability").)  *Compare Resource Tech.*,

624 F.3d at 387 ("alleged contemnor's past ability to comply with a court order triggers

a presumption that it has a present ability to comply"); *U.S. ex rel. Thom v. Jenkins*, 760

F.2d 736, 739 (7th Cir. 1985) ("It is well-settled that if a court finds that a [contemnor] could at some time in the past have complied …, [it] should presume a present ability to comply and impose on the alleged contemnor the burden of producing evidence to establish present inability.") (citing, *inter alia*, *Rylander*, 460 U.S. at 757).

Here, even though appellants claimed a complete inability to pay the $261,025.11 that the sanctions order awarded, they managed to post a supersedeas bond for $287,300 just a week after the contempt order.  D.E. 141, 141-1, 149.  This gives lie to any claim that their financial statements made it clear, plain, or unmistakable that compliance was impossible.  This alone suggests accurate financial statements would have shown compliance was not "impossible."

The district court additionally noted how the show-cause hearing addressed appellants' financial means, and the extent to which they "publicly touted making millions of dollars."  (App. 10 n.1.)  After the court was directed to news reports to that effect, eliciting strenuous objection by appellants that no such statement was made, the court was "quickly" able to find an article available publicly online, which recounted that, in response to suggestions that appellants have made $15 million dollars settling suits like this one, the only rejoinder was:  "Maybe a little less.  We don't track the amount we've recovered.  More than a few million."  (Id.)  (*See also* App. Br. 17-18.)  The district court, along with noting the disingenuousness of the objections to the contrary, appropriately relied on this admission as part of its ability-to-pay analysis.  Alongside

all of this, it was well within the court's discretion to determine that appellants' non-GAAP compliant financial statements were, *e.g.*, "self-serving, … uncorroborated; and for these reasons … incredible." *Thom*, 760 F.2d at 740. *See also id.* at 739 ("Because district court judges are in a much better position to assess [] credibility … we give great deference to their [] judgments.").

Which in turn speaks to a larger point. The district court specifically cited appellants' "misrepresentations and half-truths" and "clear disrespect of the Court." (App. 10.) Its rejection of appellants' financial statements as "suspicious" and "incomplete" for their departures from GAAP and omissions of disclosure (*id.* at 7), thus takes on additional meaning with – and is further explained by – the healthy skepticism built up by appellants' dissembling below, and elsewhere, as brought to the court's attention. This was not a case where a contempt finding entered on grounds that financial statements "were 'incomplete' because they failed to disclose Duffy, Steele, and Hansmeier's exposure to, *e.g.*, natural disasters" (App. Br. 14), but for their failure to be credible. Nor was the contempt here incurred for, *e.g.,* protecting a confidential source, *e.g., Powers v. Chicago Trans. Auth.*, 846 F.2d 1139 (7th Cir. 1998), or out of a principled refusal tempting contempt by a party truly serious about prompt appellate review. *In re Petition of Boehringer Ingelheim Pharms., Inc.*, 745 F.3d 216, 221 (7th Cir. 2014) (Hamilton, J., dissenting). Rather, it issued because appellants ignored a clear directive – itself imposed in large part due to appellants' deceit and disrespect of

judicial processes – to pay a sanction (or to post a supersedeas bond, or timely seek a

stay) without proving they could not pay any part of the sanction (which, as it turned

out, they could afford, per the bond thereafter posted).

Chief Judge Herndon had before him the long history of this case, including

Judge Murphy's orders imposing sanctions on grounds that this case "smacked of

bullying pretense," sought "meritless 'emergency' discovery," D.E. 65 at 1, and

involved "baseless" and "frivolous" claims, *id*.; D.E. 100 at 8-9, and that all of the

appellants "exhibited a 'serious and studied disregard for the orderly process of

justice.'"  D.E. 100 at 10 (quoting *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720

(7th Cir. 2006)).  Judge Murphy had also found that:

> These men have shown a relentless willingness to lie to the Court on
> paper and in person, despite being on notice that they were facing
> sanctions in this Court, being sanctioned by other courts, and being
> referred to state and federal bars, the United States Attorney in at least
> two districts, one state Attorney General and the Internal Revenue Service.

*Id*. at 10 & nn.2-6 (footnotes omitted).  Chief Judge Herndon was also well aware of

sanctionable conduct in a different Prenda Law case, where Duffy lied in open court

about one of Judge Herndon's rulings when called to task.  *See* D.E. 119 at 2 & n.3 (citing

Mem. Op. and Order, Doc. No. 60, *Prenda Law, Inc. v. Godfread*, No. 13-cv-4341 (N.D. Ill.

Feb. 3, 2014) ("To fabricate what a federal judge said in a ruling before another court

falls well outside the bounds of proper advocacy and demonstrates a serious disregard

for the judicial process.").

It is thus little wonder – after their penchant for mendacity was cited by both Judge Murphy and Judge Herndon, including the latter's noting Steele's "disingenuous" claim of destitution (App. 10 n.1) – that appellants' unexplained departures from standard accounting practices led to rejection of the financial statements. That rejection cannot serve as reversible error given the broad discretion district courts enjoy on such evidentiary, factual, and credibility matters. *E.g., Cefalu v. Village of Elk Grove*, 211 F.3d 416, 426 (7th Cir. 2000); *Luedtke Eng'g Co. v. Indiana Limestone Co.*, 740 F.2d 598, 601 (7th Cir. 1984); *Domanus*, 742 F.3d at 297-98. This is especially so here, where prior conduct suggests a motive for purposefully understating income or concealing assets.

The "authorities" that appellants cite do not help their cause. Appellants' over-reliance on Supreme Court dicta about GAAP is curious, (*see* App. Br. 12 & 13 (block-quoting and citing *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100-01 (1995)), because *Guernsey* did not even involve application of GAAP to determine the reliability of any individual's financial statements, but rather simply affirmed that HHS had not incorporated GAAP into its rules. *See* 514 U.S. at 101 (GAAP "ill serves the needs of Medicare reimbursement and its mandate to avoid cross-subsidization"). Nothing is added by a blog suggesting that non-GAAP approaches are permissible when the goal is to provide "metrics in financial reports [that] aren't misleading," *see* Emily Chasan, *Four Reasons Non-GAAP Metrics Are Exploding*, CFO Journal (June 25, 2013) (cited App.

Br. 13), where for all appearances appellants' goal here as in the past was, in fact, to mislead.  *Cf. In re Enron Corp. Secs. Litig.,* 235 F.Supp.2d 549, 706 (S.D. Tex. 2002) ("Lead Plaintiff has described several similar prior fraudulent audits of other companies, establishing a pattern of such [Arthur Anderson] conduct, and the SEC's repeated imposition of penalties[.]").  When litigants are left to argue that at least they are (assertedly) more trustworthy than Enron, well, that speaks for itself.  (*See* App. Br. 13 (citing John D. Rossi, III, *How Enron Jumped the GAAP*, Moravian College Magazine, Vol. 51 No. 2 (2002)).)

## III.    The district court properly enforced the sanctions order through contempt rather than state procedures to recover on a money judgment.

The district court did not err in finding the sanctions order was enforceable through contempt.  "'Use of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.'"  (App. 6 (quoting *Cleveland Hair Clinic*, 106 F.3d 165, 166 (7th Cir. 1997)).)  While money judgments and equitable sanctions orders are distinct, the contempt power of the district court reaches both.  There was no error in redressing appellants' contempt through civil contempt.

### A.    A sanction against counsel for misconduct is not an ordinary money judgment.

The sanctions order was equitable and as such was properly enforced through a contempt order.  The order lacks the hallmarks of a "money judgment," which is one "for damages subject to immediate execution, as distinguished from equitable or

injunctive relief." Black's Law Dictionary 848 (7th ed. 1999). "The opposite of a money judgment is equitable or injunctive relief[.]" *United States v. Casey*, 444 F.3d 1071, 1075 (9th Cir. 2006) (citing Black's). The sanctions order did not enter a judgment for damages, but rather required payment of attorney's fees and costs which, as this Court has recognized, "are not damages." *Tonya K. v. Board of Educ. of City of Chicago*, 847 F.2d 1243, 1246 (7th Cir. 1988). "Money damages are, of course, the classic form of legal relief," but restitution is a form of relief "typically available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 256 (1993). Such an order "embodied in an equitable decree ... [is] enforceable by contempt sanctions and continuing federal judicial control." *People Who Care v. Rockford Bd. of Educ.*, 111 F.3d 528, 535 (7th Cir. 1997).

*Cleveland Hair Clinic*, which is applicable to this case, was applied instructively for present purposes in *Loftus v. Southeastern Penn. Trans. Auth.*, 8 F.Supp.2d 464, 468 (E.D. Pa. 1998), *aff'd*, 187 F.3d 626 (3d Cir. 1999) (table case). Like appellants, plaintiff's attorney in *Loftus* was ordered to pay attorneys' fees to defendants for pursuing a frivolous suit, but appealed without making payment. *Id.* at 466. And like appellants, he argued the order imposing sanctions was "a money judgment, and, therefore, should be enforced by writ of execution rather [than] through contempt." *Id*. at 468. This was rejected as "legally incorrect." As the court explained, "use of the contempt power to enforce a sanction for misconduct is appropriate because [such] a sanction … is not an ordinary money judgment." *Id*. (citing *Cleveland Hair Clinic*, 106 F.3d at 166).

Sanctions are instead against the attorney, not the party, and relate to the lack of merit of the claim in the litigation. *See* 28 U.S.C. § 1927 ("*Any attorney* … who so multiplies the proceedings … unreasonably and vexatiously may be required by the court to satisfy personally the excess costs … and attorneys' fees reasonably incurred ….") (emphasis added). Echoing our analysis above, the *Loftus* court continued that "requiring counsel to pay attorney fees for counsel's misconduct during the litigation," implicates not just parties squaring off over money but also the sanctioning court. 8 F.Supp.2d at 468. Consequently, "distinctions between sanctions and money judgments are warranted in light of public policy." *Id*. The district court here, like the *Loftus* court, deemed the contempt order's sanctions "the most effective way to ensure compliance with the Sanctions Order and to uphold the integrity of the Court." (App. 12.) It did nor err in doing so.

> ## B. Contempt is an appropriate way to enforce sanctions for misconduct, especially to redress appellants' noncompliance with court orders.

Appellants raise a red herring in arguing that "[n]othing in *Cleveland Hair Clinic* [] affirmatively states that district courts, as a matter of law, lack the discretion to impose sanctions in the form of an ordinary money judgment." (App. Br. at 17-18.) While the district court chose to enforce its order through civil contempt, it never stated or presumed contempt was the exclusive means of enforcement. Contempt is an appropriate means to enforce a sanction for misconduct in part because a court may enforce any of its orders or decrees through civil contempt under its "inherent power to

enforce compliance … through civil contempt." *Shillitani v. United States*, 384 U.S. 364,

370 (1966).  This is so regardless whether relief is remedial or coercive.  *McComb v.

Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949).  *See* also *In re Grand Jury Proceedings*, 894

F.2d 881, 884 (7th Cir. 1989).

    Civil contempt is an especially appropriate means to enforce sanctions against

attorneys for misconduct in litigation, including nonpayment of a court's imposition of

sanctions.  *See Cleveland Hair Clinic*, 106 F.3d at 166; *Loftus*, 8 F.Supp.2d at 468; *Retired

Chicago Police Ass'n v. City of Chicago*, 1994 WL 201184 (N.D. Ill. May 17, 1994) (Section

1927 and Rule 11 sanctions), *aff'd*, 76 F.3d 856, 868-69 (7th Cir. 1996) (vacating sanctions

on other grounds).  The district court's approach is not undermined by potential

availability of enforcement of the sanctions order through a writ of execution.  While

Fed. R. Civ. P. 69 provides that a federal court may use the procedures of the state in

which it sits, a writ of execution is not an exclusive remedy for contempt in Illinois.

*Laborers' Pension Fund v. Dirty Work Unlimited, Inc.*, 919 F.2d 491, 494 (7th Cir. 1990)

("Illinois … procedure also establishes that contempt is a proper means of enforcement

of a court order[.]").  As this Court observed in *Resolution Trust Corp. v. Ruggiero*, 994

F.2d 1221 (7th Cir. 1993), because enforcement proceedings "are meant to be swift,

cheap, [and] informal," it is unlikely Rule 69 "meant to put the judge into a procedural

straitjacket, whether of state or federal origin."  *Id*. at 1226.  *See also id*. ("Moreover,

Illinois law appears to leave the procedure to be followed … largely to the judge's discretion") (citing Ill. Rev. Stat. ch. 110A, ¶ 277(e)).

Appellants' attempt to distinguish between a money judgment and a sanctions order is unavailing.  Any court order may be enforced in civil contempt, including a judgment, as this Court recognizes.  *Autotech Techs., LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 1999) ("Once a court is entitled to exercise subject matter jurisdiction over the suit, it has the full panoply of powers necessary to bring that suit to resolution,… one of the most important of [which] is the power to punish contempt of court.").  This includes "judgment orders" requiring plaintiff's counsel to pay defendants' attorney's fees under Section 1927.  *See Retired Chicago Police Ass'n*, 1994 WL 201184, at *2 ("district court may secure compliance with its own decrees in civil contempt proceedings"); *Cannon v. Loyola Univ. of Chicago*, 676 F.Supp. 823, 825-26 (N.D. Ill. 1987).

## IV.  The contempt order was based on ample evidence of record.

The district court did not err in finding sufficient proof of appellants' contempt and thus satisfaction of the requirements that there be an unambiguous command, violation thereof, lack of any substantial compliance, and failure to take reasonable and diligent steps to comply.  (App. Br. 19 (citing *Trudeau*, 579 F.3d at 763).)  Appellants claim sufficient proof was not proffered on these elements (*id.* 19-21), but they satisfied half the elements themselves, via concessions of noncompliance in open court.  The

sanctions order unequivocally required the appellants to pay $261,025.11 within 14 days

after November 27, 2013. (App. 28.) Further, despite initially arguing that the

defendants never proved nonpayment by affidavit, at the show-cause hearing each

appellant readily confirmed his noncompliance. (App. 37-38 (Hansmeier: "I have not

paid the other side $250,000, that's correct."); *id*. 39 (Steele acknowledging

noncompliance and arguing inability to comply); *id*. 50 (The Court: "You have not paid

anything toward the order Judge Murphy ordered?" Duffy: "I have not.").)

These confirmations were all the evidence the district court required. As Chief

Judge Herndon held, "plaintiff's counsel admitted on the record to noncompliance, each

stating that they had not paid the sanction amount to defendants or otherwise sought a

supersedeas bond." (App. 4.) This also made clear appellants' failures to substantially

comply or to take reasonable and diligent steps to do so. Affidavits or further proof

were unnecessary: "a court is authorized to impose civil contempt sanctions upon the

court's own finding that a party has violated the court's unequivocal command by clear

and convincing evidence." *Oxford Capital Ill., LLC v. Sterling Payroll Fin., LLC*, No. 01 C

1173, 2001 U.S. Dist. LEXIS 19246, at *10 (N.D. Ill. Nov. 26, 2001) (emphasis added)

(citing *Dowell*, 257 F.3d at 699).

In this Court, appellants shift from arguing a lack of proof of noncompliance to

lack of proof of a reasonable and diligent efforts to comply. (App. Br. 20.) As an initial

matter, appellants waived this issue by failing to raise it below. *Pearle Vision, Inc. v.*

*Romm*, 541 F.3d 751, 759 (7th Cir. 2008). Indeed, appellants never claimed that they tried to satisfy the sanctions order at any point before the contempt order, but rather flouted their obligation to comply. But even if the issue were not waived, the record amply supports the finding below that appellants "willfully violated the Sanctions Order" and "made no effort to comply." (App. 8-9.) Appellants did not even seek to stay the sanctions order until faced with the contempt motion. Even then, Steele's belated stay motion did not offer a supersedeas bond, D.E. 114, 115, a point not lost on the district court, even if appellants, bizarrely, look right past it in citing the record. (*See* App. Br. 20 (discussing App. 6).)

Appellants' only argument on this point that is more than aside – whether there was an unambiguous command – fails as surely as do their more half-hearted objections. Feigned confusion over the sanctions order cannot excuse their nonpayment. (*See, e.g.*, App. 51.) As the district court rightly noted, if appellants were "confused," then "they could have filed a motion to clarify." (App. 6) *Accord Jacksonville Paper*, 336 U.S. at 192 ("Respondents could have petitioned the District Court for a modification, clarification or construction of the order. * * * * They knew they acted at their peril."). *See also Cleveland Hair Clinic*, 106 F.3d at 168 ("A lawyer dismayed by an adverse ruling must obey, however much he disagrees with its wisdom. Swift compliance is especially important when the genesis of the adverse ruling is misconduct in the litigation; refusal to make amends compounds the infraction."); *Alexander v.*

*Chicago Park Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991); *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 415 (7th Cir. 1995).  Ultimately, the appellants' claimed confusion is irrelevant to civil contempt – even if they could not tell that the sanctions order imposed a "sanction," it was an unambiguous command that they did not heed.

**V.  The district court's application of the *United Mine Workers* factors was within its discretion and not clearly erroneous.**

The Court should reject appellants' argument that the district court erred in evaluating the *United Mine Workers* civil contempt factors.  Review of a district court's application of *United Mine Workers* is deferential:  this Court "will not reverse … unless the result was clearly erroneous or unless we find an abuse of discretion by the district court."  *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993) (quotation marks and citation omitted).  Here, appellants challenge the district court's ruling with respect to only three of the *United Mine Workers* factors:  magnitude of harm, willfulness, and ability to pay.  Appellants concede one of the four *United Mine Workers* factors:  that the sanctions were likely to be effective.  (App. 12.)  Steele's sudden ability to post a bond, after claiming an inability to pay, demonstrated the sanctions' effectiveness.

It was well within the district court's discretion to determine that the character and magnitude of the harm caused by appellants supported a finding of contempt.  The court cited appellants' actions in filing baseless claims, and unreasonably and vexatiously multiplying the proceedings, and found these acts resulted in significant financial harm to the defendants and undermined the integrity of the court.  (App. 9.)

These conclusions are not reasonably open to dispute.  It is "well established that a civil contempt proceeding does not reopen the legal or factual basis of the order alleged to have been disobeyed."  *Ben-Shalom v. Sec'y of Army*, 826 F.2d 722, 723 (7th Cir. 1987) (citing *Rylander*, 460 U.S. at 756-57).

In the appeal of the sanctions order, the appellees here, also appellees in the former case, explained in detail the utter baselessness of the legal claims these attorneys asserted against them – only to have appellants dismiss the claims voluntarily, after more than $250,000 had been spent in defense.  Further, appellants invoked the authority of the district court in asserting their frivolous claims, wasting the time and energy of two judges, their clerks, and other supporting court personnel.

Appellants' brief does not even address these issues.  Instead, it quibbles with the district judge's choice of words in finding appellants' failure to pay the sanctions order was willful.  (App. Br. 21-22.)  Appellants do not deny that the contempt was willful, arguing only that Judge Herndon did not cite to the record to support the willfulness finding.  But here, too, there was no abuse of discretion or clear error, as the failure to pay was indeed willful.  Consider the "excuses" appellants have made for not paying.

First they offered the bogus statement that defendants never "proved" the award had not been paid, D.E. 113, at 2, a ludicrous argument given appellants' own inevitable admission that they had, in fact, not paid.  Then the appellants offered feigned

uncertainty about the nature of the sanctions as an excuse for not paying.  But given this

Court's unmistakable command and that sanctions for misconduct are not money

judgments, *see supra* § III, appellants' professed uncertainty could not have been

genuine, or offered in good faith.

It was also relevant for the district court to consider appellants' dissembling at

the show-cause hearing, consisting of the same shell game these attorneys played

throughout the entirety of these proceedings.  (*E.g.*, App. 38, 40, 61 ("I attended only

one hearing"; "I withdrew"; "I didn't sign that paper," etc., etc.).)  The mendacity also

included the above-noted efforts to play down the Forbes.com quotations of Steele

boasting about earning millions of dollars settling these copyright-infringement suits.

(App. 51-52.)

As to ability to pay, appellants seem to forget it was their burden to prove

"clearly, plainly, and unmistakably" that "compliance is impossible." *Resource Tech.*,

624 F.3d at 387.  The only evidence they proffered on this issue consisted of financial

statements that were incomplete and thus could not and did not establish an inability to

pay, a ruling that surely was not an abuse of discretion.  *See also supra* § II.  Appellants

chastise the district judge for observing that they were able to post supersedeas bonds

in other proceedings, arguing that this fact cuts against their ability to pay here because

it means they are poorer for it.  (App. Br. 24.)  The court's reasoning on this point,

however, was solid.  *See Resource Tech.*, 624 F.3d at 387 ("alleged contemnor's past

ability to comply with a court order triggers a presumption that it has a present ability to comply"). Of course, if appellants truly lacked the means to pay, one would assume a rational surety company would not have issued a supersedeas bond guaranteeing payment of the sanctions award if affirmed on appeal. That Steele was able to procure such a bond, D.E. 149, is more illuminating on this point than any of the unsupported arguments in appellants' brief.

### CONCLUSION

For all the above reasons, the contempt order should be affirmed.

Further, the defendant-appellees also request any other relief to which the Court deems they are entitled, such as fees and costs on this appeal. "The rationale of fee-shifting rules is that the victor should be made whole – should be as well off as if the opponent had respected his legal rights in the first place. This cannot be accomplished if the victor must pay for the appeal out of his own pocket." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000) (quoting *Rickels v. City of South Bend*, 33 F.3d 785, 787 (7th Cir. 1994)) (emphasis in *Rickels*). "To hold otherwise would permit a deep pocket losing party to dissipate the incentive provided by an award through recalcitrance and automatic appeals." *Souza v. Southworth*, 564 F.2d 609, 614 (1st Cir. 1977).

Respectfully submitted,

/s/  Daniel G. Booth
BOOTH SWEET LLP
32R Essex Street
Studio 1A
Cambridge, MA 02139
(617) 250-8602

*Attorneys for Appellee*
*Anthony Smith*

/s/  Bart W. Huffman
LOCKE LORD LLP
600 Congress Avenue
Suite 2200
Austin, TX 78701
(512) 305-4700

/s/  Hugh S. Balsam
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0403

*Attorneys for Appellee*
*SBC Internet Services, LLC*
*(f/k/a SBC Internet Services,*
*Inc. d/b/a AT&T Internet*
*Services)*

/s/ John D. Seiver
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue N.W.
Suite 800
Washington, DC 20006-3401
(202) 973-4200

*Attorneys for Appellee*
*Comcast Cable Communications LLC*
*and Comcast Corporate Representative*
*No. 1*

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing Brief of Defendants-Appellees complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,003 words, excluding the parts of  the brief  exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 97-2003 in 12 point Palatino Linotype font.

/s/  Bart W. Huffman
LOCKE LORD LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2014, the Brief of Defendants-Appellees was filed

with the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the appellate CM/ECF system.

The following participants in the case are registered CM/ECF users and will be

served by the appellate CM/ECF system:

Paul A. Duffy                          Paul Hansmeier
32nd Floor                             CLASS JUSTICE PLLC
Two N. LaSalle Street                  100 S. Fifth Street, Suite 1900
Chicago, IL 60602-0000                 Minneapolis, MN 55402

Daniel J. Voelker                      John L. Steele
VOELKER LITIGATION GROUP               Suite 400
Suite 500                              1111 Lincoln Road
311 W. Superior Street                 Miami Beach, FL 33139
Chicago, IL 60654

I further certify that the following participant in the case is not a registered

CM/ECF user.  On June 23, 2014, two copies of the Brief were sent via first-class mail,

proper postage prepaid to:

Andrew G. Toennies
LASHLY & BAER, P.C
714 Locust Street
St. Louis, MO 63101

/s/  Bart W. Huffman
LOCKE LORD LLP
