# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-00889 |
| | ) | |
| ANTHONY SMITH, SBC INTERNET SERVICES, | ) | |
| INC., d/b/a AT&T INTERNET SERVICES; AT&T | ) | **DEFENDANT ANTHONY** |
| CORPORATE REPRESENTATIVE #1; COMCAST | ) | **SMITH'S** *EX PARTE* |
| CABLE COMMUNICATIONS, LLC, and | ) | **RENEWED MOTION FOR** |
| COMCAST CORPORATE REPRESENTATIVE #1, | ) | **CONTEMPT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Anthony Smith ("Smith") submits this motion for an order holding in contempt Plaintiff's counsel John L. Steele ("Steele"), Paul A. Duffy ("Duffy"), and Paul R. Hansmeier ("Hansmeier") (collectively "Plaintiff's Counsel"). After Plaintiff's Counsel failed to comply with the Court's sanctions order, Smith and his fellow Defendants filed a joint motion for contempt against Plaintiff's Counsel (Dkt. No. 107; the "Contempt Motion"), and Plaintiff's Counsel claimed they lack the means to pay, submitting certain financial records to the Court for *in camera* review. Smith has since obtained discovery showing that despite their protestations, Plaintiff's Counsel are fully capable of paying the amounts ordered by the Court, and have acted to conceal or otherwise move assets off-shore. Therefore, Smith renews the Contempt Motion's request for sanctions and further moves for an order against Plaintiff's Counsel imposing additional sanctions for failing to pay as ordered; freezing their assets; sanctioning them for interfering with discovery; and granting Smith access to the financial statements they provided the Court for *in camera* review.

## I. PROCEDURAL BACKGROUND

On November 27, 2013, pursuant to 28 U.S.C. § 1927, the Court ordered Plaintiff's Counsel to pay Defendants' attorney fees and expenses totaling $261,025.11 within 14 days. Dkt. No. 100 ("Order"). Plaintiff's Counsel have appealed the Order, *see* Dkt. No. 102, but they concede that they have not paid the sanctions as ordered, Dkt. No. 123, and they did not move for a stay of the Order until January 29, 2014, *see* Dkt. No. 114—more than a month after the Contempt Motion was filed.

In the Contempt Motion, Defendants requested that Plaintiff's Counsel be held in contempt or ordered to show cause why they should not be, and sanctioned further for their defiance of the

Order. Dkt. 107. Duffy and Hansmeier filed oppositions. Dkt. Nos. 111 & 113. Duffy argued that Defendants had failed to determine whether any of Plaintiff's Counsel "has assets sufficient to comply with the judgment of the Court." Dkt. No. 111 p. 6. Hansmeier claimed, "the quarter of a million dollars liability created by the … Order would impose a crippling financial liability on Hansmeier." Dkt. No. 113 p. 6. Defendants filed a joint reply. Dkt. No. 119. Steele moved to stay the sanctions Order. Dkt. No. 114. Steele claimed, "[t]he quarter of a million dollars liability created by the … Order would impose a crippling financial liability on Steele." Dkt. No. 115 p. 3.[1]

The Court heard argument on February 13, 2014, denied Steele's motion to stay, and took the Contempt Motion under advisement, allowing Plaintiff's Counsel 10 days to submit asset statements from a certified public accountant. Dkt. No. 123. Without notice to Defendants, Plaintiff's Counsel submitted their financial records to the Court for *in camera* review.

By subpoenas issued to twelve financial institutions on January 16, 2014, Smith sought post-Order discovery to ascertain facts concerning Plaintiff's Counsel's financial resources and their ability to pay the amount ordered. *See* Dkt. No. 116-1. Steele moved to quash the subpoenas. Dkt. No. 116. Smith filed an opposition to the motion to quash. Dkt. No. 124. The Court denied the motion to quash, noting that "Smith provides compelling reasons why the financial records of these individuals and entities were subpoenaed." Dkt. No. 125 p. 3. Smith's discovery efforts are ongoing; some of the financial institutions have complied with the subpoenas; new aliases for Plaintiff's Counsel are being have been revealed; and additional financial resources have been identified.

## II. EVIDENCE

### A.  Evidence of Plaintiff's Counsel's finances obtained in discovery.

The financial records produced in discovery so far give evidence that Plaintiff's Counsel have significantly understated their financial resources and have acted to conceal or move assets off-shore. This evidence, combined with further deceptive statements and actions by Plaintiff's Counsel, suggests that they are deliberately attempting to frustrate the Order and may have provided the Court

---

[1] Plaintiff's Counsel's remonstrations regarding their ability to pay the sanctions ordered are not only belied by the financial records presented to the Court in this motion; they are also "as a matter of law, immaterial under this circuit's case law." *Tate v. Ancell*, Nos. 11-cv-3252 & 12-cv-2694, 2014 U.S. App. LEXIS 963, *46 (7th Cir. Jan. 17, 2014). "It is awfully hard to see why a lawyer who acted in bad faith should be let off lightly. … A violation of § 1927 is a form of intentional tort. And there is no principle in tort law that damages depend on a tortfeasor's assets. Quite the contrary. Damages depend on the victim's loss, not the wrongdoer's resources." *Shales v. General Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009); *see also Tate* at *46 ("we have expressly held that an attorney's ability to pay is not relevant to the imposition of sanctions under section 1927") (*citing Shales*).

with incomplete records of their finances for *in camera* review. Among the evidence revealed in discovery by Smith to date:

1. On December 13, 2011, Steele opened a CitiCard account. In the application for the account he identified his income amount as $900,000.00 and his total income for 2011 as $930,000. *See* Exhibit A hereto.

2. A statement from Fifth Third Bank shows that Steele had $2,177.005.27 in personal savings accounts there on September 5, 2012. *See* Exhibit B hereto.[2] By September 25, 2012, two deposits totaling that amount had been transferred from Steele's personal account into Prenda's IOLTA account. The remainder of that money was then wired to an unknown destination the next day. *See* Exhibit C hereto.

3. On December 18, 2012, Prenda Law, Inc. ("Prenda")[3] paid out $5,000.00 to McCullough Sparks, an asset protection law firm located in Provo, Utah. *See* Exhibit D hereto. McCullough Sparks promotes its key service as the "541 Trust," which "removes assets from your personal ownership and from any disclosure of your personal assets. It is a private document and it cannot be discovered through any public records." *See* Exhibit E hereto. A CPA would not know about such a trust unless Plaintiffs' Counsel disclosed it to them.

4. Plaintiff's Counsel brought this case, like hundreds of others, as part of their coercive litigation settlement practice. *See* Dkt. No. 61 pp. 14-19. Between 2010 and 2013, when that practice was at its height, BluePay, one of several online credit card processors they used to process settlements from Doe defendants, processed more than $4.4 million in settlement monies, paid out to Prenda, Steele Hansmeier PLLC, Media Copyright Group, LLC, and LiveWire Holdings, LLC. *See* Exhibit F hereto; *see also* Dkt. No. 124 p. 4 n.3 (detailing relationships between Plaintiff's Counsel and these and other non-parties).

---

[2] The statements for the account holding the $2.2 million have not yet been produced.

[3] Prenda Law, Inc. ("Prenda") is the law firm Duffy lists as his on the docket. Steele listed Prenda as his firm when he entered his appearance in this action. Dkt. No. 20. Hansmeier listed himself as of counsel to Prenda in his opposition to Defendants' motion to stay discovery. Dkt. No. 50 p. 9.

5.  Smith's subpoenas sought information about eighteen closely related non-parties.[4] *See* Dkt.
No. 116-1; Dkt. No. 124 p. 4 n. 3. The non-parties opened at least forty-seven bank accounts
in just two of the banks subpoenaed since 2010, and have closed all but a few of those
accounts. Several of these accounts were opened and shut so quickly as to suggest that
Plaintiff's Counsel have transferred monies between accounts and related entities in a
deliberate attempt to obscure its sources and their current holdings. For example, on August
13, 2012, Steele withdrew $29,924.56 from Media Copyright Group, LLC. See Exhibit G. He
then opened two Fifth Third Bank accounts in his personal name the same day, depositing
$27,924.56 into the account identified in Exhibit H and $2,000 into the account identified in
Exhibit I. He then closed the account in Exhibit H on September 25, 2012, transferring all its
funds into the other account in Exhibit I, which he closed on January 7, 2013 (after
transferring $1,000 to Prenda Law, Inc. on October 2, 2012. ).

6.  Likewise, on December 15, 2011, John Steele transferred $159,000 from his personal account
to that of Steele Law.[5] *See* Exhibit J. That same day, Steele Law transferred $160,000 into the
account of Miami Beach Consulting ("MBC"). *Id.* MBC is a business owned by John Steele's
wife, Kerry Steele (neé Eckenrode). *See* Exhibit K. Four days later, $150,000 of that money
was wired to an unknown destination via Sabadell Untd. Bank, a subsidiary of Banco de
Sabadell, S.A. and provider of international banking services.[6] Miami Beach Consulting's
account was closed two months later. *See* Exhibit L.

7.  Duffy and Steele are the two signatories Prenda's IOLTA and operating accounts with Fifth
Third Bank. *See* Exhibit M hereto. This tends to refute Steele's repeated denials that he has

---

[4] Specifically, the subpoenas sought financial information concerning each of Plaintiff's Counsel, their colleague
Mark Lutz, and "AF Holdings, LLC a/k/a Ingenuity 13, LLC a/k/a VPR, Inc. a/k/a MCGIP, LLC a/k/a Prenda Law,
Inc. a/k/a Steele Hansmeier PLLC a/k/a Anti-Piracy Law Group LLC a/k/a Duffy Law Group LLC a/k/a LW
Systems, LLC a/k/a Alpha Law Firm LLC a/k/a Class Action Justice Institute LLC a/k/a Class Justice PLLC a/k/a
Media Copyright Group a/k/a 6881 Forensics, LLC." Dkt. No. 116-1 p. 3. Ongoing discovery reveals the existence
of at least four additional aliases—Phoenix Ventures LLC, Under the Bridge Consulting, Miami Beach Consulting,
Big Sky Films LLC.

[5] The Illinois Secretary of State notes Steele Law was sold on February 24, 2011. Yet not only was it able to transfer
assets to Miami Beach Consulting ten months after this date, it maintained four IOLTA accounts and two operating
accounts for as long as a year after it ceased to exist. One IOLTA account was active as recently as July 2013.

[6] *See* https://www.sabadellbank.com/

an ownership interest in Prenda.[7]   Similarly, and despite his denials otherwise, Paul Hansmeier was a partner in Media Copyright Group (a/k/a/ 6881 Forensics), the IT firm which Plaintiff's Counsel used to identify alleged infringements. A check made out to Media Copyright Group from Alpha Law and signed by Hansmeier clearly states "capital contribution" "for 50% interest" *See* Exhibit N hereto.

8. Steele has utilized several services designed to facilitate secretive offshore transfers. On February 27, 2012, Steele's CitiCard was charged $299 by SovereignMan. *See* Exhibit O hereto. SovereignMan is an off-shore corporation specializing in instructing individuals on the aspects of foreign/offshore banking, offshore trusts, "alternative forms of assets" (i.e. gold, silver, etc.), second residences and how to obtain a second passport.[8] Around the same time that Steele's incurred the SovereignMan charges, Steele Hansmeier's operating account was wiring payments to a bank in Riga, Latvia. *See* Exhibit P. While seemingly innocuous, this fact imputes an undeniable purpose when placed within the context of the following sales pitch for "confidential membership" with Sovereign Man:

> For example, a few weeks ago you may have read in my "Notes from the Field" about a program the Latvian government recently unveiled to stimulate foreign investments: If you buy qualifying real estate, you can obtain Latvian residency leading to citizenship, and get a passport that gives you carte blanche to travel throughout Schengen, the borderless area of Europe.
>
> …
>
> On the Latvian real estate opportunity, I introduced my Sovereign Man: Confidential subscribers to my friend Peter Morris, who is the founder of the largest real estate company in the Baltics. I grilled him mercilessly about the Latvian situation. And as a result my subscribers and I learned: what properties qualify … what loopholes we can take advantage of … how much you have to spend on a property to be offered Latvian residency … where to find the best properties in Latvia at the right prices. Peter Morris has even offered to serve as a real estate broker to Sovereign Man: Confidential readers who want to buy property in Latvia, and I included all his contact information in my article about him.[9]

---

[7] Steele made that argument to this Court at the hearing on the motions for sanctions: "[J]ust simply saying that I have an ownership interest in Prenda Law is not sufficient, I don't believe, by various counsels because I don't. … I believe that the other side has some duty to show, to prove wild accusations, such as Anthony Smith is innocent, John Steele owns Prenda Law. These different items just aren't true." Dkt. No. 101 pp. 23-24.

[8] *See* http://www.sovereignman.com/SMC_gse2.php

[9] *Supra.*

Peter Gage Morris is the Managing Director of Ober-Haus Real Estate Advisors, at its head office in—Riga, Latvia.[10]

9.  A discussion group on the SovereignMan website, under the heading "Why you need an offshore email account," addresses means for the secured transmission of financial documents and identifies "CounterMail" as a preferred method to "communicate discretely" when sending financial data.[11] CounterMail has unusually secretive features.[12] Its servers are located in Sweden, beyond U.S. custody. Intergrid AB, the Swedish corporation that provides CounterMail, charged Steele's CitiCard $29.00 on February 14, 2012, and $19.00 on September 17, 2012. *See* Exhibit Q hereto. Those charges are consistent with the amounts CounterMail charges for a six-month subscription and three-month subscription, respectively.[13] Though the email account, member72423@countermail.com, was paid for by Steele it was also used by Paul Duffy. *See* Exhibit R hereto (correspondence notes from BluePay).

**B.  Evidence of Plaintiff's Counsel's finances filed in *Ingenuity 13, LLC v. John Doe*.**

Further evidence of the state of Plaintiff's Counsel's finances was introduced in *Ingenuity 13, LLC v. John Doe*, No. 12-cv-08333,[14] by Brett Gibbs ("Gibbs"), a former attorney of counsel for

---

[10] *See* http://www.ober-haus.lv/vadītāji

[11] *See* http://www.sovereignman.com/personal-privacy/why-you-want-an-offshore-email-account-715/

[12] According to CounterMail's website:

> Here are the most important things we do to keep your privacy and security:
> - No cookies, to minimize traces in web browser
> - No hard drives on our web servers, to protect against hard drive leakage and to protect against persistent backdoor/trojans
> - Anonymous email header, no personal IP-addresses inside the header
> - No IP-logging, our server does not log IP-addresses
> - We only use strong open source algorithms
> - Personal data or individual account data is never shared or sold with third-parties
> - Email data (body & attachments) are always stored in encrypted form

*See* https://countermail.com/?p=privacy

[13] *See* https://countermail.com/?p=services

[14] The *Ingenuity 13* court found that Plaintiff's Counsel owned and controlled Prenda, and that Plaintiff's Counsel "are the de facto owners and officers" of "two offshore entities" that "have no assets other than several copyrights to pornographic movies," which Plaintiff's Counsel formed (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits." *See* Dkt. No. 92-4 p. 4; *see also* Dkt. No. 92 pp. 2-5 (further detailing Plaintiff's Counsel's affiliations with Prenda and each other).

Prenda. *See* Dkt. No. 92 p. 3. Gibbs filed a motion in *Ingenuity 13* as ECF No. 240-1 (C.D. Cal. Oct. 17, 2013), attached hereto as Exhibit S, describing how "Steele and Hansmeier were the primary beneficiaries of settlement payments to Prenda Law, giving them a compelling, if secret, financial interest in all aspects of Prenda's operations and litigation." *Id.* p. 14. Gibbs also disclosed a financial spreadsheet sent to him by Prenda in early 2013 entitled "Prenda Law Profit and Loss Detail, January through December 2012." *Id.* p. 12; Exhibit T. As Gibbs declared, the disbursements shown in that spreadsheet "directly contradict[] the oft-repeated statements of Steele and Hansmeier that they have no financial interest in Prenda Law or its litigation." *Id.* The Profit and Loss Detail shows that "in 2012 alone, Prenda made 'Payments to Old Owners'—Hansmeier, Steele, and Under the Bridge Consulting (their jointly-owned company)—equal to almost 70% of Prenda's total revenue." *Id.* pp. 12-13. "Under the Bridge [Consulting] was being used as a conduit for funneling settlement money from Prenda to Steele and Hansmeier." *Id.* p. 13 n. 7. The Profit and Loss Detail is further supported by the financial records Smith has obtained. *See, e.g.*, Exhibit D.

The Profit and Loss Detail also "shows that Prenda received income from 'Pirates' of $1,931,977.09 in 2012, and made 'Payments to Old Owners' of $1,343,806.78 or 69.6% of its total receipts … even though these distributions left Prenda with a 2012 loss of $487,791.20." *Id.* p. 13. The Profit and Loss Detail discloses, among other things, the following payments in 2012 alone:

  a. $43,261.56 paid directly from Prenda to Duffy;

  b. $10,000 paid directly from Prenda to Duffy Law Group;

  c. $187,328.06 paid directly from Prenda to Hansmeier;

  d. $460,500.00 paid from Prenda to Hansmeier's 50% interest in Under the Bridge Consulting;

  e. $230,651.29 paid directly from Prenda to Steele; and

  f. $460,500.00 paid from Prenda to Steele's 50% interest in Under the Bridge Consulting.

*See* Exhibit T and Exhibit U.

Furthermore, while Plaintiff's Counsel have attempted to distance themselves from filings signed by local counsel in this action, the Profit and Loss Detail also shows payments directly from Prenda (i.e., not from Plaintiff) to local counsel at times that coincide with those filings, including:

a. $2,920.00 paid directly from Prenda to Michael O'Malley on March 12, 2012, after he signed and filed the initial complaint and motion for leave to take early discovery in St. Clair County (Dkt. Nos. 2-3 and 2-9);

b. $8,431.11 paid directly from Prenda to Kevin Hoerner on June 8, 2012, shortly after he submitted Plaintiff's objections to AT&T Internet Services' Rule 383 motion for a supervisory order in the Illinois Supreme Court on May 29, 2012 (Dkt. No. 2-23 at pp. 20-45); and

c. $916.65 paid directly from Prenda to Kevin Hoerner on August 10, 2012, one week after he filed Plaintiff's amended complaint on August 3, 2012 (Dkt. No. 2-2).

*See* Exhibit T.

**C. Evidence of Plaintiff's Counsel's further misrepresentations.**

On February 26, 2014, Steele sent an email to Smith's counsel Jason Sweet declaring, "I am preparing a motion for protective order limiting the dissemination of any information you or the other judgment debtors obtain. … The ISP's [i.e., Comcast and AT&T] have already stated that they will not oppose my motion." A true and correct copy of the email is attached hereto as Exhibit V. In truth, Defendants Comcast and AT&T had never given Steele any such assurance that they would not oppose his proposed motion, which had not been provided to Defendants' counsel for review. Defendant AT&T's counsel re-affirmed this position in an email sent to Steele and the other Defendants later that day. A true and correct copy of that email is attached hereto as Exhibit W.

Undeterred, Steele sent a second email to Smith's counsel the next day, stating in pertinent part: "I have an email from both ISPs saying they will not oppose my motion, and I suppose we will eventually see if I really do." A true and correct copy of that email is attached hereto as Exhibit X. When informed of Steele's latest missive, Defendant AT&T's counsel emailed Steele a second warning to refrain from further misstatements. A true and correct copy of that email is attached hereto as Exhibit Y. Since that time, Steele has neither filed the proposed protective order nor sent a draft to Defendants' counsel for review. Steele clearly thought about a protective order, lied in order to gather support for it, then never filed it.

**D.  Evidence of Plaintiff's Counsel's interference with discovery in this action.**

Plaintiff's Counsel have attempted to directly interfere with discovery of their true financial records. After the Court denied Steele's motion to quash Smith's subpoenas, Duffy sought to forestall discovery by falsely informing at least one bank that the motion was still pending.

On or around January 23, 2014, Annette Kuklak, a representative of JP Morgan/Chase Bank, called Smith's counsel Jason Sweet in response to Smith's subpoena, asking for an additional 30 days to comply, given the unusually high number of accounts (26 by her count) associated with Plaintiff's Counsel and related non-parties.[15] On March 6, 2014, Attorney Sweet called Ms. Kuklak to inquire as to the status of the discovery request; she replied that there was a pending motion to quash prohibiting disclosure. Sweet informed Ms. Kuklak that the motion to quash had been denied on February 19, 2014. She stated that Duffy had faxed the motion to quash to the bank on March 3, 2014—almost two weeks after the motion was denied. *See* Exhibit Z hereto (Affidavit of Jason Sweet).

### III. ARGUMENT

**A.  This Motion must be decided on an expedited basis to preclude Plaintiff's Counsel from disguising or otherwise disposing of their assets.**

In view of Plaintiff's Counsel's previous and ongoing activities, including their massive looting of Prenda's corporate assets, their inquiries into how to hide assets from creditors and their repeated false representations to Defendants and this Court, Smith submits that only an expedited ruling on its motion is likely to ensure that sufficient assets of Plaintiff's Counsel will be preserved to guarantee their compliance with the Order.

Case in point: On March 8, 2013, Alpha Law Firm LLC, "the law firm that [Hansmeier] own [s]" (Dkt. No. 101 p. 16), was ordered to show cause "why the Court should not order you to pay the reasonable attorney fees and costs incurred by the non-parties to this action." *Guava LLC v. Spencer Merkel*, No. 27-cv-12-20976, (4th Cir. Hennepin Cty., Minn. March 8, 2013). *See* Exhibit AA. Five days later Hansmeier wrote an $80,000 payment to himself personally for his "mortgage," effectively draining Alpha Law's assets. *See* Exhibit BB. On August 30, 2013, Alpha Law was held jointly and severally liable for attorneys' fees and costs in the amount of $63,367.52. *See* Exhibit CC. That same day Hansmeier dissolved Alpha Law. *See* Exhibit DD.

---

[15] *See* Dkt. No. 116-1 p. 3 (listing Plaintiff's Counsel and certain of their law firms, confederates, and other known aliases); *see also* Dkt. No. 124 p. 4 n. 3 (identifying relationships between Plaintiff's Counsel and the non-parties).

The evidence shows that Plaintiff's Counsel, and the shell companies and other fungible entities they control, have gone to great lengths to avoid detection of their questionable business practices and irregular accounting methods. Based on the facts learned by Smith's discovery to this point, and the nature of Plaintiff's Counsel's activities and operations, it is more than reasonable to believe that unless this motion is decided on an expedited basis, they will move quickly to remove monies subject to the Order, to locations and accounts which neither Smith nor the Court can ever hope to discover, much less reach. An order limiting the transfer of Plaintiff's Counsel's assets is critical if the status quo has even the possibility of being maintained and meaningful. Moreover, the balance of hardships substantially favors Defendants and the Court obtaining a successful accounting of Plaintiff's Counsel's ill-gotten assets. Finally, the public interest favors preliminary relief to ensure that the Plaintiff's Counsel will not benefit from their improper activities by evading the Court.

**B. The Court should require Plaintiff's Counsel to pay additional daily sanctions unless and until they post a bond for the full amount of Defendants' fees and costs.**

Plaintiff's Counsel have appealed the Order against them, *see* Dkt. No. 102, but they concede that they have not paid the sanctions as ordered, Dkt. No. 123. More so, their imploring regarding their ability to pay are belied by the financial records presented herein. To make a prima facie showing of civil contempt, the movant must establish "the existence of a valid court order, respondent's knowledge of the order, and respondent's failure to comply with the order." *Hicks v. Felock*, 485 U.S. 624, 627 (1988). "For [an attorney] to be held in civil contempt, he must have violated an order that sets forth in specific detail an unequivocal demand from the court." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001); *United States v. Berg*, 20 F.3d 304, 310 (7th Cir. 1994). *See generally Wienco, Inc. v. Scene Three*, No. 88 C 2292, 1994 U.S. Dist. LEXIS 13333, *35 (N.D. Ill. Sept. 20, 1994) (contemnor's "memory lapse regarding bank deposits" supported rule to show cause); *United States v. Senffner*, 280 F.3d 755 (7th Cir. 2002) (affirming contempt of court and obstruction of justice based in part on concealment of assets). Smith would assert that Plaintiff's Counsel acts more than satisfy the criteria for contempt.

Courts have often ordered Plaintiff's Counsel to pay their opponents' attorney's fees in sanctions orders or judgments. *See* Order p. 10 n. 2 (collecting cases); *see also* Mem. Op. & Order, *Prenda Law, Inc. v. Godfread*, No. 13-cv-4341 (N.D. Ill. Feb. 3, 2014) (attached as Exhibit EE hereto) (sanctioning Prenda and Duffy pursuant to court's inherent authority and 28 U.S.C. § 1927).

Yet Plaintiff's Counsel, as they have here, typically disobey those orders unless and until their compliance is compelled by further orders combining those sanctions with additional sanctions until the award is paid, or until a bond is posted for the amount of the award. For example, on May 6, 2013, the *Ingenuity 13* court ordered Plaintiff's Counsel (and Gibbs, Prenda, and two of its shell companies) to pay an award of attorney's fees totaling $81,319.72 within 14 days. *See* Dkt. No. 92-4 p. 11. One day after those 14 days had passed, when they failed to comply or post a bond as required to seek a stay of the order, the *Ingenuity 13* court ordered them to pay an additional "$1,000 per day, per person or entity, until this attorney's fee award is paid or a bond for the same amount is posted."[16] With that extra motivation, Plaintiff's Counsel at last posted bond in that proceeding. *See Order, Ingenuity 13* (C.D. Cal. June 17, 2013) (ECF No. 189 therein). *See also Zivitz v. Greenberg*, No. 98-cv-5350, 2000 U.S. Dist. LEXIS 7842, *10 (N.D. Ill. Jun. 5, 2000) (as a civil contempt remedy, imposing daily fine of $250 per day for seven days following contempt order, $500 per day for seven days after that, and $1,000 per day thereafter).

More than three months have passed since this Court sanctioned Plaintiff's Counsel, with express instructions that they must pay within 14 days. Order p. 13. They filed no motion to stay until more than two months after the Order, and failed to post the bond required with such a motion. The belated motion to stay was denied on February 13, 2014, more than a month ago. Their failure to comply with the Order warrants a finding of contempt and additional sanctions. Only an order imposing substantial additional daily penalties on Plaintiff's Counsel, unless and until they post a bond covering the full amount Defendants have been forced to expend defending this frivolous action and pursuing their dilatory and deceptive actions in this Court and the Seventh Circuit, is likely to compel obedience. Smith therefore requests that the amount of such bond be set at a minimum of $400,000, and that a daily $1,000 penalty be added to each of Plaintiff's Counsel's obligations to pay until the bond is posted.

**C.  The Court should order a freeze on Plaintiff's Counsel's assets.**

It is beyond serious question that Defendants are entitled to an equitable accounting of Plaintiff's Counsel's assets. Courts in the Seventh Circuit, have noted that a District Court pursuant to Fed. R. Civ. P. 65 has the authority to issue an order restraining assets so that a party's right to an

---

[16] *See* Order Denying Ex Parte Application for Stay of Enforcement; Order to Show Cause Re: Attorney's-Fee Award, *Ingenuity 13* (C.D. Cal. May 21, 2013) (ECF No. 164 therein).

equitable accounting is not later rendered meaningless. *Monfardini v. Quinlan*, No. 02-cv-4284, 2003 U.S. Dist. LEXIS 10065, *9-12 (N.D. Ill. June 12, 2003). *See also Advocate Capital, Inc. v. Law Office of A. Clark Cone, P.A.*, No. 06-cv-0847, 2006 U.S. Dist. LEXIS 87303 (M.D. Tenn. Nov. 29, 2006) ("That irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order").

The grant of an injunction restraining the transfer of Plaintiff's Counsel's assets is proper since these assets are likely the fruit of their illicit and duplicitous activities, and since they have contemptuously failed to timely pay Defendants pursuant to the Order's sanctions. Such a freeze is appropriate and should remain in place pending final disposition of the case. *Rockwell Graphic Sys. v. DEV Indus.*, 91 F.3d 914, 920 (7th Cir. 1996) (District courts have "considerable latitude" in enforcing their own decrees in a contempt proceeding).

**1. Plaintiff's Counsel's assets should be frozen to prevent further looting and to discover where and how corporate funds were misappropriated.**

A request for an order freezing assets is essentially a request for a preliminary injunction under Fed. R. Civ. P. 65. A party seeking an injunction must show that (1) it has a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Foodcomm Int'l v. Barry,* 328 F.3d 300, 303 (7th Cir. 2003).

Here, there is little question that Defendants are likely to succeed on the merits—the Court already found as much in issuing its sanctions Order. Moreover, Plaintiffs' Counsel's egregious misconduct supports an asset freeze, including (a) their blithe failure to satisfy the Order; (b) their "relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts, and being referred to state and federal bars, the United States Attorney in at least two districts, one state Attorney General, and the Internal Revenue Service," Order p. 10 (footnotes omitted); (c) Steele's false statements to Smith's counsel that the other Defendants had consented to Steele's never-filed motion for a protective order; (d) Duffy's false statement to at least one third party that Steele's motion to quash Smith's discovery was still pending, two weeks after the motion was denied; (e) Steele's payments to a company that provides secure offshore email accounts designed to facilitate secret financial communications; (f) Plaintiff's Counsel's use of offshore shell companies and other entities to obscure their proceeds from their surreptitious activities; and (g) their spurious claims that they cannot afford to pay Defendants,

pursuant to the Order, after transferring millions of dollars from Prenda to themselves (while Steele and Hansmeier denied any financial interest in Prenda). In so acting, Plaintiff's counsel pillaged Prenda's corporate assets to the detriment of its creditors and the courts. An order freezing the remaining assets would serve the purpose of protecting Defendants and other creditors.

It is also clear that no adequate remedy at law exists. Defendants' remedies against Plaintiff's Counsel will be ineffective if all of the individual and corporate assets are further looted, dissipated or become otherwise untraceable following their continued web of fraudulent transactions. Indeed, the very purpose of the order Smith seeks is to prevent any equitable award in this case from becoming meaningless.

Likewise, Defendants will suffer irreparable harm if Plaintiff's Counsel's assets are not preserved in a manner consistent with their fiduciary duties to the Court and creditors. If their assets are not preserved, then Defendants may never recover the equitable remedies awarded by the Court. *Monfardini*, at *7-8. More so, Smith's counsel has shouldered the costs of the litigation to date. Absent the preservation of assets, Smith's counsel's future ability to continue to render legal services would be crippled.

Finally, any hardship to Plaintiff's Counsel is solely a consequence of their own willful misconduct and is far outweighed by the potential hardship to Defendants. Even if Steele, Duffy and Hansmeier face some inconvenience from an asset freeze, such inconvenience directly flows from their fraudulent looting of Prenda's coffers and transfer of its assets.

## 2. Plaintiffs' Counsel's misconduct justifies a two-stage freeze.

An order freezing Plaintiff's Counsel's assets should also require the immediate production of discovery regarding their finances. To encourage Plaintiff's Counsel to comply with that order, the Court should freeze assets in two stages. First, the Court should enter an absolute freeze of all assets until such time as Plaintiff's Counsel have produced *all* of their financial records for the period beginning January 1, 2010 through the present—including financial records relating to any other assets or corporations they own or control, any offshore accounts or trusts, undisclosed assets and other fraudulent transfers. Information about the financial condition of Plaintiff's Counsel is directly relevant to determining to satisfying the Court's Order and in determining future punitive damages sufficient to deter and punish Plaintiff's Counsel.

Plaintiff's Counsel's financial records make irrefutable that Steele, Hansmeier and Duffy were properly found to be jointly and severally liable. Through discovery, Smith has uncovered significant evidence that Plaintiff's Counsel have ignored corporate formalities in conducting Prenda and its aliases' business operations by (a) commingling personal funds with those of Prenda and its aliases; (b) failing to keep accurate and complete financial and accounting records for Prenda and its aliases; (d) looting the bank accounts of Prenda and its aliases for their own personal use and gain; and (e) to shield the assets from their creditors and the courts. To the extent that documents Steele, Hansmeier and Duffy provided for *in camera* review by the Court can be assumed to be accurate, Smith requests access to these documents for comparison.

Once Plaintiff's Counsel have produced all financial records and Defendants have had an opportunity to conduct depositions regarding those financial records, the Court could unfreeze portions of their assets to allow for customary personal and business expenditures, provided that Plaintiff's Counsel reported such expenditures to the Court on a regular basis.

Finally, if the order freezing assets is structured as described above, no bond should be required. First, because Plaintiff's Counsel are in control of the length of the "absolute" asset freeze, which they could avoid entirely by paying the sanctions ordered, and because they should be allowed to cover basic and personal expenditures thereafter, there is no risk of prolonged harm to Plaintiff's Counsel. Moreover, while Plaintiff's Counsel may be temporarily inconvenienced, that inconvenience is solely a result of their failure to comply with this Court's Order. Finally, even if this Court were to later hold that the injunction was wrongfully entered, or if Plaintiff's Counsel should prevail on appeal (despite the Court's assessment that their "chances of being successful on appeal are somewhere between slim and below zero," Dkt. No. 101 p. 26), the evidence demonstrates that Plaintiff's Counsel clearly have sufficient assets to cover any possible injury to them.

### III. CONCLUSION

If the evidence submitted reveals that any of Plaintiff's Counsel have been less than forthcoming in their *in camera* submissions, a finding of civil contempt is certainly in order. Plaintiff's Counsel were fully forewarned that they could be found in contempt, based on Defendants' earlier Contempt Motion and the hearing thereon; indeed, the *in camera* submissions were in direct response to the Court's orders at the hearing. The Court may compel compliance with the Order through contempt proceedings without affording Plaintiff's Counsel any further

opportunities to purge their contempt. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 759 (7th Cir. 2008).

More so, Plaintiff's Counsel's numerous false representations have caused Smith to incur significant additional expenses in conducting third party discovery to obtain accurate financial documentation. These third party documents were clearly in the possession, custody or control of Plaintiff's Counsel. Pursuant to Fed. R. Civ. P. 37, Smith should be awarded sanctions in an amount sufficient to cover his costs, including attorneys' fees incurred in conducting third-party discovery, necessitated solely by Plaintiff's Counsel's misconduct.

WHEREFORE, Smith requests that the Court enter an order holding Plaintiff's Counsel in contempt, and requiring them to post a bond of $400,000 to satisfy the Order to Defendants, further imposing a $1,000 penalty on each of Plaintiff's Counsel each day they fail to pay the amount ordered or post the bond; sanctioning Plaintiff's Counsel in an amount reflecting the additional discovery costs Smith incurred in obtaining discovery, including his legal fees associated with conducting discovery and this motion; freezing Plaintiff's Counsel's assets; ordering Plaintiff's Counsel to produce to Smith, within five (5) days, the financial information they provided to this Court for *in camera* review; and imposing the costs of a forensic accountant of the Defendants' choosing upon Plaintiff's Counsel.

Respectfully,

___/s/ Jason Sweet_____
Jason E. Sweet (admitted *pro hac vice*)
Email: jsweet@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883
*Counsel for Defendant Anthony Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2014, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

/s/ Jason E. Sweet

# EXHIBIT A

```
****************** APPLICATION INFO **   PRSN NM <I>:        JOHN STEELE
APP Gate:        12:12-13000:SCW  Doc CHRISTIAN 135-1 *SE+
REF NUM <I>:        173475106410                         LAST NM <I>:        STEELE
Inv Num:                                                 Nm Sfx:
Batch Num:                                               Dt of Brth:         02/22/1971 00:00:00
Orgn Ind:           UW                                   SSN:                498641406
Site Cd:                                                 Prffrd Lang Cd:     E
App Impt Dt:        12/13/2011 17:42:26                  Email Addr:         JOHNLSTEELE@GMAIL.COM
Micflm Frame Num:                                        Email Opt In:
Micflm Reel Dt:                                          Signtr Ind:         Y
Micflm Reel Num:                                         Signtr Image ID:
Inbd/Outbd Ind:                                          Svngs Acct Cd:      Y
Affin Num:          9999999                              Chkng Acct:         Y
Affin Ind 1:                                             Mny Mkt/Invst Acct: Y
Affin Ind 2:                                             Phys Addr Prvd:
Acct Typ:           N                                    Per Rsk Cd:
Attch Ind:                                               Per Reg Cd:
Jnt Ind:                                                 Chkpt Addr Ovrd Ind: N
Ins Admin:                                               Supprsn Cd:         &
Ins ID:             N
Ins Undrwrtr:                           ----------------- Current Home Address
Corr Dt:            12/21/2011 00:00:00  Addr Ln 1:         114 W RIVO ALTO DR
App Rcvd Dt:        12/13/2011 00:00:00  Addr Ln 2:
Crds Rqstd:         1                    CITTY <I>:         MIAMI BEACH
Crds Iss:           1                    ST <I>:            FL
App Rstrt Ind:      R                    ZIP <I>:           331391204C014
App Rstrt Dt:       12/29/2011 11:18:14  Mths at Addr:      00
Tot Inc:            930000               Yrs at Addr:       02
Usual Mthly Pmt Amt:                    ----------------- Physical Address ----
Mail To Ind:        H                    Addr Ln 1:
Jdgmntl Ind:        N                    Addr Ln 2:
Stat Nm:            12600_AprvdBooked    City:
LST DCSN DT <I>:    12/29/2011 11:36:53  St:
Curr Que Nm:        Approved Apps        Zip:
Rqstd Csh Ln:                           ----------------- Home Phone ----------
Rqstd Crd Ln:                            Phn Num:           7086898131
Apprv Csh Ln:       4500                 Extn:
Apprv Crd Ln:       15000                Phn Lstg Nm:
Ovrd Csh Ln:                            ----------------- Business Phone ------
Ovrd Crd Ln:                             Phn Num:           3057482102
Fnl Csh Ln:         4500                 Extn:
Fnl Crd Ln:         15000                Phn Lstg Nm:
Ovrd Rsn Cd:                            ----------------- Income Source 1 -----
Dual Card Type Cd:                       Typ of Inc:        E
Alt Prod Ind:                            Inc Amt:           900000
Dwnsl Prc Cd:                            Inc Freq:          A
Blcn Cntr Offr Prc:                      Empl Nm:           STEEL HANDSMAN
Tot Blcn Fees:                           Ocptn Cd:
Tot Blcn Xfer Amt:                       Num of Mths at Job: 00
                                         Num of Yrs at Job: 00
                                         Inc Src Cd:
                                         Verified Amt:

                                        ----------------- Final Product ------
                                         Prod Typ Cd:       00
                                         Actv Prod Ind:     Y
                                         Offr Sel:
          REDACTED                       Brnd:              A
                                         Undrwrtr Cd:
                                         Plstc Cd:
                                         Src Cd:            4XNYWLD1XBWW2GZZZZW
                                         Dwnsl Ind:
                                         Asgnd Acct Num:    5466160264291350
                                         Prmo Pgm:
                                         Prmo Pln:
                                         Prmo BNS:
                                         Prmo Src:
                                         Blcn Ind:
                                         Fnl Que Dcsn Ind:
                                         Dwnsl Sel Ind:
```

# EXHIBIT B

Statement Period Date: 8/13/2012 - 9/7/2012
Account Type: 5/3 Enhanced Ckg
Account Number: 7239686012

**FIFTH THIRD BANK**
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH 45263-0900

JOHN L STEELE
114 1ST RIVO ALTO TER
MIAMI BEACH FL 33139-1204

0

28195

Banking Center: 161 North Clark
Customer Service: 1-800-972-3030
Internet Banking & Bill Payment: www.53.com

---

IMAGINE HAVING YOUR IDENTITY STOLEN WITHOUT EVEN KNOWING IT HAPPENED. HELP SAFEGUARD YOU AND YOUR FAMILY WITH FIFTH THIRD IDENTITY ALERT PREMIUM TODAY. THE BENEFITS IN FIFTH THIRD IDENTITY ALERT PREMIUM ARE PROVIDED BY FIFTH THIRD'S VENDOR, AFFINION BENEFITS GROUP. TO FIND OUT MORE ON IDENTITY ALERT, PLEASE VISIT 53.COM/IDENTITYALERT. FIFTH THIRD BANK. MEMBER FDIC.

## Account Summary - 7239686012

| | | | | | |
|---|---|---|---|---|---|
| 08/13 | Beginning Balance | $0.00 | Interest Earned | | $0.14 |
| | Checks | | Number of Days in Period | | 26 |
| 1 | Withdrawals / Debits | $(11.99) | Annual Percentage Yield Earned | | 0.10% |
| 2 | Deposits / Credits | $2,000.14 | Interest Earned YTD | | $0.14 |
| 09/07 | Ending Balance | $1,988.15 | | | |

## Monthly Service Charge Explained

| | |
|---|---|
| **Standard Monthly Service Charge** | **$20.00** |
| Discount Applied | |
| NEW ACCT GRACE PERIOD | -$20.00 |
| **Amount to be Withdrawn on First Business Day of Next Statement** | **$0.00** |

**Combined Balance Period: 08/13/12 - 09/07/12**

You can avoid a monthly service charge by achieving a combined balance of $20,000 or more in your deposit and investment accounts in this period.

| Your Accounts | | High Bal. on 09/05/12 |
|---|---|---|
| CHECKING | X6012 | $1,988.01 |
| SAVINGS | X9442 | $2,177,005.27 |
| SAVINGS | X1616 | $27,927.16 |
| **Total Combined Balances** | | **$2,206,920.44** |

## Withdrawals / Debits

**1 item totaling $11.99**

| Date | Amount | Description |
|---|---|---|
| 08/22 | 11.99 | DELUXE BILLING CHK ORDERS 23305 082212 |

## Deposits / Credits

**2 items totaling $2,000.14**

| Date | Amount | Description |
|---|---|---|
| 08/13 | 2,000.00 | DEPOSIT |
| 09/07 | 0.14 | INTEREST |

## Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08/13 | 2,000.00 | 08/22 | 1,988.01 | 09/07 | 1,988.15 |

---

THE U.S. DEPARTMENT OF THE TREASURY REQUIRES EVERYONE GETTING PAPER FEDERAL BENEFIT CHECKS TO SWITCH TO DIRECT DEPOSIT BY MARCH 1, 2013. DON'T WAIT UNTIL IT'S TOO LATE. GO ONLINE AT WWW.GODIRECT.ORG OR CALL (800) 333-1795 TO SWITCH TODAY.

# EXHIBIT C

Statement Period Date: 9/1/2012 - 9/28/2012



Account Type: Tolta Now
Account Number: 7238947456

FIFTH THIRD BANK
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH  45263-0900

JOHN L STEELE
161 N CLARK ST STE 3200
CHICAGO IL  60601-3247

0

32832

Banking Center: 161 North Clark
Banking Center Phone: 312-368-1201
Commercial Client Services: 1-800-589-5355
www.53.com

## Account Summary - 7238947456

| | | | | | |
|---|---|---|---|---|---|
| 09/01 | Beginning Balance | $0.00 | | Average Balance | 72,574.00 |
| | Checks | | | Interest Earned | $59.20 |
| 7 | Withdrawals / Debits | $(2,177,291.18) | | Number of Days in Period | 28 |
| 4 | Deposits / Credits | $2,177,291.22 | | Average Rate This Statement | 1.00% |
| 09/28 | Ending Balance | $0.04 | | Interest Earned YTD | $59.20 |

## Withdrawals / Debits                                      7 items totaling $2,177,291.18

| Date | Amount | Description |
|---|---|---|
| 09/07 | 100,000.00 | OUTGOING WIRE TRANS 090712 |
| 09/07 | 100,000.00 | OUTGOING WIRE TRANS 090712 |
| 09/07 | 100,000.00 | OUTGOING WIRE TRANS 090712 |
| 09/26 | 625,743.96 | OUTGOING WIRE TRANS 092612 |
| 09/26 | 625,743.96 | OUTGOING WIRE TRANS 092612 |
| 09/26 | 625,744.06 | OUTGOING WIRE TRANS 092612 |
| 09/28 | 59.20 | INTEREST REMITTED TO STATE |

## Deposits / Credits                                         4 items totaling $2,177,291.22

| Date | Amount | Description |
|---|---|---|
| 09/06 | 300,000.00 | FUNDS TRANSFER FROM SV: XXXXXX9442 REF # 00537080631 |
| 09/25 | 226.75 | DEPOSIT |
| 09/25 | 1,877,005.27 | FUNDS TRANSFER FROM SV: XXXXXX9442 REF # 00539258715 |
| 09/28 | 59.20 | INTEREST |

## Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 09/06 | 300,000.00 | 09/25 | 1,877,232.02 | 09/28 | 0.04 |
| 09/07 | 0.00 | 09/26 | 0.04 | | |

THE U.S. DEPARTMENT OF THE TREASURY REQUIRES EVERYONE GETTING PAPER FEDERAL BENEFIT CHECKS TO SWITCH TO DIRECT DEPOSIT BY MARCH 1, 2013. DON'T WAIT UNTIL IT'S TOO LATE. GO ONLINE AT WWW.GODIRECT.ORG OR CALL (800) 333-1795 TO SWITCH TODAY.

# EXHIBIT D



**FIFTH THIRD BANK**
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH  45263-0900

PRENDA LAW INC
161 N CLARK ST STE 3200
CHICAGO IL  60601-3247

0

34183

Banking Center: 161 North Clark
Banking Center Phone: 312-368-1201
Commercial Client Services: 1-800-589-5355
www.53.com

## Account Summary - 7238947365

| | | | | |
|---|---|---|---|---|
| **12/01** | **Beginning Balance** | **$23,239.51** | Number of Days in Period | 31 |
| 43 | Checks | $(45,174.69) | | |
| 33 | Withdrawals / Debits | $(71,927.89) | | |
| 11 | Deposits / Credits | $126,057.18 | | |
| **12/31** | **Ending Balance** | **$32,194.11** | | |

## Checks

**43 checks totaling $45,174.69**

\* Indicates gap in check sequence   i = Electronic Image   s = Substitute Check

| Number | Date Paid | Amount | Number | Date Paid | Amount | Number | Date Paid | Amount |
|---|---|---|---|---|---|---|---|---|
| 1016 i | 12/06 | 80.00 | 1097 i | 12/06 | 350.00 | 1112 i | 12/10 | 65.26 |
| 1017 i | 12/03 | 350.00 | 1098 i | 12/11 | 200.00 | 1115*i | 12/13 | 18.95 |
| 1018 i | 12/06 | 56.00 | 1099 i | 12/10 | 1,920.00 | 1119*i | 12/14 | 7,000.00 |
| 1019 i | 12/05 | 3,300.00 | 1100 i | 12/10 | 2,082.76 | 1120 i | 12/17 | 18.95 |
| 1070*i | 12/17 | 65.00 | 1101 i | 12/11 | 144.33 | 1121 i | 12/24 | 162.15 |
| 1081*i | 12/07 | 1,500.00 | 1102 i | 12/11 | 375.00 | 1123*i | 12/19 | 250.00 |
| 1084*i | 12/14 | 400.00 | 1103 i | 12/10 | 33.77 | 1124 i | 12/20 | 108.13 |
| 1085 i | 12/06 | 700.00 | 1104 i | 12/13 | 5,250.48 | 1125 i | 12/20 | 47.24 |
| 1086 i | 12/04 | 1,112.00 | 1106*i | 12/13 | 1,216.00 | 1126 i | 12/21 | 6,575.00 |
| 1087 i | 12/11 | 8.00 | 1107 i | 12/11 | 375.00 | 1127 i | 12/21 | 4,000.00 |
| 1091*i | 12/03 | 1,752.00 | 1108 i | 12/11 | 95.00 | 1128 i | 12/26 | 300.00 |
| 1092 i | 12/04 | 2,100.00 | 1109 i | 12/14 | 100.00 | 1131*i | 12/26 | 125.05 |
| 1093 i | 12/03 | 816.67 | 1110 i | 12/18 | 810.00 | 1132 i | 12/27 | 18.95 |
| 1095*i | 12/03 | 643.00 | 1111 i | 12/11 | 300.00 | 1133 i | 12/28 | 220.00 |
| 1096 i | 12/06 | 130.00 | | | | | | |

## Withdrawals / Debits

**33 items totaling $71,927.89**

| Date | Amount | Description |
|---|---|---|
| 12/04 | 10,000.00 | OUTGOING WIRE TRANS 120412 |
| 12/05 | 116.81 | DEBIT CARD PURCHASE AT ALLEN HOPE PROCESS, 810-2397788, MI ON 120412 FROM CARD#: XXXXXXXXXXXX9627 |
| 12/05 | 4,369.83 | ADP TX/FINCL SVC AA ADP - TAX RMNPV 120501A01 PRENDA LAW INC 120512 |
| 12/05 | 9,624.67 | ADP TX/FINCL SVC 323298036 ADP - TAX 506039913657NPV PRENDA LAW INC PRENDA 120512 |
| 12/06 | 3.50 | TELEPHONE INITIATED PAYMENT AT BILLMATRIX BILLPAYFEE 10266501922 120612 |
| 12/06 | 15.60 | Bluepay,Inc. BP 8667398324 100117310823 SteeleHansmeier PLLC 120612 |
| 12/06 | 20.00 | WEB INITIATED PAYMENT AT GATEWAY SERVICES WEBPAYMENT 120612 |
| 12/06 | 335.88 | TELEPHONE INITIATED PAYMENT AT NEVADA POWER BILL PAY 10266501921 120612 |
| 12/07 | 82.30 | Bluepay,Inc. BP 8667398324 100117399628 SteeleHansmeier PLLC 120712 |
| 12/07 | 1,457.63 | Bluepay,Inc. BP 8667398324 100117399617 Prenda Law 120712 |
| 12/07 | 15,000.00 | OUTGOING WIRE TRANS 120712 |
| 12/11 | 8.00 | DEBIT CARD PURCHASE AT MNEFILE*TYLER FEES, 800-657-3511, TX ON 121012 FROM CARD#: XXXXXXXXXXXX9619 |
| 12/11 | 100.00 | DEBIT CARD PURCHASE AT MNCOURT*0001599450, 612-348-5021, MN ON 121012 FROM CARD#: XXXXXXXXXXXX9619 |
| 12/11 | 129.00 | Bluepay,Inc. BP 8667398324 100117701365 Prenda Law 121112 |
| 12/11 | 10,000.00 | OUTGOING WIRE TRANS 121112 |

## Withdrawals / Debits - continued

| Date | Amount | Description |
|------|--------|-------------|
| 12/12 | 751.48 | WEB INITIATED PAYMENT AT AMEX EPayment ACH PMT W3630 121212 |
| 12/12 | 415.63 | SERVICE CHARGE |
| 12/14 | 3.00 | DEBIT CARD PURCHASE AT MNEFILE*TYLER FEES, 800-657-3511, TX ON 121312 FROM CARD#: XXXXXXXXXXXX9619 |
| 12/14 | 81.00 | ADP PAYROLL FEES OT ADP - FEES 2RNPV 9688154 PRENDA LAW INC 121412 |
| 12/17 | 8.00 | DEBIT CARD PURCHASE AT MNEFILE*TYLER FEES, 800-657-3511, TX ON 121412 FROM CARD#: XXXXXXXXXXXX9619 |
| 12/17 | 100.00 | DEBIT CARD PURCHASE AT MNCOURT*0001657740, 612-348-5021, MN ON 121412 FROM CARD#: XXXXXXXXXXXX9619 |
| 12/18 | 5,000.00 | OUTGOING WIRE TRANS 121812 |
| 12/20 | 144.00 | OUTGOING WIRE TRANS 122012 |
| 12/20 | 1,581.73 | OUTGOING WIRE TRANS 122012 |
| 12/21 | 35.00 | DEBIT CARD PURCHASE AT LIB CONGRESS/COPYR, 202-707-2573, DC ON 122012 FROM CARD#: XXXXXXXXXXXX9627 |
| 12/21 | 35.00 | DEBIT CARD PURCHASE AT LIB CONGRESS/COPYR, 202-707-2573, DC ON 122012 FROM CARD#: XXXXXXXXXXXX9627 |
| 12/21 | 2,800.00 | OUTGOING WIRE TRANS 122112 |
| 12/26 | 271.91 | COX COMM LAS BANKDRAFT 476120593001001 122612 |
| 12/27 | 2,000.00 | OUTGOING WIRE TRANS 122712 |
| 12/28 | 6.00 | ADP PAYROLL FEES OT ADP - FEES 2RNPV 0286124 PRENDA LAW INC 122812 |
| 12/31 | 30.00 | ADP TX/FINCL SVC 304287687 ADP - TAX 594024599028NPV PRENDA LAW INC PRENDA 123112 |
| 12/31 | 5,166.92 | ADP TX/FINCL SVC EJ ADP - TAX RMNPV 010101A01 PRENDA LAW INC 123112 |
| 12/31 | 2,235.00 | OUTGOING WIRE TRANS 123112 |

## Deposits / Credits

**11 items totaling $126,057.18**

| Date | Amount | Description |
|------|--------|-------------|
| 12/04 | 49,628.42 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00547726619 |
| 12/11 | 14,118.34 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00548570345 |
| 12/13 | 4,800.00 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00548785709 |
| 12/17 | 1,900.00 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00549292346 |
| 12/18 | 8,766.74 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00549425797 |
| 12/19 | 2,000.00 | DEPOSIT |
| 12/20 | 144.00 | INCOMING WIRE TRANS 122012 |
| 12/21 | 11,585.00 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00549905829 |
| 12/27 | 3,000.00 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00550411589 |
| 12/28 | 114.68 | DEPOSIT |
| 12/31 | 30,000.00 | FUNDS TRANSFER FROM CK: XXXXX7456 REF # 00550859911 |

## Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 12/03 | 19,677.84 | 12/12 | 16,067.15 | 12/21 | 9,615.41 |
| 12/04 | 56,094.26 | 12/13 | 14,381.72 | 12/24 | 9,453.26 |
| 12/05 | 38,682.95 | 12/14 | 6,797.72 | 12/26 | 8,756.30 |
| 12/06 | 36,991.97 | 12/17 | 8,505.77 | 12/27 | 9,737.35 |
| 12/07 | 18,952.04 | 12/18 | 11,462.51 | 12/28 | 9,626.03 |
| 12/10 | 14,850.25 | 12/19 | 13,212.51 | 12/31 | 32,194.11 |
| 12/11 | 17,234.26 | 12/20 | 11,475.41 | | |

IN NOVEMBER 2012, YOUR SAVINGS STATEMENTS CAN BE MADE AVAILABLE ONLINE IN FIFTH THIRD DIRECT BY CONTACTING YOUR RELATIONSHIP TEAM. A NEW FEE WILL BE ASSESSED FOR PAPER CHECKING AND SAVINGS STATEMENTS. TO STOP RECEIVING PAPER STATEMENTS, GO TO "ELIMINATE PAPER" IN FIFTH THIRD DIRECT. ONLY CHECKING, SAVINGS AND BILLING STATEMENTS WILL BE PROVIDED IN ELECTRONIC FORM. ADVICE AND TAX DOCUMENTS WILL STILL BE SENT IN PAPER FORM, FREE FROM CHARGE. FOR MORE INFORMATION PLEASE CONTACT YOUR RELATIONSHIP MANAGER, TREASURY MANAGEMENT OFFICER OR CALL US TOLL FREE AT 1-866-475-0729.

Case 3:12-cv-00889-DRH-SCW   Document 135-4 *SEALED*   Filed 03/20/14   Page 4 of 4
PageID 3247
Case: 14-1682   Document: 2   Filed: 07/30/2014   Pages: 197
Case 2:12-cv-08933-ODW-JC Document 240-7 Filed 10/17/13 Page 8 of 8 Page ID #:4495

| | Type | Date | Num | Name | Memo | | Account | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| | Check | 12/04/12 | WIRE | Duffy Law Group | November, 2012 | √ | Payments to Old Owners | −10,000.00 | −8,499.18 |
| | Deposit | 12/04/12 | | Pirates | | √ | Legal Fee Income | 49,628.42 | 41,129.24 |
| | Check | 12/05/12 | 1107 | Jonathan Wells Tappan | Nov. 2012 Commission (Corrected) | √ | Filing Fees & Legal Expenses | −375.00 | 40,754.24 |
| | Check | 12/05/12 | ELEC WD | Allen–Hope & Associates | | √ | Process Server Fees | −116.81 | 40,637.43 |
| | Check | 12/05/12 | 1019 | Sirh–Ryun Wi Dugas | | √ | Sirh–Ryun Wi Dugas | −3,300.00 | 37,337.43 |
| | Check | 12/05/12 | ELEC WD | ADP | | √ | Payroll Tax | −4,369.83 | 32,967.60 |
| | Check | 12/05/12 | ELEC WD | ADP | | √ | Payroll | −9,624.67 | 23,342.93 |
| | Check | 12/06/12 | 1108 | Legal Process of Minnesota, LLC | Acct. # Mooney – 10/10/12 Invoice | √ | Process Server Fees | −95.00 | 23,247.93 |
| | Check | 12/06/12 | 1109 | Sam Trenchi | 2 Tennessee Cases / Process Server Fees | √ | –SPLIT– | −100.00 | 23,147.93 |
| | Check | 12/06/12 | ELEC WD | Gateway Services | | √ | Credit Card Processing Fees | −20.00 | 23,127.93 |
| | Check | 12/06/12 | ELEC WD | Bluepay, Inc. | | √ | Credit Card Processing Fees | −15.60 | 23,112.33 |
| | Check | 12/06/12 | ELEC WD | Bill Matrix | | √ | Credit Card Processing Fees | −3.50 | 23,108.83 |
| | Check | 12/06/12 | WIRE | Kynes, Markman & Felman, PA | 12/7/12 Invoice | √ | Legal & Professional Fees | −15,000.00 | 8,108.83 |
| | Check | 12/07/12 | 1110 | Benjamin C. Debney, LLC | 12/7/12 Invoice | √ | Legal & Professional Fees | −810.00 | 7,298.83 |
| | Check | 12/07/12 | 1112 | Kathleen Momot | Reimb Office Expenses Paid | √ | –SPLIT– | −65.26 | 7,233.57 |
| | Check | 12/07/12 | ELEC WD | Bluepay, Inc. | | √ | Credit Card Processing Fees | −82.30 | 7,151.27 |
| | Check | 12/07/12 | ELEC WD | Bluepay, Inc. | | √ | Credit Card Processing Fees | −1,457.63 | 5,693.64 |
| | General Journal | 12/07/12 | | Pirates | Transfer from IOLTA | | Legal Fee Income | 14,118.34 | 19,811.98 |
| | Check | 12/11/12 | 1116 | Shelterpoint Equities, Ltd | Security Deposit | √ | Rent Expense | −2,638.60 | 17,173.38 |
| | Check | 12/11/12 | 1114 | Shelterpoint Equities, Ltd | 1st Month Rent | √ | Rent Expense | −1,753.00 | 15,420.38 |
| | Check | 12/11/12 | 1115 | Postmaster – Las Vegas, NV | Overnite envelope to Brett Gibbs | √ | Postage and Delivery | −18.95 | 15,401.43 |
| | Check | 12/11/12 | ELEC WD | MN Court | Online filing fee | √ | Legal & Professional Fees | −8.00 | 15,393.43 |
| | Check | 12/11/12 | ELEC WD | MN Court | Online filing fee | √ | Legal & Professional Fees | −100.00 | 15,293.43 |
| | Check | 12/11/12 | 1111 | NV Energy | | √ | Utilities | −300.00 | 14,993.43 |
| | Check | 12/11/12 | ELEC WD | Bluepay, Inc. | | √ | Credit Card Processing Fees | −129.00 | 14,864.43 |
| | Check | 12/11/12 | WIRE | Under the Bridge Consulting | | √ | Payments to Old Owners | −10,000.00 | 4,864.43 |
| | Check | 12/12/12 | ELEC WD | Fifth Third Bank | | √ | Bank Service Charges | −415.63 | 4,448.80 |
| | Check | 12/12/12 | ELEC WD | American Express | | √ | Meals and Entertainment | −751.48 | 3,697.32 |
| | Check | 12/13/12 | 1119 | Brett Gibbs | December, 2012 Payroll | √ | Legal & Professional Fees | −7,000.00 | −3,302.68 |
| | Check | 12/13/12 | 1120 | Postmaster – Las Vegas, NV | Overnite envelope to Brett Gibbs | √ | Postage and Delivery | −18.95 | −3,321.63 |
| | Deposit | 12/13/12 | TRANS | Merkel Pirates | Deposit | | –SPLIT– | 4,800.00 | 1,478.37 |
| | Check | 12/14/12 | 1121 | ALCAN Printer Supplies & Repair | HP P1102w cartridges | √ | Office Expenses | −162.15 | 1,316.22 |
| | Check | 12/14/12 | 1122 | Steven Goodhue | 12/2012 Legal Services | √ | Commission | −1,500.00 | −183.78 |
| | Check | 12/14/12 | ELEC WD | ADP | | √ | Payroll Service Fees | −81.00 | −264.78 |
| | Check | 12/14/12 | TRANS | Merkel Pirates | Online filing fee | √ | Legal & Professional Fees | −3.00 | −267.78 |
| | General Journal | 12/14/12 | | Pirates | | | Merkel–Guava Case | 1,900.00 | 1,632.22 |
| | Check | 12/17/12 | 1124 | ConService | 173.30.103.97 | √ | –SPLIT– | −108.13 | 1,524.09 |
| | Check | 12/17/12 | ELEC WD | MN Court | Water, etc. LV | √ | Legal & Professional Fees | −8.00 | 1,516.09 |
| | Check | 12/17/12 | ELEC WD | MN Court | Online filing fee | √ | Legal & Professional Fees | −100.00 | 1,416.09 |
| | Check | 12/18/12 | 1125 | NV Energy | Acct. # 3000296378714022233 | √ | Utilities | −47.24 | 1,368.85 |
| | General Journal | 12/18/12 | TRANS | Pirates | Transfer from IOLTA | | Legal Fee Income | 8,766.74 | 10,135.59 |
| | Check | 12/18/12 | 1126 | Brett Gibbs | Reimbursement for Jay Waleford Rent / Deposit | √ | Rent Expense | −6,575.00 | 3,560.59 |
| | Check | 12/18/12 | 1127 | Brett Gibbs | Karl – December Payroll | √ | Legal & Professional Fees | −4,000.00 | −439.41 |
| | Check | 12/18/12 | WIRE | McCullough Sparks | | √ | Legal & Professional Fees | −5,000.00 | −5,439.41 |
| | Check | 12/19/12 | 1123 | Cox Communications, Inc. (Utility) | Account # 001–8610–120593001 | √ | Utilities | −250.00 | −5,689.41 |
| | Deposit | 12/19/12 | | Isaac F. Slepner | Old check from Law Office of Linardakis | √ | Legal Fee Income | 2,000.00 | −3,689.41 |
| | Check | 12/20/12 | WIRE | Isaac F. Slepner | | √ | –SPLIT– | −1,581.73 | −5,271.14 |
| | Check | 12/20/12 | 1128 | Kathleen Momot | January, 2013 advance | √ | Kathleen Momot | −300.00 | −5,571.14 |
| | Check | 12/21/12 | 1131 | James Waleford | Relocation Expense Reimbursement | √ | –SPLIT– | −125.05 | −5,696.19 |
| | Check | 12/21/12 | WIRE | Jacques Nazaire | Balance of 10/2012 Filing Fees | √ | Filing Fees & Legal Expenses | −2,800.00 | −8,496.19 |
| | Check | 12/21/12 | 1132 | Alison Perelman | Reimbursement for overnight mailing to JW | √ | Postage and Delivery | −18.95 | −8,515.14 |
| | Deposit | 12/21/12 | | Pirates | Transfer from IOLTA | √ | Legal Fee Income | 11,585.00 | 3,069.86 |
| | Check | 12/21/12 | 1133 | ConService | | √ | –SPLIT– | −220.00 | 2,849.86 |
| | Check | 12/21/12 | ELEC WD | Library of Congress | | √ | Office Expenses | −35.00 | 2,814.86 |
| | Check | 12/21/12 | ELEC WD | Library of Congress | | √ | Office Expenses | −35.00 | 2,779.86 |
| | Check | 12/26/12 | ELEC WD | Cox Communications, Inc. (Utility) | Account # 001–8610–120593001 | √ | Utilities | −271.91 | 2,507.95 |
| | Check | 12/26/12 | 1134 | Sam Trenchi | Commission 12/2012 | √ | –SPLIT– | −530.00 | 1,977.95 |
| | Check | 12/27/12 | WIRE | Law Office of Linardakis | Return of Check inadvertently deposited on 12/19/12 | √ | Legal Fee Income | −2,000.00 | −22.05 |
| | Deposit | 12/28/12 | | Cox Communications, Inc. (Utility) | Deposit | √ | Utilities | 114.68 | 92.63 |
| | Deposit | 12/28/12 | TRANS | Merkel Pirates | | | Merkel–Guava Case | 3,000.00 | 3,092.63 |
| | Check | 12/28/12 | ELEC WD | ADP | | √ | Payroll Service Fees | −6.00 | 3,086.63 |
| | Check | 12/31/12 | WIRE | Daniel Ruggiero | 12/2012 Settlement Commission | √ | Commission | −2,235.00 | 851.63 |
| | Check | 12/31/12 | 1136 | Jacques Nazaire | December 2012 Commission | | Commission | −1,725.00 | −873.37 |
| | Check | 12/31/12 | 1137 | Jonathan Wells Tappan | December 2012 Commission | | Commission | −750.00 | −1,623.37 |
| | Check | 12/31/12 | 1138 | Steven Goodhue | 1/2013 Legal Services | | Commission | −1,500.00 | −3,123.37 |
| | Check | 12/31/12 | 1139 | Curtis Hussey | January, 2013 Legal Services | | Commission | −500.00 | −3,623.37 |
| | General Journal | 12/31/12 | TRANS | Pirates | Transfer from IOLTA | | Legal Fee Income | 30,000.00 | 26,376.63 |
| | Check | 12/31/12 | 1144 | Postmaster – Las Vegas, NV | Overnite envelope to Brett Gibbs | | Postage and Delivery | −18.95 | 26,357.68 |
| | Check | 12/31/12 | ELEC WD | ADP | | √ | Payroll Service Fees | −30.00 | 26,327.68 |
| | Check | 12/31/12 | ELEC WD | ADP | | √ | Payroll Tax | −5,166.92 | 21,160.76 |
| | Total 53 OPERATING xx7365 | | | | | | | 21,160.76 | 21,160.76 |
| Total Checking/Savings | | | | | | | | 22,586.76 | 22,586.76 |
| Accounts Receivable | | | | | | | | | |
| Accounts Receivable | | | | | | | | 0.00 | |
| Total Accounts Receivable | | | | | | | | 0.00 | |
| Total Accounts Receivable | | | | | | | | 0.00 | |
| Other Current Assets | | | | | | | | | |
| Undeposited Funds | | | | | | | | 0.00 | |
| Total Undeposited Funds | | | | | | | | 0.00 | |
| Total Other Current Assets | | | | | | | | 0.00 | |
| Total Current Assets | | | | | | | | 22,586.76 | 22,586.76 |
| Fixed Assets | | | | | | | | | |
| Furniture and Equipment | | | | | | | | 0.00 | |
| Total Furniture and Equipment | | | | | | | | 0.00 | |
| Total Fixed Assets | | | | | | | | 0.00 | |
| Other Assets | | | | | | | | 0.00 | |
| Total Other Assets | | | | | | | | 0.00 | |
| TOTAL ASSETS | | | | | | | | 22,586.76 | 22,586.76 |

# EXHIBIT E

SIGN IN / OUT | CONTACT US | SITE MAP

# McCULLOUGH | SPARKS

801 765-0279  **10 REASONS WE CAN GIVE YOU BETTER ASSET PROTECTION** ➤

# 10 REASONS WE CAN GIVE YOU BETTER ASSET PROTECTION

We can give you better asset protection by using a 541 Trust™.  These are the top ten reasons our 541 Trust™ gives you better asset protection:

**1.  Better Statutory Foundation.**  The 541 Trust™ is supported by state and federal statutes throughout the country  Click HERE to see law supporting the 541 Trust™

**2.  Better Case Law to Support It.**  The 541 Trust™ is proven by an overwhelming number of court cases throughout the country  Click HERE to see law supporting the 541 Trust™

**3.  Better Confidentiality.**  The 541 Trust™ removes assets from your personal ownership and from any disclosure of your personal assets  It is a private document and it cannot be discovered through any public records

**4.  Better Scope of Use.**  If implemented correctly, the 541 Trust™ can protect any type of asset, in any location, from any type of liability including lawsuits, bankruptcy, tax liens, divorce, or government actions

**5.  Better Flexibility.**  The terms, conditions, and beneficiaries of the 541 Trust™ can be changed, and the assets can be returned to you without any cost or tax effect, at any time

**6.  Better Simplicity.**  The 541 Trust™ can be set up within a few days and it requires no appraisals, no gift taxes, no extra tax returns, and no ongoing maintenance fees  You can transfer any asset into or out of the 541 Trust™ without any tax consequences  The 541 Trust™ does not increase or decrease your income taxes  We will coordinate with your CPA to be sure they understand and agree with the tax treatment

**7.  Better Than Offshore Trusts, DAPTs, or FLPs.**  The 541 Trust™ is supported by generations of legal precedent  Despite heavy promotion, history and court cases prove that Offshore Trusts, DAPTs and FLPs fail to protect assets as promised    Expand

**8.  Better Price**  The 541 Trust™ comes at a better price and with lower ongoing fees than comparable plans

**9.  Better Ethical Foundation.**  The 541 Trust™ must be done in advance of a problem for the purpose of providing security for your family in the event of currently unforeseen liabilities   We do not facilitate fraud of any kind

**10. Better Craftsmanship and Support.**  Lee McCullough is an adjunct law school professor who teaches law students how to draft better trusts   We have designed asset protection trusts for hundreds of clients and have seen many of them tested in court   Because the concept of the 541 Trust™ is the best in the industry, we are often hired by distinguished law firms throughout the country to serve as co-counsel in preparing 541 Trusts™ for their clients   The 541 Trust™ is sophisticated enough for clients with over $100 million, while simple and economical enough for those with under $100,000  We will customize your documents to your particular situation, and we will be available to provide ongoing support over many years

For a detailed explanation and diagram of the 541 Trust™, call **801-765-0279** or click HERE to send us an email.

---

Notable Facts about our 541 Trusts™:

"541 Trust"™ is a name that we made up to describe our best asset protection trust.  No one else provides a trust quite like this.

Our 541 Trusts™ have been tested in lawsuits, bankruptcy, and IRS audits.  None have failed to protect the trust assets.

We have created 541 Trusts™ for hundreds of clients including the following:

- Dozens of respected law firms and attorneys who have hired us to prepare trusts for their clients.
- Over two dozen clients with assets exceeding $25 million (6 clients with over $100 million)

Case 3:12-cv-00889-DRH-SCW Document 135-5 *SEALED* Filed 03/20/14 Page 3 of 3

Case: 14-1682    Document: 28-19    Filed: 07/30/2014    Pages: 197
PageID 3256

- Over a hundred clients with assets exceeding $10 million
- Several Major League Baseball players including a current member of the New York Yankees with multiple World Series titles and over 400 home runs.
- 1 Hall of Fame NBA basketball player
- 1 current NFL offensive lineman
- 1 current head coach for a BCS football program

To see many statutes and over 20 court cases upholding the 541 Trust™, click here: **Law and Precedent Supporting the 541 Trust™**

To see some Success Stories, click here: **541 Trust™ Success Stories and Testimonials**

To learn why a 541 Trust™ is better than an Offshore Trust (including over 2 dozen cases showing how US Courts attack an offshore trust), click here: **Better than an Offshore Trust**

To learn why a 541 Trust™ is better than a family limited partnership or LLC, click here: **Better than an FLP or LLC**

To learn why a 541 Trust™ is better than a Wyoming LLC, click here: **Why You Can't Rely on a Wyoming LLC for Asset Protection Purposes**

To learn why a 541 Trust™ is better than a Self-Settled Domestic Asset Protection Trust, click here: **Don't Self-Settle for Inadequate Asset Protection**

To read Lee McCullough's recent article in *Estate Planning* Magazine, click here: **Building a Better Asset Protection Trust**

To read about some cases that show how this works in real life, click here: **How To Attack an Asset Protection Trust**.

If you would like to receive a detailed explanation and a diagram of the 541 Trust™, please call us at 801-765-0279 or click **HERE** to send us an email.

# EXHIBIT F

**Mark Mall**
VICE PRESIDENT OF RISK

**630.300.2437** main

866.422.8804 fax

www.bluepay.com | Follow us on Twitter!





Good Evening Mr. Sweet,

I apologize for the delay in our response to your subpoena. We have finished compiling the requested data related to John Steele and all the companies he was associated with.

Included is one control document that provides a thorough summary of all of the details associated with all of the accounts that Mr. Steele and his associates had with us at any time. There are also corresponding data extracts for each account that had data available. I will send two emails since there is a significant quantity of documentation.

If you need any additional information, please contact me.

**Mark Mall**
VICE PRESIDENT OF RISK

**630.300.2437** main

866.422.8804 fax

www.bluepay.com | Follow us on Twitter!



| Steel Hansmeier Data | SteeleHansmeier, PLLC | Steele Law Firm MOTO | Steele Law Firm RETAIL |
|---|---|---|---|
| a. Individuals that signed for and created Blu | John Steele and Paul Hansme | John Steele | John Steele |
|    Date account was opened | 12/10/10 | 4/7/08 | 4/7/08 |
|    Merchant Account Number | 518089424018364 | 518089424001006 | 518089423601814 |
| b. Individuals with authority to modify accou | John Steele and Paul Hansme | John Steele | John Steele |
| c. Bank accounts that received money | | | |
|    Bank Name | JP Morgan Chase Bank | US Bank | US Bank |
|    Account Number | 941867178 | 199372263756 | 199372263756 |
|    Routing Number | 071000013 | 071904779 | 071904779 |
| | | | |
|    Bank Name | JP Morgan Chase Bank | US Bank | US Bank |
|    Account Number | 941867160 Account for debit: | 199372263764 - debits on | 199372263764 - debits only |
|    Routing Number | 071000013 | 071904779 | 071904779 |
| | | | |
|    Bank Name | JP Morgan Chase Bank | Citibank | |
|    Account Number | 993146927 Account for debit: | 0800813646 | |
|    Routing Number | 071000013 | 271070801 | |
| | | | |
|    Bank Name | Fifth Third Bank | Citibank | |
|    Account Number | 7238947456 | 0800813638 - debits only | |
|    Routing Number | 071923909 | 271070801 | |
| | | | |
|    Bank Name | | Fifth Third Bank | |
|    Account Number | | 7235501058 - debits only | |
|    Routing Number | | 071923909 | |
| | | | |
|    Bank Name | | Fifth Third Bank | |
|    Account Number | | 7235500878 | |
|    Routing Number | | 071923909 | |
| | | | |
|    Bank Name | | JP Morgan Chase Bank | |
|    Account Number | | 923903488 | |
|    Routing Number | | 071000013 | |
| | | | |
|    Bank Name | | JP Morgan Chase Bank | |
|    Account Number | | 923903470 | |
|    Routing Number | | 071000013 | |
| | | | |
| | | | |
| d. Total number of payments processed | | | |
|    Credit card transactions | 1925 | 777 (8/2010-9/2012 only) | 0 |
|    ACH/Check transactions | 251 | 0 | 0 |
| e. Total dollar value of payments processed | | | |
|    Credit card volume | $            1,538,997.02 | $           383,746.02 | 0 |
|    ACH/Check volume | $               369,208.32 | 0 | 0 |
| f. Current status of BluePay account | CLOSED | CLOSED | CLOSED |
|    Date account was closed | 4/8/13 | 4/8/13 | 08/08/2008 - never used |
|    Date of most recent payment processed | 3/12/13 | 9/29/12 | |
| g. IP Address/es used to log in to BluePay | 24.234.211.161 | none | none |
| | 68.224.78.103 | | |
| | 76.2.147.21 | | |
| | 70.189.209.82 | | |
| | | a list of all of | |
| | a list of all of | correspondence is | |
| h. All communications | correspondence is attached | attached | none |
|    Number of communications included | 12 | 11 | 0 |

| Steele Law Firm | Prenda Law | Live Wire Holdings LLC | Media Copyright Group, LLC |
|---|---|---|---|
| | Paul Duffy | John Steele | John Steele |
| 12/15/09 | 11/11/11 | 1/16/13 | 10/8/10 |
| 518089423616689 | 518089424030708 | 518089424037851 | 518089424015998 |
| John Steele | Paul Duffy | John Steele | John Steele |
| | | | |
| Citibank | JP Morgan Chase Bank | Chase | Fifth Third Bank |
| 0800813638 debits only | 993146935 | 267084131 | 7235500787 |
| 271070801 | 071000013 | 167008100 | 071923909 |
| | | | |
| Citibank | JP Morgan Chase Bank | | JP Morgan Chase Bank |
| 0800813646 | 993146943 | | 941867103 |
| 271070801 | 071000013 | | 071000013 |
| | | | |
| | JP Morgan Chase Bank | | JP Morgan Chase Bank |
| | 993146240 | | 941867087 debits only |
| | 071000013 | | 071000013 |
| | | | |
| | JP Morgan Chase Bank | | |
| | 993146927 debits only | | |
| | 071000013 | | |
| | | | |
| | Fifth Third Bank | | |
| | 7238947456 | | |
| | 071923909 | | |
| | | | |
| | Fifth Third Bank | | |
| | 7238947365 debits only | | |
| | 071923909 | | |
| | | | |
| 0 | 1803 | 123 | 140 |
| 0 | 252 | 13 | 12 |
| 0 | $ 1,788,778.60 | $ 107,320.00 | $ 192,200.00 |
| 0 | $ 401,318.33 | $ 8,925.00 | $ 26,450.00 |
| CLOSED | CLOSED | CLOSED | CLOSED |
| 02/19/2010 - never used | 5/10/13 | 4/8/13 | 3/7/11 |
| | 3/12/13 | 4/7/13 | 3/1/11 |
| none | 70.189.209.82 | 70.189.209.82 | |
| | 76.2.150.48 | 76.2.147.21 | |
| | 76.2.147.21 | 76.2.150.48 | |
| | | | |
| | a list of all of correspondence is attached | | |
| none | | none | none |
| 0 | 6 | 0 | 0 |

# EXHIBIT G

Statement Period Date: 8/1/2012 - 8/31/2012
Account Type: Bus Basics Checking
Account Number: 7235500787

**FIFTH THIRD BANK**
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH  45263-0900

MEDIA COPYRIGHT GROUP LLC
161 N CLARK ST
STE 4700
CHICAGO IL  60601-3201

0

31728

Banking Center: 161 North Clark
Banking Center Phone: 312-368-1201
Commercial Client Services: 1-800-589-5355
www.53.com

## Account Summary - 7235500787

| 08/01 | Beginning Balance | $29,932.51 | Number of Days in Period | 31 |
|-------|-------------------|------------|--------------------------|-----|
| 2 | Checks Withdrawals / Debits | $(29,932.51) | | |
| 08/31 | Deposits / Credits Ending Balance | $0.00 | | |

### Withdrawals / Debits

**2 items totaling $29,932.51**

| Date | Amount | Description |
|------|--------|-------------|
| 08/03 | 7.95 | AMERICAN EXPRESS PAYMENT DATE 12216 COLLECTION 3122795149 MEDIA COPYRI3122795149 080312 |
| 08/13 | 29,924.56 | DEBIT MEMO |

### Daily Balance Summary

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| 08/03 | 29,924.56 | 08/13 | 0.00 |

PLANNING A TRIP? PURCHASE OR EXCHANGE MORE THAN 90 FOREIGN CURRENCIES FROM YOUR LOCAL FIFTH THIRD BANK, AS EARLY AS THE NEXT BUSINESS DAY. THERE MAY BE A FEE FOR NEXT BUSINESS DAY DELIVERY ON SOME CURRENCIES. CONTACT YOUR BANKING CENTER FOR DETAILS ON CURRENCY EXCHANGE FEES.

# EXHIBIT H



**FIFTH THIRD BANK**

(HEREAFTER REFERRED TO AS "BANK")
**SIGNATURE CARD**
Ref # **2416846**



9976961616

☑ **NEW**   ☐ **ADD**   ☐ **REPL**

| Name (Primary Owner) | Date Of Birth | Home Phone | Mother's Maiden Name |
|---|---|---|---|
| JOHN L STEELE | 02/22/1971 | (708)689-8131 | WORLD |

| Street Address | City And State | Zip | Country |
|---|---|---|---|
| 114 1ST RIVO ALTO TER | MIAMI BEACH, FL | 33139 | US |

| Employer | Work Phone | Taxpayer ID Number | Account No. |
|---|---|---|---|
| SELF EMPLOYED | (708)689-8131 | 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 | 9976961616 |

| Type | Ownership* | Opened By | Bc No. | Date |
|---|---|---|---|---|
| FIFTH THIRD RELATIONSHIP SAVINGS | SOLE OWNER | E931790 | 23305 | 08/13/2012 |

\* Joint accounts shall be owned as joint tenants with rights of survivorship, not as tenancy by the entireties

**PLEASE CHECK THE APPROPRIATE BOX FOR FEDERAL TAX CLASSIFICATION:**

☑ Individual/SoleProprietor   ☐ Trust/Estate   ☐ Partnership

☐ LLC - Enter tax classification (C=C Corporation, S=S Corporation, P=Partnership)_____

☐ C Corporation   ☐ S Corporation   ☐ Other_____   ☐ Non Resident Alien

**THE UNDERSIGNED AGREES TO THE TERMS AND CONDITIONS AT THE RIGHT.**

| Title | Statement Address |
|---|---|
| JOHN L STEELE | 114 1ST RIVO ALTO TER<br>MIAMI BEACH, FL 33139 |

| | Non-US Person* | Senior Foreign Official** |
|---|---|---|
| JOHN L STEELE  X _(signature)_ | ☐Yes ☑No | ☐Yes ☑No |
| X_____ | ☐Yes ☐No | ☐Yes ☐No |
| X_____ | ☐Yes ☐No | ☐Yes ☐No |
| X_____ | ☐Yes ☐No | ☐Yes ☐No |

**USA PATRIOT ACT REQUIREMENTS:**

*1. Are you a Non-U.S person with more than $500,000 on deposit or invested with Fifth Third?

**2. Are you a Senior Foreign Official of a government branch, military branch, political party, foreign government-owned company, or a close personal or professional associate of one of these persons?

**Under penalties of perjury, I certify that:**

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me),

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding,

3. I am a U.S. citizen or other U.S. person.

**Certification Instructions -** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return.

→  x _(signature)_  _____  x Aug 13, 2012  _____
        Signature                                    Date

90-213 (5/3-REV 09/05-WebForm)       Send in yellow bag to Check Processing

**TERMS AND CONDITIONS**
1. The terms and conditions stated herein, together with resolutions or authorizations which accompany this signature card, if applicable, and the Rules, Regulations, Agreements, and Disclosures of Bank constitute the Deposit Agreement ("Agreement") between the individual(s) or entity(ies) named hereon ("Depositor") and the Bank.
2. This Agreement incorporates the Rules, Regulations, Agreements, and Disclosures established by Bank from time to time, clearing house rules and regulations, state and federal laws, recognized banking practices and customs, service charges as may be established from time to time and is subject to laws regulating transfers at death and other taxes.
3. All signers hereby agree that the above named bank is authorized to act as a depository under the terms and conditions of the Agreement.
4. Bank is authorized to recognize the signatures executed hereon in such numbers as indicated, for the withdrawal of funds or transactions of any other business regarding this account until written notice to the contrary is received by Bank.
5. In the case of overdraft or overpayment on this account, whether by error, mistake, inadvertence or otherwise, the amount of such overdraft or overpayment shall be immediately paid to Bank.
6. Depositor acknowledges and agrees that Bank, for itself and as agent for any affiliate of Fifth Third Bancorp, is granted a security interest in, and may, at any time, set off, against any balance in this account, any debt owed to Bank by any person having the right of withdrawal or any debt owed to Bank by any entity listed under the Account Title. A debt includes, but is not limited to, an obligation owing to Bank, whether now existing or hereafter acquired by Bank whenever payable and without regard to whether arising as maker, drawer, endorser, or guarantor.
7. All signers agree to the Terms and Conditions set forth hereon and acknowledge receipt of a copy of the Rules and Regulations, Agreements, and Disclosures of Bank and agree to the terms set forth therein.

Statement Period Date: 8/13/2012 - 9/26/2012
Account Type: 5/3 Relationship Sav
Account Number: 9976961616

**FIFTH THIRD BANK**
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH  45263-0900

Banking Center: 161 North Clark
Customer Service: 1-800-972-3030
Internet Banking & Bill Payment: www.53.com

JOHN L STEELE
114 1ST RIVO ALTO TER
MIAMI BEACH FL 33139-1204

0

1795

IMAGINE HAVING YOUR IDENTITY STOLEN WITHOUT EVEN KNOWING IT HAPPENED. HELP SAFEGUARD YOU AND YOUR FAMILY WITH FIFTH THIRD IDENTITY ALERT PREMIUM TODAY. THE BENEFITS IN FIFTH THIRD IDENTITY ALERT PREMIUM ARE PROVIDED BY FIFTH THIRD'S VENDOR, AFFINION BENEFITS GROUP. TO FIND OUT MORE ON IDENTITY ALERT, PLEASE VISIT 53.COM/IDENTITYALERT. FIFTH THIRD BANK. MEMBER FDIC.

## Account Summary - 9976961616

| | | | | |
|---|---|---|---|---|
| 08/13 | Beginning Balance | $0.00 | Interest Earned | $4.21 |
| 1 | Withdrawals / Debits | $(27,927.16) | Number of Days in Period | 45 |
| 4 | Deposits / Credits | $27,928.77 | Annual Percentage Yield Earned | 0.13% |
| 09/26 | Ending Balance | $1.61 | Interest Earned YTD | $4.21 |

CONGRATULATIONS ON YOUR RELATIONSHIP SAVINGS INTEREST BONUS!  THE AMOUNT OF $1.61 WILL BE CREDITED ON THE FIRST BUSINESS DAY OF YOUR NEXT STATEMENT.  WE THANK YOU FOR BEING A VALUED FIFTH THIRD CUSTOMER!

### Monthly Service Charge Explained

| | |
|---|---|
| **Standard Monthly Service Charge** | **$5.00** |
| **Discount Applied** | |
| CHECKING RELATIONSHIP | -$5.00 |
| **Amount to be Withdrawn on First Business Day of Next  Statement** | **$0.00** |

**Statement Period: 08/30/12 - 09/26/12**

You can avoid a monthly service charge when you own any Fifth Third checking account or with an average balance of $500 or more in your savings account this period.

| | |
|---|---|
| **Checking Account** | **Yes** |
| **Monthly Avg. Savings Acct. Bal.** | **$25,932.42** |

### Withdrawals / Debits

1 item totaling $27,927.16

| Date | Amount | Description |
|---|---|---|
| 09/25 | 27,927.16 | FUNDS TRANSFER TO CK: XXXXXX6012 REF # 00539254548 |

### Deposits / Credits

4 items totaling $27,928.77

| Date | Amount | Description |
|---|---|---|
| 08/13 | 27,924.56 | DEPOSIT |
| 08/29 | 1.30 | RELATIONSHIP SAVINGS INTEREST |
| 08/30 | 1.30 | CONGRATULATIONS YOU RECEIVED YOUR RELATIONSHIP SAVINGS INTEREST BONUS |
| 09/26 | 1.61 | RELATIONSHIP SAVINGS INTEREST |

### Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08/13 | 27,924.56 | 08/30 | 27,927.16 | 09/26 | 1.61 |
| 08/29 | 27,925.86 | 09/25 | 0.00 | | |

Page 1 of 2



| | |
|---|---|
| Posting Date | 2012 Aug 13 |
| DB/CR Indicator | Credit |
| Amount | $27,924.56 |
| Posting Check Number | 600 |
| Posting Account Number | 9976961616 |
| Posting Seq Number | 57147230 |
| Tran Code | 600 |
| ABA/RT Number | 55556023 |

DEPOSIT TICKET



☑ CASH ▶

70-2390/719

29,924.5▶

DATE 8/13/12
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

TOTAL FROM
OTHER SIDE ▶

SUB TOTAL ▶

SIGN HERE FOR CASH RECEIVED (IF REQUIRED) ▶

• LESS CASH
RECEIVED ▶

FIFTH THIRD BANK

DDA 7239686012

$           $2,000.00
Ref#649719284 Tlr#3 BC#23305

⑆519960233⑆ 7239686012⑈

081312 PKT 5
FIFTH THIRD BANK (P256)
◀042000314▶
5312477156

| | |
|---|---|
| Posting Date | 2012 Aug 13 |
| DB/CR Indicator | Credit |
| Amount | $2,000.00 |
| Posting Check Number | 600 |
| Posting Account Number | 7239686012 |
| Posting Seq Number | 57147229 |
| Tran Code | 600 |
| ABA/RT Number | 51996023 |

**FIFTH THIRD BANK** (Chicago) (023)    DDA - DEBIT

DESCRIPTION OF TRANSACTION TO BE ENTERED    Account Closure - Business Sold    DATE 8/13/12

312-368-1201  E931790    312 368 1201

Preparer's Full & Legible Signature   Phone #   Preparer's Employee #   Authorized Approver's Full & Legible Signature   Phone #

Close Code (Serial #)    Account Number    Tran Code    Transaction Amount

23305    7235500787    501    $ 29,924.56

⑈519900235⑈

88I3I2 PKT 5
FIFTH THIRD BANK (P24)
◄042000314►
5312477138

| | |
|---|---|
| **Posting Date** | 2012 Aug 13 |
| **DB/CR Indicator** | Debit |
| **Amount** | $29,924.56 |
| **Posting Check Number** | 23305 |
| **Posting Account Number** | 7235500787 |
| **Posting Seq Number** | 57147231 |
| **Tran Code** | 501 |
| **ABA/RT Number** | 51990023 |

**FIFTH THIRD BANK**

(CHICAGO)
P.O. BOX 630900 CINCINNATI OH 45263-0900

JOHN L STEELE
161 N CLARK ST
CHICAGO IL 60601-3206

0

174

Statement Period Date: 9/27/2012 - 12/4/2012
Account Type: 5/3 Relationship Sav
Account Number: 9976961616

Banking Center: 161 North Clark
Customer Service: 1-800-972-3030
Internet Banking & Bill Payment: www.53.com

---

THE U.S. DEPARTMENT OF THE TREASURY REQUIRES EVERYONE GETTING PAPER FEDERAL BENEFIT CHECKS TO SWITCH TO DIRECT DEPOSIT BY MARCH 1, 2013. DON'T WAIT UNTIL IT'S TOO LATE. GO ONLINE AT WWW.GODIRECT.ORG OR CALL (800) 333-1795 TO SWITCH TODAY.

## Account Summary - 9976961616

| 09/27 | Beginning Balance | $1.61 | Interest Earned | $1.61 |
| 1 | Withdrawals / Debits | $(3.22) | Number of Days in Period | 69 |
| 1 | Deposits / Credits | $1.61 | Annual Percentage Yield Earned | 81.45% |
| 12/04 | Ending Balance | $0.00 | Interest Earned YTD | $5.82 |

### Withdrawals / Debits
1 item totaling $3.22

| Date | Amount | Description |
|------|--------|-------------|
| 12/04 | 3.22 | 5/3 ONLINE TRANSFER TO CK: XXXXXX6012 REF # 00298954165 |

### Deposits / Credits
1 item totaling $1.61

| Date | Amount | Description |
|------|--------|-------------|
| 09/27 | 1.61 | CONGRATULATIONS YOU RECEIVED YOUR RELATIONSHIP SAVINGS INTEREST BONUS |

### Daily Balance Summary

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| 09/27 | 3.22 | 12/04 | 0.00 |

.

# EXHIBIT I

Statement Period Date: 8/13/2012 - 9/7/2012
Account Type: 5/3 Enhanced Ckg
Account Number: 7239686012

**FIFTH THIRD BANK**
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH 45263-0900

JOHN L STEELE
114 1ST RIVO ALTO TER
MIAMI BEACH FL 33139-1204

0

28195

Banking Center: 161 North Clark
Customer Service: 1-800-972-3030
Internet Banking & Bill Payment: www.53.com

---

IMAGINE HAVING YOUR IDENTITY STOLEN WITHOUT EVEN KNOWING IT HAPPENED. HELP SAFEGUARD YOU AND YOUR FAMILY WITH FIFTH THIRD IDENTITY ALERT PREMIUM TODAY. THE BENEFITS IN FIFTH THIRD IDENTITY ALERT PREMIUM ARE PROVIDED BY FIFTH THIRD'S VENDOR, AFFINION BENEFITS GROUP. TO FIND OUT MORE ON IDENTITY ALERT, PLEASE VISIT 53.COM/IDENTITYALERT. FIFTH THIRD BANK. MEMBER FDIC.

## Account Summary - 7239686012

| | | | | | |
|---|---|---|---|---|---|
| 08/13 | Beginning Balance | $0.00 | Interest Earned | $0.14 |
| | Checks | | Number of Days in Period | 26 |
| 1 | Withdrawals / Debits | $(11.99) | Annual Percentage Yield Earned | 0.10% |
| 2 | Deposits / Credits | $2,000.14 | Interest Earned YTD | $0.14 |
| 09/07 | Ending Balance | $1,988.15 | | |

## Monthly Service Charge Explained

| | |
|---|---|
| **Standard Monthly Service Charge** | **$20.00** |
| Discount Applied | |
| NEW ACCT GRACE PERIOD | -$20.00 |
| **Amount to be Withdrawn on First Business Day of Next Statement** | **$0.00** |

**Combined Balance Period: 08/13/12 - 09/07/12**

You can avoid a monthly service charge by achieving a combined balance of $20,000 or more in your deposit and investment accounts in this period.

| Your Accounts | | High Bal. on 09/05/12 |
|---|---|---|
| CHECKING | X6012 | $1,988.01 |
| SAVINGS | X9442 | $2,177,005.27 |
| SAVINGS | X1616 | $27,927.16 |
| **Total Combined Balances** | | **$2,206,920.44** |

## Withdrawals / Debits

**1 item totaling $11.99**

| Date | Amount | Description |
|---|---|---|
| 08/22 | 11.99 | DELUXE BILLING CHK ORDERS 23305 082212 |

## Deposits / Credits

**2 items totaling $2,000.14**

| Date | Amount | Description |
|---|---|---|
| 08/13 | 2,000.00 | DEPOSIT |
| 09/07 | 0.14 | INTEREST |

## Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08/13 | 2,000.00 | 08/22 | 1,988.01 | 09/07 | 1,988.15 |

---

THE U.S. DEPARTMENT OF THE TREASURY REQUIRES EVERYONE GETTING PAPER FEDERAL BENEFIT CHECKS TO SWITCH TO DIRECT DEPOSIT BY MARCH 1, 2013. DON'T WAIT UNTIL IT'S TOO LATE. GO ONLINE AT WWW.GODIRECT.ORG OR CALL (800) 333-1795 TO SWITCH TODAY.



Statement Period Date: 9/8/2012 - 10/9/2012
Account Type: 5/3 Enhanced Ckg
Account Number: 7239686012

**FIFTH THIRD BANK**
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH 45263-0900

JOHN L STEELE
114 1ST RIVO ALTO TER
MIAMI BEACH FL 33139-1204

Banking Center: 161 North Clark
Customer Service: 1-800-972-3030
Internet Banking & Bill Payment: www.53.com

0

277

IMAGINE HAVING YOUR IDENTITY STOLEN WITHOUT EVEN KNOWING IT HAPPENED! HELP SAFEGUARD YOU AND YOUR FAMILY WITH FIFTH THIRD IDENTITY ALERT PREMIUM TODAY. THE BENEFITS IN FIFTH THIRD IDENTITY ALERT ARE PROVIDED BY FIFTH THIRD'S VENDOR, AFFINION BENEFITS GROUP.  TO FIND OUT MORE ON IDENTITY ALERT, PLEASE VISIT 53.COM/IDENTITYALERT. FIFTH THIRD BANK. MEMBER FDIC.

## Account Summary - 7239686012

| | | | | | |
|---|---|---|---|---|---|
| 09/08 | Beginning Balance | $1,988.15 | Interest Earned | $1.30 |
| | Checks | | Number of Days in Period | 32 |
| 1 | Withdrawals / Debits | $(1,000.00) | Annual Percentage Yield Earned | 0.10% |
| 2 | Deposits / Credits | $27,928.46 | Interest Earned YTD | $1.44 |
| 10/09 | Ending Balance | $28,916.61 | | |

## Monthly Service Charge Explained

| | |
|---|---|
| **Standard Monthly Service Charge** | **$20.00** |
| **Discount Applied** | |
| HIGH COMBINED BALANCE | -$20.00 |
| **Amount to be Withdrawn on First Business Day of Next  Statement** | **$0.00** |

**Combined Balance Period: 09/05/12 - 10/09/12**

| | Your Accounts | | High Bal. on 09/05/12 |
|---|---|---|---|
| You can avoid a monthly service charge by achieving a combined balance of $20,000 or more in your deposit and investment accounts in this period. | CHECKING | X6012 | $1,988.01 |
| | SAVINGS | X9442 | $2,177,005.27 |
| | SAVINGS | X1616 | $27,927.16 |
| | **Total Combined Balances** | | **$2,206,920.44** |

## Withdrawals / Debits

1 item totaling $1,000.00

| Date | Amount | Description |
|---|---|---|
| 10/02 | 1,000.00 | FUNDS TRANSFER TO CK: XXXXXX7365 REF # 00540165190 |

## Deposits / Credits

2 items totaling $27,928.46

| Date | Amount | Description |
|---|---|---|
| 09/25 | 27,927.16 | FUNDS TRANSFER FROM SV: XXXXXX1616 REF # 00539254548 |
| 10/09 | 1.30 | INTEREST |

## Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 09/25 | 29,915.31 | 10/02 | 28,915.31 | 10/09 | 28,916.61 |

THE U.S. DEPARTMENT OF THE TREASURY REQUIRES EVERYONE GETTING PAPER FEDERAL BENEFIT CHECKS TO SWITCH TO DIRECT DEPOSIT BY MARCH 1, 2013. DON'T WAIT UNTIL IT'S TOO LATE. GO ONLINE AT WWW.GODIRECT.ORG OR CALL (800) 333-1795 TO SWITCH TODAY.



Statement Period Date: 12/8/2012 - 1/9/2013
Account Type: 5/3 Enhanced Ckg
Account Number: 7239686012

**FIFTH THIRD BANK**
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH 45263-0900

JOHN L STEELE
161 N CLARK ST
CHICAGO IL 60601-3206

0

20624

Banking Center: 161 North Clark
Customer Service: 1-800-972-3030
Internet Banking & Bill Payment: www.53.com

---

KICK START YOUR NEW YEAR!  KICK START YOUR SAVINGS! NOW'S THE TIME TO START SAVING MORE AND EARNING MORE.  FIFTH THIRD BANK CAN HELP WITH BETTER RATES, BETTER ACCESS, AND BETTER RELATIONSHIP BENEFITS.  GET ALL THE DETAILS AT 53.COM/SAVINGS, CALL 1-877-579-5353, OR VISIT YOUR NEAREST FIFTH THIRD BANKING CENTER. FIFTH THIRD BANK, MEMBER FDIC. $50 MINIMUM TO OPEN A NEW SAVINGS ACCOUNT.

---

## Account Summary - 7239686012

| 12/08 | **Beginning Balance** | **$28,924.51** | Interest Earned | $2.22 |
|---|---|---|---|---|
| | Checks | | Number of Days in Period | 33 |
| 2 | Withdrawals / Debits | $(28,926.73) | Annual Percentage Yield Earned | 0.09% |
| 1 | Deposits / Credits | $2.22 | Interest Earned YTD | $2.22 |
| **01/09** | **Ending Balance** | **$0.00** | **Prior Year Interest** | **$6.12** |

---

### Withdrawals / Debits

2 items totaling $28,926.73

| Date | Amount | Description |
|---|---|---|
| 01/07 | 2.22 | DEBIT MEMO |
| 01/07 | 28,924.51 | PURCHASE OFFICIAL CHECK # 00020946613 REF # 00551790277 |

---

### Deposits / Credits

1 item totaling $2.22

| Date | Amount | Description |
|---|---|---|
| 01/07 | 2.22 | INTEREST |

---

### Daily Balance Summary

| Date | Amount |
|---|---|
| 01/07 | 0.00 |

---

THE U.S. DEPARTMENT OF THE TREASURY REQUIRES EVERYONE GETTING PAPER FEDERAL BENEFIT CHECKS TO SWITCH TO DIRECT DEPOSIT BY MARCH 1, 2013. DON'T WAIT UNTIL IT'S TOO LATE. GO ONLINE AT WWW.GODIRECT.ORG OR CALL (800) 333-1795 TO SWITCH TODAY.

---

Fifth Third Bank provides access to investments and investment services through various subsidiaries, including Fifth Third Securities. Fifth Third Securities is the trade name used by Fifth Third Securities, Inc., member FINRA/SIPC, a registered broker-dealer and registered investment advisor registered with the U.S. Securities and Exchange Commission (SEC). Registration does not imply a certain level of skill or training. Investments, investment services and insurance:

| Are Not FDIC Insured | Offer No Bank Guarantee | May Lose Value |
|---|---|---|
| Are Not Insured By Any Federal Government Agency | | Are Not A Deposit |

Insurance products made available through Fifth Third Insurance Agency, Inc.

# EXHIBIT J

# CHASE ◯

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

December 01, 2011 through December 30, 2011
Account Number:    000000923903470

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00043848 DRE 111 211 26511 YNNNNNNNNNN  1 000000000 66 0000
STEELE LAW LLC
161 N CLARK ST STE 3200
CHICAGO IL 60601-3247



We are making some changes that affect Chase personal and business checking, savings and Certificate of Deposit (CD) accounts, including retirement accounts*. Enclosed with this statement is a rewritten Deposit Account Agreement (formerly known as the Account Rules and Regulations). The new design of this booklet will make it easier for you to read and find the information you need quickly.

Please review the information and keep this as reference with your other financial documents.

Please note: If you would like to receive the Deposit Account Agreement in Spanish, they will be available at your nearest Chase branch, starting February 1, 2012.

*For checking and savings accounts, all changes are effective on February 1, 2012. For CD accounts, the changes are effective on the first CD maturity date occurring on or after February 1, 2012.

Important Information about Chase Business Checking and Savings Accounts

We are working to simplify our Chase checking and savings accounts by eliminating or reducing some of our fees. The following changes to the Additional Banking Services and Fees for Chase business checking and savings accounts are effective December 14, 2011. All other terms of your Deposit Account Agreement remain the same. If you have any questions, please call us at 1-800-CHASE38 (1-800-242-7338) or visit your branch.

We will no longer charge fees for the following services:
- No fees for Check/Item Copies and Urgent Item Copies -for example, we will not charge you when you need a copy of a cancelled check or deposit slip.
- No fees for Immediate Notification of wire transfers
- No fees for a Failed Payment when using Chase Online Bill Pay or Quick Pay

## CHECKING SUMMARY  Chase BusinessClassic

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $27,726.85 |
| Deposits and Additions | 14 | 181,950.12 |
| Checks Paid | 20 | - 14,024.23 |
| Electronic Withdrawals | 19 | - 189,019.86 |
| Fees and Other Withdrawals | 2 | - 59.00 |
| Ending Balance | 55 | $8,573.88 |

Your monthly service fee was waived because you maintained an average checking balance of $5,000 or more during the statement period.



**CHASE** ◯

December 01, 2011 through December 30, 2011
Account Number:   **000000923903470**



## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/01 | Online Transfer From  Chk ...3477 Transaction#: 2414371279 | $4,573.53 |
| 12/01 | Online Transfer From  Chk ...3488 Transaction#: 2413631445 | 600.00 |
| 12/01 | Online Transfer From  Chk ...3477 Transaction#: 2414666263 | 160.00 |
| 12/02 | Deposit      970006683 | 500.00 |
| 12/06 | Deposit      969946693 | 50.00 |
| 12/08 | Online Transfer From  Chk ...3488 Transaction#: 2424866054 | 6,807.73 |
| 12/09 | Deposit      969946725 | 1,150.00 |
| 12/12 | Online Transfer From  Chk ...3488 Transaction#: 2430929519 | 1,757.74 |
| 12/12 | Online Transfer From  Chk ...7103 Transaction#: 2430927248 | 646.10 |
| 12/15 | Online Transfer From  Mma ...9471 Transaction#: 2435670094 | 159,000.00 |
| 12/16 | Online Transfer From  Chk ...3488 Transaction#: 2437798774 | 1,175.00 |
| 12/20 | Deposit      918080186 | 1,225.02 |
| 12/28 | Deposit      969690558 | 498.00 |
| 12/30 | Online Transfer From  Chk ...3488 Transaction#: 2457304987 | 3,807.00 |
| **Total Deposits and Additions** | | **$181,950.12** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 1406   ^ | | 12/01 | $25.00 |
| 1412 * ^ | | 12/12 | 25.00 |
| 1421 * ^ | | 12/15 | 206.00 |
| 1429 * ^ | | 12/05 | 84.00 |
| 1430   ^ | | 12/05 | 25.00 |
| 1436 * ^ | | 12/20 | 65.00 |
| 1440 * ^ | | 12/07 | 4,035.00 |
| 1441   ^ | | 12/12 | 146.80 |
| 1445 * ^ | | 12/06 | 61.10 |
| 1446   ^ | | 12/05 | 31.33 |
| 1447   ^ | | 12/07 | 5,000.00 |
| 1448   ^ | | 12/15 | 48.50 |
| 1450 * ^ | | 12/30 | 500.00 |
| 1451   ^ | | 12/15 | 439.90 |
| 1452   ^ | | 12/20 | 80.00 |
| 1453   ^ | | 12/15 | 1,000.00 |
| 1454   ^ | 12/16 | 12/16 | 44.10 |
| 1455   ^ | | 12/20 | 31.50 |
| 1463 * ^ | | 12/27 | 949.45 |
| 10004 * ^ | 12/02 | 12/02 | 1,226.55 |
| **Total Checks Paid** | | | **$14,024.23** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check,
not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on
  one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

Page 3 of 6

**CHASE** ⬤

December 01, 2011 through December 30, 2011
Account Number:   000000923903470

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/01 | 12/01 Online Transfer To Chk ...4110 Transaction#: 2413633008 | $3,000.00 |
| 12/01 | 12/01 Online Transfer To Chk ...3477 Transaction#: 2413868221 | 9.30 |
| 12/01 | ADP TX/Fincl Svc ADP - Tax 648033761029Goh CCD ID: 9333006057 | 8,421.66 |
| 12/01 | ADP TX/Fincl Svc ADP - Tax Rmgoh 120107A01 CCD ID: 1223006057 | 3,582.91 |
| 12/02 | ADP TX/Fincl Svc ADP - Tax 648033761030Goh CCD ID: 9555555505 | 45.00 |
| 12/05 | 12/05 Book Transfer Debit A/C: Lumar Llc New York, NY 100655925 Ref:/Bnf/For Credit To Lumar Llc Trn: 0362700339Es | 6,250.00 |
| 12/05 | American Express Web Remit 111204060666454 Web ID: 2005032111 | 2,050.64 |
| 12/06 | Bk of Amer VI/Mc Online Pmt Cid032593137POS CCD ID: 9500000000 | 1,249.70 |
| 12/09 | ADP Payroll Fees ADP - Fees 2Rgoh 4528974 CCD ID: 9659605001 | 68.00 |
| 12/09 | Bluepay,Inc. 8667398324 100078878417 CCD ID: 0000000380 | 6.07 |
| 12/09 | Bluepay,Inc. 8667398324 100078877959 CCD ID: 0000000380 | 5.56 |
| 12/13 | Bluepay,Inc. 8667398324 100079114285 CCD ID: 0000000380 | 373.80 |
| 12/15 | 12/15 Online Transfer To Chk ...4124 Transaction#: 2435673222 | 160,000.00 |
| 12/15 | Capital One Online Pmt 134939919243884 CCD ID: 9279744991 | 562.46 |
| 12/15 | Chase Epay 1240927942 Web ID: 5760039224 | 378.74 |
| 12/16 | ADP Payroll Fees ADP - Fees 2Rgoh 4787451 CCD ID: 9659605001 | 10.00 |
| 12/19 | 12/19 Online Transfer To Chk ...4110 Transaction#: 2441179031 | 1,000.00 |
| 12/20 | 12/20 Online Transfer To Chk ...4110 Transaction#: 2442399579 | 2,000.00 |
| 12/23 | ADP Payroll Fees ADP - Fees 2Rgoh 5087441 CCD ID: 9659605001 | 6.00 |
| | **Total Electronic Withdrawals** | **$189,019.86** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/05 | Wire Online Domestic Fee | $25.00 |
| 12/08 | Insufficient Funds Fee | 34.00 |
| | **Total Fees & Other Withdrawals** | **$59.00** |

A Overdraft fee was charged on 12/08 due to insufficient funds in your account.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|
| 12/01 | $18,021.51 | 12/15 | 4,554.91 |
| 12/02 | 17,249.96 | 12/16 | 5,675.81 |
| 12/05 | 8,783.99 | 12/19 | 4,675.81 |
| 12/06 | 7,523.19 | 12/20 | 3,724.33 |
| 12/07 | -1,511.81 | 12/23 | 3,718.33 |
| 12/08 | 5,261.92 | 12/27 | 2,768.88 |
| 12/09 | 6,332.29 | 12/28 | 3,266.88 |
| 12/12 | 8,564.33 | 12/30 | 6,573.88 |
| 12/13 | 8,190.53 | | |



December 01, 2011 through December 30, 2011

Account Number:   **000000923903470**

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 34 |
| Deposits / Credits | 5 |
| Deposited Items | 14 |
| **Transaction Total** | **53** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $12.00 |
| Service Fee Credit | -$12.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 0) | $0.00 |
| **Total Service Fees** | **$0.00** |



# EXHIBIT K

# Electronic Articles of Incorporation
# For

P11000091909
FILED
October 20, 2011
Sec. Of State
jshivers

MIAMI BEACH CONSULTING, INC.

The undersigned incorporator, for the purpose of forming a Florida
profit corporation, hereby adopts the following Articles of Incorporation:

## Article I

The name of the corporation is:

MIAMI BEACH CONSULTING, INC.

## Article II

The principal place of business address:

1111 LINCOLN ROAD
SUITE 400
MIAMI BEACH, FL.   33139

The mailing address of the corporation is:

1111 LINCOLN ROAD
SUITE 400
MIAMI BEACH, FL.   33139

## Article III

The purpose for which this corporation is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The number of shares the corporation is authorized to issue is:

100

## Article V

The name and Florida street address of the registered agent is:

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL.   32301

I certify that I am familiar with and accept the responsibilities of
registered agent.

Registered Agent Signature:   DEB REEVES

P11000091909
FILED
October 20, 2011
Sec. Of State
jshivers

## Article VI

The name and address of the incorporator is:

KERRY  STEELE
1111 LINCOLN ROAD
SUITE 400
MIAMI BEACH, FL, 33139

Electronic Signature of Incorporator:   KERRY  STEELE

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

## Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

Title:  DTR
KERRY  STEELE
1111 LINCOLN ROAD SUITE 400
MIAMI BEACH, FL.  33139

FILED
Apr 09, 2012
Secretary of State

# ARTICLES OF DISSOLUTION

Pursuant to section 607.1403, Florida Statutes, this Florida corporation submits the following Articles of Dissolution:

FIRST:      The name of the corporation as currently filed with the Florida Department of State:

            MIAMI BEACH CONSULTING, INC.

SECOND:    The document number of the corporation: P11000091909

THIRD:      The date dissolution was authorized: February 1, 2012

            Effective date of dissolution: April 15, 2012

FOURTH:     Dissolution was approved by the shareholders.  The number of votes cast for dissolution was sufficient for approval.

I submit this document and affirm that the facts stated herein are true.  I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes.

Signature:  KERRY STEELE               DIRECTOR

           Electronic Signature of Signing Officer, Director, Incorporator or Authorized Representative

# EXHIBIT L



**CHASE**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

December 01, 2011 through December 30, 2011
Account Number:   **000000403354124**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Hearing Impaired: | **1-800-242-7383** |
| Para Espanol: | **1-888-622-4273** |
| International Calls: | **1-713-262-1679** |

00002498 DRE 021 141 36511 YNNNNNNNNN T  1 000000000 60 0000
MIAMI BEACH CONSULTING INC
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



We are making some changes that affect Chase personal and business checking, savings and Certificate of Deposit (CD) accounts, including retirement accounts*. Enclosed with this statement is a rewritten Deposit Account Agreement (formerly known as the Account Rules and Regulations). The new design of this booklet will make it easier for you to read and find the information you need quickly.

Please review the information and keep this as reference with your other financial documents.

Please note: If you would like to receive the Deposit Account Agreement in Spanish, they will be available at your nearest Chase branch, starting February 1, 2012.

*For checking and savings accounts, all changes are effective on February 1, 2012. For CD accounts, the changes are effective on the first CD maturity date occurring on or after February 1, 2012.

Important Information about Chase Business Checking and Savings Accounts

We are working to simplify our Chase checking and savings accounts by eliminating or reducing some of our fees. The following changes to the Additional Banking Services and Fees for Chase business checking and savings accounts are effective December 14, 2011. All other terms of your Deposit Account Agreement remain the same. If you have any questions, please call us at 1-800-CHASE38 (1-800-242-7338) or visit your branch.

We will no longer charge fees for the following services:
- No fees for Check/Item Copies and Urgent Item Copies -for example, we will not charge you when you need a copy of a cancelled check or deposit slip.
- No fees for Immediate Notification of wire transfers
- No fees for a Failed Payment when using Chase Online Bill Pay or Quick Pay

### CHECKING SUMMARY     Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $100.00 |
| Deposits and Additions | 2 | 165,000.00 |
| Electronic Withdrawals | 3 | - 160,000.00 |
| Fees and Other Withdrawals | 3 | - 1,050.00 |
| Ending Balance | 8 | $4,050.00 |

Page 1 of 4

**CHASE**

December 01, 2011 through December 30, 2011
Account Number:   000000403354124



## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/08 | Deposit        973128064 | $5,000.00 |
| 12/15 | Online Transfer From  Chk ...3470 Transaction#: 2435673222 | 160,000.00 |
| **Total Deposits and Additions** | | **$165,000.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/16 | 12/16 Online Transfer To  Mma ...9471 Transaction#: 2437138970 | $10,000.00 |
| 12/19 | 12/19 Online Wire Transfer Via: Sabadel Untd Bk FL/067009646 A/C: Sierra Miami Beach FL 33139 US Ref:/Time/08:59 Imad: 1219B1Qgc06C002072 Tm: 0717600353Es | 100,000.00 |
| 12/19 | 12/19 Online Wire Transfer Via: Sabadel Untd Bk FL/067009646 A/C: Sierra Miami Beach FL 33139 US Ref:/Time/14:06 Imad: 1219B1Qgc08C005940 Tm: 1488100353Es | 50,000.00 |
| **Total Electronic Withdrawals** | | **$160,000.00** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/19 | Wire Online Domestic Fee | $25.00 |
| 12/19 | Wire Online Domestic Fee | 25.00 |
| 12/21 | 12/21 Withdrawal | 1,000.00 |
| **Total Fees & Other Withdrawals** | | **$1,050.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 12/08 | $5,100.00 |
| 12/15 | 165,100.00 |
| 12/16 | 155,100.00 |
| 12/19 | 5,050.00 |
| 12/21 | 4,050.00 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 3 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **4** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

# EXHIBIT M

Case 3:12-cv-00889-DRH-SCW   Document 135-13 *SEALED*   Filed 03/20/14   Page 2 of 4
Case: 14-1682      Document: 28-19      Filed: 07/30/2014      Pages: 197
PageID 3281

```
FTCH NAMES DDA 7238947365                               PAGE 001
                    NAMES ASSOCIATED WITH THE ACCOUNT
(01) PRENDA LAW INC  (001)                             N CORPORATE
     161 N CLARK ST STE 3200, CHICAGO IL  60601
(02) PAUL A DUFFY  (002)                               I SIGNATOR
     1327 N MOHAWK ST NO 3, CHICAGO IL  60610
(03) JOHN L STEELE  (001)                              I SIGNATOR
     161 N CLARK ST, CHICAGO IL  60601
END OF MESSAGE.
```

```
FTCH NAMES DDA 7238947456                                        PAGE 001
                    NAMES ASSOCIATED WITH THE ACCOUNT
(01) PRENDA LAW INC IOLTA  (001)                          N CORPORATE
     161 N CLARK ST STE 3200, CHICAGO IL  60601
(02) PAUL A DUFFY  (002)                                  I SIGNATOR
     1327 N MOHAWK ST NO 3, CHICAGO IL  60610
(03) JOHN L STEELE  (001)                                 I SIGNATOR
     161 N CLARK ST, CHICAGO IL  60601
END OF MESSAGE.
```

```
FTCH NAMES DDA 7238947217                                    PAGE 001
                   NAMES ASSOCIATED WITH THE ACCOUNT
(01) PRENDA LAW INC IOLTA  (001)                           N CORPORATE
     161 N CLARK ST STE 3200, CHICAGO IL  60601
(02) PAUL A DUFFY  (002)                                   I SIGNATOR
     1327 N MOHAWK ST NO 3, CHICAGO IL  60610
(03) JOHN L STEELE  (001)                                  I SIGNATOR
     161 N CLARK ST, CHICAGO IL  60601
END OF MESSAGE.
```

# EXHIBIT N

Statement Period Date: 7/12/2010 - 7/30/2010
Account Type: Bus Basics Checking
Account Number: 7235500787

FIFTH THIRD BANK
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH  45263-0900

MEDIA COPYRIGHT GROUP LLC
161 N CLARK ST SUITE 4700
CHICAGO IL  60601-3201

0

26771

Banking Center: 161 North Clark
Banking Center Phone: 312-368-1201
Commercial Client Services: 1-800-589-5355
www.53.com

## Account Summary - 7235500787

| | | | | |
|---|---|---|---|---|
| 07/12 | Beginning Balance | $0.00 | Number of Days in Period | 19 |
| 1 | Checks | $(471.00) | | |
| | Withdrawals / Debits | | | |
| 2 | Deposits / Credits | $4,000.00 | | |
| 07/30 | Ending Balance | $3,529.00 | | |

## Check

**1 check totaling $471.00**

* Indicates gap in check sequence      i = Electronic Image       s = Substitute Check

| Number | Date Paid | Amount |
|---|---|---|
| 2303 i | 07/20 | 471.00 |

## Deposits / Credits

**2 items totaling $4,000.00**

| Date | Amount | Description |
|---|---|---|
| 07/12 | 2,000.00 | DEPOSIT |
| 07/26 | 2,000.00 | DEPOSIT |

## Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 07/12 | 2,000.00 | 07/20 | 1,529.00 | 07/26 | 3,529.00 |

Page 1 of 2

Page 1 of 1

Case 3:12-cv-00889-DRH-SCW    Document 135-14 *SEALED*    Filed 03/20/14    Page 3 of 3
PageID 3286
Case: 14-1682    Document: 28-19    Filed: 07/30/2014    Pages: 197





Posting Date 2010 Jul 26 Posting Check Number 1215 Amount $2,000.00

Posting Date 2010 Jul 26 Posting Check Number 1215 Amount $2,000.00



Posting Date 2010 Jul 26 Posting Check Number 600 Amount $2,000.00

Posting Date 2010 Jul 26 Posting Check Number 600 Amount $2,000.00

# EXHIBIT O

**New Balance:**
**$948.46**
Minimum Payment Due:
**$20.00**
Payment Due Date:
**04/21/2012**

OOOOOO PW OO A O
JOHN STEELE
114 W RIVO ALTO DR
MIAMI BEACH FL 33139-1256

CITI CARDS
Processing Center
Des Moines, IA 50363-0005

**** **** **** 1350
Amount Enclosed:

Make check payable to: **Citi Cards**

Detach and follow payment instructions on reverse

## Account Activity
Feb 24–Mar 26, 2012

| | |
|---|---|
| Minimum Payment Due: | New Balance: |
| **$20.00** | **$948.46** |

**Payment Due Date:**
**04/21/2012**

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

For information about credit counseling services, call 1-877-337-8187.

### Summary of Account Activity

| | |
|---|---|
| Previous Balance | $2,429.64 |
| Payments | -$3,432.23 |
| Other Credits | -$0.00 |
| Purchases | +$1,942.08 |
| Cash Advances | +$0.00 |
| Fees Charged | +$8.97 |
| Interest Charged | +$0.00 |
| New Balance | $948.46 |
| Past Due Amount | $0.00 |
| Amt. Over Rev. Cr. Lt. | $0.00 |
| Revolving Credit Limit | $15,000 |
| Avail. Revolving Credit | $14,051 |
| Cash Advance Limit | $4,500 |
| Available Cash Limit | $4,500 |
| Statement Closing Date | 03/26/2012 |
| Days in Billing Cycle | 32 |

### How To Reach Us
1-888-766-CITI(2484)

**Customer Service**
BOX  6062
SIOUX FALLS, SD  57117

**www.citicards.com**

**Account Member   Member Since 2011**
JOHN STEELE

**Account Number   **** **** **** 1350**

American Airlines AAdvantage® Miles          www.aa.com

**AAdvantage® Miles Reported To American Airlines: 1,942**

See The American Airlines AAdvantage® Miles Update Section In This Statement.

### Payments, Credits and Adjustments

| Sale | Post | Description | | | Amount |
|---|---|---|---|---|---|
| | 03/05 | CLICK-TO-PAY PAYMENT, THANK YOU | | | -1,190.54 |
| | 70 | 0000 | 0000 | | |
| | 03/06 | CLICK-TO-PAY PAYMENT, THANK YOU | | | -2,241.69 |
| | 70 | 0000 | 0000 | | |

### Standard Purchases

| Sale | Post | Description | | | Amount |
|---|---|---|---|---|---|
| 02/25 | 02/25 | MILLER'S PUB | CHICAGO | IL | 31.00 |
| XLDLPHSS | 61 | A5812USA | 2222 | | |
| 02/25 | 02/25 | FLIGHT 1551 | CHICAGO | IL | 41.00 |
| TRK8VL87 | 61 | A5812USA | 2222 | | |
| 02/26 | 02/26 | DEWEY S TAVERN | MIAMI | FL | 24.00 |
| J7JGC66S | 61 | D5813USA | 2222 | | |
| 02/26 | 02/26 | FONTAINEBLEAU VALET PA MIAMI BEACH | FL | | 12.00 |
| LT78WQN1 | 61 | A7523USA | 2222 | | |
| 02/26 | 02/26 | FONTAINEBLEAU BLEAUBAR MIAMI | | FL | 19.05 |
| T9MZOFN1 | 61 | A5812USA | 2222 | | |
| 02/27 | 02/27 | SOVEREIGNMAN | PLAZA | SGP | 299.00 |
| 3*26Q*I2 | 61 | A5192SGP | 2222 | | |
| 02/29 | 02/29 | ATLANTIC BROADBAND | 814-539-8971 FL | | 576.54 |
| D4YWLHO0 | 61 | A4899USA | 2222 | | |
| 03/01 | 03/01 | LA SANDWICHERIE | MIAMI BEACH | FL | 24.56 |
| 4WCBSTS1 | 61 | A5814USA | 2222 | | |
| 03/02 | 03/02 | DEWEY S TAVERN | MIAMI | FL | 112.00 |
| JRTZC66S | 61 | A5813USA | 2222 | | |
| 03/03 | 03/03 | DEWEY S TAVERN | MIAMI | FL | 24.98 |
| JRV2D66S | 61 | A5813USA | 2222 | | |
| 03/04 | | THE STAGE | MIAMI | FL | 14.00 |

1 of 3

# EXHIBIT P

# CHASE 🟠

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

December 01, 2010 through December 31, 2010

Account Number:    000000941867160

### CUSTOMER SERVICE INFORMATION

| Web site: | Chase.com |
|---|---|
| Service Center: | 1-800-242-7338 |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



00095687 DRE 111 141 00111 - NYNNNNNNNNNN T 1 000000000 62 0000
STEELE HANSMEIER PLLC
161 N CLARK ST STE 4700
CHICAGO IL 60601-3201

---

### Important Information about Chase Business Checking and Savings Accounts

Please see the end of this statement for changes to the Account Rules and Regulations - Additional Banking Services and Fees for Business Accounts effective February 5, 2011. If you have questions, please call us at 1-800-CHASE38 (1-800-242-7338).

## CHECKING SUMMARY   Chase BusinessClassic

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $305.60 |
| Deposits and Additions | 13 | 97,148.40 |
| Checks Paid | 8 | - 3,221.70 |
| Electronic Withdrawals | 7 | - 15,476.73 |
| Fees and Other Withdrawals | 2 | - 60.00 |
| Ending Balance | 30 | $78,695.57 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/15 | Online Transfer From  Chk Xxxxx7087 Transaction#: 1413211383 | $5,000.00 |
| 12/16 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1420472271 | 2,500.00 |
| 12/17 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1433772243 | 7,350.00 |
| 12/20 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1461591344 | 7,350.00 |
| 12/23 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1495211799 | 18,750.00 |
| 12/23 | Online Transfer From  Chk Xxxxx7103 Transaction#: 1497551674 | 500.00 |
| 12/23 | Online Transfer From  Chk Xxxxx7103 Transaction#: 1497571907 | 148.40 |
| 12/27 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1512271427 | 10,700.00 |
| 12/27 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1527831490 | 8,950.00 |
| 12/27 | Online Transfer From  Chk Xxxxx7103 Transaction#: 1527991443 | 750.00 |
| 12/28 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1540432214 | 8,700.00 |
| 12/29 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1552291325 | 17,100.00 |
| 12/30 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1572531599 | 9,350.00 |
| **Total Deposits and Additions** | | **$97,148.40** |



CHASE

December 01, 2010 through December 31, 2010
Account Number:   000000941867160

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1001  ^ | | 12/22 | $100.00 |
| 1003  * ^ | | 12/29 | 40.00 |
| 1004  ^ | | 12/29 | 390.00 |
| 1006  * ^ | | 12/30 | 45.00 |
| 1008  * ^ | | 12/17 | 2,147.96 |
| 1009  ^ | | 12/23 | 32.50 |
| 1019  * ^ | | 12/27 | 182.48 |
| 1022  * ^ | | 12/28 | 283.76 |
| **Total Checks Paid** | | | **$3,221.70** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/03 | ADP Payroll Fees ADP - Fees 2Rgtl   0027848 CCD ID: 9659605001 | $138.00 |
| 12/16 | 12/16 Online Transfer To  Chk Xxxxx7087 Transaction#: 1420491909 | 5,000.00 |
| 12/21 | 12/21 Online Wire Transfer Via: Wells Fargo NA/121000248 A/C: Wells Fargo Bank,NA Minneapolis MN 55479 Ben: David Pfister Minneapolis MN 55418 USA Ref:/Bnf/For Further Credit To David Pfister Imad: 1221B1Qgc03C001011 Tm: 0268700355Es | 780.83 |
| 12/23 | 12/23 Online Transfer To  Chk Xxxxx3470 Transaction#: 1495132399 | 2,285.92 |
| 12/27 | 12/27 Online Wire Transfer A/C: Rietumu Banka Lv-1873 Riga Latvia Ben:/Lv04Rtmb0000059807301 Panov Vladimir Ref: Lv04 Rtmb 0000 0598 0730 1/Bnf/Customer: Panov Vladimir Tm: 1044100361Es | 600.00 |
| 12/31 | ADP TX/Fincl Svc ADP - Tax  745018090205Gtl CCD ID: 9333006057 | 4,907.97 |
| 12/31 | ADP TX/Fincl Svc ADP - Tax  Rmgtl 010101A01 CCD ID: 1223006057 | 1,764.01 |
| **Total Electronic Withdrawals** | | **$15,476.73** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/21 | Wire Online Domestic Fee | $20.00 |
| 12/27 | Wire Online Foreign Fee | 40.00 |
| **Total Fees & Other Withdrawals** | | **$60.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 12/03 | $167.60 | 12/22 | 14,318.81 |
| 12/15 | 5,167.60 | 12/23 | 31,398.79 |
| 12/16 | 2,667.60 | 12/27 | 50,976.31 |
| 12/17 | 7,869.64 | 12/28 | 59,392.55 |
| 12/20 | 15,219.64 | 12/29 | 76,062.55 |
| 12/21 | 14,418.81 | 12/30 | 85,367.55 |



**CHASE** ◯

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

January 01, 2011 through January 31, 2011

Account Number:     000000941867160



| CUSTOMER SERVICE INFORMATION | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

հՍահահահՍ..Սահահ..Ս....Սահ.Ս.Ս.Ս.Ս.
00115490 DRE 111 141 03211 - NNNNNNNNNNN T  1  000000000  62 0000
STEELE HANSMEIER PLLC
161 N CLARK ST STE 4700
CHICAGO IL 60601-3201

## CHECKING SUMMARY   Chase BusinessClassic

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $78,695.57 |
| Deposits and Additions | 34 | 254,140.25 |
| Checks Paid | 26 | - 85,286.70 |
| Electronic Withdrawals | 16 | - 126,942.38 |
| Fees and Other Withdrawals | 4 | - 100.00 |
| Ending Balance | 80 | $120,526.74 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/03 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1591831192 | $9,200.00 |
| 01/03 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1611771521 | 3,978.96 |
| 01/03 | Online Transfer From  Chk Xxxxx7103 Transaction#: 1592571363 | 50.00 |
| 01/04 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1633171758 | 5,628.21 |
| 01/05 | Deposit     793239019 | 13,600.00 |
| 01/05 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1639451553 | 11,300.00 |
| 01/07 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1665312290 | 6,325.00 |
| 01/10 | Deposit     800540891 | 4,900.00 |
| 01/10 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1697272000 | 5,250.00 |
| 01/11 | Remote Online Deposit        1 | 5,800.00 |
| 01/12 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1716011436 | 16,500.00 |
| 01/13 | Remote Online Deposit        1 | 2,900.00 |
| 01/14 | Remote Online Deposit        1 | 22,150.00 |
| 01/14 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1740071993 | 7,216.04 |
| 01/18 | Remote Online Deposit        1 | 9,080.00 |
| 01/18 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1787391245 | 6,900.00 |
| 01/18 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1776331926 | 1,942.05 |
| 01/18 | Online Transfer From  Chk Xxxxx7103 Transaction#: 1776172049 | 100.00 |
| 01/19 | Remote Online Deposit        1 | 2,000.00 |
| 01/19 | Online Transfer From  Chk Xxxxx7178 Transaction#: 1798972743 | 19,455.20 |

**CHASE** ⬦

January 01, 2011 through January 31, 2011
Account Number:  **000000941867160**

## CHECKS PAID (continued)

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1059 * ^ | | 01/31 | 2,000.00 |
| 1060  ^ | | 01/31 | 100.00 |
| 1063 * ^ | | 01/27 | 1,800.00 |
| 1065 * ^ | | 01/31 | 32.50 |
| 1067 * ^ | | 01/31 | 32.50 |
| 1068  ^ | | 01/31 | 9.27 |
| **Total Checks Paid** | | | **$85,266.70** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check,
not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

\* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on
  one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/03 | 01/01 Online Transfer To  Chk Xxxxx4110 Transaction#: 1592551223 | $5,000.00 |
| 01/03 | 01/03 Online Wire Transfer Via: Tcf Mpls/291070001 A/C: Paul Hansmeier Minneapolis MN 55401 USA Ref:/Bnf/For Further Credit To Alpha Law Firm Llc Imad: 0103B1Qgc01C001709 Trn: 0755600003Es | 5,000.00 |
| 01/03 | ADP TX/Fincl Svc ADP - Tax  745018090206Gtl CCD ID: 9555555505 | 55.82 |
| 01/07 | ADP Payroll Fees ADP - Fees 2Rgtl  1308807 CCD ID: 9659605001 | 78.00 |
| 01/11 | 01/11 Online Transfer To  Chk Xxxxx7178 Transaction#: 1708431442 | 99.00 |
| 01/12 | Bk of Amer Vi/Mc Online Pmt Ckf032593137POS CCD ID: 9500000000 | 3,135.78 |
| 01/13 | 01/13 Online Wire Transfer A/C: Riotumu Banka Lv-1873 Riga Latvia Ben:/Lv04Rtmb0000059807301 Panov Vladimir Ref: Lv04 Rtmb 0000 0598 0730 1/Bnf/Customer: Panov Vladimir Trn: 0199400013Es | 1,500.00 |
| 01/19 | 01/19 Online Wire Transfer Via: Tcf Mpls/291070001 A/C: Paul Hansmeier Minneapolis MN 55401 USA Imad: 0119B1Qgc05C002606 Trn: 0459300019Es | 50,000.00 |
| 01/19 | 01/19 Online Transfer To  Chk Xxxxx4110 Transaction#: 1799231646 | 50,000.00 |
| 01/21 | ADP Payroll Fees ADP - Fees 2Rgtl  2122738 CCD ID: 9659605001 | 25.00 |
| 01/26 | 01/26 Online Transfer To  Chk Xxxxx3470 Transaction#: 1870072085 | 32.50 |
| 01/26 | 01/26 Online Transfer To  Chk Xxxxx3470 Transaction#: 1870532064 | 70.00 |
| 01/28 | 01/28 Online Wire Transfer Via: Wells Fargo NA/121000248 A/C: Wells Fargo Bank,NA Minneapolis MN 55479 Ben: Nadezhda Wood Roseville MN 55113 USA Imad: 0128B1Qgc06C008159 Trn: 1377800028Es | 2,000.00 |
| 01/31 | ADP TX/Fincl Svc ADP - Tax  432512557638Gtl CCD ID: 9333006057 | 6,928.27 |
| 01/31 | ADP TX/Fincl Svc ADP - Tax  Rmgtl 020102A01 CCD ID: 1223006057 | 2,758.01 |
| 01/31 | Appletree        ACH Pay        CCD ID: 1510367160 | 260.00 |
| **Total Electronic Withdrawals** | | **$126,942.38** |

# EXHIBIT Q

SITE:SD-CI TM:LG-8200 ACID:P8711850
01/25/14 11:55:05

OOOOOO PW OO A O
JOHN STEELE
114 W RIVO ALTO DR
MIAMI BEACH FL 33139-1256

**New Balance:** **$2,429.64**
**Minimum Payment Due:** **$36.00**
**Payment Due Date:** **03/21/2012**

CITI CARDS
Processing Center
Des Moines, IA 50363-0005

**** **** **** 1350
Amount Enclosed:

Detach and follow payment instructions on reverse

Make check payable to: **Citi Cards**

date paid _____

amount paid _____

check # _____

1 of 3

## Account Activity
### Jan 25–Feb 23, 2012

**Minimum Payment Due:** **New Balance:**
**$36.00**          **$2,429.64**

**Payment Due Date:**
**03/21/2012**

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

For information about credit counseling, call 1-877-337-8187.

### How To Reach Us
1-888-766-CITI(2484)

### Customer Service
BOX 6062
SIOUX FALLS, SD  57117

### Summary of Account Activity
| | |
|---|---:|
| Previous Balance | $6,889.19 |
| Payments | -$6,889.19 |
| Other Credits | -$100.00 |
| Purchases | +$2,528.77 |
| Cash Advances | +$0.00 |
| Fees Charged | +$0.87 |
| Interest Charged | +$0.00 |
| New Balance | $2,429.64 |
| Past Due Amount | $0.00 |
| | |
| Amt. Over Rev. Cr. Lt. | $0.00 |
| Revolving Credit Limit | $15,000 |
| Avail. Revolving Credit | $12,570 |
| Cash Advance Limit | $4,500 |
| Available Cash Limit | $4,500 |
| Statement Closing Date | 02/23/2012 |
| Days in Billing Cycle | 30 |

www.citicards.com

**Account Member   Member Since 2011**
JOHN STEELE

**Account Number  **** **** **** 1350**

**American Airlines AAdvantage® Miles**          www.aa.com

**AAdvantage® Miles Reported To American Airlines: 3,524**

See The American Airlines AAdvantage® Miles Update Section In This Statement.

### Payments, Credits and Adjustments
| Sale | Post | Description | Amount |
|---|---|---|---:|
| | 01/31 | CLICK-TO-PAY PAYMENT, THANK YOU | -6,889.19 |
| | | 70   0000   0000 | |
| | 02/23 | Congrats! Category Spend Bonus | -100.00 |
| | | 72   0000 | |

### Standard Purchases
| Sale | Post | Description | Amount |
|---|---|---|---:|
| 01/29 | 01/29 | POWERLINE BP     QPS FORT LAUDERDA FL | 27.17 |
| 883BK6HM | 61 | D5542USA     2222 | |
| 01/31 | 01/31 | CCBill.com     888-5969279   AZ | 585.00 |
| LZ6DGBKO | 61 | A4816USA     2222 | |
| 02/02 | 02/02 | PETTERINO S     CHICAGO     IL | 42.86 |
| *Y2PMWD3 | 61 | A5812USA     2222 | |
| 02/06 | 02/06 | AMERICAN0010632402621O DALLAS     TX | 58.00 |
| 7VGGNGWG | 61 | D3001USA     2222 | |
| | | NAME: STEELE/KERRY | |
| | | DEPART: 02/06/12 | |
| | | XAA  TO XAA : AA: CLASS: X : STOP:O | |
| 02/06 | 02/06 | AMERICAN0012303659891O DALLAS     TX | 468.40 |
| S94HNGWG | 61 | D3001USA     2222 | |
| | | NAME: STEELE/JOHN | |
| | | DEPART: 03/29/12 | |
| | | MIA  TO PHX : AA: CLASS: N : STOP:O | |
| | | PHX  TO DFW : AA: CLASS: N : STOP:X | |
| | | DFW  TO MIA : AA: CLASS: N : STOP: | |
| 02/06 | 02/06 | AMERICAN0012303659892O DALLAS     TX | 468.40 |
| C*4HNGWG | 61 | D3001USA     2222 | |
| | | NAME: STEELE/KERRY | |

**How to Reach Us**
1-888-766-CITI(2484)

**Customer Service**
BOX 6062
SIOUX FALLS, SD 57117

Access your account online:
**www.citicards.com**

Account Number **** **** **** 1350

## Standard Purchases (cont'd)

| Sale | Post | Description | Amount |
|------|------|-------------|--------|
|      |      | DEPART: 03/29/12 |  |
|      |      | MIA  TO PHX : AA: CLASS: N : STOP:O |  |
|      |      | PHX  TO DFW : AA: CLASS: N : STOP:X |  |
|      |      | DFW  TO MIA : AA: CLASS: N : STOP: |  |
| 02/14 | 02/14 | INTERGRID AB      Rattvik    SWE | 29.00 |
| 6YKRWJ80 | 61 | A4816SWE        2222 |  |
| 02/17 | 02/17 | PETERSON'S HD OF MIAMI MIAMI    FL | 850.00 |
| 0XIWR9S5 | 61 | A5571USA        2222 |  |

## Fees

| Sale | Post | Description | Amount |
|------|------|-------------|--------|
|      | 02/23 | FOREIGN TRANSACTION FEE | 0.87 |
| 00000000 | 86 | 0000 |  |
|      |      | **TOTAL FEES FOR THIS PERIOD** | **0.87** |

## Interest Charged

| Post | Description | Amount |
|------|-------------|--------|
|      | **TOTAL INTEREST FOR THIS PERIOD** | **0.00** |

### 2012 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2012 | $0.87 |
| Total interest charged in 2012 | $0.00 |

### Interest Charge Calculation

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|-----------------|------------------------------|----------------------------------|-----------------|
| PURCHASES |  |  |  |
| Standard Purch | 15.240% (V) | $0.00 (D) | $0.00 |

### Interest Charge Calculation (continued)

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|-----------------|------------------------------|----------------------------------|-----------------|
| ADVANCES |  |  |  |
| Standard Adv | 25.240% (V) | $0.00 (D) | $0.00 |

**American Airlines AAdvantage® Bonus Miles**

| AAdvantage(R) Bonus Miles - Category | |
|---|---|
| Category Spend Bonus | 995 |
| Total AAdvantage(R) Bonus Miles Earned - Category | 995 |

**American Airlines AAdvantage® Miles Update**

| AAdvantage® Bonus Miles - Category | 995 |
|---|---|

American Airlines reserves the right to change the AAdvantage® program and its terms and conditions at any time without notice, and to end the AAdvantage® program with six months notice. Any such changes may affect your ability to use the awards or mileage credits that you have accumulated. American Airlines is not responsible for products or services offered by other participating companies. For complete details about the AAdvantage® program, visit www.aa.com/aadvantage

Remember, you MUST PAY IN FULL any charges over your revolving credit limit by your statement's Payment Due Date.

You may pay all or part of your account balance at any time. However, you must pay, by the payment due date, at least the minimum payment due.

Your Card(s) provide(s) the convenience of transacting worldwide wherever your MasterCard, Visa or American Express is accepted. Each purchase you make outside the U.S. is subject to a transaction fee.

**How to Reach Us**
1-888-766-CITI(2484)

**Customer Service**
BOX 6062
SIOUX FALLS, SD 57117

**Access your account online:**
**www.citicards.com**

**Account Number** **** **** **** 1350

Please be sure to pay on time. If you submit your payment by mail, we suggest you mail it no later than 03/14/2012 to allow for enough time for regular mail to reach us.

3 of 3

**JOHN STEELE**
Member Since 2011  Account number ending in: 1350
Billing Period: 08/25/12-09/25/12

How to reach us
**www.citicards.com**
1-888-766-CITI (2484)
BOX 6062 SIOUX FALLS, SD 57117

| | |
|---|---|
| Minimum payment due: | $204.81 |
| New balance: | $4,588.92 |
| Payment due date: | 10/21/12 |

Your account is past due. Please pay at least the minimum payment due, which includes a past due amount of $72.00.

## Account Summary

| | |
|---|---|
| Previous balance | $1,617.39 |
| Payments | -$0.00 |
| Credits | -$0.00 |
| Purchases | +$2,883.15 |
| Cash advances | +$0.00 |
| Fees | +$35.57 |
| Interest | +$52.81 |
| **New balance** | **$4,588.92** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 19 year(s) | $9,587 |

For information about credit counseling services, call 1-877-337-8188.

## Credit Limit

| | |
|---|---|
| Revolving Credit limit | $15,000 |
| Includes $4,500 cash advance limit | |
| Available Revolving credit | $10,411 |
| Includes $4,500 available for cash advances | |

| | |
|---|---|
| Minimum payment due | $204.81 |
| New balance | $4,588.92 |
| Payment due date | 10/21/12 |

Amount enclosed:

Account number ending in 1350

000000 PW 00 A O

CITI CARDS
Processing Center
Des Moines, IA 50363-0005

**JOHN STEELE**
114 W RIVO ALTO DR
MIAMI BEACH FL 33139-1256

## Account Summary

| Trans. date | Post date | Description | Amount |
|---|---|---|---|
| **Standard Purchases** | | | |
| 08/26 | 08/26 | SPIRIT AIR ONBOARD SAL 800-7727117  FL | $3.00 |
| 6RZHI"V3 | | 61     A5499USA     2222 | |
| 08/28 | 08/28 | USPS 31489700131701246 LAS VEGAS   NV | $16.95 |
| GB3H9G5C | | 61     A9402USA     2222 | |
| 08/28 | 08/28 | POSTNET NV136     LAS VEGAS   NV | $5.00 |
| DF7FH66S | | 61     A7399USA     2222 | |
| 08/28 | 08/28 | REBEL 2167  00021675 LAS VEGAS   NV | $42.05 |
| TY6W-"05 | | 61     A5541USA     2222 | |
| 08/29 | 08/29 | RITTER & RITTER SEWER  AITKIN      MN | $445.00 |
| GLL-6PGW | | 61     A7349USA     2222 | |
| 08/30 | 08/30 | AITKIN AVIATION     AITKIN     MN | $2,150.00 |
| M3T-L66S | | 61     A7699USA     2222 | |
| 09/14 | 09/14 | BULL & WHISTLE     KEY WEST    FL | $55.50 |
| 4IGICNGW | | 61     A5812USA     2222 | |
| 09/17 | 09/17 | INTERGRID AB     Rattvik     SWE | $19.00 |
| W69FMJ90 | | 61     A4816SWE     2222 | |
| 09/21 | 09/21 | 7-ELEVEN 27327     LAS VEGAS   NV | $11.65 |
| WGQMGHOO | | 61     A5542USA     2222 | |
| 09/21 | 09/21 | DENNY'S 7242     LAS VEGAS   NV | $21.86 |
| RHTHJ*OO | | 61     A5812USA     2222 | |
| 09/21 | 09/21 | 7-ELEVEN 27327     LAS VEGAS   NV | $33.14 |
| 4HQMGHOO | | 61     A5541USA     2222 | |
| 09/22 | 09/22 | DAVINCI VIRTUAL OFFICE 801-9909200  UT | $75.00 |
| TM4Z8B*M | | 61     A7399USA     2222 | |
| 09/24 | 09/24 | SPIRIT AIR ONBOARD SAL MIRAMAR     FL | $3.00 |
| F25Z2C*M | | 61     A5499USA     2222 | |

## Fees charged

| Date | Description | Amount |
|---|---|---|
| 09/25 | LATE FEE - AUG PAYMENT PAST DUE | $35.00 |
| 00000000 66 | 0000 | |
| 09/25 | FOREIGN TRANSACTION FEE | $0.57 |
| 00000000 86 | 0000 | |
| **Total fees charged in this billing period** | | **$35.57** |

## Interest charged

| Date | Description | Amount |
|---|---|---|
| 09/25 | INTEREST CHARGED TO STANDARD PURCH | $52.81 |
| 00000000 84 | 0000 | |
| **Total interest charged in this billing period** | | **$52.81** |

### 2012 totals year-to-date

| | |
|---|---|
| **Total fees charged in 2012** | **$120.81** |
| **Total interest charged in 2012** | **$227.92** |

## Interest charge calculation

Days in billing cycle: **32**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance type | Annual percentage rate (APR) | Balance subject to interest rate | Interest charge |
|---|---|---|---|
| PURCHASES | | | |
| Standard Purch | 15.24% (V) | $3,952.71 (D) | $52.81 |
| ADVANCES | | | |
| Standard Adv | 25.24% (V) | $0.00 (D) | $0.00 |

Your Annual Percentage Rate (APR) is the annual interest rate on your account. APRs followed by (V) vary with the market based on the Prime Rate. Balances followed by (D) are determined by the daily balance method (including current transactions).

## Account messages

Remember, you MUST PAY IN FULL any charges over your revolving credit limit by your statement's Payment Due Date.

You may pay all or part of your account balance at any time. However, you must pay, by the payment due date, at least the minimum payment due.

Your Card(s) provide(s) the convenience of transacting worldwide wherever your MasterCard, Visa or American Express is accepted. Each purchase you make outside the U.S. is subject to a transaction fee.

Please be sure to pay on time. If you submit your payment by mail, we suggest you mail it no later than 10/14/2012 to allow for enough time for regular mail to reach us.

# EXHIBIT R

**Correspondence with Prenda Law 518089424030708**

==

 05-17-2012 11:50:34 Modified Time          05-17-2012 12:51:11
Ticket No        22027062      Masked        no
Creator mjohnson

▽

**Description Information**
Description      Paul called requesting March and April statements be sent to him. Went over rate changes. E-mailing statement. Leaving ticket open.

==

 05-24-2012 12:52:54 Modified Time          05-24-2012 12:52:54
Ticket No        22028477      Masked        no
Creator cwashington

▽

**Description Information**
Description      Spoke to Paul, owner- verified TX ID #, asked Erica, change email Email Batch conf on the Gateway . address to: member72423@countermail.com

==

          09-14-2012 14:03:31 Modified Time          09-14-2012 14:03:31
Ticket No        22051353      Masked        no
Creator cwashington

▽

**Description Information**
Description      Spoke to John,,,wanted to know why check for $1500.00 on 9/10/12
 Transaction: 100109524519 Customer: Roy J. Transit IOLTA Acct 1500.00 came back voided on 9/14/12
 I advised merchant R03 - No Acct unable to Locate Account. he will contact the customer.

# EXHIBIT S

Brett Gibbs
28 Altamont Avenue
Mill Valley, CA 94941
Telephone: (415) 381-3104
brett.gibbs@gmail.com
*In Propria Persona*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC,<br><br>            *Plaintiff*,<br><br>      v.<br><br>JOHN DOE,<br><br>            *Defendant*. | CASE NO. 2:12-CV-8333-ODW (JCx)<br><br>Judge:           Hon. Otis D. Wright, II<br>Magistrate Judge:   Hon. Jacqueline Chooljian<br><br>**MOTION FOR INDICATIVE RULING VACATING MAY 6, 2013 ORDER ISSUING SANCTIONS AGAINST MOVANT BRETT L. GIBBS**<br><br>Date:           November 18, 2013<br>Time:           1:30 p.m.<br>Ct. Room:   11 – Spring St. Floor |

1

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 5

II.   FACTUAL BACKGROUND ........................................................................ 6

  A.  Events Leading Up To The May 6 Order. .............................................. 6

  B.  Events After The May 6 Order. .............................................................. 9

    1. The Prenda Principals Have Tried To Force Gibbs' Silence. ............... 9

    2.  New Evidence of Lies and Fraud by Steele and Hansmeier ............... 12

      a.     Financial Records Show that, in 2012, Prenda Law Distributed 70% of Settlement Proceeds To Steele and Hansmeier. ............................................. 12

      b.     BitTorrent Forensic Specialist's Report and Comcast Letter Show that Steele Seeded Films To Lure Potential Defendants Into Infringing on Plaintiffs' Copyrights. ..................... 14

      c.     Recordings Show That Steele Impersonated Mark Lutz and Alan Cooper on Phone Calls…………………………………………………………………16

      d.     Court Records Show That Prenda Law Has Violated Court Orders In Other Cases. ... 17

      e.     Other Courts Have Found Gibbs, but Not The Principals, Credible. .......................... 17

III.  LEGAL STANDARD .................................................................................. 22

IV.   ANALYSIS .................................................................................................. 24

  A.  Gibbs Did Not Lie To This Court. ........................................................ 24

  B.  Gibbs Did Not Violate the Court's Order. ............................................ 25

V.    CONCLUSION ............................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*AF Holdings LLC v. Doe*, Case Nos. 0:12-cv-01445-JNE-FLN, *et al*., (D. Minn.)........................11, 21

*AF Holdings, LLC v. Joe Navasca*, Case No. 3:12-02396-EMC (N.D. Cal.)............................ *passim*

*AF Holdings, LLC v. Patel*, Case No. 2:12-CV-00262-WCO (N.D. Georgia)………………11, 15, 21

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)……………………………………………………….27

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ..................................................................... 23

*Erickson v. Newmark Corp.*, 87 F.3d 298 (9th Cir. 1996)......................................................... 23

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ......................................................................... 23

*First Time Videos, LLC. v. Oppold*, Case No. 6:12-CV-01493-CEH-KRS (M.D. FL.)...................... 14

*Guava LLC v. Spencer Merkel*, Case No. 27-CV-12-20976 (Minn. 4th Dist.) ................................. 18

*Guiterrez-Rodriguez v. Cartagena*, 882 F. 2d 553 (1st Cir. 1989)……………………………………8

*In re Edmond,* 934 F.2d 1304 (4th Cir. 1991)…………………………………………………………8

*Ingenuity13, LLC v. John Doe, Case No. 2:12-cv-08333-ODW (JCx)* ........................................ *passim*

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994)..................................... 23

*Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903 (9th Cir. 2008)……………………………….....8

*Paul Duffy v Paul Godfread and Alan Cooper*, Case No. 1:13-cv-01569 (D. Minn.)………………16

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ................................................................ 23

*Sunlust Pictures, LLC v. John Doe IP 216.40.69.178*, Case No. 1:12-cv-01271-LMB-IDD (E.D. Va.)

    (Filed Nov. 7, 2012)……………………………………………………………………………17

*Sunlust Pictures, LLC v. John Doe IP 68.98.135.78*, Case No. 1:12-cv-01280-LMB-IDD (E.D. Va.)

    (Filed Nov. 7, 2012)……………………………………………………………...............17

*Sunlust Pictures, LLC v. John Doe*, Case No. 1:12-cv-00656-CMA-KMT (D. Col.)………………17

*Sunlust Pictures LLC v. Tuan Nguyen* 8:12-cv-01685-MSS (M.D. Fla.)………………………….....20

*United States of America v. $133,420 In United States Currency*, 672 F.3d 629 (9th Cir. 2012)……...8

*United States v. Manchester Farming Partnership,* 315 F.3d 1176 (9th Cir. 2003) .......................... 23

1   *United States v. Parcels of Land*, 903 F 2d. 36 (1st Cir. 1990)……………………………………..8

2   *Yagman v. Republic Ins.*, 987 F.2d 622 (9th Cir.1993)........................................................ 23

3

4   **Rules**

5   Federal Rule of Appellate Procedure 12.1………………………………………………........5

6   Federal Rules of Civil Procedure 60 ……………………………………………...……22

7   Federal Rules of Civil Procedure 62.1 ……………………………………………….5, 22

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR INDICATIVE RULING        NO. 2:12-CV-8333-ODW (JCx)

**MOTION FOR INDICATIVE RULING VACATING ORDER ISSUING SANCTIONS AGAINST MOVANT BRETT L. GIBBS**

Attorney Brett L. Gibbs, *in propria persona,* files this motion for an indicative ruling vacating the Court's May 6, 2013 Order Issuing Sanctions against Gibbs in accordance with Federal Rules of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1. In support of this motion, Gibbs presents the following:

## I.     INTRODUCTION

In its May 6 Order Issuing Sanctions, the Court awarded attorneys' fees and costs to Defendants' attorneys and doubled the award as a punitive measure "justified by Plaintiffs' brazen misconduct and relentless fraud." The Court imposed joint and several liability for an $81,319.72 sanction on John Steele, Paul Hansmeier and Paul Duffy, whom the Court labeled the "Principals," as well as the two Plaintiffs (AF Holdings, LLC and Ingenuity 13, LLC), Prenda Law, Inc., and Gibbs. The Court also referred Steele, Hansmeier, Duffy and Gibbs to their respective state and federal bars, the United States Attorney for the Central District of California, the Criminal Division of the Internal Revenue Service and the District's Standing Committee on Discipline.

In this Motion, Gibbs asks the Court to reconsider whether the monetary sanctions imposed on the Principals, Prenda, and Plaintiffs should also have been imposed on him. Gibbs will present new evidence showing that Steele and Hansmeier are the beneficial owners of the sham companies that served as Plaintiffs, and of Prenda Law itself. He will present new evidence of fraudulent behavior by the Prenda Principals after the Court's May 6 Order, and new evidence from other Courts that have sanctioned the behavior of the Principals. Finally and relatedly, Gibbs will show that his sworn declarations and testimony have been relied upon by other Courts, affirming that Gibbs is a credible witness in these matters.

In light of this new evidence, Gibbs' will show that his conduct did not warrant sanctions. Gibbs asks the Court to reconsider whether his mistake in characterizing a

MOTION FOR INDICATIVE RULING     NO. 2:12-CV-8333-ODW (JCx)

Defendant's property as "a very large estate" was in fact a "blatant lie," whether Gibbs ignored the Court's discovery stay order, and whether any of Gibbs' statements or actions in this case exhibited bad faith. Since May 6, 2013, whenever Gibbs has testified or filed declarations in cases involving the Principals and their sham companies, the Courts have found Gibbs credible and relied on his testimony in imposing sanctions on the Principals. Gibbs asks this Court to do the same and vacate the monetary sanction which the Court imposed on him on May 6, 2013.

## II.    FACTUAL BACKGROUND

### A. Events Leading Up To The May 6 Order.

Gibbs received a phone call from Hansmeier in March, 2011 asking if he would be interested in working for Steele Hansmeier PLLC, the predecessor to Prenda Law. (Declaration of Brett L. Gibbs Supporting Motion for Indicative Ruling ["Gibbs Decl."] at ¶ 9). Hansmeier had been Gibbs' assigned roommate during his first year at the University of Minnesota Law School (2004-2005), but they had not remained in contact after Gibbs transferred to the University of California, Hastings College of Law in 2005. (Gibbs Decl. at ¶ 10). When Hansmeier called, Gibbs was nearing the end of 20 months of debilitating surgeries, radiation and chemotherapy treatments for brain cancer. He had been unable to work since July 10, 2009, when his diagnosis forced him to leave his job with a small Oakland law firm, and he was still not sufficiently healthy to return to a full-time position. (Gibbs Decl. at ¶ 11). Gibbs accepted the offer to work as an independent contractor in an "of counsel" position at Steele Hansmeier, handling all litigation in California, with the explicit understanding that he would only work as many hours per week as he and his doctors thought advisable. (Gibbs Decl. at ¶ 12).

Gibbs worked for Steele Hansmeier and its successor, Prenda Law, from late March 2011 until late February 2013. (Gibbs Decl. at ¶ 13). During this entire period,

as Gibbs has testified consistently in this court and others, Steele and Hansmeier directed virtually all of Gibbs' activities. (Gibbs Decl. at ¶ 14). He was in frequent phone and email contact with both of them, often speaking several times a day. (Gibbs Decl. at ¶ 15).

In its February 7, 2013 Order to Show Cause Re Sanctions for Rule 11 and Local Rule 83-3 Violations, this Court averred that "Gibbs appears to be closely related to or have a fiduciary interest in Plaintiffs" Ingenuity13 LLC and AF Holdings LLC. (ECF No. 48 at pg. 10). The Court required Gibbs to file a response to the OSC and attend a show-cause hearing on March 11, 2013. Defendant's counsel, Morgan Pietz, was also given the opportunity to file a response to the Court's OSC.

In his response, Pietz argued that "What seems increasingly clear though is that Prenda, and its 'of counsel' here, Mr. Brett Gibbs, have crossed the Rubicon in these cases, by resorting to fraud, which includes identity theft, sham offshore shell companies, and forged documents." (ECF No. 52 at pg. 4). Pietz further asserted that "Mr. Gibbs appears [to] act as a functional Chief Operating Officer for Prenda Law…. [and] Mr. Gibbs has a pecuniary interest in the Prenda shell companies." He sought monetary sanctions from "Prenda Law, Inc., and … the attorneys running Prenda, including Mr. Gibbs". (*Id*. at n.7, pgs. 17, 30). Pietz submitted a chart (which the Court adopted in its May 6 Order) detailing "Plaintiffs' relationships," showing Gibbs' position as equivalent to that of the Principals. (ECF No. 130 at pg. 9).

At the March 11 hearing, Gibbs testified under direct examination from his attorney as well as cross-examination by Pietz and the Court. Gibbs answered every question put to him, testifying, among other things, that Prenda Law was run by Steele and Hansmeier, that he had no direct contact and no fiduciary relationship with the Plaintiffs, that he had no personal knowledge of the Alan Cooper forgery, and that he was neither a partner in, nor owner of, Prenda law. (ECF No. 93 pgs. 76-77, 94-96).

After Gibbs testified, the Court scheduled a further OSC hearing for April 2, 2013, ordering that Steele, Hansmeier, Duffy and others attend. Steele, Hansmeier, Duffy and all of the other subpoenaed parties appeared at the hearing, but they all refused to testify, choosing instead to invoke their rights under the Fifth Amendment in a civil case because they believed that the Court was investigating conduct which could carry criminal penalties. (ECF No. 130 at pg. 3).[1]

In its May 6 Order Issuing Sanctions, the Court identified Steele, Hansmeier and Duffy as Prenda's "Principals." (ECF No. 130 at pg. 3). "The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case." (*Id. at pg 5*). Only two of the Court's eleven findings even mentioned Gibbs:

> 7. The Principals have hired willing attorneys, like Gibbs, to prosecute these cases. Though Gibbs is culpable for his own conduct before the Court, the Principals directed his actions. In some instances, Gibbs operated within narrow parameters given to him by the Principals, whom he called "senior attorneys."

> 10. The Principals ordered Gibbs to commit the following acts before this Court: file copyright-infringement complaints based on a single snapshot of Internet activity; name individuals as defendants based on a statistical guess; and insert a copyright assignment with a fraudulent signature. The Principals also instructed Gibbs to prosecute these lawsuits only if they remained profitable; and to dismiss them

---

[1] When Steele, Hansmeier and Duffy asserted their Fifth Amendment rights in this civil case, they did so with no guarantee that the Court will allow their subsequent testimony. In analogous situations, Courts have decided to preclude or strike affidavits and testimony offered after invocation of the Fifth Amendment. *See, e.g., United States of America v. $133,420 In United States Currency,* 672 F.3d 629 (9th Cir. 2012) ("Preserving the integrity and the truth-seeking function of the judicial process is as important in civil as in criminal proceedings. *Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 910 (9th Cir.2008) [affirming district court's refusal to allow witness to testify on particular subject at trial when the Fifth Amendment had been used to block inquiry into that subject during a deposition]"; *see also Guiterrez-Rodriguez v. Cartagena*, 882 F. 2d 553, 557 (1st Cir. 1989); *In re Edmond,* 934 F.2d 1304, 1308-1309 (4th Cir. 1991); and *United States v. Parcels of Land*, 903 F 2d. 36, 43 (1st Cir. 1990).

otherwise. (*Id*. at pg 5).

The only misconduct which the Court attributed directly to Gibbs related to Gibbs' investigations into the identities of Doe defendants.  The Court concluded that Gibbs' description of one of the Defendant's properties as "a very large estate" was a "blatant lie [which] resembles other statements given by Plaintiffs in this and their other cases: statements that sound reasonable but lack truth." (*Id*. at pg. 7).  The Court also raised "the matter of the ignored Court Order vacating early discovery," though not specifically identifying Gibbs as an individual who ignored the order. (*Id*. at pg. 8). The balance of the May 6 Order focused on the conduct of the Principals and the Plaintiffs.

Nevertheless, despite the Court's conclusion that "As evidence materialized, it turned out that Gibbs was just a redshirt," the May 6 Order imposed the same monetary sanction on Gibbs as it imposed on the Principals and the Plaintiffs. (*Id*. at pgs. 2, 10).

### B. Events After The May 6 Order.

### 1. The Prenda Principals Have Tried To Force Gibbs' Silence.

After receiving the May 6 Order, Hansmeier telephoned Gibbs in an attempt to persuade him to work with, not against, the Principals as they appealed the Order. (Gibbs Decl. at ¶ 16).  Over several conversations, Hansmeier conveyed to Gibbs exactly what he would have to do to be covered by the superseadous bond which the Principals were arranging to purchase.  Knowing that Gibbs would not be able to post sufficient collateral to buy a separate bond, Steele and Hansmeier made six demands which Gibbs would have to accede to before they would add him to their bond: (1) Gibbs pay $3,000 to Hansmeier and Steele to reimburse them for the entire cost of the bond; (2) Gibbs sign a unilateral Release and Settlement Agreement releasing any and all claims he might have against Duffy, Steele, Hansmeier, Prenda Law, Steele

Hansmeier PLLC, and Alpha Law Firm" (*See* Exhibit A); (3) Gibbs agree to sign a declaration stating (falsely) that Steele had no involvement in a Florida copyright case; (4) Gibbs represent AF Holdings and Ingenuity 13 in their appeal of the May 6 Order; (5) Gibbs sign an agreement that would create a fiduciary relationship between Gibbs and both Steele and Hansmeier;[2] and (6) Gibbs sign an agreement indemnifying Steele and Hansmeier

> against any and all claims, demands, actions, suits, losses, costs, charges, expenses, damages and liabilities whatsoever which [they] may pay, sustain, suffer or incur by reason of or in connection with the appeal of the May 6, 2013 order issued by Judge Wright in Case No. 2:12-cv-8333-ODW (JCx) including, without limiting the generality of the foregoing, all costs and expenses (including legal expenses) incurred in connection with any such loss or damage. (*See* Exhibit B).

The unilateral release and the indemnity agreement proposed by Steele and Hansmeier would have made Gibbs solely liable for the full amount of the monetary sanctions imposed on all of the parties in the May 6 order, as well as the costs and attorneys' fees incurred in appealing the order. Steele and Hansmeier were also trying to force Gibbs to testify dishonestly or remain silent with regard to the Principals' fraudulent activities. Gibbs rejected their offer and was not included on the bond.

On May 22, 2013, in another transparent attempt to prevent Gibbs from testifying about Prenda Law's activities, Duffy sent Gibbs an email and certified letter "reminding" him of his "ongoing obligation to maintain attorney-client privilege, attorney work-product information and other applicable obligations." (*See* Exhibit C).

Perhaps the most flagrant attempt to intimidate Gibbs came on July 8, 2013, when Mark Lutz (Prenda's former paralegal and the only officer or employee of Plaintiffs) and Steele sent similar, unsworn and virtually fact-free bar complaints

---

[2] While neither Steele nor Hansmeier explained the reason for demanding the creation of a "fiduciary relationship," it was clear to Gibbs that they hoped to use it to prevent Gibbs from being able to testify against them in any courtroom in the country.

against Gibbs to the California State Bar. Steele also filed the bar complaints in this Court, and Lutz forwarded them to Dan Browning, a reporter for the Minneapolis *Star Tribune*.[3] (ECF No. 218) (Gibbs Decl. at ¶ 17). In his bar complaint, Steele reiterated and expanded upon his unsupported, unsworn and untrue claims that: "I want to make it clear that I never read, prepared, reviewed, modified, discussed, or was in any way involved with the pleadings filed by Attorney Gibbs in the Judge Wright matter. My first knowledge of the case was when a third party told me something in February 2013 that Attorney Gibbs was in trouble for insulting a judge in California.";[4] and "On May 6, 2013 Judge Wright issued an order based solely on Attorney Gibbs perjurous statements made at the March hearing that I did not attend." (ECF No. 218-1 at pg. 84).[5]

Gibbs submits that the Principals' attempts to silence or discredit him are, in themselves, strong new evidence that Gibbs was truthful in his testimony. The Principals have not produced and cannot produce any evidence that Gibbs is lying, so their only hope of escaping sanctions in this and other courts is to destroy Gibbs' credibility or otherwise find a way to prevent him from testifying truthfully about their conduct. It is understandable that, as courts move closer to discovering the truth about

---

[3] This was the same week that Steele was scheduled to appear before this Court for a hearing on his motion to reconsider (because he claimed that he and others had not been properly served). Steele apparently hoped that, by filing the bar complaints and a mountain of other documents, he could deflect attention from his own conduct by getting the Court stirred up with baseless, unsworn allegations about Gibbs, an invitation which the Court summarily declined. (ECF Doc. No. 224).

[4] Gibbs, of course, discussed this case with Steele many times. For example, Gibbs contacted Steele on February 7 about this Court's OSC to Gibbs. Steele replied by sending emails to Gibbs about Prenda's malpractice insurance. This would be peculiar behavior for someone who had no involvement with Prenda and/or knew nothing about the proceedings in this Case which created Gibbs' need for Prenda's insurance. (*See* Exhibit D).

[5] Gibbs is not the only attorney who has received threats from the Principals. On September 20, 2013, Paul Godfread, the attorney for Alan Cooper, filed a declaration stating: "Paul Hansmeier called me on September 9, 2013 to discuss pending motions in the miscellaneous case *AF Holdings v. Patel*. During that call, he offered to not sue me if I agreed to not handle any more cases relating to himself, Prenda Law, or any of Prenda Law's clients. He told me that he had been contacted by people who wanted to sue me based on actions I have taken in these cases and related cases and he believed such lawsuits would continue for as long as 10 years. He also stated that such lawsuits wouldn't be profitable for himself, his clients, or myself, and that they would cause serious problems for me personally and professionally. I declined to entertain his 'offer' and told him I perceived such an 'offer' as a threat of vexatious litigation." *AF Holdings LLC v. Doe*, Case Nos. 0:12-cv-01445-JNE-FLN, *et al.*, (D. Minn.) (Doc. No. 43).

MOTION FOR INDICATIVE RULING     NO. 2:12-CV-8333-ODW (JCx)

Prenda Law and the Principals, their attempts to "Blame Everything On Gibbs" grow ever louder, more far-fetched and desperate.

### 2. New Evidence of Lies and Fraud by Steele and Hansmeier

    a.   *Financial Records Show that, in 2012, Prenda Law Distributed 70% of Settlement Proceeds To Steele and Hansmeier.*

Steele and Hansmeier have repeatedly claimed that they have no ownership interest in Prenda Law, AF Holdings or Ingenuity 13 and that all settlement proceeds are held in trust accounts for use in future litigation.  For example, in the bar complaint filed in this Court, Steele stated "I have never had an ownership interest in Prenda Law Inc"; "I have never had an ownership interest in AF Holdings LLC or Ingenuity 13." (*Id*. at pg. 83).  In his deposition, Hansmeier testified that he had "no ownership interest [in AF Holdings] whatsoever" and that proceeds from settlements went into an attorney's trust account and were withdrawn only to pay expenses of litigation. (ECF No. 69-1 at pgs. 9-13).

The truthfulness of these and similar statements is severely challenged by two documents which Prenda Law sent to the Dropbox account on Gibbs' computer in early 2013: "*Prenda Law Profit and Loss Detail, January through December 2012*" and "*Prenda Law Balance Sheet Detail*." (*See* Exhibits E and F).  The receipt and disbursements shown in these spreadsheets directly contradict the oft-repeated statements of Steele and Hansmeier that they have no financial interest in Prenda Law or its litigation.

According to the *Prenda Law Profit and Loss Detail*, in 2012 alone, Prenda made "Payments to Old Owners"[6]—Hansmeier, Steele and Under the Bridge

---

[6] The term "Payments to Old Owners" implies that Steele, Hansmeier, and Under The Bridge Consulting were, at one time, owners of Prenda Law. At 70% of revenue, the payments seem unreasonably large to be from an arms-length sale of Steele Hansmeier PLLC to Duffy, especially if Steele and Hansmeier were not playing any role in managing Prenda.

MOTION FOR INDICATIVE RULING     NO. 2:12-CV-8333-ODW (JCx)

Consulting (their jointly-owned company[7])—equal to almost 70% of Prenda's total revenue. Hansmeier received $645,821.29 ($185,321.28 directly and $460,500.00 through Under the Bridge).  Steele received $660,915.94 ($200,415.94 directly and $460,500.00 through Under the Bridge). This does not include tens of thousands of dollars in additional payments to or on behalf of Steele and Hansmeier for travel and entertainment, meals, credit card charges, and miscellaneous reimbursements, or payments to Steel's wife, Kerry Eckenrode Steele.  It also does not include payments totaling $37,069.56 to Duffy or Duffy Law Group, also classified as "Payments to Old Owners."[8] Judging from the documents it appears that neither the *Profit and Loss Detail* nor the *Balance Sheet Detail* show any payments to AF Holdings, Ingenuity 13 or other Plaintiffs represented by Prenda.[9]

Exhibit E shows that Prenda received income from "Pirates" of $1,931,977.09 in 2012, and made "Payments to Old Owners" of $1,343,806.78 or 69.6% of its total receipts.  Considering other payments to or for Steele, Hansmeier and Duffy, the total distributed to them likely exceeded 80% of receipts, even though these distributions left Prenda with a 2012 loss of $487,791.20.  These figures do not include payments to Steele and Hansmeier from other Prenda accounts, or settlements that may have

---

[7] Approximately a month before Gibbs left Prenda Law, Hansmeier told Gibbs in a telephone conversation that Hansmeier and Steele each owned 50% of a side-business called Under the Bridge Consulting. At the time, Gibbs did not understand the implications of Hansmeier's comment.  Only later did Gibbs realize that Under the Bridge was being used as a conduit for funneling settlement money from Prenda to Steele and Hansmeier (Gibbs Decl. at ¶ 18).  The name "Under the Bridge" presumably refers to a place where trolls congregate.  If the payments were indeed from the sale of Steele Hansmeier, it is puzzling that such large sums were paid to Under the Bridge Consulting.

[8] Classifying payments to Duffy as "Payments to Old Owners" is curious. It may indicate that Duffy owned a small interest in Steel Hansmeier PLLC when its business was transferred to Prenda.  It could also mean that the "Payments to Old Owners" account was being used to disguise payments to the *de facto* owners of Prenda Law – Steele, Hansmeier and Duffy.

[9] This supports the conclusion that these companies were not independent entities, but rather alter egos of Steele and Hansmeier.

MOTION FOR INDICATIVE RULING          NO. 2:12-CV-8333-ODW (JCx)

bypassed Prenda completely.[10]

   Not only do these documents refute statements from Steele and Hansmeier that they lack any interest or beneficial ownership in Prenda Law, they also provide strong new evidence supporting Gibbs' prior testimony.   Steele and Hansmeier were the primary beneficiaries of settlement payments to Prenda Law, giving them a compelling, if secret, financial interest in all aspects of Prenda's operations and litigation.   They had a direct financial incentive to ignore any court order—or ignore Gibbs when he relayed such an order—if complying would slow the flow of settlement proceeds to Prenda.

   b.   *BitTorrent Forensic Specialist's Report and Comcast Letter Show that Steele Seeded Films To Lure Potential Defendants Into Infringing on Plaintiffs' Copyrights.*

   On June 3, 2013, in a Florida copyright-infringement case, Delvan Neville, a computer researcher, doctoral candidate at Oregon State University and BitTorrent forensic specialist, filed a 31-page declaration that concluded, after exhaustive analysis, that films were made available to BitTorrent users on download sites like The Pirate Bay by "sharkmp4," a GoDaddy account owned and controlled by Steele. *First Time Videos, LLC. v. Oppold*, Case No. 6:12-CV-01493-CEH-KRS (M.D. FL.), Docket No. 37-11, (Exhibit K, Declaration of Delvan Neville). The uploaded files were labeled as "Fast" indicating that they could be easily and rapidly downloaded from someone eager to give out the file.   Some films were available from the sharkmp4 account before they were available anywhere else; one film was available before a copyright registration was filed; and one or more films were made available by someone who apparently had access to the original Master of the work.   Neville's Declaration draws several important conclusions, all of which further implicate Steele

---

[10] Many entries in The *Prenda Law Profit and Loss Detail, January through December 2012* (Exhibit E) refer to transfers to and from other Prenda bank accounts. Without reviewing these accounts, it is not possible to say if they were also used to make payments to Steele and Hansmeier, further increasing their income from Prenda. (Gibbs Decl. at ¶ 19).

MOTION FOR INDICATIVE RULING      NO. 2:12-CV-8333-ODW (JCx)

in attempts to maximize the number of individuals whom Prenda could pursue for copyright infringement:

> "Therefore, it appears that there is sufficient evidence to conclude that Ingenuity 13 is sharing its own works via sharkmp4 and identifying such swarms to 6881 Forensics[11] upon creation."

> "It appears from all the evidence that John Steele (or someone under his control or with access to his Go-Daddy account records with authorization to make changes to domain names) is the most probable candidate for the identity of Pirate Bay user sharkmp4."

> "Because all three entities [Ingenuity 13, 6881 Forensics and Prenda Law] appear under the same control, it is my belief that the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement for the purposes of monetization of copyrights of commercially low value." (*Id* at pgs. 22, 29, 31).

The efforts of Steele and Hansmeier to entice copyright infringement of films so that they could extort settlements from downloaders were further confirmed in a letter from Comcast in response to a subpoena in an AF Holdings case in Georgia.  In that case, Comcast was asked to identify the subscriber who owned IP address 75.72.88.156, the address used by sharkmp4 to seed certain films produced by AF Holdings and Ingenuity 13. On August 6, Comcast's Legal Response Center identified the subscriber as "Steele Hansmeier PLLC" of Minneapolis, MN. *AF Holdings, LLC v. Patel*, Case No. 2:12-CV-00262-WCO (N.D. Georgia), Doc. No.61-16.

The Neville declaration and the Comcast letter provide compelling new evidence that Steele and Hansmeier designed and operated a lucrative honeypot scheme.  While Gibbs never knew or suspected any of this, it was another critical element underpinning a business plan that relied entirely on revenue from settlements with alleged "pirates." This new evidence raises the possibility that Steele and the Plaintiffs gave their implied consent to the downloading of these films and had no

---

[11] 6881 Forensics is purportedly owned by Peter Hansmeier, Paul Hansmeier's brother, and was employed by Prenda to identify IP addresses of "pirates" who downloaded films.

legal basis for their many copyright-infringement lawsuits. This new evidence provides yet another reason to conclude Gibbs testified truthfully when he admitted to this Court that he had "in a way" been "duped" by Hansmeier and Steele.[12] (*See* ECF No. 93 at 97).

c.     *Recordings Show That Steele Impersonated Mark Lutz and Alan Cooper on Phone Calls.*

On August 28, 2013, Gibbs testified at an evidentiary hearing in *AF Holdings, LLC v. Navasca*, Case No. 3:12-cv-02396-EMC (N.D. Cal). Defendant's attorney played voice recordings of two phone calls to GoDaddy's support lines during which the caller claimed to be Mark Lutz on one call and Alan Cooper on the other. Gibbs testified that the voice on the recordings claiming to be Mark Lutz and Alan Cooper was in fact Steele's. (*Id*. Doc. No. 116 at pg. 8). His testimony was buttressed by the fact that the caller asked GoDaddy to send a new password to the email address johnlsteele@gmail.com.[13]

That Steele would misappropriate other people's identities on recorded telephone calls makes his denial that he (or someone acting at his direction) forged the name of Alan Cooper on copyright assignments even less credible.

---

[12] At the March 11 OSC hearing, the Court asked, "Do you feel like you have been duped by Hansmeier and Steele?" Gibbs responded, "In a way, yes." His answer today would be "In many, many ways, yes."

[13] Steele's misappropriation of Alan Cooper's identity began even earlier. In the amended counterclaim in *Paul Duffy v Paul Godfread and Alan Cooper*, Case No. 1:13-cv-01569 (D. Minn.) (Doc. No. 36 at pg. 7), Defendants' attorney explains: "On November 6, 2010, at 10:01 a.m. Steele created a GoDaddy account and was assigned Shopper ID 39706942. ECF No. 16-3. Steele initially used his own name and the business address for Prenda Law, Inc. on the account. A mere 15 minutes later, Mr. Steele changed the customer name from "John Steele" to "Alan Cooper" and replaced the Steele Hansmeier address with 4532 East Villa Theresa Drive ("the Villa Theresa Address"). This address was previously shared by John Steele's sister, Jayme Steele and her boyfriend Anthony Saltmarsh. Id. Anthony Saltmarsh would later find himself, without his knowledge or consent, the namesake of the 'undefined beneficiary trust' which owns AF Holdings." The amended counterclaim describes, in some detail, the vexatious litigation in multiple venues which the Principals brought against Cooper in retaliation for exposing the forgery of his signature. Just as in this, and many other cases, retaliation seems to be the Principals' weapon of choice in dealing with opponents who stand up to them.

MOTION FOR INDICATIVE RULING     NO. 2:12-CV-8333-ODW (JCx)

### d. *Court Records Show That Prenda Law Has Violated Court Orders In Other Cases.*

In a Colorado case which bears many similarities to this case, Prenda Law's local attorney filed a complaint against John Doe and 1385 "joint tortfeasors." On March 22, 2012, the court granted a motion for early discovery, allowing Plaintiff to subpoena ISPs for the purpose of identifying the Defendant and the 1,385 "co-conspirators." On October 19, 2012, the Honorable Judge Kathleen M. Tafoya issued an order reversing her original early discovery order and quashing all outstanding ISP subpoenas. The court ordered: "Insofar as any personal identifying information of the non-party 'joint tortfeasors' has already been provided to Plaintiff from the 'joint tortfeasors' ISPs, Plaintiff is prohibited from further communicating with these subscribers." *Sunlust Pictures, LLC v. John Doe*, Case No. 1:12-cv-00656-CMA-KMT (D. Col.) Doc. No. 94.

Despite this direct and unambiguous Court Order, Prenda sent out letters and subpoenas to subscribers in Virginia and began lawsuits against them based on information gained from ISPs in the Colorado case. *See, e.g., Sunlust Pictures, LLC v. John Doe IP 216.40.69.178*, Case No. 1:12-cv-01271-LMB-IDD (E.D. Va.) (Filed Nov. 7, 2012) (same IP address as in Colorado case); *Sunlust Pictures, LLC v. John Doe IP 68.98.135.78*, Case No. 1:12-cv-01280-LMB-IDD (E.D. Va.) (Filed Nov. 7, 2012) (same IP address as in Colorado case).

The proceedings in Colorado and Virginia indicate that Prenda's failure to abide by this Court's October 19 Order vacating early discovery was neither isolated nor unintentional. Moreover, it happened in cases in which Gibbs was not involved.

### e. *Other Courts Have Found Gibbs, but Not The Principals, Credible.*

There are numerous cases in which Prenda or its Principals or its Plaintiffs are under investigation for misconduct, have been sanctioned, or are facing sanctions. In a

county court in Minnesota, the Honorable Tanya M. Bransford found that the plaintiff, Guava LLC—another sham company owned by Steele and Hansmeier—had engaged in conduct "markedly similar to a fraudulent scheme as found by Judge Otis Wright." The Court awarded a total of $63,367.52 in costs and attorney's fees, and made Alpha Law Firm[14] and its local counsel jointly and severally liable for payment. *Guava LLC v. Spencer Merkel,* Case No. 27-CV-12-20976 (Minn. 4th Dist.).

In the Northern District of California, the Court had to assess the credibility of the Principals and Gibbs in another AF Holdings copyright-infringement case in which Gibbs had previously represented the Plaintiff. *See AF Holdings, LLC v. Joe Navasca*, Case No. 3:12-02396-EMC (N.D. Cal.). Gibbs' final action before being allowed to withdraw from this case was to file AF Holdings motion for voluntary dismissal. *Id* at Doc. No. 62. Duffy substituted into this case when Gibbs withdrew. *Id* at Doc. No. 63. The Court, before ruling on the motion to dismiss, requested an explanation of the forged signature of Alan Cooper on the copyright assignment. In response, Duffy and Lutz filed declarations, with Duffy claiming that he knew nothing about the ADR certification and that it was Gibbs alone, not Prenda Law, who had the obligation to produce it. *Id* at Doc. No. 79. Lutz, as the sole officer or employee of Plaintiff, went further, declaring: "Gibbs also from time to time sent to me certifications to sign on behalf of AF Holdings stating that I am familiar with the ADR policies. My practice was to sign those certifications on behalf of the Salt Marsh Trust and return them to Gibbs." *Id*. at Doc. No. 80. Citing these declarations, the Honorable Judge Edward M. Chen entered final judgment dismissing the case on May 21, 2013, and directed the clerk to close the file. *Id*. at Doc. No. 82, 83.

On June 4, 2013, the Defendant made a motion for costs and attorney fees. Gibbs, knowing that Lutz's declaration about signing ADR certifications was false,

---

[14] Alpha Law LLC, is a Minnesota law firm owned and operated by Hansmeier. It shared an address and attorneys with Prenda and, for all intents and purposes, seems to be just another name under which Prenda operated.

and understanding his obligations as an officer of the court, submitted a declaration supporting Defendant's motion. In his declaration, Gibbs stated that he had not sent ADR certifications to Lutz, and he had not had the alleged conversations with Lutz. Gibbs reiterated that Hansmeier told him that Salt Marsh was an individual who had read and signed the certifications, and that Hansmeier confirmed to him that Prenda Law had the original signatures on file. *Id* at Doc. No 84.

On July 22, the Court awarded fees and costs of $22,531.93 to the Defendant. The Court found that "the signature by Alan Cooper appears to have been a forgery" and:

> persons affiliated with AF used the alias 'sharkmp4' to post links on the Pirate Bay website to many of the copyrighted works in order to induce users to download the works so that they could then be sued for copyright infringement. This evidence corroborates Judge Wright's finding that the motivation for this and similar suits is to sue and coerce settlement. . . [W]hat AF has not done is offer any counter-evidence such as a declaration from Mr. Steele in which he denies that he is 'sharkmp4' or other evidence that AF did not take steps to induce users to download the subject works. This evidence could easily have been offered by AF as a part of its opposition brief. AF's failure to submit any factual denial under oath is telling. *Id* at Doc. No. 100 at pgs. 2, 5.

On July 2, 2013, before Judge Chen had awarded costs and fees, Defendant had made a motion for sanctions against Steele and Hansmeier. (*Id* at Doc. 93.) On July 25, after awarding costs and fees to Defendant, the Court referred the motion for sanctions to the Honorable Magistrate Judge Nandor J. Vadas for a report and recommendation. Judge Vadas scheduled an evidentiary hearing for August 28, 2013 and directed the parties to be prepared to address the legal effect of the findings in this Court's May 6 Order and other specific questions. *Id* at Doc. No. 102, 103. The evidentiary hearing was Prenda's chance to rebut the findings in this Court's May 6 Order, to clarify the ownership of AF Holdings and the identity of Salt Marsh, to offer evidence supporting their assertions that Gibbs was single-handedly orchestrating

1   Prenda Law's every move, to explain the Alan Cooper signature, and to describe how
2   settlement funds were being sent to AF Holdings.  Even though the Principals had
3   elected not to present such evidence to this Court at its April 2, 2013 OSC hearing,
4   this was a fresh opportunity for them to submit sworn evidence supporting their
5   allegations without the fear of criminal penalties which kept them from testifying on
6   April 2, 2013.

7        At the August 28 hearing, Duffy, appearing as the attorney for AF Holdings,
8   claimed that Lutz was in San Francisco on his way to the hearing.  Lutz, however, did
9   not appear in court or telephone to explain his absence.  Duffy did not attempt, in any
10  meaningful way, to answer any of the specific questions posed by the court.  When
11  Lutz did not appear, Duffy called no other witnesses and presented almost no new
12  evidence.[15]  Gibbs, on the other hand, voluntarily appeared and testified for over an
13  hour answering every question posed to him by Defendant's attorney, the Court and
14  Duffy.  Gibbs again testified that Steele and Hansmeier were the decision-makers at
15  Prenda Law.  Gibbs provided phone records of calls with Steele and Hansmeier
16  detailing hundreds of calls, including calls on dates that were specifically relevant to
17  issues arising in the *Navasca* case.

18       Duffy then cross-examined Gibbs. In his September 16, 2013 Report and
19  Recommendation, the Honorable Magistrate Judge Vadas described their exchange as
20  follows:

21

22  ────────────────
    [15] Duffy did introduce one new item into evidence during his cross-examination of Gibbs—an "Engagement Letter"
23  dated November 15, 2011 from Duffy to Lutz, which included this sentence:  "The attorney who will be overseeing your
    company's litigation, and your primary contact at Prenda Law, will be Brett Gibbs."  Although this was the first time
24  Gibbs had seen this document, it had been attached to a Declaration of Mark Lutz filed April 29, 2013 as an Exhibit to a
    Memorandum of John Steele in a Florida case.  *Sunlust Pictures LLC v. Tuan Nguyen* 8:12-cv-01685-MSS (M.D. Fla.),
25  Doc. No. 51 at pg. 22.  In that case, the Defendant's attorney pointed out that the Engagement Letter was printed on
    stationery which Prenda did not use at the time, strongly suggesting it was fraudulently created after the fact. *Id.*, Doc.
26  No. 52. at pg. 7.  Gibbs also believes this was a back-dated creation of Prenda designed to deceive the courts in both
    Florida and California and deflect blame from Steele, Hansmeier and Duffy to him. (Gibbs Decl. at ¶ 21).  Gibbs finds it
27  more than a little surprising that the Principals would submit yet another fake document to a federal court given the
    multiple accusations of fraud they already face in courts around the country.

28

AF attempted to attack Gibbs' testimony by presenting an affidavit he had filed in another case, where Gibbs represented himself as an attorney who worked "Of Counsel" for Prenda; litigated copyright lawsuits for Prenda Law; and advised and educated other attorneys working with Prenda Law, as well as Prenda's clients. Plaintiff's Ex. 1. AF also introduced affidavits filed by other attorneys who represented AF and described Gibbs as their point of contact for AF. Plaintiff's Exs. 2, 4. However, these declarations do not rebut Gibbs' testimony that Steele and Hansmeier alone communicated with their purported client, and that they directed Gibbs' litigation strategy. The declarations actually corroborate Gibbs' testimony he communicated with local counsel for AF, essentially acting as a go-between for Steele and Hansmeier. AF further attempted to attack Gibbs' testimony by pointing out that Gibbs and Hansmeier were friends from college, and therefore must have spoken on the phone about personal matters. And finally, AF attempted to undercut Gibbs' credibility by offering "evidence" that Gibbs had "cut a deal" with defendants in various AF cases and thus could not be trusted. **The undersigned is not at all persuaded by AF's arguments and finds that Gibbs' testimony is credible, supported by the record, and supported by the evidence admitted during the evidentiary hearing.** *Id.* at Doc. No. 116 at pgs. 6-7 (*emphasis added*). [16]

The Principals have refused to answer questions about their activities at Prenda Law, appearing only at hearings during which they will not be cross-examined by opposing counsel. For example, in *AF Holdings, LLC v. Doe* 0:12-cv-01445-JNE-FLN (D. Minn.), Steele testified on September 30, 2013 about the Alan Cooper signature, but the Court did not permit opposing counsel to question him. They also continue to dodge legitimate discovery requests. *See AF Holdings, LLC v. Patel*, Case No. 2:12-CV-00262-WCO (N.D. Georgia) at Doc. No 74, 75. They have designated Lutz as the sole officer of Plaintiffs, but have only presented vague and unconvincing reasons

---

[16] On October 16, 2013, Judge Chen adopted Judge Vadas' report and recommendation that "essentially found credible Mr. Gibbs's testimony" and rejected all of AF Holdings' objections. (*Id* at Doc. No. 120 at pgs. 6, 13). The Court also scheduled a November 21, 2013 OSC evidentiary hearing for Steele and Hansmeier to present evidence about the ownership of Plaintiff and other matters, but warned (in bold type) that "**any testimony in a declaration (or affidavit) that a party or nonparty deems important, significant, or critical must be presented at the evidentiary hearing by a live witness, subject to cross-examination.**" (*Id* at pgs. 15-16).

why he did not testify at a scheduled deposition in Georgia or at hearings in Minnesota or California at which he was ordered to appear.[17]

Gibbs, on the other hand, has testified in person or filed sworn declarations in multiple cases, submitted to cross-examination by Courts, opposition attorneys, and even a Prenda Principal. The Court in the Northern District of California found him, but not the assertions of a Prenda Principal, to be credible. Gibbs submits that all of this supports the Court's May 6 findings and sanctions against the Principals, Prenda and Plaintiffs, and also supports vacating those sanctions against him.

## III.   LEGAL STANDARD

Gibbs requests that the Court issue an indicative ruling to the Ninth Circuit under FRCP 62.1 stating that it would grant Gibbs' motion for reconsideration under FRCP 60(b) and vacate the sanctions imposed on Gibbs in its May 6 Order if the Court of Appeals remands for that purpose.

Gibbs respectfully requests that the Court reconsider the sanctions imposed on Gibbs under three of the Grounds for Relief set forth in FRCP (60)(b):

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (and)
> (6) any other reason that justifies relief.

In its May 6 Order, the Court set out the legal standard under which the Court issued the sanctions:

---

[17] On August 21, 2013, neither Lutz nor his attorney appeared for a scheduled deposition in *AF Holdings, LLC v. Patel*. *See* 2:12-cv-00262-WCO (M.D. Fla.) at Doc 76. No reason was given for their failure to appear. On August 28, 2013, Lutz failed to appear in a San Francisco court despite a Court Order that AF Holdings provide specific information to the Court. The Court did not allow Duffy to file Lutz's affidavit explaining that he had been detained by unnamed "federal authorities" at the Miami airport as he attempted to fly to the hearing. *AF Holdings LLC v. Navasca, Id* at Doc 115-1. Most recently, Lutz failed to appear at a September 30, 2013 evidentiary hearing in Minneapolis concerning the Alan Cooper forgery. Steele testified at the hearing that he overheard Cooper's side of a telephone conversation in which Cooper gave Lutz permission to sign Cooper's name (a story that differs markedly from earlier versions.) Asked to explain Lutz's absence, Hansmeier filed a declaration stating that he believed that "Lutz will be able to provide a good-faith reason" for not appearing. *AF Holdings, LLC v. Doe* 0:12-cv-01445-JNE-FLN, at Doc 52.

The Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmark Corp.*, 87 F.3d 298, 301 (9th Cir. 1996). The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). Though this power must be exercised with restraint, the Court has wide latitude in fashioning appropriate sanctions to fit the conduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

Under the Court's inherent authority, parties and their lawyers may be sanctioned for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). This inherent power extends to a full range of litigation abuses, **the litigant must have engaged in bad faith or willful disobedience of a court's order. Id. at 992**. Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991). (*emphasis added*)

In the Ninth Circuit, sanctions under the court's inherent powers are available if the court specifically finds bad faith or conduct tantamount to bad faith. *Fink,* 239 F.3d at 989, *citing Chambers*, 501 U.S. at 54.  In *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir.1993), the Ninth Circuit vacated the imposition of sanctions where there was no evidence that the attorney had "acted in bad faith or intended to mislead the court."  Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Manchester Farming Partnership* 315 F.3d 1176, 1185 (9th Cir. 2003).

Gibbs' testimony is uncontroverted by any sworn testimony of the Prenda Principals.  Gibbs asks the Court to reconsider whether Gibbs acted with a dishonest purpose or simply made an inadvertent "mistake" when he characterized Mr. Denton's property as "a very large estate."  Gibbs also asks the Court to reconsider if Gibbs

knowingly violated the Court Order vacating early discovery or otherwise exhibited bad faith in this case.

## IV.    ANALYSIS

Gibbs was sanctioned by the Court for (1) telling a "blatant lie" about the size of Mr. Denton's property, and (2) ignoring a Court order vacating early discovery.

### A. Gibbs Did Not Lie To This Court.

The Court's May 6 Order described Gibbs' first transgression as follows:

> Enter Plaintiffs and their cottage-industry lawsuits. Even so, the Court is not as troubled by their lack of reasonable investigation as by their cover-up. Gibbs argued that a deep inquiry was performed prior to filing. Yet these arguments are not credible and do not support Gibbs's conclusions. Instead, Gibbs's arguments suggest a hasty after-the-fact investigation, and a shoddy one at that.
>
> For instance, Gibbs characterized Marvin Denton's property as "a very large estate consisting of a gate for entry and multiple separate houses/structures on the property." (ECF No. 49, at 19.) He stated this to demonstrate the improbability that Denton's Wi-Fi signal could be received by someone outside the residence. But Denton's property is not a large estate; it is a small house in a closely packed residential neighborhood. There are also no gates visible. (aerial photo omitted)
>
> Gibbs's statement is a blatant lie. His statement resembles other statements given by Plaintiffs in this and their other cases: statements that sound reasonable but lack truth. Thus, the Court concludes that Gibbs, even in the face of sanctions, continued to make factual misrepresentations to the Court. (ECF No. 130 at pgs. 6-7).

Here is the paragraph from the Gibbs' Declaration which the Court found contained Gibbs' "blatant lie":

> Moreover, in order to rule out neighbors of the property located at 635 S. Vanderwell Avenue, West Covina, California 91790 utilizing the internet connection, Ingenuity utilized Google maps and obtained a satellite picture of the property. The satellite photo revealed that the property was a very large estate consisting of a gate for entry and multiple separate houses/structures on the property. **Further, through**

**another publically available search, the house was identified as approximately 1,304 sq. ft. sitting on a 7,620 sq. ft. lot.** Considering the position of the house and the neighboring properties, including the seemingly main house on the lot, it seemed clear that, should the household have wireless Internet, it likely was not accessible by its neighbors. (ECF No. 49 at ¶ 38) (*emphasis added*).

While Gibbs clearly erred in characterizing Mr. Denton's property as "a very large estate," there was no intent to misrepresent facts or mislead this Court. (Gibbs Decl. at ¶ 22). The sentence following "a very large estate" gives the reported square footage of Mr. Denton's property. Street view photos show a sliding gate on the neighbor's driveway on one side of the house and a swing gate on Mr. Denton's driveway on the other side of the house.[18] (*See* Exhibit G). Gibbs had no intent to deceive or provide misleading information. The entire paragraph was aimed at showing that it was not *likely* that neighbors had intercepted wireless signals from Mr. Denton's property, exactly what Gibbs believed based on his own experience and his research on wireless routers.

Gibbs respectfully asks the Court to review Gibbs' few poorly chosen words in the context in which they were presented and to rule under FRCP 60(b)(1) that Gibbs' description of Denton's property was an inadvertent mistake and not a bad faith effort to deceive the Court.

### B. Gibbs Did Not Violate the Court's Order.

In the May 6 Order, the Court states:

In addition to Gibbs' misrepresentations, there is the matter of the ignored Court Order vacating early discovery. The evidence does not show that the Order was ignored because of miscommunication among Plaintiffs. The Order was purposefully ignored—hoping that the ISPs were unaware of the vacatur and would turn over the requested subscriber information.

---

[18] Gibbs testified to the Court on March 11 that he used aerial views from Google maps as well as Google Street View photos in his investigation (ECF No. 93 at pgs. 99–100).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Although Gibbs is mentioned in the first sentence, the Court did not directly name Gibbs as someone who ignored its October 19 Order vacating early discovery. Nevertheless, Gibbs believes that the Court may have concluded that Gibbs did ignore its Order, and, understanding how the Court could have reached this conclusion, wants to explain exactly what transpired.

Gibbs believed that he had fully complied with the Court's October 19 Order vacating early discovery. On October 19, Gibbs called Hansmeier, who had also received a copy of the Order, to tell him that the Court Order should be served on the ISP's. In a subsequent conversation, Hansmeier confirmed that this had been done, that all of the ISPs had been served with the Court Order quashing the subpoenas. Believing Hansmeier, Gibbs declaration, filed on February 19 in response to the Court's OSC, included the following paragraph:

> 21. Following receipt of the October 19, 2012 Orders, I caused the Court's October 19, 2012 Orders to be served on the registered agents for service of process of Verizon Online LLC to ensure that Verizon Online LLC had notice not to respond to the subpoenas that had already been served. (ECF No. 50, pg. 7).

And Gibbs' attorney, in his February 19 response to the OSC, stated:

> Indeed, following receipt of the October 19, 2012 Orders, Mr. Gibbs caused the Court's October 19, 2012 Orders to be served on the registered agents for service of process of Verizon Online LLC (and the other ISPs) to ensure that Verizon Online LLC had notice not to respond to the subpoenas that had already been served. (Gibbs' Decl. ¶ 21). This is certainly not the action of an attorney that was attempting to evade the Court's orders. (ECF No. 49, pgs. 9-10)

On March 11, Gibbs was presented with evidence that Verizon had not been served with the October 19 Court Order. (ECF Nos. 77, 78). When questioned about this by the Court, Gibbs' attorney responded:

> Prenda Law is one of the, is one of the e-mail addresses that received a copy of your October 19, 2012 order. As does Mr. Gibbs. Mr. Gibbs had a conversation with Mr. Hansmeier and told him that he

26

1    thought that this order should be served on the ISP's.  Mr. Hansmeier
2    advised Mr. Gibbs that would be done.  Mr. Hansmeier later advised
     Mr. Gibbs that his request had been taken care of.  (ECF 93 pg 9-10)

3        Gibbs did not have direct involvement with the process of issuing subpoenas to
4    ISPs or receiving their responses.  These activities were generally handled by Angela
5    Van Den Hemel in Hansmeier's office in Minneapolis[19] and others in Prenda's
6    Chicago office. If the Court Order was not served on the ISPs, it was not because
7    Gibbs chose to ignore it.  Gibbs may have been misled by Hansmeier, but he did not
8    knowingly ignore this Court's October 19 Order. (Gibbs Decl. at ¶ 23).   Neither
9    Hansmeier nor anyone else has provided any evidence or testimony to the contrary.[20]

10       Gibbs respectfully asks the Court to vacate the sanctions against him because he
11   did not ignore the Court's order or act in bad faith in this, or any other, regard.

## V.   CONCLUSION

       The frequent and flagrant misconduct by the Prenda Principals warranted the
sanctions imposed by this Court on May 6.  New evidence demonstrates conclusively
that Steele, Hansmeier and Duffy were never interested in protecting films from
copyright infringement.  They only wanted to maximize settlement proceeds and use
shell companies, organized in offshore jurisdictions, with no assets, accounts,
employees or operations, to hide the fact that they were the true beneficiaries of
Prenda's extortion scheme.   Bad faith was an essential ingredient in their business
model.

---

[19] At the March 11, 2013 OSC hearing, an attorney from AT&T testified that he communicated regularly with Angela Van Den Hemel at Prenda about subpoena-related matters.  Ms. Van Den Hemel exercised her Fifth Amendment right not to testify at the April 2 OSC hearing, so it remains unknown whether Hansmeier told her about the October 19 Court Order vacating discovery.

[20] Because the Principals invoked their Fifth Amendment right not to testify at the OSC hearing on April 2, 2013, the Court may infer that their silence supports Gibbs' testimony that he told Hansmeier about the Court Order vacating early discovery, that Hansmeier chose to ignore it and then lied to Gibbs about having complied.  "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). *See* ECF No. 130 at n.3.

MOTION FOR INDICATIVE RULING          NO. 2:12-CV-8333-ODW (JCx)

Gibbs was in another league.  He did not know that the Principals had forged signatures on documents.  Until recently, he thought his clients were independent entities, not front organizations organized and owned by Steele and Hansmeier to hide settlement proceeds.  He took directions from Steele and Hansmeier, but never thought he was being directed to do anything illegal or unethical.  His mistake was believing and relying on their statements, and transmitting them to the Court, unaware that they were false.  When he learned the truth, he resigned and no longer represents parties in copyright-infringement cases. He has since testified truthfully about the Principals' activities in this Court and others, even in the face of the Principals' less-than-subtle attempts at retaliation.

Gibbs believes that vacating the sanctions against him will help Defendant in the Court of Appeals to argue that sanctions on the Principals, the Plaintiffs, and Prenda Law should be affirmed.  The findings in the Court's May 6 Order relied heavily on Gibbs' testimony.  The veracity of his testimony and its usefulness in other courts will be significantly undermined if this Court, even after reconsidering, concludes that Gibbs told a "blatant lie."  It would seem difficult, if not impossible, to assert the truthfulness of Gibbs' testimony about Prenda while arguing that Gibbs was properly sanctioned for lying to the Court.  By vacating the monetary sanctions against Gibbs, the Court would allow the Defendant and others to use Gibbs' testimony about the Principals without the need for equivocation.  Vacating the sanctions against Gibbs would also prevent Steele, Hansmeier and Duffy from arguing that Gibbs lacks credibility because this Court sanctioned him.  It would show that this Court was correct when it relied on Gibbs testimony in its findings of fact in the May 6 Order.  It would reassure other Courts that are considering sanctions in Prenda cases that Gibbs is a credible witness whose testimony has withstood careful scrutiny in multiple courts.

Gibbs is respectfully requesting that the Court issue an indicative ruling vacating the sanctions imposed on him.  Leaving in place the sanctions on the Principals and their shell companies punishes them for acting in bad faith for financial gain.  Vacating the sanctions against Gibbs, who did not act in bad faith, avoids painting him with the same brush and punishing him for being an unwitting participant in the Principals' massive fraud.

While Gibbs is asking the Court to vacate the sanctions imposed upon him in its May 6 order, he is not asking the Court to withdraw the referrals the Court made to the U.S. Attorney, the Central District Disciplinary Committee, the State Bar and the Internal Revenue Service. Gibbs wants these investigations to proceed and will continue to cooperate fully with them.  If the monetary sanctions against Gibbs are vacated, Gibbs will withdraw his appeal—which the Ninth Circuit has consolidated with the appeals of Prenda, the Principals and Plaintiffs. This will not prevent him from testifying about the actions and statements of the Principals in this or other cases.

Vacating the sanctions which the Court imposed on Gibbs will not affect the sanctions imposed on the other parties. As noted above, all of the significant conclusions made by the Court in its eleven findings of fact relate almost exclusively to the Principals, not Gibbs.  Their appeals to the Ninth Circuit will not be affected by this Court's order extricating Gibbs from the Court imposed monetary sanctions.

Gibbs respectfully requests that the Court issue an indicative ruling to the Court of Appeals stating that it will vacate the sanctions on Gibbs if the Ninth Circuit remands the case.

Respectfully submitted,

DATED: October 17, 2013

/s/ Brett L. Gibbs
Brett L. Gibbs
28 Altamont Avenue
Mill Valley, CA 94941
*In Propria Persona*

29

# EXHIBIT T

Prenda Law
Profit and Loss Detail                                                                                                                                  01/03/13
January through December 2012

| Type | Date | Num | Name | Memo | Clr | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | |
| **Income** | | | | | | | | |
| **Legal Fee Income** | | | | | | | | |
| Deposit | 01/03/12 | | Pirates | Chase | | Chase Bank OPERATING xx6927 | 205,654.84 | 205,654.84 |
| Deposit | 01/03/12 | | Pirates | Chase | | Chase Bank OPERATING xx6927 | 200.00 | 205,854.84 |
| Deposit | 01/03/12 | | Pirates | Chase | | Chase Bank OPERATING xx6927 | 42,677.32 | 248,532.16 |
| Check | 01/05/12 | 5096 | Steele Hansmeier | | | Chase Bank OPERATING xx6927 | -2,000.00 | 246,532.16 |
| Deposit | 01/13/12 | | Pirates | Chase | | Chase Bank OPERATING xx6927 | 38,490.00 | 285,022.16 |
| Deposit | 01/13/12 | | Pirates | Chase | | Chase Bank OPERATING xx6927 | 1,769.64 | 286,791.80 |
| Deposit | 02/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 158,349.28 | 445,141.08 |
| Deposit | 02/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 27,054.03 | 472,195.11 |
| Deposit | 02/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 14,552.31 | 486,747.42 |
| Deposit | 02/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 11,682.71 | 498,430.13 |
| Deposit | 02/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 6,196.40 | 504,626.53 |
| Deposit | 02/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 1,152.62 | 505,779.15 |
| Deposit | 02/16/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 2,336.13 | 508,115.28 |
| Deposit | 02/29/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 126,404.01 | 634,519.29 |
| Deposit | 02/29/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 100,000.00 | 734,519.29 |
| Deposit | 02/29/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 3,357.59 | 737,876.88 |
| Check | 02/29/12 | ELEC WD | Pirates | To xx6943 | | Chase Bank OPERATING xx6927 | -3,357.59 | 734,519.29 |
| Deposit | 04/03/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 175,543.74 | 910,063.03 |
| Deposit | 04/13/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 10,300.00 | 920,363.03 |
| Deposit | 04/24/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 14,750.00 | 935,113.03 |
| Deposit | 05/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 132,523.14 | 1,067,636.17 |
| Deposit | 05/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 3,050.00 | 1,070,686.17 |
| Deposit | 05/01/12 | | Pirates | Adjustment for Duplicate Item | | Chase Bank OPERATING xx6927 | -2,000.00 | 1,068,686.17 |
| Deposit | 05/29/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 100,000.00 | 1,168,686.17 |
| Deposit | 05/31/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 100,000.00 | 1,268,686.17 |
| Deposit | 06/01/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 124,939.98 | 1,393,626.15 |
| Deposit | 06/04/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 5,693.17 | 1,399,319.32 |
| Deposit | 06/08/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 8,431.11 | 1,407,750.43 |
| Deposit | 06/18/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 25,000.00 | 1,432,750.43 |
| Deposit | 07/02/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 50,000.00 | 1,482,750.43 |
| Deposit | 07/03/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 3,777.00 | 1,486,527.43 |
| Deposit | 07/05/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 168,029.34 | 1,654,556.77 |
| Deposit | 07/31/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 117,612.32 | 1,772,169.09 |
| Deposit | 08/10/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 20,000.00 | 1,792,169.09 |
| Deposit | 08/16/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 6,420.50 | 1,798,589.59 |
| Deposit | 09/07/12 | | Pirates | From xx6943 | | Chase Bank OPERATING xx6927 | 17,342.00 | 1,815,931.59 |
| Deposit | 09/14/12 | | Pirates | | | Chase Bank OPERATING xx6927 | 3,947.00 | 1,819,878.59 |
| Check | 10/01/12 | ELEC WD | Pirates | Deposit proc 2x on 8/10/12 | | Chase Bank OPERATING xx6927 | -2,000.00 | 1,817,878.59 |
| Check | 11/30/12 | ELEC WD | Pirates | Bluepay returned payment | | 53 IOLTA xx7456 | -100.00 | 1,817,778.59 |
| Deposit | 12/04/12 | WIRE | Pirates | Transfer to Operating | ✓ | 53 OPERATING xx7365 | 49,628.42 | 1,867,407.01 |
| General Journal | 12/07/12 | | Pirates | Transfer to Operating (Deposits from 11/30–12/3/12) | ✓ | 53 OPERATING xx7365 | 14,118.34 | 1,881,525.35 |
| Deposit | 12/14/12 | | Pirates | Unidentified | | 53 IOLTA xx7456 | 100.00 | 1,881,625.35 |
| General Journal | 12/18/12 | TRANS | Pirates | Transfer to Operating (Deposits from 12/5–12/7/12) | ✓ | 53 OPERATING xx7365 | 8,766.74 | 1,890,392.09 |
| Deposit | 12/19/12 | | Pirates | Old check from Law Office of Linardakis | | 53 OPERATING xx7365 | 2,000.00 | 1,892,392.09 |
| Check | 12/21/12 | | Pirates | Transfer from IOLTA | | 53 OPERATING xx7365 | 11,585.00 | 1,903,977.09 |
| Check | 12/27/12 | WIRE | Law Office of Linardakis | Return for Check inadvertantly deposited on 12/19/12 | | 53 OPERATING xx7365 | -2,000.00 | 1,901,977.09 |
| General Journal | 12/31/12 | TRANS | | | | 53 OPERATING xx7365 | 30,000.00 | 1,931,977.09 |
| **Total Legal Fee Income** | | | | | | | 1,931,977.09 | 1,931,977.09 |
| **Total Income** | | | | | | | 1,931,977.09 | 1,931,977.09 |
| **Gross Profit** | | | | | | | 1,931,977.09 | 1,931,977.09 |
| **Expense** | | | | | | | | |
| **1099 Staff** | | | | | | | | |
| **Sirh–Ryun Wi Dugas** | | | | | | | | |
| Check | 12/05/12 | 1019 | Sirh–Ryun Wi Dugas | | | 53 OPERATING xx7365 | 3,300.00 | 3,300.00 |
| **Total Sirh–Ryun Wi Dugas** | | | | | | | 3,300.00 | 3,300.00 |
| **Mark Lutz** | | | | | | | | |
| Check | 01/03/12 | 5077 | Mark Lutz | | | Chase Bank OPERATING xx6927 | 4,102.19 | 4,102.19 |
| **Total Mark Lutz** | | | | | | | 4,102.19 | 4,102.19 |
| **Kerry Steele** | | | | | | | | |
| Check | 06/08/12 | 5217 | Kerry Steele | | | Chase Bank OPERATING xx6927 | 1,948.43 | 1,948.43 |
| **Total Kerry Steele** | | | | | | | 1,948.43 | 1,948.43 |
| **Alison Perelman** | | | | | | | | |
| Check | 11/02/12 | 1010 | Alison Perelman | Oct., 2012 | | 53 OPERATING xx7365 | 1,848.00 | 1,848.00 |
| Check | 11/30/12 | 1091 | Alison Perelman | November, 2012 – 146 Hours | | 53 OPERATING xx7365 | 1,752.00 | 3,600.00 |
| **Total Alison Perelman** | | | | | | | 3,600.00 | 3,600.00 |
| **Kathleen Momot** | | | | | | | | |
| Check | 09/28/12 | 5 | Kathleen Momot | | | 53 OPERATING xx7365 | 1,813.73 | 1,813.73 |
| Check | 11/02/12 | 1011 | Kathleen Momot | October, 2012 Payroll | | 53 OPERATING xx7365 | 2,916.67 | 4,730.40 |
| Check | 11/30/12 | 1093 | Kathleen Momot | November, 2012 payroll | | 53 OPERATING xx7365 | 2,916.67 | 7,647.07 |
| Check | 11/30/12 | 1093 | Kathleen Momot | Separate check issued | | 53 OPERATING xx7365 | -2,100.00 | 5,547.07 |
| Check | 11/30/12 | 1092 | Kathleen Momot | Nov. Payroll | | 53 OPERATING xx7365 | 2,916.67 | 8,463.74 |
| Check | 11/30/12 | 1092 | Kathleen Momot | Less separate check | | 53 OPERATING xx7365 | -816.67 | 7,647.07 |
| Check | 12/20/12 | 1128 | Kathleen Momot | Advance | | 53 OPERATING xx7365 | 300.00 | 7,947.07 |
| **Total Kathleen Momot** | | | | | | | 7,947.07 | 7,947.07 |
| **James Waleford** | | | | | | | | |
| Check | 08/02/12 | 10000 | James Waleford | | | Chase Bank OPERATING xx6927 | 2,215.83 | 2,215.83 |
| Check | 08/31/12 | 5293 | James Waleford | | | Chase Bank OPERATING xx6927 | 2,533.33 | 4,749.16 |
| Check | 09/28/12 | 2 | James Waleford | | | 53 OPERATING xx7365 | 2,333.33 | 7,082.49 |
| Check | 11/02/12 | 1009 | James Waleford | October, 2011 Payroll | | 53 OPERATING xx7365 | 2,333.33 | 9,415.82 |
| Check | 11/30/12 | 1088 | James Waleford | November, 2012 payroll | | 53 OPERATING xx7365 | 3,333.33 | 12,749.15 |
| Check | 11/30/12 | 1088 | James Waleford | Less separate check | | 53 OPERATING xx7365 | -690.33 | 12,058.82 |
| Check | 11/30/12 | 1090 | James Waleford | November, 2012 payroll | | 53 OPERATING xx7365 | 3,333.33 | 15,392.15 |
| Check | 11/30/12 | 1090 | James Waleford | Less separate check | | 53 OPERATING xx7365 | -2,000.00 | 13,392.15 |
| Check | 11/30/12 | 1095 | James Waleford | November, 2012 payroll | | 53 OPERATING xx7365 | 3,333.33 | 16,725.48 |
| Check | 11/30/12 | 1095 | James Waleford | Less separate check | | 53 OPERATING xx7365 | -2,000.00 | 14,725.48 |
| Check | 11/30/12 | 1035 | James Waleford | Less separate check | | 53 OPERATING xx7365 | -690.33 | 14,035.15 |
| Check | 11/30/12 | 1088 | James Waleford | November, 2012 payroll (partial) | | 53 OPERATING xx7365 | -643.00 | 13,392.15 |
| Check | 11/30/12 | 1090 | James Waleford | Less separate check | | 53 OPERATING xx7365 | -643.00 | 12,749.15 |
| **Total James Waleford** | | | | | | | 12,749.15 | 12,749.15 |
| **Total 1099 Staff** | | | | | | | 33,646.84 | 33,646.84 |
| **Transfer to xx6240** | | | | | | | | |
| Check | 08/10/12 | ELEC WD | Chase Bank | | | Chase Bank OPERATING xx6927 | 8,800.00 | 8,800.00 |
| Check | 08/14/12 | ELEC WD | Chase Bank | | | Chase Bank OPERATING xx6927 | 8,700.00 | 17,500.00 |
| Check | 08/30/12 | ELEC WD | Chase Bank | | | Chase Bank OPERATING xx6927 | 20,140.00 | 37,640.00 |
| **Total Transfer to xx6240** | | | | | | | 37,640.00 | 37,640.00 |

**Reimbursable Expenses**

**Relocation Expenses**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 06/26/12 | WIRE | James Waleford | Moving Expenses | Chase Bank OPERATING xx6927 | 1,600.00 | 1,600.00 |
| Check | 12/21/12 | 1131 | James Waleford | Moving expenses | 53 OPERATING xx7365 | 144.00 | 1,744.00 |
| Total Relocation Expenses | | | | | | 1,744.00 | 1,744.00 |

**Copyright**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 02/21/12 | 5135 | Chase Card Services | Copyright Charges | Chase Bank OPERATING xx6927 | 795.00 | 795.00 |
| Total Copyright | | | | | | 795.00 | 795.00 |

**Reimbursable Expenses – Other**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 04/12/12 | 5175 | Paul Hansmeier | | Chase Bank OPERATING xx6927 | 2,006.78 | 2,006.78 |
| Check | 05/03/12 | WIRE | Paul A. Duffy | | Chase Bank OPERATING xx6927 | 4,000.00 | 6,006.78 |
| Check | 05/08/12 | 5194 | Paul A. Duffy | | Chase Bank OPERATING xx6927 | 1,005.00 | 7,011.78 |
| Check | 05/30/12 | 5195 | Patricia A. Kaneshiro-Miller, RMR–C | | Chase Bank OPERATING xx6927 | 144.00 | 7,155.78 |
| Check | 06/04/12 | 5181 | John Steele | | Chase Bank OPERATING xx6927 | 964.85 | 8,120.63 |
| Check | 06/06/12 | WIRE | Steve Yuen | | Chase Bank OPERATING xx6927 | 3,400.00 | 11,520.63 |
| Check | 06/08/12 | 5217 | Kerry Steele | Re: Sunlust Pictures | Chase Bank OPERATING xx6927 | 551.57 | 12,072.20 |
| Check | 06/20/12 | 5219 | | | Chase Bank OPERATING xx6927 | 1,000.00 | 13,072.20 |
| Check | 07/02/12 | 5137 | Seth Abrahams | | Chase Bank OPERATING xx6927 | 82.67 | 13,154.87 |
| Check | 07/02/12 | 5138 | Seth Abrahams | | Chase Bank OPERATING xx6927 | 82.67 | 13,237.54 |
| Check | 07/05/12 | 5225 | Brett Gibbs | | Chase Bank OPERATING xx6927 | 952.99 | 14,190.53 |
| Check | 07/09/12 | 5226 | John Steele | | Chase Bank OPERATING xx6927 | 210.19 | 14,400.72 |
| Check | 07/09/12 | 5227 | Michael Dugas | | Chase Bank OPERATING xx6927 | 37.01 | 14,437.73 |
| Check | 07/27/12 | 5253 | Paul A. Duffy | | Chase Bank OPERATING xx6927 | 270.00 | 14,707.73 |
| Check | 07/30/12 | 5231 | Paul A. Duffy | | Chase Bank OPERATING xx6927 | 567.00 | 15,274.73 |
| Check | 07/30/12 | 5254 | Matt Jenkins | | Chase Bank OPERATING xx6927 | 107.00 | 15,381.73 |
| Check | 07/30/12 | 5255 | Matt Jenkins | | Chase Bank OPERATING xx6927 | 107.00 | 15,488.73 |
| Check | 09/04/12 | 5287 | Brett Gibbs | Karl reimbursement | Chase Bank OPERATING xx6927 | 14,685.42 | 30,174.15 |
| Check | 09/04/12 | 5292 | Brett Gibbs | | Chase Bank OPERATING xx6927 | 1,633.31 | 31,807.46 |
| Check | 09/12/12 | WIRE | John Steele | | Chase Bank OPERATING xx6927 | 747.00 | 32,554.48 |
| Check | 10/03/12 | 5275 | Michael Dugas | Filing fees | Chase Bank OPERATING xx6927 | 210.00 | 32,764.48 |
| Check | 10/03/12 | 5296 | Michael Dugas | Filing fees | Chase Bank OPERATING xx6927 | 104.40 | 32,868.88 |
| Check | 10/16/12 | 5169 | Samuel Teitelbaum | Arte / Mullen case | Chase Bank OPERATING xx6927 | 55.00 | 32,923.88 |
| Check | 10/19/12 | 5277 | Peter Hansmeier | | Chase Bank OPERATING xx6927 | 292.00 | 33,215.88 |
| Check | 11/14/12 | 1082 | Paul A. Duffy | Guava v Doe 12–cv–1661 | 53 OPERATING xx7365 | 350.00 | 33,565.88 |
| Check | 12/04/12 | 1104 | Brett Gibbs | November, 2012 Admin Expenses | 53 OPERATING xx7365 | 5,250.48 | 38,816.36 |
| Total Reimbursable Expenses – Other | | | | | | 38,816.36 | 38,816.36 |
| Total Reimbursable Expenses | | | | | | 41,355.36 | 41,355.36 |

**Parking Expenses**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 02/09/12 | 5107 | Clerk, Circuit & County Courts IL | | Chase Bank OPERATING xx6927 | 28.00 | 28.00 |
| Check | 07/19/12 | 5232 | Hennepin County Government Center | | Chase Bank OPERATING xx6927 | 42.00 | 70.00 |
| Check | 11/29/12 | 1087 | Michael Dugas | 11/2012 Expense Reimbursement | 53 OPERATING xx7365 | 8.00 | 78.00 |
| Total Parking Expenses | | | | | | 78.00 | 78.00 |

**Payroll Service Fees**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 01/04/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 47.27 | 47.27 |
| Check | 02/02/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 47.27 | 94.54 |
| Deposit | 02/06/12 | | ADP | From xx6943 | Chase Bank OPERATING xx6927 | –3.13 | 91.41 |
| Check | 02/08/12 | 5110 | ADP | | Chase Bank OPERATING xx6927 | 115.00 | 206.41 |
| Check | 02/17/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 39.00 | 245.41 |
| Check | 03/02/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 80.00 | 325.41 |
| Check | 03/09/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 161.00 | 486.41 |
| Check | 04/13/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 149.50 | 635.91 |
| Check | 04/20/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 6.00 | 641.91 |
| Check | 05/11/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 147.25 | 789.16 |
| Check | 05/25/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 6.00 | 795.16 |
| Check | 06/08/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 77.00 | 872.16 |
| Check | 06/15/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 68.00 | 940.16 |
| Check | 06/22/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 6.00 | 946.16 |
| Check | 07/13/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 77.00 | 1,023.16 |
| Deposit | 07/16/12 | | ADP | Refund | Chase Bank OPERATING xx6927 | –2.72 | 1,020.44 |
| Check | 07/27/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 6.00 | 1,026.44 |
| Check | 08/10/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 142.75 | 1,169.19 |
| Check | 08/31/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 6.00 | 1,175.19 |
| Check | 09/07/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 87.75 | 1,262.94 |
| Check | 09/28/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 6.00 | 1,268.94 |
| Check | 10/02/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 41.00 | 1,309.94 |
| Check | 10/12/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 149.00 | 1,458.94 |
| Check | 10/19/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 13.00 | 1,471.94 |
| Check | 10/26/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 6.00 | 1,477.94 |
| Check | 11/13/12 | 1078 | ADP | ADP Fees (To close old Chase account) | 53 OPERATING xx7365 | 68.30 | 1,546.24 |
| Check | 11/21/12 | ELEC WD | ADP | | 53 OPERATING xx7365 | 68.00 | 1,614.24 |
| Check | 11/30/12 | ELEC WD | ADP | | 53 OPERATING xx7365 | 6.00 | 1,620.24 |
| Check | 12/14/12 | ELEC WD | ADP | | 53 OPERATING xx7365 | 81.00 | 1,701.24 |
| Check | 12/28/12 | ELEC WD | ADP | | 53 OPERATING xx7365 | 6.00 | 1,707.24 |
| Check | 12/31/12 | ELEC WD | ADP | | 53 OPERATING xx7365 | 30.00 | 1,737.24 |
| Total Payroll Service Fees | | | | | | 1,737.24 | 1,737.24 |

**Process Server Fees**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 01/03/12 | 5065 | PPS Services | | Chase Bank OPERATING xx6927 | 190.00 | 190.00 |
| Check | 01/20/12 | 5104 | LRI | | Chase Bank OPERATING xx6927 | 65.00 | 255.00 |
| Check | 02/21/12 | 5125 | LRI | | Chase Bank OPERATING xx6927 | 65.00 | 320.00 |
| Check | 02/21/12 | 5133 | LRI | | Chase Bank OPERATING xx6927 | 45.00 | 365.00 |
| Check | 03/08/12 | 5158 | David Kozubal | | Chase Bank OPERATING xx6927 | 136.28 | 501.28 |
| Check | 03/20/12 | 5165 | LRI | | Chase Bank OPERATING xx6927 | 115.00 | 616.28 |
| Check | 04/13/12 | 5184 | LRI | | Chase Bank OPERATING xx6927 | 35.00 | 651.28 |
| Check | 05/29/12 | 5200 | Hester Services, Inc. | | Chase Bank OPERATING xx6927 | 35.00 | 686.28 |
| Check | 09/04/12 | 5251 | Northshore Process Servers | Lightspeed v. Tom Berry | Chase Bank OPERATING xx6927 | 85.00 | 771.28 |
| Check | 09/26/12 | 5290 | Hester Services, Inc. | | Chase Bank OPERATING xx6927 | 5.00 | 776.28 |
| Check | 10/26/12 | 5276 | Federal Process Servers | AF Holdings v Drew | Chase Bank OPERATING xx6927 | 50.00 | 826.28 |
| Check | 11/02/12 | 1007 | Delaware Attorney Services | Inv. # 12108507 | 53 OPERATING xx7365 | 117.80 | 944.08 |
| Check | 11/13/12 | 1070 | Special Delivery Process Servers | AF Holdings v Roeum Hean 12–cv–1449 MN | 53 OPERATING xx7365 | 65.00 | 1,009.08 |
| Check | 11/19/12 | 1016 | Terry Botts | AF Holdings | 53 OPERATING xx7365 | 80.00 | 1,089.08 |
| Check | 12/03/12 | 1096 | Elite Process Serving, Inc. | # 58618 (James Valentino) | 53 OPERATING xx7365 | 65.00 | 1,154.08 |
| Check | 12/03/12 | 1096 | Elite Process Serving, Inc. | # 58619 (Marcelina Mendoza) | 53 OPERATING xx7365 | 65.00 | 1,219.08 |
| Check | 12/03/12 | 1097 | Elite Process Serving, Inc. | # 76639 (Mooney v Priceline) | 53 OPERATING xx7365 | 100.00 | 1,319.08 |
| Check | 12/03/12 | 1097 | Elite Process Serving, Inc. | # 76638 (Mooney v Priceline) | 53 OPERATING xx7365 | 100.00 | 1,419.08 |
| Check | 12/03/12 | 1097 | Elite Process Serving, Inc. | # 76631 (Mooney v Priceline) | 53 OPERATING xx7365 | 150.00 | 1,569.08 |
| Check | 12/05/12 | ELEC WD | Allen-Hope & Associates | | 53 OPERATING xx7365 | 116.81 | 1,685.89 |
| Check | 12/06/12 | 1108 | Legal Process of Minnesota, LLC | Mooney v Priceline | 53 OPERATING xx7365 | 95.00 | 1,780.89 |
| Total Process Server Fees | | | | | | 1,780.89 | 1,780.89 |

**Local Counsel Payments**

**Commission**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 11/07/12 | 1012 | Tim Anderson | 10/12 Cases | 53 OPERATING xx7365 | 4,425.00 | 4,425.00 |
| Check | 12/03/12 | 1099 | Tim Anderson | Settlements received | 53 OPERATING xx7365 | 270.00 | 4,695.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 12/04/12 | 1102 | Jonathan Wells Tappan | 11/2012 Commission | | 53 OPERATING xx7365 | 375.00 | 5,070.00 |
| Check | 12/14/12 | 1122 | Steven Goodhue | 12/2012 | | 53 OPERATING xx7365 | 1,500.00 | 6,570.00 |
| Check | 12/26/12 | 1134 | Sam Trenchi | AF Holdings v Stein Hals | | 53 OPERATING xx7365 | 630.00 | 7,200.00 |
| Check | 12/31/12 | WIRE | Daniel Ruggiero | $14,900 @ 15% | | 53 OPERATING xx7365 | 2,235.00 | 9,435.00 |
| Check | 12/31/12 | 1136 | Jacques Nazaire | $11,500 @ 15% | | 53 OPERATING xx7365 | 1,725.00 | 11,160.00 |
| Check | 12/31/12 | 1137 | Jonathan Wells Tappan | $5,000 @ 15% | | 53 OPERATING xx7365 | 750.00 | 11,910.00 |
| Check | 12/31/12 | 1138 | Steven Goodhue | 01/2013 | | 53 OPERATING xx7365 | 1,500.00 | 13,410.00 |
| Check | 12/31/12 | 1139 | Curtis Hussey | 01/2013 | | 53 OPERATING xx7365 | 500.00 | 13,910.00 |
| Total Commission | | | | | | | 13,910.00 | 13,910.00 |
| Filing Fees & Legal Expenses | | | | | | | | |
| Check | 01/09/12 | 5089 | Tim Anderson | | | Chase Bank OPERATING xx6927 | 2,130.00 | 2,130.00 |
| Check | 01/11/12 | 5092 | Raphael Whitford | | | Chase Bank OPERATING xx6927 | 510.00 | 2,640.00 |
| Check | 03/12/12 | 5162 | Doug McIntyre | | | Chase Bank OPERATING xx6927 | 350.00 | 2,990.00 |
| Check | 06/07/12 | 5206 | Brett Gibbs | | | Chase Bank OPERATING xx6927 | 954.72 | 3,944.72 |
| Check | 06/11/12 | 5215 | Tim Anderson | | | Chase Bank OPERATING xx6927 | 350.00 | 4,294.72 |
| Check | 06/14/12 | 5211 | Steven Goodhue | | | Chase Bank OPERATING xx6927 | 602.00 | 4,896.72 |
| Check | 07/09/12 | 5142 | Tim Anderson | | | Chase Bank OPERATING xx6927 | 6,325.00 | 11,221.72 |
| Check | 08/07/12 | 5265 | Curtis Hussey | | | Chase Bank OPERATING xx6927 | 1,830.59 | 13,052.31 |
| Check | 08/20/12 | 5282 | Jacques Nazaire | | | Chase Bank OPERATING xx6927 | 1,125.00 | 14,177.31 |
| Check | 08/20/12 | 5283 | Curtis Hussey | | | Chase Bank OPERATING xx6927 | 435.00 | 14,612.31 |
| Check | 08/29/12 | 5281 | Steven Goodhue | | | Chase Bank OPERATING xx6927 | 675.00 | 15,287.31 |
| Check | 09/11/12 | 5294 | Steven Goodhue | | | Chase Bank OPERATING xx6927 | 675.00 | 15,962.31 |
| Check | 11/07/12 | 1072 | Steven Goodhue | Reimbursement | | 53 OPERATING xx7365 | 6,000.00 | 21,962.31 |
| Check | 11/07/12 | 1073 | Steven Goodhue | Reimbursement | | 53 OPERATING xx7365 | 6,000.00 | 27,962.31 |
| Check | 11/13/12 | 1079 | Jonathan Wells Tappan | AF Holdings v Burnell | | 53 OPERATING xx7365 | 350.00 | 28,312.31 |
| Check | 11/13/12 | 1080 | Curtis Hussey | Lightspeed State / Oldroyd Filing Fees (Advanced) | | 53 OPERATING xx7365 | 84.00 | 28,396.31 |
| Check | 11/13/12 | 1080 | Curtis Hussey | Guava AL Filing Fees (Advanced) | | 53 OPERATING xx7365 | 350.00 | 28,746.31 |
| Check | 11/13/12 | 1080 | Curtis Hussey | Quad AL Filing fees (Advanced) | | 53 OPERATING xx7365 | 3,150.00 | 31,896.31 |
| Check | 11/13/12 | 1080 | Curtis Hussey | Quad MS Filing fees (to be paid) | | 53 OPERATING xx7365 | 1,050.00 | 32,946.31 |
| Check | 11/28/12 | 1084 | Daniel Ruggiero | Postage | | 53 OPERATING xx7365 | 400.00 | 33,346.31 |
| Check | 11/28/12 | 1085 | Sam Trenchi | AF Holdings v Christopher Barton | | 53 OPERATING xx7365 | 350.00 | 33,696.31 |
| Check | 11/28/12 | 1085 | Sam Trenchi | AF Holdings v Stein Hals | | 53 OPERATING xx7365 | 350.00 | 34,046.31 |
| Check | 12/03/12 | 1098 | Alan Greenstein | Nov. 2012 case work reimbursement | | 53 OPERATING xx7365 | 200.00 | 34,246.31 |
| Check | 12/03/12 | 1099 | Tim Anderson | Deposition / Witness fees | | 53 OPERATING xx7365 | 1,650.00 | 35,896.31 |
| Check | 12/05/12 | 1107 | Jonathan Wells Tappan | Additional 11/2012 Comm Due | | 53 OPERATING xx7365 | 375.00 | 36,271.31 |
| Check | 12/20/12 | WIRE | Isaac F. Slepner | Mongomery Cty., PA Filing 258.00 + 3.25 Subpoena | | 53 OPERATING xx7365 | 261.25 | 36,532.56 |
| Check | 12/20/12 | WIRE | Isaac F. Slepner | Montgomery Cty., PA Filing 258.00 + 3.25 Subpoena | | 53 OPERATING xx7365 | 261.25 | 36,793.81 |
| Check | 12/20/12 | WIRE | Isaac F. Slepner | Bucks Cty., PA Filing 215.75 + $3.25 Subpoena | | 53 OPERATING xx7365 | 219.00 | 37,012.81 |
| Check | 12/20/12 | WIRE | Isaac F. Slepner | Delaware Cty., PA Filing $257.50 + $50 1st filing + $25 Motion + $3.25 Subpoena | | 53 OPERATING xx7365 | 353.75 | 37,366.56 |
| Check | 12/20/12 | WIRE | Isaac F. Slepner | Chester Cty., PA Filing + $4.00 subpoena | | 53 OPERATING xx7365 | 165.00 | 37,531.56 |
| Check | 12/20/12 | WIRE | Isaac F. Slepner | Philadelphia filing fee | | 53 OPERATING xx7365 | 321.48 | 37,853.04 |
| Check | 12/21/12 | WIRE | Jacques Nazaire | Balance of 10/2012 Filing Fees | | 53 OPERATING xx7365 | 2,800.00 | 40,653.04 |
| Check | 12/26/12 | 1134 | Sam Trenchi | Less service fees already paid | | 53 OPERATING xx7365 | −100.00 | 40,553.04 |
| Total Filing Fees & Legal Expenses | | | | | | | 40,553.04 | 40,553.04 |
| Local Counsel Payments – Other | | | | | | | | |
| Check | | 5090 | Doug McIntyre | | | Chase Bank OPERATING xx6927 | 4,180.00 | 4,180.00 |
| Check | 03/12/12 | 5160 | Michael O'Malley | | | Chase Bank OPERATING xx6927 | 2,920.00 | 7,100.00 |
| Check | 06/08/12 | WIRE | Kevin Hoerner | | | Chase Bank OPERATING xx6927 | 8,431.11 | 15,531.11 |
| Check | 07/09/12 | 5141 | Doug McIntyre | | | Chase Bank OPERATING xx6927 | 1,831.00 | 20,512.11 |
| Check | 07/27/12 | WIRE | George Banas | | | Chase Bank OPERATING xx6927 | 3,150.00 | 21,428.76 |
| Check | 08/10/12 | 5268 | Kevin Hoerner | | | Chase Bank OPERATING xx6927 | 916.65 | 21,428.76 |
| Total Local Counsel Payments – Other | | | | | | | 21,428.76 | 21,428.76 |
| Total Local Counsel Payments | | | | | | | 75,891.80 | 75,891.80 |
| Reimbursement | | | | | | | | |
| Check | 01/03/12 | 5082 | Mark Lutz | | | Chase Bank OPERATING xx6927 | 682.37 | 682.37 |
| Deposit | 02/06/12 | | Prenda Law Trust Account | From xx6943 | | Chase Bank OPERATING xx6927 | −7,184.80 | −6,502.43 |
| Check | 02/06/12 | 5119 | John Steele | | | Chase Bank OPERATING xx6927 | 10,300.00 | 3,797.57 |
| Check | 02/21/12 | 5132 | John Steele | | | Chase Bank OPERATING xx6927 | 5,448.46 | 9,246.03 |
| Check | 02/21/12 | 5136 | John Steele | | | Chase Bank OPERATING xx6927 | 601.46 | 9,847.49 |
| Check | 02/27/12 | ELEC WD | John Steele | | | Chase Bank OPERATING xx6927 | 300.00 | 10,147.49 |
| Check | 03/01/12 | ELEC WD | John Steele | | | Chase Bank OPERATING xx6927 | 6,300.00 | 16,447.49 |
| Check | 03/19/12 | ELEC WD | Steele Hansmeier | | | Chase Bank OPERATING xx6927 | 300.00 | 16,747.49 |
| Check | 04/04/12 | 5172 | Joseph Perea | | | Chase Bank OPERATING xx6927 | 300.00 | 17,047.49 |
| Check | 05/21/12 | 5212 | John Steele | | | Chase Bank OPERATING xx6927 | 72.43 | 17,119.92 |
| Check | 05/21/12 | 5212 | John Steele | | | Chase Bank OPERATING xx6927 | 2,069.10 | 19,189.02 |
| Check | 05/21/12 | 5212 | John Steele | | | Chase Bank OPERATING xx6927 | 180.26 | 19,369.28 |
| Check | 05/21/12 | 5212 | John Steele | | | Chase Bank OPERATING xx6927 | 1,034.55 | 20,403.83 |
| Check | 05/21/12 | 5212 | John Steele | | | Chase Bank OPERATING xx6927 | 1,107.05 | 21,510.88 |
| Total Reimbursement | | | | | | | 21,510.88 | 21,510.88 |
| Credit Card Processing Fees | | | | | | | | |
| Check | 01/05/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 3,281.17 | 3,281.17 |
| Check | 01/12/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 25.00 | 3,306.17 |
| Check | 01/12/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 300.00 | 3,606.17 |
| Check | 01/18/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 231.29 | 3,837.46 |
| Check | 01/18/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 43.94 | 3,881.40 |
| Check | 01/19/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 129.00 | 4,010.40 |
| Check | 02/09/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 2,887.71 | 6,898.11 |
| Check | 02/09/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 544.49 | 7,442.60 |
| Check | 02/13/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 42.53 | 7,485.13 |
| Check | 02/15/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 1,872.82 | 9,357.95 |
| Check | 03/05/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 12,399.73 | 21,757.68 |
| Check | 03/05/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 338.88 | 22,096.56 |
| Check | 03/14/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 3,754.19 | 25,850.75 |
| Check | 03/14/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 282.16 | 26,132.91 |
| Check | 03/21/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 29.94 | 26,162.85 |
| Check | 04/03/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 8,429.68 | 34,592.53 |
| Check | 04/03/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 24.99 | 34,617.52 |
| Check | 04/05/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 268.23 | 34,885.75 |
| Check | 04/10/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 1,841.74 | 36,727.49 |
| Check | 04/10/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 132.57 | 36,860.06 |
| Check | 04/16/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 1,885.82 | 38,745.88 |
| Check | 04/20/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 22.56 | 38,768.44 |
| Check | 05/01/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 44.94 | 38,813.38 |
| Check | 05/08/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 389.91 | 39,203.29 |
| Check | 05/08/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 17.51 | 39,220.80 |
| Check | 05/09/12 | ELEC WD | Pay Simple | | | Chase Bank OPERATING xx6927 | 27.06 | 39,247.86 |
| Check | 05/10/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 2,101.35 | 41,349.21 |
| Check | 05/11/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 120.02 | 41,469.23 |
| Check | 05/17/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 2,026.46 | 43,495.69 |
| Check | 05/31/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 10,498.90 | 53,994.59 |
| Check | 06/05/12 | ELEC WD | American Express | | | Chase Bank OPERATING xx6927 | 349.45 | 54,344.04 |
| Check | 06/05/12 | ELEC WD | Bluepay, Inc. | | | Chase Bank OPERATING xx6927 | 33.81 | 54,377.85 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Check | 06/06/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 3,557.24 | 57,935.09 |
| Check | 06/06/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 107.33 | 58,042.42 |
| Check | 06/18/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 4.95 | 58,047.37 |
| Check | 07/05/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 391.46 | 58,438.83 |
| Check | 07/06/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 3,002.99 | 61,441.82 |
| Check | 07/06/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 97.23 | 61,539.05 |
| Check | 07/06/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 20.07 | 61,559.12 |
| Check | 07/09/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 3,237.41 | 64,796.53 |
| Check | 07/09/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 374.94 | 65,171.47 |
| Check | 07/10/12 | ELEC WD | Transfirst | Chase Bank OPERATING xx6927 | 80.30 | 65,251.77 |
| Check | 07/10/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 7.95 | 65,259.72 |
| Check | 08/06/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 200.05 | 65,459.77 |
| Check | 08/08/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 14.26 | 65,474.03 |
| Check | 08/10/12 | ELEC WD | Transfirst | Chase Bank OPERATING xx6927 | 1,069.51 | 66,543.54 |
| Check | 08/13/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 469.47 | 67,013.01 |
| Check | 08/13/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 83.23 | 67,096.24 |
| Check | 08/15/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 11,416.15 | 78,512.39 |
| Check | 08/16/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 7.95 | 78,520.34 |
| Check | 09/05/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 653.10 | 79,173.44 |
| Check | 09/06/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 1.30 | 79,174.74 |
| Check | 09/07/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 3,130.20 | 82,304.94 |
| Check | 09/07/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 116.62 | 82,421.56 |
| Check | 09/10/12 | ELEC WD | Transfirst | Chase Bank OPERATING xx6927 | 45.32 | 82,466.88 |
| Check | 09/11/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 39.68 | 82,506.56 |
| Check | 09/13/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 44.94 | 82,551.50 |
| Check | 09/17/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 9,355.35 | 91,906.85 |
| Check | 09/17/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 7.95 | 91,914.80 |
| Check | 10/05/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 31,130.73 | 123,045.53 |
| Check | 10/05/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 447.23 | 123,492.76 |
| Check | 10/09/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 7.01 | 123,499.77 |
| Check | 10/10/12 | ELEC WD | Transfirst | Chase Bank OPERATING xx6927 | 32.00 | 123,531.77 |
| Check | 10/11/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 2,323.57 | 125,855.34 |
| Check | 10/11/12 | ELEC WD | Bluepay, Inc. | Chase Bank OPERATING xx6927 | 63.21 | 125,918.55 |
| Check | 10/16/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 7.95 | 125,926.50 |
| Check | 10/17/12 | ELEC WD | American Express | Chase Bank OPERATING xx6927 | 5,581.17 | 131,507.67 |
| Check | 10/23/12 | ELEC WD | Gateway Services | 53 OPERATING xx7365 | 109.60 | 131,617.27 |
| Check | 11/06/12 | ELEC WD | Gateway Services | 53 OPERATING xx7365 | 20.00 | 131,637.27 |
| Check | 12/06/12 | ELEC WD | Gateway Services | 53 OPERATING xx7365 | 20.00 | 131,657.27 |
| Check | 12/06/12 | ELEC WD | Bluepay, Inc. | 53 OPERATING xx7365 | 15.60 | 131,672.87 |
| Check | 12/06/12 | ELEC WD | Bill Matrix | 53 OPERATING xx7365 | 3.50 | 131,676.37 |
| Check | 12/07/12 | ELEC WD | Bluepay, Inc. | 53 OPERATING xx7365 | 82.30 | 131,758.67 |
| Check | 12/07/12 | ELEC WD | Bluepay, Inc. | 53 OPERATING xx7365 | 1,457.63 | 133,216.30 |
| Check | 12/11/12 | ELEC WD | Bluepay, Inc. | 53 OPERATING xx7365 | 129.00 | 133,345.30 |
| **Total Credit Card Processing Fees** | | | | | 133,345.30 | 133,345.30 |
| **Payroll Tax** | | | | | | |
| Check | 01/03/12 | ELEC WD | Payroll Tax – MN | Chase Bank OPERATING xx6927 | 1,628.17 | 1,628.17 |
| Check | 02/29/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 10,559.71 | 12,187.88 |
| Deposit | 03/02/12 | | ADP | Chase Bank OPERATING xx6927 | -6,653.56 | 5,534.32 |
| Check | 03/02/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 6,653.56 | 12,187.88 |
| Check | 03/08/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 11,078.56 | 23,266.44 |
| Deposit | 03/13/12 | | ADP | Chase Bank OPERATING xx6927 | -591.75 | 22,674.69 |
| Check | 04/02/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 10,242.86 | 32,917.55 |
| Check | 04/04/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 110.92 | 33,028.47 |
| Deposit | 04/19/12 | | ADP | Chase Bank OPERATING xx6927 | -17.10 | 33,011.37 |
| Check | 05/01/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 9,653.35 | 42,664.72 |
| Check | 05/09/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 37.12 | 42,701.84 |
| Check | 05/31/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 10,099.77 | 52,801.61 |
| Deposit | 06/11/12 | | ADP | Chase Bank OPERATING xx6927 | -36.66 | 52,764.95 |
| Check | 06/26/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 11,051.58 | 63,816.53 |
| Check | 08/01/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 9,185.52 | 73,002.05 |
| Check | 08/01/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 1,290.72 | 74,292.77 |
| Check | 08/30/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 4,248.83 | 78,541.60 |
| Check | 08/31/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 39.00 | 78,580.60 |
| Check | 09/28/12 | ELEC WD | ADP | Chase Bank OPERATING xx6927 | 4,476.97 | 83,057.57 |
| Check | 10/05/12 | ELEC WD | ADP | 53 OPERATING xx7365 | 9,895.00 | 92,952.57 |
| Check | 12/05/12 | ELEC WD | ADP | 53 OPERATING xx7365 | 4,369.83 | 97,322.40 |
| Check | 12/31/12 | ELEC WD | ADP | 53 OPERATING xx7365 | 5,166.92 | 102,489.32 |
| **Total Payroll Tax** | | | | | 102,489.32 | 102,489.32 |
| **Payments to Old Owners** | | | | | | |
| Check | 01/03/12 | WIRE | Paul A. Duffy | Chase Bank OPERATING xx6927 | 5,100.00 | 5,100.00 |
| Check | 01/03/12 | WIRE | Paul Hansmeier | Chase Bank OPERATING xx6927 | 90,000.00 | 95,100.00 |
| Check | 01/03/12 | 5093 | John Steele | Chase Bank OPERATING xx6927 | 100,000.00 | 195,100.00 |
| Check | 02/01/12 | WIRE | Paul Hansmeier | Chase Bank OPERATING xx6927 | 15,321.28 | 210,421.28 |
| Check | 02/06/12 | 5120 | John Steele | Chase Bank OPERATING xx6927 | 75,000.00 | 285,421.28 |
| Check | 02/07/12 | WIRE | Paul Hansmeier | Chase Bank OPERATING xx6927 | 75,000.00 | 360,421.28 |
| Check | 03/02/12 | ELEC WD | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 100,000.00 | 460,421.28 |
| Check | 04/04/12 | 5176 | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 150,000.00 | 610,421.28 |
| Check | 04/13/12 | WIRE | Paul A. Duffy | Chase Bank OPERATING xx6927 | 4,120.00 | 614,541.28 |
| Check | 04/24/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 400.00 | 614,941.28 |
| Check | 04/24/12 | WIRE | Paul Hansmeier | Chase Bank OPERATING xx6927 | 5,000.00 | 619,941.28 |
| Check | 05/03/12 | 5190 | John Steele | Chase Bank OPERATING xx6927 | 4,600.00 | 624,541.28 |
| Check | 05/04/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 40,000.00 | 664,541.28 |
| Check | 05/17/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 300.00 | 664,841.28 |
| Check | 05/21/12 | 5212 | John Steele | Chase Bank OPERATING xx6927 | 236.61 | 665,077.89 |
| Check | 05/29/12 | 5202 | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 100,000.00 | 765,077.89 |
| Check | 06/04/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 100,000.00 | 865,077.89 |
| Check | 06/18/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 50,000.00 | 915,077.89 |
| Check | 07/02/12 | WIRE | Paul A. Duffy | Chase Bank OPERATING xx6927 | 5,000.00 | 920,077.89 |
| Check | 07/03/12 | 5228 | Paul A. Duffy | Chase Bank OPERATING xx6927 | 4,080.00 | 924,157.89 |
| Check | 07/09/12 | 5230 | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 125,000.00 | 1,049,157.89 |
| Check | 07/25/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 400.00 | 1,049,557.89 |
| Check | 08/01/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 81,000.00 | 1,130,557.89 |
| Check | 08/24/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 300.00 | 1,130,857.89 |
| Check | 08/30/12 | WIRE | Paul A. Duffy | Chase Bank OPERATING xx6927 | 8,769.56 | 1,139,627.45 |
| Check | 08/30/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 13,779.33 | 1,153,406.78 |
| Check | 09/04/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 10,000.00 | 1,163,406.78 |
| Check | 09/04/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 5,000.00 | 1,168,406.78 |
| Check | 09/06/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 100,000.00 | 1,268,406.78 |
| Check | 09/07/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 4,800.00 | 1,273,206.78 |
| Check | 10/01/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 300.00 | 1,273,506.78 |
| Check | 10/04/12 | WIRE | Under the Bridge Consulting | Chase Bank OPERATING xx6927 | 50,000.00 | 1,323,506.78 |
| Check | 10/17/12 | WIRE | John Steele | Chase Bank OPERATING xx6927 | 300.00 | 1,323,806.78 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Check | 12/04/12 | WIRE | Duffy Law Group | November, 2012 | 53 OPERATING xx7365 | 10,000.00 | 1,333,806.78 |
| Check | 12/11/12 | WIRE | Under the Bridge Consulting | | 53 OPERATING xx7365 | 10,000.00 | 1,343,806.78 |
| **Total Payments to Old Owners** | | | | | | **1,343,806.78** | **1,343,806.78** |
| **Advertising and Promotion** | | | | | | | |
| Check | 01/03/12 | 5063 | Jay Kopita | | Chase Bank OPERATING xx6927 | 250.00 | 250.00 |
| Check | 05/01/12 | ELEC WD | American Express | | Chase Bank OPERATING xx6927 | 10,047.18 | 10,297.18 |
| **Total Advertising and Promotion** | | | | | | **10,297.18** | **10,297.18** |
| **Bank Service Charges** | | | | | | | |
| Check | 03/01/12 | FEE | Chase Bank | | Chase Bank OPERATING xx6927 | 50.00 | 50.00 |
| Check | 07/16/12 | FEE | Chase Bank | Account Settlement Fee | Chase Bank OPERATING xx6927 | 66.91 | 116.91 |
| Check | 07/26/12 | FEE | Chase Bank | Transfer to xx6240 | Chase Bank OPERATING xx6927 | 50.00 | 166.91 |
| Check | 08/15/12 | FEE | Chase Bank | Account analysis fee | Chase Bank OPERATING xx6927 | 255.42 | 422.33 |
| Check | 09/17/12 | FEE | Chase Bank | Account settlement charge | Chase Bank OPERATING xx6927 | 288.19 | 710.52 |
| Check | 10/11/12 | FEE | Fifth Third Bank | | Chase Bank OPERATING xx6927 | 183.68 | 894.20 |
| Check | 10/15/12 | FEE | Chase Bank | Account settlement charge | Chase Bank OPERATING xx6927 | 276.37 | 1,170.57 |
| Check | 11/13/12 | FEE | Fifth Third Bank | | 53 OPERATING xx7365 | 504.00 | 1,674.57 |
| Check | 11/14/12 | ELEC WD | | FEE ON RET'D ITEM | 53 INACTIVE IOLTA xx7217 | 25.00 | 1,699.57 |
| Check | 12/12/12 | ELEC WD | Fifth Third Bank | | 53 OPERATING xx7365 | 415.63 | 2,115.20 |
| **Total Bank Service Charges** | | | | | | **2,115.20** | **2,115.20** |
| **Dues and Subscriptions** | | | | | | | |
| Check | 02/17/12 | ELEC WD | ULC of Chicago | | Chase Bank OPERATING xx6927 | 772.42 | 772.42 |
| Check | 05/21/12 | ELEC WD | ULC of Chicago | | Chase Bank OPERATING xx6927 | 1,208.67 | 1,981.09 |
| Check | 08/03/12 | 5260 | PACER Service Center | | Chase Bank OPERATING xx6927 | 519.40 | 2,500.49 |
| Check | 08/07/12 | 5261 | Brett Gibbs | PACER quarterly fees | Chase Bank OPERATING xx6927 | 220.50 | 2,720.99 |
| Check | 08/20/12 | 5284 | Sacramento Bee | | Chase Bank OPERATING xx6927 | 7.25 | 2,728.24 |
| Check | 10/05/12 | ELEC WD | ULC of Chicago | | Chase Bank OPERATING xx6927 | 1,133.22 | 3,861.46 |
| Check | 11/01/12 | 1003 | PACER Service Center | Account SH6174 – Quarterly Dues | 53 OPERATING xx7365 | 213.50 | 4,074.96 |
| **Total Dues and Subscriptions** | | | | | | **4,074.96** | **4,074.96** |
| **Insurance Expense** | | | | | | | |
| Check | 09/28/12 | ELEC WD | CNA Insurance | | Chase Bank OPERATING xx6927 | 498.21 | 498.21 |
| Check | 11/09/12 | 1076 | Pearl Insurance | ID # 1–16KNKV | 53 OPERATING xx7365 | 3,467.43 | 3,965.64 |
| **Total Insurance Expense** | | | | | | **3,965.64** | **3,965.64** |
| **Meals and Entertainment** | | | | | | | |
| Check | 01/31/12 | ELEC WD | American Express | | Chase Bank OPERATING xx6927 | 798.64 | 798.64 |
| Check | 05/31/12 | WIRE | Capital One | | Chase Bank OPERATING xx6927 | 6,000.00 | 6,798.64 |
| Check | 08/09/12 | 5263 | John Steele | | Chase Bank OPERATING xx6927 | 900.00 | 7,698.64 |
| Check | 11/14/12 | ELEC WD | American Express | | 53 OPERATING xx7365 | 18,291.37 | 25,990.01 |
| Check | 12/12/12 | ELEC WD | American Express | | 53 OPERATING xx7365 | 751.48 | 26,741.49 |
| **Total Meals and Entertainment** | | | | | | **26,741.49** | **26,741.49** |
| **Office Expenses** | | | | | | | |
| Check | 03/01/12 | 5159 | Maria Campbell | | Chase Bank OPERATING xx6927 | 145.00 | 145.00 |
| Check | 03/26/12 | 5166 | Maria Campbell | | Chase Bank OPERATING xx6927 | 215.00 | 360.00 |
| Check | 04/03/12 | 5173 | Mark Lutz | | Chase Bank OPERATING xx6927 | 44.93 | 404.93 |
| Check | 04/10/12 | 5174 | Werner Printing Company, Inc. | | Chase Bank OPERATING xx6927 | 1,392.45 | 1,797.38 |
| Check | 04/19/12 | 5180 | Maria Campbell | | Chase Bank OPERATING xx6927 | 140.00 | 1,937.38 |
| Check | 04/30/12 | 5186 | Maria Campbell | | Chase Bank OPERATING xx6927 | 230.00 | 2,167.38 |
| Check | 04/30/12 | 5187 | PayPal | | Chase Bank OPERATING xx6927 | 35.86 | 2,203.24 |
| Check | 05/07/12 | 5188 | Brett Gibbs | | Chase Bank OPERATING xx6927 | 2,721.67 | 4,924.91 |
| Check | 05/17/12 | 5199 | Maria Campbell | | Chase Bank OPERATING xx6927 | 230.00 | 5,154.91 |
| Check | 05/31/12 | 5204 | Erica Tranese | | Chase Bank OPERATING xx6927 | 70.70 | 5,225.61 |
| Check | 06/01/12 | 5203 | Maria Campbell | | Chase Bank OPERATING xx6927 | 145.00 | 5,370.61 |
| Check | 06/18/12 | 5220 | Maria Campbell | | Chase Bank OPERATING xx6927 | 145.00 | 5,515.61 |
| Check | 06/20/12 | 5182 | Michael Dugas | | Chase Bank OPERATING xx6927 | 28.16 | 5,543.77 |
| Check | 07/02/12 | 5223 | Maria Campbell | | Chase Bank OPERATING xx6927 | 145.00 | 5,688.77 |
| Check | 08/06/12 | 5267 | Maria Campbell | | Chase Bank OPERATING xx6927 | 205.00 | 5,893.77 |
| Check | 08/20/12 | 5285 | Maria Campbell | | Chase Bank OPERATING xx6927 | 145.00 | 6,038.77 |
| Check | 10/26/12 | ELEC WD | Deluxe Business Products | Check Printing | 53 OPERATING xx7365 | 379.48 | 6,418.25 |
| Check | 11/07/12 | 1074 | Postmaster – Las Vegas, NV | Packing tape | 53 OPERATING xx7365 | 3.49 | 6,421.74 |
| Check | 11/13/12 | ELEC WD | Amazon.Com | | 53 OPERATING xx7365 | 176.98 | 6,598.72 |
| Check | 12/07/12 | 1112 | Kathleen Momot | Water (F&E 11/14/12) | 53 OPERATING xx7365 | 5.00 | 6,603.72 |
| Check | 12/07/12 | 1112 | Kathleen Momot | Water, Trashbags, Raid (WM 11/29/12) | 53 OPERATING xx7365 | 18.34 | 6,622.06 |
| Check | 12/07/12 | 1112 | Kathleen Momot | Water,TP,Soda,etc (WM 12/7/12) | 53 OPERATING xx7365 | 33.96 | 6,656.02 |
| Check | 12/07/12 | 1112 | Kathleen Momot | Water (WM 12/2/12) | 53 OPERATING xx7365 | 7.96 | 6,663.98 |
| Check | 12/14/12 | 1121 | ALCAN Printer Supplies & Repair | HP P1102w cartridges | 53 OPERATING xx7365 | 162.15 | 6,826.13 |
| Check | 12/21/12 | ELEC WD | Library of Congress | | 53 OPERATING xx7365 | 35.00 | 6,861.13 |
| Check | 12/21/12 | ELEC WD | Library of Congress | | 53 OPERATING xx7365 | 35.00 | 6,896.13 |
| **Total Office Expenses** | | | | | | **6,896.13** | **6,896.13** |
| **Payroll** | | | | | | | |
| Check | 01/03/12 | 5062 | Charles Piehl | | Chase Bank OPERATING xx6927 | 2,603.83 | 2,603.83 |
| Check | 01/03/12 | 5078 | Joseph Perea | | Chase Bank OPERATING xx6927 | 3,413.95 | 6,017.78 |
| Check | 01/03/12 | 5079 | Douglas Wahlgren | | Chase Bank OPERATING xx6927 | 729.07 | 6,746.85 |
| Check | 01/03/12 | 5083 | Mark Lutz | | Chase Bank OPERATING xx6927 | 1,000.00 | 7,746.85 |
| Check | 01/03/12 | 5084 | Joseph Perea | | Chase Bank OPERATING xx6927 | 681.82 | 8,428.67 |
| Check | 01/04/12 | 5095 | Juan Rodriguez | | Chase Bank OPERATING xx6927 | 261.60 | 8,690.27 |
| Check | 01/09/12 | 5087 | Brett Gibbs | | Chase Bank OPERATING xx6927 | 4,540.00 | 13,230.27 |
| Check | 01/09/12 | 5100 | Joseph Perea | | Chase Bank OPERATING xx6927 | 416.66 | 13,646.93 |
| Check | 02/01/12 | 5115 | Mark Lutz | | Chase Bank OPERATING xx6927 | 5,188.62 | 18,835.55 |
| Check | 02/01/12 | 5116 | Joseph Perea | | Chase Bank OPERATING xx6927 | 3,420.62 | 22,256.17 |
| Check | 02/02/12 | 5117 | Erica Tranese | | Chase Bank OPERATING xx6927 | 2,292.74 | 24,548.91 |
| Check | 02/06/12 | 5118 | Joseph Perea | | Chase Bank OPERATING xx6927 | 416.00 | 24,964.91 |
| Check | 02/06/12 | 5121 | Steele Law | | Chase Bank OPERATING xx6927 | 3,268.12 | 28,233.03 |
| Check | 03/01/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 37,490.14 | 65,723.17 |
| Check | 04/02/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 25,615.81 | 91,338.98 |
| Check | 04/04/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 11,249.38 | 102,588.36 |
| Check | 05/01/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 25,605.86 | 128,194.22 |
| Check | 05/03/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 12,345.00 | 140,539.22 |
| Check | 05/31/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 25,896.39 | 166,435.61 |
| Check | 06/06/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 15,951.75 | 182,387.36 |
| Check | 06/29/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 27,685.26 | 210,072.62 |
| Check | 08/01/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 31,436.20 | 241,508.82 |
| Check | 08/30/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 20,658.98 | 262,167.80 |
| Check | 10/01/12 | ELEC WD | ADP | | Chase Bank OPERATING xx6927 | 14,219.67 | 276,387.47 |
| Check | 12/05/12 | ELEC WD | ADP | | 53 OPERATING xx7365 | 9,624.67 | 286,012.14 |
| **Total Payroll** | | | | | | **286,012.14** | **286,012.14** |
| **Postage and Delivery** | | | | | | | |
| Check | 01/31/12 | ELEC WD | American Express | | Chase Bank OPERATING xx6927 | 74.99 | 74.99 |
| Check | 02/15/12 | ELEC WD | American Express | | Chase Bank OPERATING xx6927 | 74.99 | 149.98 |
| Check | 02/21/12 | 5135 | Chase Card Services | Postage | Chase Bank OPERATING xx6927 | 18.95 | 168.93 |
| Check | 11/07/12 | 1074 | Postmaster – Las Vegas, NV | | 53 OPERATING xx7365 | 18.95 | 187.88 |
| Check | 12/11/12 | 1115 | Postmaster – Las Vegas, NV | Mail to Brett Gibbs | 53 OPERATING xx7365 | 18.95 | 206.83 |
| Check | 12/13/12 | 1120 | Postmaster – Las Vegas, NV | Mail to Brett Gibbs | 53 OPERATING xx7365 | 18.95 | 225.78 |
| Check | 12/21/12 | 1131 | James Waleford | Postage charge | 53 OPERATING xx7365 | -18.95 | 206.83 |

| Type | Date | Num | Name | Memo | Account | Amount | Balance |
|------|------|-----|------|------|---------|--------|---------|
| Check | 12/21/12 | 1132 | Alison Perelman | Postage Reimbursement | 53 OPERATING xx7365 | 18.95 | 225.78 |
| Check | 12/31/12 | 1144 | Postmaster – Las Vegas, NV | Mail to Brett Gibbs | 53 OPERATING xx7365 | 18.95 | 244.73 |
| **Total Postage and Delivery** | | | | | | **244.73** | **244.73** |
| **Legal & Professional Fees** | | | | | | | |
| Check | 01/04/12 | 5091 | Neil Rubin | | Chase Bank OPERATING xx6927 | 1,220.00 | 1,220.00 |
| Check | 01/05/12 | 5081 | Carey, Danis & Lowe, LLC | | Chase Bank OPERATING xx6927 | 240.00 | 1,460.00 |
| Check | 01/18/12 | 5051 | Mediacom Communication Corp | | Chase Bank OPERATING xx6927 | 20.20 | 1,480.20 |
| Check | 01/23/12 | 5012 | RCN Telecom Service of Illinois, LLC | | Chase Bank OPERATING xx6927 | 20.20 | 1,500.40 |
| Check | 01/27/12 | 5058 | RCN Telecom Service of Illinois, LLC | | Chase Bank OPERATING xx6927 | 20.20 | 1,520.60 |
| Check | 01/30/12 | 5038 | Comcast Legal | | Chase Bank OPERATING xx6927 | 3,750.00 | 5,270.60 |
| Check | 01/30/12 | 5039 | Comcast Legal | | Chase Bank OPERATING xx6927 | 360.00 | 5,630.60 |
| Check | 01/30/12 | 5099 | Maria Pierantozzi | | Chase Bank OPERATING xx6927 | 466.00 | 6,096.60 |
| Check | 01/31/12 | 5071 | Cricket Communications | | Chase Bank OPERATING xx6927 | 26.80 | 6,123.40 |
| Check | 02/03/12 | 5041 | AOL Legal Department | | Chase Bank OPERATING xx6927 | 89.00 | 6,212.40 |
| Check | 02/17/12 | 5016 | WideOpenWest Illinois, Inc. | | Chase Bank OPERATING xx6927 | 60.40 | 6,272.80 |
| Check | 02/17/12 | 5123 | Clerk of Courts Miami-Dade County | | Chase Bank OPERATING xx6927 | 401.00 | 6,673.80 |
| Check | 02/27/12 | 5057 | Level 3 Communications, Inc. | | Chase Bank OPERATING xx6927 | 26.80 | 6,700.60 |
| Check | 03/12/12 | 5124 | Office of the Secretary of State | | Chase Bank OPERATING xx6927 | 120.00 | 6,820.60 |
| Check | 03/19/12 | 5163 | Infield Barr | | Chase Bank OPERATING xx6927 | 750.00 | 7,570.60 |
| Check | 04/10/12 | 5103 | Century Link | | Chase Bank OPERATING xx6927 | 60.00 | 7,630.60 |
| Check | 04/13/12 | 5171 | Brett Gibbs | | Chase Bank OPERATING xx6927 | 217.80 | 7,848.40 |
| Check | 04/24/12 | 5183 | Infield Barr | | Chase Bank OPERATING xx6927 | 450.00 | 8,298.40 |
| Check | 04/27/12 | 5179 | Level 3 Communications, Inc. | | Chase Bank OPERATING xx6927 | 120.00 | 8,418.40 |
| Check | 04/30/12 | 5178 | EComp Consultants | | Chase Bank OPERATING xx6927 | 5,000.00 | 13,418.40 |
| Check | 05/08/12 | 5193 | Becker, Paulson, Hoemer & Thompson, PC | | Chase Bank OPERATING xx6927 | 4,109.17 | 17,527.57 |
| Check | 06/22/12 | 5150 | US Treasury | | Chase Bank OPERATING xx6927 | 1,750.00 | 19,277.57 |
| Check | 06/28/12 | 5222 | Aaron Notary Services | | Chase Bank OPERATING xx6927 | 75.00 | 19,352.57 |
| Check | 07/02/12 | 5149 | Nathan Wersel | | Chase Bank OPERATING xx6927 | 1,561.34 | 20,913.91 |
| Check | 07/05/12 | 5147 | Madison County Circuit Clerk | | Chase Bank OPERATING xx6927 | 431.50 | 21,345.41 |
| Check | 07/09/12 | 5145 | Clerk of Superior Court | | Chase Bank OPERATING xx6927 | 259.50 | 21,604.91 |
| Check | 07/10/12 | 5146 | Clerk of Superior Court | | Chase Bank OPERATING xx6927 | 257.50 | 21,862.41 |
| Check | 07/11/12 | 5140 | Becker, Paulson, Hoemer & Thompson, PC | | Chase Bank OPERATING xx6927 | 4,766.67 | 26,629.08 |
| Check | 07/12/12 | 5143 | Joseph Perea | | Chase Bank OPERATING xx6927 | 5,000.00 | 31,629.08 |
| Check | 08/01/12 | 5256 | Clerk of Courts Miami-Dade County | | Chase Bank OPERATING xx6927 | 2.50 | 31,631.58 |
| Check | 08/02/12 | 5264 | Joseph Perea | | Chase Bank OPERATING xx6927 | 2,500.00 | 34,131.58 |
| Check | 08/03/12 | 5248 | Los Angeles Superior Court | | Chase Bank OPERATING xx6927 | 435.00 | 34,566.58 |
| Check | 08/06/12 | 5234 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 34,916.58 |
| Check | 08/06/12 | 5235 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 35,266.58 |
| Check | 08/06/12 | 5236 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 35,616.58 |
| Check | 08/06/12 | 5237 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 35,966.58 |
| Check | 08/06/12 | 5238 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 36,316.58 |
| Check | 08/06/12 | 5239 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 36,666.58 |
| Check | 08/06/12 | 5240 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 37,016.58 |
| Check | 08/06/12 | 5241 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 37,366.58 |
| Check | 08/06/12 | 5242 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 37,716.58 |
| Check | 08/06/12 | 5243 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 38,066.58 |
| Check | 08/06/12 | 5244 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 38,416.58 |
| Check | 08/06/12 | 5245 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 38,766.58 |
| Check | 08/06/12 | 5246 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 39,116.58 |
| Check | 08/06/12 | 5247 | Clerk, US District Court | | Chase Bank OPERATING xx6927 | 350.00 | 39,466.58 |
| Check | 08/09/12 | 5266 | John Heida | | Chase Bank OPERATING xx6927 | 35.00 | 39,501.58 |
| Check | 08/10/12 | 5250 | Nathan Wersel | | Chase Bank OPERATING xx6927 | 4,267.29 | 43,768.87 |
| Check | 08/22/12 | 5280 | Brett Gibbs | | Chase Bank OPERATING xx6927 | 1,000.00 | 44,768.87 |
| Check | 08/23/12 | 5249 | District Court Administration | | Chase Bank OPERATING xx6927 | 422.00 | 45,190.87 |
| Check | 09/10/12 | 5272 | Nathan Wersel | | Chase Bank OPERATING xx6927 | 3,500.00 | 48,690.87 |
| Check | 10/10/12 | 5295 | Clerk of Superior Court | Lightspeed v Williams | Chase Bank OPERATING xx6927 | 257.00 | 48,947.87 |
| Check | 10/18/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 5.00 | 48,952.87 |
| Check | 10/18/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 422.00 | 49,374.87 |
| Check | 10/25/12 | 5278 | Clerk of Court | | Chase Bank OPERATING xx6927 | 3,150.00 | 52,524.87 |
| Check | 10/25/12 | 5289 | Charter Communications | | Chase Bank OPERATING xx6927 | 14.95 | 52,539.82 |
| Check | 10/29/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 5.00 | 52,544.82 |
| Check | 10/29/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 100.00 | 52,644.82 |
| Check | 11/01/12 | 1001 | Aldenta Technologies | Database Updates | 53 OPERATING xx7365 | 5,750.00 | 58,394.82 |
| Check | 11/03/12 | 1075 | Brett Gibbs | 10/12 Pay | 53 OPERATING xx7365 | 5,000.00 | 63,394.82 |
| Check | 11/03/12 | 1075 | Brett Gibbs | 10/12 Commission $53,200 @ 4% | 53 OPERATING xx7365 | 2,128.00 | 65,522.82 |
| Check | 11/03/12 | 1075 | Brett Gibbs | Less check issued 11/7/12 | 53 OPERATING xx7365 | -6,408.00 | 59,114.82 |
| Check | 11/06/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 5.00 | 59,119.82 |
| Check | 11/07/12 | 1013 | Brett Gibbs | | 53 OPERATING xx7365 | 6,408.00 | 65,527.82 |
| Check | 11/07/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 100.00 | 65,627.82 |
| Check | 11/13/12 | 1081 | MetroCast | Guava | 53 OPERATING xx7365 | 1,387.50 | 67,015.32 |
| Check | 11/13/12 | 1081 | MetroCast | FTV | 53 OPERATING xx7365 | 75.00 | 67,090.32 |
| Check | 11/13/12 | 1081 | MetroCast | HDP | 53 OPERATING xx7365 | 37.50 | 67,127.82 |
| Check | 11/13/12 | 1014 | Cherokee County Sheriff's Office | LS v Daniel Terry 12–cv–2526–EM  GA Case | 53 OPERATING xx7365 | 50.00 | 67,177.82 |
| Check | 11/16/12 | 1015 | Colquitt County Sheriff's Office | Guava Filing | 53 OPERATING xx7365 | 50.00 | 67,227.82 |
| Check | 11/23/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 100.00 | 67,327.82 |
| Check | 11/23/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 8.00 | 67,335.82 |
| Check | 12/04/12 | 1106 | Brett Gibbs | November, 2012 Comm. $30,400 @ 4% | 53 OPERATING xx7365 | 1,216.00 | 68,551.82 |
| Check | 12/06/12 | WIRE | Kynes, Markman & Felman, PA | | 53 OPERATING xx7365 | 15,000.00 | 83,551.82 |
| Check | 12/07/12 | 1110 | Benjamin C. Debney, LLC | Delay, Brad case expenses | 53 OPERATING xx7365 | 810.00 | 84,361.82 |
| Check | 12/11/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 8.00 | 84,369.82 |
| Check | 12/11/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 100.00 | 84,469.82 |
| Check | 12/13/12 | 1119 | Brett Gibbs | December, 2012 Payroll | 53 OPERATING xx7365 | 7,000.00 | 91,469.82 |
| Check | 12/14/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 3.00 | 91,472.82 |
| Check | 12/17/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 8.00 | 91,480.82 |
| Check | 12/17/12 | ELEC WD | MN Court | Online filing fee | 53 OPERATING xx7365 | 100.00 | 91,580.82 |
| Check | 12/18/12 | 1127 | Brett Gibbs | Karl – December Payroll | 53 OPERATING xx7365 | 4,000.00 | 95,580.82 |
| Check | 12/18/12 | WIRE | McCullough Sparks | | 53 OPERATING xx7365 | 5,000.00 | 100,580.82 |
| **Total Legal & Professional Fees** | | | | | | **100,580.82** | **100,580.82** |
| **Rent Expense** | | | | | | | |
| Check | 01/05/12 | 5094 | South Florida Title | | Chase Bank OPERATING xx6927 | 3,300.00 | 3,300.00 |
| Check | 01/24/12 | 5102 | John Mahshie | | Chase Bank OPERATING xx6927 | 6,600.00 | 9,900.00 |
| Check | 01/30/12 | 5106 | Regus Management Group, LLC | | Chase Bank OPERATING xx6927 | 600.86 | 10,500.86 |
| Check | 02/28/12 | ELEC WD | 3200 Network Place | | Chase Bank OPERATING xx6927 | 2,125.00 | 12,625.86 |
| Check | 02/28/12 | ELEC WD | John Mahshie | | Chase Bank OPERATING xx6927 | 3,300.00 | 15,925.86 |
| Check | 03/05/12 | 5134 | 3200 Network Place | | Chase Bank OPERATING xx6927 | 275.00 | 16,200.86 |
| Check | 03/12/12 | 5156 | BTN Properties | | Chase Bank OPERATING xx6927 | 1,300.00 | 17,500.86 |
| Check | 04/02/12 | WIRE | Michael Fabion | | Chase Bank OPERATING xx6927 | 3,300.00 | 20,800.86 |
| Check | 04/11/12 | 5154 | BTN Properties | | Chase Bank OPERATING xx6927 | 1,300.00 | 22,100.86 |
| Check | 05/10/12 | 5153 | BTN Properties | | Chase Bank OPERATING xx6927 | 1,300.00 | 23,400.86 |
| Check | 05/21/12 | 5192 | John Mahshie | | Chase Bank OPERATING xx6927 | 2,880.65 | 26,281.51 |
| Check | 06/07/12 | 5216 | John Mahshie | | Chase Bank OPERATING xx6927 | 3,100.00 | 29,381.51 |
| Check | 06/11/12 | 5152 | BTN Properties | | Chase Bank OPERATING xx6927 | 1,300.00 | 30,681.51 |

| Type | Date | Num | Name | Memo | Account | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Check | 06/12/12 | 5218 | John Mahshie | | Chase Bank OPERATING xx6927 | 200.00 | 30,881.51 |
| Check | 07/09/12 | 5214 | John Mahshie | | Chase Bank OPERATING xx6927 | 3,100.00 | 33,981.51 |
| Check | 07/16/12 | 5139 | BTN Properties | | Chase Bank OPERATING xx6927 | 1,300.00 | 35,281.51 |
| Check | 08/01/12 | WIRE | 3200 Network Place | | Chase Bank OPERATING xx6927 | 2,250.00 | 37,531.51 |
| Check | 08/07/12 | 5261 | Brett Gibbs | July rent | Chase Bank OPERATING xx6927 | 350.00 | 37,881.51 |
| Check | 08/08/12 | 5262 | John Mahshie | | Chase Bank OPERATING xx6927 | 3,500.00 | 41,381.51 |
| Check | 08/13/12 | 5233 | Interim Partners, LLC | | Chase Bank OPERATING xx6927 | 2,100.00 | 43,481.51 |
| Check | 08/13/12 | 5269 | BTN Properties | | Chase Bank OPERATING xx6927 | 1,300.00 | 44,781.51 |
| Check | 08/22/12 | 5286 | Ricardo Pontillo | | Chase Bank OPERATING xx6927 | 700.00 | 45,481.51 |
| Check | 09/06/12 | 5291 | Camino Alto Properties | | Chase Bank OPERATING xx6927 | 1,095.00 | 46,576.51 |
| Check | 12/03/12 | 1100 | Intercen Partners, LLC | Base rent 12/2012 | 53 OPERATING xx7365 | 1,007.25 | 47,583.76 |
| Check | 12/03/12 | 1100 | Intercen Partners, LLC | Operating Expense Reimbursement | 53 OPERATING xx7365 | 1,075.51 | 48,659.27 |
| Check | 12/11/12 | 1116 | Shelterpoint Equities, Ltd | Security Deposit | 53 OPERATING xx7365 | 2,638.60 | 51,297.87 |
| Check | 12/11/12 | 1114 | Shelterpoint Equities, Ltd | 1st Month Rent | 53 OPERATING xx7365 | 1,753.00 | 53,050.87 |
| Check | 12/18/12 | 1126 | Brett Gibbs | Reimbursement for Jay Waleford Rent / Deposit | 53 OPERATING xx7365 | 6,575.00 | 59,625.87 |
| **Total Rent Expense** | | | | | | **59,625.87** | **59,625.87** |
| **Travel Expense** | | | | | | | |
| Check | 01/03/12 | 5086 | Chase Card Services | | Chase Bank OPERATING xx6927 | 21,000.00 | 21,000.00 |
| Check | 01/26/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 1,000.00 | 22,000.00 |
| Check | 01/26/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 351.26 | 22,351.26 |
| Check | 01/31/12 | ELEC WD | American Express | | Chase Bank OPERATING xx6927 | 5,483.64 | 27,834.90 |
| Check | 02/01/12 | ELEC WD | Citibank | | Chase Bank OPERATING xx6927 | 6,889.19 | 34,724.09 |
| Check | 02/06/12 | 5122 | Chase Card Services | | Chase Bank OPERATING xx6927 | 14,725.22 | 49,449.31 |
| Check | 03/06/12 | ELEC WD | Citibank | | Chase Bank OPERATING xx6927 | 1,190.54 | 50,639.85 |
| Check | 08/13/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 650.00 | 51,289.85 |
| Check | 08/23/12 | ELEC WD | Citibank | | Chase Bank OPERATING xx6927 | 3,973.56 | 55,263.41 |
| Check | 08/23/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 1,729.23 | 56,992.64 |
| Check | 08/28/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 5,000.00 | 61,992.64 |
| Check | 09/28/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 1,000.00 | 62,992.64 |
| Check | 09/28/12 | ELEC WD | Citibank | | Chase Bank OPERATING xx6927 | 1,000.00 | 63,992.64 |
| Check | 10/01/12 | ELEC WD | Citibank | | Chase Bank OPERATING xx6927 | 1,993.92 | 65,986.56 |
| Check | 10/09/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 6,275.77 | 72,262.33 |
| Check | 10/09/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 5,227.22 | 77,489.55 |
| Check | 10/15/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 4,000.00 | 81,489.55 |
| Check | 10/26/12 | ELEC WD | Bank of America | | Chase Bank OPERATING xx6927 | 100.00 | 81,589.55 |
| Check | 11/13/12 | ELEC WD | Bank of America | | 53 OPERATING xx7365 | 1,563.73 | 83,153.28 |
| **Total Travel Expense** | | | | | | **83,153.28** | **83,153.28** |
| **Utilities** | | | | | | | |
| Check | 02/02/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 105.93 | 105.93 |
| Check | 02/03/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 159.43 | 265.36 |
| Check | 02/03/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 77.02 | 342.38 |
| Check | 02/15/12 | ELEC WD | FPL | | Chase Bank OPERATING xx6927 | 522.00 | 864.38 |
| Check | 04/02/12 | 5170 | FPL | | Chase Bank OPERATING xx6927 | 84.20 | 948.58 |
| Check | 04/03/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 48.14 | 996.72 |
| Check | 05/02/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 48.14 | 1,044.86 |
| Check | 05/11/12 | ELEC WD | Atlantic Broadband Cable | | Chase Bank OPERATING xx6927 | 443.04 | 1,487.90 |
| Check | 05/25/12 | 5213 | City of Miami Beach | | Chase Bank OPERATING xx6927 | 85.74 | 1,573.64 |
| Check | 06/01/12 | ELEC WD | FPL | | Chase Bank OPERATING xx6927 | 153.11 | 1,726.75 |
| Check | 06/01/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 48.14 | 1,774.89 |
| Check | 06/05/12 | 5207 | City of Miami Beach | | Chase Bank OPERATING xx6927 | 170.94 | 1,945.83 |
| Check | 06/08/12 | 5205 | Atlantic Broadband Cable | | Chase Bank OPERATING xx6927 | 213.74 | 2,159.57 |
| Check | 07/02/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 48.14 | 2,207.71 |
| Check | 07/09/12 | 5224 | Atlantic Broadband Cable | | Chase Bank OPERATING xx6927 | 213.74 | 2,421.45 |
| Check | 07/31/12 | 5259 | FPL | | Chase Bank OPERATING xx6927 | 119.19 | 2,540.64 |
| Check | 08/01/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 48.14 | 2,588.78 |
| Check | 08/06/12 | 5257 | Atlantic Broadband Cable | | Chase Bank OPERATING xx6927 | 222.02 | 2,810.80 |
| Check | 08/06/12 | 5258 | City of Miami Beach | | Chase Bank OPERATING xx6927 | 96.00 | 2,906.80 |
| Check | 08/07/12 | 5261 | Brett Gibbs | Phone & Internet | Chase Bank OPERATING xx6927 | 87.97 | 2,994.77 |
| Check | 09/04/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 48.14 | 3,042.91 |
| Check | 10/02/12 | ELEC WD | ADT / Defender Security | | Chase Bank OPERATING xx6927 | 48.14 | 3,091.05 |
| Check | 11/01/12 | 1002 | Global Connect | Contract # 79314 | 53 OPERATING xx7365 | 127.04 | 3,218.09 |
| Check | 11/01/12 | 1004 | ConService | LV # 2102 | 53 OPERATING xx7365 | 41.78 | 3,259.87 |
| Check | 11/01/12 | 1005 | ConService | LV # 1109 | 53 OPERATING xx7365 | 34.78 | 3,294.65 |
| Check | 11/01/12 | 1006 | NV Energy | LV # 2102 | 53 OPERATING xx7365 | 68.68 | 3,363.33 |
| Check | 11/07/12 | 1071 | Cox Communications, Inc. (Utility) | Account # 001-8610-102462521 | 53 OPERATING xx7365 | 171.53 | 3,534.86 |
| Check | 11/09/12 | ELEC WD | Vox Telesys, LLC | | 53 OPERATING xx7365 | 25.00 | 3,559.86 |
| Check | 11/19/12 | 1083 | Cox Communications, Inc. (Utility) | Account # 001-8610-102462521 | 53 OPERATING xx7365 | 200.00 | 3,759.86 |
| Check | 11/25/12 | ELEC WD | Cox Communications, Inc. (Utility) | Account # 001-8610-120593001 | 53 OPERATING xx7365 | 352.44 | 4,112.30 |
| Check | 12/03/12 | 1101 | Verizon Wireless | Account # 987358435-00001 | 53 OPERATING xx7365 | 144.33 | 4,256.63 |
| Check | 12/04/12 | ELEC WD | NV Energy | LV # 2102 | 53 OPERATING xx7365 | 335.88 | 4,592.51 |
| Check | 12/04/12 | 1103 | ConService | LV # 1109 | 53 OPERATING xx7365 | 33.77 | 4,626.28 |
| Check | 12/11/12 | 1111 | NV Energy | LV | 53 OPERATING xx7365 | 300.00 | 4,926.28 |
| Check | 12/17/12 | 1124 | ConService | Acct # 12839811 | 53 OPERATING xx7365 | 33.68 | 4,959.96 |
| Check | 12/17/12 | 1124 | ConService | Acct # 12830836 | 53 OPERATING xx7365 | 74.45 | 5,034.41 |
| Check | 12/18/12 | 1125 | NV Energy | LV | 53 OPERATING xx7365 | 47.24 | 5,081.65 |
| Check | 12/19/12 | 1123 | Cox Communications, Inc. (Utility) | Account # 001-8610-120593001 | 53 OPERATING xx7365 | 250.00 | 5,331.65 |
| Check | 12/21/12 | 1133 | ConService | | 53 OPERATING xx7365 | 117.40 | 5,449.05 |
| Check | 12/21/12 | 1133 | ConService | | 53 OPERATING xx7365 | 102.60 | 5,551.65 |
| Check | 12/25/12 | ELEC WD | Cox Communications, Inc. (Utility) | Account # 001-8610-120593001 | 53 OPERATING xx7365 | 271.91 | 5,823.56 |
| Deposit | 12/28/12 | | Cox Communications, Inc. (Utility) | Overpayment refund | 53 OPERATING xx7365 | -114.68 | 5,708.88 |
| **Total Utilities** | | | | | | **5,708.88** | **5,708.88** |
| **Total Expense** | | | | | | **2,382,698.73** | **2,382,698.73** |
| **Net Ordinary Income** | | | | | | **-450,721.64** | **-450,721.64** |
| **Net Income** | | | | | | **-450,721.64** | **-450,721.64** |

# EXHIBIT U

23-Jan-14
Case 3:12-cv-00889-DRH-SCW  Document 135-21  *SEALED*  Filed 03/20/14  Page 2 of 27
THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID 23JAN14-625
Case: 14-1682       Document: 28-19-610013-2 Filed: 07/30/2014   Pages: 197
23Jan14-625

## CHASE ○

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

March 01, 2012 through March 30, 2012
Account Number:   **000000447937512**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00108068 DRE 111 142 09112 NNNNNNNNNN T 1 000000000 67 0000
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



**Important Information About Your Account Statement**

We understand the value of being able to easily read your statements and the benefit of balancing your account. To make your statement easier to follow, effective March 19, 2012, we moved the Balancing Your Checkbook page to the last page of the statement. This page may be used to balance your account for a given statement period. If you have any questions, please call us at the number on this statement or visit your branch.

### CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $0.00 |
| Deposits and Additions | 1 | 100,000.00 |
| Electronic Withdrawals | 2 | - 100,000.00 |
| Fees and Other Withdrawals | 1 | - 25.00 |
| Ending Balance | 4 | -$25.00 |

### DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/02 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Tm: 1225200062Es | $100,000.00 |
| **Total Deposits and Additions** | | **$100,000.00** |

### ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/29 | 03/29 Chase Transfer To  Mma ...9471 Transaction#: 2595643391 | $50,000.00 |
| 03/30 | 03/30 Online Wire Transfer Via: Tcf Mpls/291070001 A/C: Paul Hansmeier Minneapolis MN 55401 US Ref:/Bnf/For Further Credit To Alpha Law Firm Llc Imad: 0330B1Qgc02C001690 Tm: 0200600090Es | 50,000.00 |
| **Total Electronic Withdrawals** | | **$100,000.00** |

Page 1 of 4

**CHASE** ⬤

March 01, 2012 through March 30, 2012
Account Number:   **000000447937512**

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 03/30 | Wire Online Domestic Fee | $25.00 |
| **Total Fees & Other Withdrawals** | | **$25.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 03/02 | $100,000.00 |
| 03/29 | 50,000.00 |
| 03/30 | -25.00 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **2** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

# CHASE 🏦

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

March 31, 2012 through April 30, 2012
Account Number:    000000447937512

| CUSTOMER SERVICE INFORMATION | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00060358 DRE 111 142 12212 NNNNNNNNNN T  1 000000000 67 0000
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



## IMPORTANT INFORMATION REGARDING ATM TRANSFERS

Please note that we are extending our ATM cutoff time for transfers between Chase accounts to better serve you.  For transfers and deposits at most Chase ATMs, the cutoff time is 11 p.m. Eastern time. For ATMs with an earlier cutoff, the ATM screen will notify you of the cutoff time. We hope you enjoy this added convenience.

This change updates your Deposit Account Agreement under the Funds Availability Policy section, the second bullet under "When Your Deposit is Received." This change applies to Chase personal checking and savings accounts as well as Chase business checking and savings accounts. All other terms of your account agreement remain the same. If you have any questions, please refer to the phone number on your statement or visit your nearest Chase branch.

## CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | -$25.00 |
| Deposits and Additions | 2 | 150,025.00 |
| Checks Paid | 1 | - 75,000.00 |
| Electronic Withdrawals | 1 | - 75,000.00 |
| Ending Balance | 4 | $0.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/03 | Online Transfer From  Mma ...9471 Transaction#: 2604141026 | $25.00 |
| 04/04 | Deposit    1006563735 | 150,000.00 |
| **Total Deposits and Additions** | | **$150,025.00** |

## CHASE ⬤

March 31, 2012 through April 30, 2012

Account Number:   **000000447937512**

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 7417420001  ^ | | 04/26 | $75,000.00 |
| **Total Checks Paid** | | | **$75,000.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/09 | 04/07 Online Transfer To  Mma ...9471 Transaction#: 2611259084 | $75,000.00 |
| **Total Electronic Withdrawals** | | **$75,000.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 04/03 | $0.00 |
| 04/04 | 150,000.00 |
| 04/09 | 75,000.00 |
| 04/26 | 0.00 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 1 |
| Deposited Items | 1 |
| **Transaction Total** | **3** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

**CHASE** ◉

May 01, 2012 through May 31, 2012
Account Number: **000000447937512**

### Lower Fees for Counter Checks

Beginning July 22, 2012, we will charge $2 per sheet (3 checks to a page) of Counter Checks, instead of $2 per check. Also, we may waive this Counter Check fee for certain types of accounts.

These changes will be updated in the Additional Banking Services and Fees for Chase business checking and savings accounts. All other terms of your account agreement remain the same. If you have any questions, please call us at the telephone number listed on this statement or visit your nearest Chase branch.

## CHECKING SUMMARY | Chase BusinessSelect Checking

|  | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance |  | $0.00 |
| Deposits and Additions | 3 | 140,025.00 |
| Electronic Withdrawals | 3 | - 140,000.00 |
| Fees and Other Withdrawals | 1 | - 25.00 |
| Ending Balance | 7 | $0.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/04 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Ref:/Bnf/Utb 1111 Lincoln Road Suite 400 Miami Beach FL 33139 US Trn: 1183000125Es | $40,000.00 |
| 05/21 | Online Transfer From Chk ...4110 Transaction#: 2680157542 | 25.00 |
| 05/29 | Deposit      350600200 | 100,000.00 |
| **Total Deposits and Additions** | | **$140,025.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/07 | 05/07 Online Transfer To Mma ...9471 Transaction#: 2659329676 | $20,000.00 |
| 05/21 | 05/21 Online Wire Transfer Via: Tcf Mpls/291070001 A/C: Paul Hansmeier Minneapolis MN 55401 US Ref:/Bnf/For Further Credit To Alpha Law Firm Llc Imad: 0521B1Qgc02C004751 Trn: 1178800142Es | 20,000.00 |
| 05/31 | 05/31 Online Transfer To Mma ...9471 Transaction#: 2694139570 | 100,000.00 |
| **Total Electronic Withdrawals** | | **$140,000.00** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/21 | Wire Online Domestic Fee | $25.00 |
| **Total Fees & Other Withdrawals** | | **$25.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 05/04 | $40,000.00 |
| 05/07 | 20,000.00 |
| 05/21 | 0.00 |
| 05/29 | 100,000.00 |
| 05/31 | 0.00 |

Page 2 of 4



**CHASE** ⬤

May 01, 2012 through May 31, 2012
Account Number: **000000447937512**



## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month. Your monthly service fee can continue to be waived in five
different ways during any statement period:

- Maintain an average daily balance of $7,500.00. Your average daily balance was $19,354.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $19,354.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card. You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees. You paid $25.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 2 |
| Deposited Items | 1 |
| **Transaction Total** | **4** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

Page 3 of 4



**JPMorgan Chase Bank, N.A.**
P O Box 659754
San Antonio, TX 78265 - 9754

June 01, 2012 through June 29, 2012
Account Number:    000000447937512



00110420 DRE 111 142 18212 NNNNNNNNNNN T  1 000000000 67 0000
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

## We are eliminating the following fees for Business Banking customers

You already enjoy many complimentary banking services because you are a Chase Business Banking customer. And you'll be getting more services for free just for having a Chase Business Banking checking or savings account, starting August 1, 2012:

There will be NO FEE for:
- Cash Strap Orders
- Coin Roll Orders
- Cash Bag Deposits
- Multiple Mailed Statements

This is another way to reward our Business Banking customers for choosing Chase. All other terms of your account remain the same. If you have any questions, please call us at 1-800-CHASE38 (1-800-242-7338) or contact your banker.

## CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $0.00 |
| Deposits and Additions | 3 | 150,025.00 |
| Electronic Withdrawals | 2 | - 125,000.00 |
| Fees and Other Withdrawals | 1 | - 25.00 |
| Ending Balance | 6 | $25,000.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/04 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Ref:/Bnf/Utb 1111 Lincoln Road Suite 400 Miami Beach FL 33139 US Trn: 0354200156Es | $100,000.00 |
| 06/08 | Online Transfer From  Chk ...4110 Transaction#: 2709512012 | 25.00 |
| 06/18 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Ref:/Bnf/Utb 1111 Lincoln Road Suite 400 Miami Beach FL 33139 US Trn: 0444900170Es | 50,000.00 |
| **Total Deposits and Additions** | | **$150,025.00** |

Page 1 of 4



**CHASE**

June 01, 2012 through June 29, 2012
Account Number:  000000447937512

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 06/08 | 06/08 Online Wire Transfer Via: Tcf Mpls/291070001 A/C: Paul Hansmeier Minneapolis MN 55401 US Ref:/Bnf/For Further Credit To Alpha Law Firm Llc Imad: 0608B1Qgc02C004737 Tm: 1420000160Es | $100,000.00 |
| 06/20 | 06/20 Online Transfer To  Chk ...4110 Transaction#: 2726881083 | 25,000.00 |
| **Total Electronic Withdrawals** | | **$125,000.00** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 06/08 | Wire Online Domestic Fee | $25.00 |
| **Total Fees & Other Withdrawals** | | **$25.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 06/04 | $100,000.00 |
| 06/08 | 0.00 |
| 06/18 | 50,000.00 |
| 06/20 | 25,000.00 |

## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month.  Your monthly service fee can continue to be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was $25,862.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $25,000.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $25.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 2 |
| Deposited Items | 0 |
| **Transaction Total** | **3** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |



**CHASE**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

June 30, 2012 through July 31, 2012
Account Number:   000000447937512

| CUSTOMER SERVICE INFORMATION | |
| --- | --- |
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



llallallallallallallallallallallallallallallll
00064055 DRE 111 142 21412 NNNNNNNNNNN T 1 000000000 67 0000
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439

## CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
| --- | --- | --- |
| Beginning Balance | | $25,000.00 |
| Deposits and Additions | 1 | 125,000.00 |
| Checks Paid | 1 | - 75,000.00 |
| Electronic Withdrawals | 2 | - 52,168.40 |
| Fees and Other Withdrawals | 2 | - 6,025.00 |
| Ending Balance | 6 | $16,806.60 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
| --- | --- | --- |
| 07/09 | Deposit    382603844 | $125,000.00 |
| Total Deposits and Additions | | $125,000.00 |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
| --- | --- | --- | --- |
| 1174200600  ^ | | 07/17 | $75,000.00 |
| Total Checks Paid | | | $75,000.00 |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

Page 1 of 4



**CHASE**

June 30, 2012 through July 31, 2012

Account Number: 000000447937512

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/09 | 07/09 Online Transfer To Chk ...9471 Transaction#: 2758012658 | $50,000.00 |
| 07/31 | 07/31 Online Wire Transfer Via: First Mansfield/031309589 A/C: Eckenrode General Contractor Genesee PA 16923 US Ref: Thanks Imad: 0731B1Qgc07C008218 Trn: 4586800213Es | 2,168.40 |
| **Total Electronic Withdrawals** | | **$52,168.40** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/13 | 07/13 Withdrawal | $6,000.00 |
| 07/31 | Wire Online Domestic Fee | 25.00 |
| **Total Fees & Other Withdrawals** | | **$6,025.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 07/09 | $100,000.00 |
| 07/13 | 94,000.00 |
| 07/17 | 19,000.00 |
| 07/31 | 16,806.60 |

## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month. Your monthly service fee can continue to be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00. Your average daily balance was $40,118.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $40,375.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card. You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees. You paid $25.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 3 |
| Deposits / Credits | 1 |
| Deposited Items | 1 |
| **Transaction Total** | **5** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

Page 2 of 4



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

August 01, 2012 through August 31, 2012
Account Number:   000000447937512

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00066739 DRE 111 142 24512 NNNNNNNNNNN T 1 000000000 67 0000
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



## CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $16,806.60 |
| Deposits and Additions | 1 | 81,000.00 |
| Checks Paid | 1 | - 50,000.00 |
| Electronic Withdrawals | 1 | - 47,806.60 |
| Ending Balance | 3 | $0.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/01 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Ref:/Bnf/Utb 1111 Lincoln Road Suite 400 Miami Beach FL 33139 US Trn: 3274500214Es | $81,000.00 |
| **Total Deposits and Additions** | | **$81,000.00** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1174200601  ^ | | 08/14 | $50,000.00 |
| **Total Checks Paid** | | | **$50,000.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/01 | 08/01 Online Transfer To  Chk ...9471 Transaction#: 2793826173 | $47,806.60 |
| **Total Electronic Withdrawals** | | **$47,806.60** |

Page 1 of 4

# CHASE ⬤

August 01, 2012 through August 31, 2012

Account Number:    **000000447937512**

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 08/01 | $50,000.00 |
| 08/14 | 0.00 |

## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month.  Your monthly service fee can continue to be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was $20,967.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $21,509.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00.  OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **2** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

Page 2 of 4

## CHASE ◆

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

September 01, 2012 through September 28, 2012
Account Number:   **000000447937512**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00001325 DRE 111 082 27312 NNNNNNNNNNNN  1 000000000 67 0099
HOLD - RETURN MAIL
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



## CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $0.00 |
| Deposits and Additions | 4 | 115,025.00 |
| Checks Paid | 2 | - 15,000.00 |
| Electronic Withdrawals | 2 | - 100,000.00 |
| Fees and Other Withdrawals | 1 | - 25.00 |
| Ending Balance | 9 | $0.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/04 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Trn: 3644600248Es | $10,000.00 |
| 09/04 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Ref:/Bnf/Utb 1111 Lincoln Road Suite 400 Miami Beach FL 33139 US Trn: 3748200248Es | 5,000.00 |
| 09/06 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Ref:/Bnf/Utb 1111 Lincoln Road Suite 400 Miami Beach FL 33139 US Trn: 3120100250Es | 100,000.00 |
| 09/20 | Online Transfer From  Chk ...9471 Transaction#: 2873375156 | 25.00 |
| **Total Deposits and Additions** | | **$115,025.00** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 2830 ^ | | 09/04 | $11,053.00 |
| 2831 ^ | | 09/14 | 3,947.00 |
| **Total Checks Paid** | | | **$15,000.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

Page 1 of 4



September 01, 2012 through September 28, 2012
Account Number: 000000447937512

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 09/14 | 09/14 Online Transfer To Chk ...4110 Transaction#: 2864035122 | $50,000.00 |
| 09/17 | 09/17 Online Wire Transfer Via: Tcf Mpls/291070001 A/C: Paul Hansmeier Minneapolis MN 55401 US Ref:/Bnf/For Further Credit To Alpha Law Firm Llc Imad: 0917B1Qgc03C001638 Trn: 3562800261Es | 50,000.00 |
| **Total Electronic Withdrawals** | | **$100,000.00** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 09/17 | Wire Online Domestic Fee | $25.00 |
| **Total Fees & Other Withdrawals** | | **$25.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 09/04 | $3,947.00 |
| 09/06 | 103,947.00 |
| 09/14 | 50,000.00 |
| 09/17 | -25.00 |
| 09/20 | 0.00 |

## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month. Your monthly service fee can continue to be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00. Your average daily balance was $35,335.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $35,335.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card. You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees. You paid $25.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 3 |
| Deposits / Credits | 3 |
| Deposited Items | 0 |
| **Transaction Total** | **6** |

| SERVICE FEE CALCULATION | AMOUNT |
|--------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

Page 2 of 4



# CHASE 

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

September 29, 2012 through October 31, 2012

Account Number:   **000000447937512**

### CUSTOMER SERVICE INFORMATION

| Web site: | Chase.com |
|---|---|
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00000701 DRE 111 052 30512 YNNNNNNYNNN  1 000000000 67 0099
HOLD - RETURN MAIL
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439

---

## CHECKING SUMMARY  | Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $0.00 |
| Deposits and Additions | 1 | 50,000.00 |
| Checks Paid | 2 | - 40,000.00 |
| **Ending Balance** | **3** | **$10,000.00** |

---

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/04 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Ref:/Bnf/Utb 1111 Lincoln Road Suite 400 Miami Beach FL 33139 US Trn: 4370800278Es | $50,000.00 |
| **Total Deposits and Additions** | | **$50,000.00** |

---

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1174200606  ^ | | 10/30 | $10,000.00 |
| 1174200608  * ^ | | 10/31 | 30,000.00 |
| **Total Checks Paid** | | | **$40,000.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

23 Jan 14

Case 3:12-cv-00889-DRH-SCW   Document 135-21 *SEALED*   Filed 03/20/14   Page 17 of 27

23 Jan 14 625

THIS PAGE IS PART OF A STATEMENT REQUEST

CROSS-DOC 23 Jan 14 624

Case: 14-1682        Document: 23-8        Filed: 07/30/2014        Pages: 197



September 29, 2012 through October 31, 2012

Account Number:    000000447937512

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 10/04 | $50,000.00 |
| 10/30 | 40,000.00 |
| 10/31 | 10,000.00 |

## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month.  Your monthly service fee can continue to be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was $40,909.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $40,606.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00.  OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------|------|
| Checks Paid / Debits | 2 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **3** |

| SERVICE FEE CALCULATION | AMOUNT |
|------|------|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| Net Service Fee | $0.00 |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |



**CHASE** 🔾

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

November 01, 2012 through November 30, 2012

Account Number:     000000447937512

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | **1-800-242-7383** |
| Para Espanol: | **1-888-622-4273** |
| International Calls: | **1-713-262-1679** |

00000615 DRE 111 052 33512 NNNNNNNNNNN  1 000000000 67 0099
HOLD - RETURN MAIL
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



You will see more information about your ATM deposits on your account statement.
Tracking your ATM deposits will be even easier beginning November 12, 2012.
In the Deposits and Additions section of your statement, you will see the date you made
your deposit (in addition to the date we posted it to your account), and the last
four digits of the card number for each ATM deposit.

In the ATM & Debit Card Summary section, ATM and debit card transactions will be totaled
by card number. This will help you track activity by cardholder.  Please note that any ATM
deposit transactions that post to your account before November 12, 2012, will not show
this additional information and will not be included in the  ATM & Debit Card Summary
section at the end of your statement.

We value you as a Chase customer. If you have questions, please call us at the number on
this statement or visit your nearest branch.

## CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $10,000.00 |
| Deposits and Additions | 1 | 100,000.00 |
| Checks Paid | 1 | - 50,000.00 |
| Electronic Withdrawals | 2 | - 60,000.00 |
| Ending Balance | 4 | $0.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/05 | Book Transfer Credit B/O: Prenda Law Inc Chicago IL 60601-3247 Tm: 3076900310Es | $100,000.00 |
| **Total Deposits and Additions** | | **$100,000.00** |

Page 1 of 4

## CHASE

November 01, 2012 through November 30, 2012

Account Number:   **000000447937512**

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1174200605  ^ | | 11/08 | $50,000.00 |
| **Total Checks Paid** | | | **$50,000.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/02 | 11/02 Online Transfer To  Chk ...9471 Transaction#: 2943698792 | $10,000.00 |
| 11/08 | 11/08 Online Transfer To  Chk ...9471 Transaction#: 2953519702 | 50,000.00 |
| **Total Electronic Withdrawals** | | **$60,000.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 11/02 | $0.00 |
| 11/05 | 100,000.00 |
| 11/08 | 0.00 |

## SERVICE CHARGE SUMMARY

You were not charged a monthly service fee this month.  Your monthly service fee can continue to be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was $10,333.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $10,666.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. Your Premier Plus personal checking account is linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00.  OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **2** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $15.00 |
| Service Fee Credit | -$15.00 |
| Net Service Fee | $0.00 |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

Page 2 of 4



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

December 01, 2012 through December 31, 2012

Account Number:   **000000447937512**



| CUSTOMER SERVICE INFORMATION | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | **1-800-242-7383** |
| Para Espanol: | **1-888-622-4273** |
| International Calls: | **1-713-262-1679** |

00002560 DRE 111 082 00113 YNNNNNNNNNN  1 000000000 67 0099
HOLD - RETURN MAIL
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439

---

**IMPORTANT UPDATES TO THE DEPOSIT ACCOUNT AGREEMENT**

We will be making the following changes to the Deposit Account Agreement for Chase
checking and savings accounts, effective March 24, 2013.

We have:
- Added the following language to the Important Definitions section: Debit card
  transaction: Includes any purchase from a merchant using your ATM card or debit card.
- Modified the agreement to clarify that we will only send one copy of any notice
  relating to your account, even if the account has more than one owner.
- Revised our Funds Availability Policy. Under Longer Delays May Apply, we describe
  circumstances where funds may not be available until the seventh business day after the
  day of deposit. We are deleting the sentence saying that the first $200 from your
  deposit will be available on the next business day, so if we delay availability in
  those cases the delay may apply to the full amount of the deposit.

All other terms of your account agreement remain the same. If you have questions about
the changes, please call us at the number on this statement or visit your nearest branch.

---

## CHECKING SUMMARY   Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $0.00 |
| Deposits and Additions | 1 | 10,000.00 |
| Electronic Withdrawals | 2 | - 9,985.00 |
| Fees and Other Withdrawals | 2 | - 30.00 |
| Ending Balance | 5 | -$15.00 |

---

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/11 | Fed Wire Credit Via: Fifth Third Bank/042000314 B/O: Prenda Law Inc Miami Beach FL 33139 Ref: Chase Nyc/Ctr/Bnf=Under The Bridge Consulting Miami Beach, FL 331392439/Ac-000000004479 Rfb=1503527 Imad: 1211D2B74A1C002075 Trn: 2728409346Fl | $10,000.00 |
| **Total Deposits and Additions** | | **$10,000.00** |



December 01, 2012 through December 31, 2012
Account Number:   000000447937512

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/11 | 12/11 Online Transfer To Chk ...9471 Transaction#: 3007541159 | $5,000.00 |
| 12/12 | 12/12 Online Transfer To Chk ...3470 Transaction#: 3008751128 | 4,985.00 |
| **Total Electronic Withdrawals** | | **$9,985.00** |

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/11 | Incoming Domestic Wire Fee | $15.00 |
| 12/31 | Service Fee | 15.00 |
| **Total Fees & Other Withdrawals** | | **$30.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 12/11 | $4,985.00 |
| 12/12 | 0.00 |
| 12/31 | -15.00 |

## SERVICE CHARGE SUMMARY

You were charged a monthly service fee this month. Your Chase BusinessSelect Checking monthly Service Fee can be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00. Your average daily balance was $160.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $160.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. You have no qualifying personal account linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card. You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees. You paid $15.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **1** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| Net Service Fee | $15.00 |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$15.00** |



January 01, 2013 through January 31, 2013
Account Number:  **000000447937512**

## SERVICE CHARGE SUMMARY

You were charged a monthly service fee this month.  Your Chase BusinessSelect Checking monthly Service Fee can be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was  -$15.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was -$15.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. You have no qualifying personal account linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **0** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$15.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$15.00** |

# CHASE ◯

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

February 01, 2013 through February 28, 2013
Account Number:    000000447937512

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | **1-800-242-7383** |
| Para Espanol: | **1-888-622-4273** |
| International Calls: | **1-713-262-1679** |

00000852 DRE 111 082 05013 NNNNNNNNNNN  1 000000000 87 0099
HOLD - RETURN MAIL
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



## CHECKING SUMMARY

Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | -$30.00 |
| Deposits and Additions | 2 | 20,045.00 |
| Checks Paid | 2 | - 20,000.00 |
| Fees and Other Withdrawals | 2 | - 30.00 |
| **Ending Balance** | **6** | **-$15.00** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/06 | Fed Wire Credit Via: Fifth Third Bank/042000314 B/O: Prenda Law Inc Miami Beach FL 33139 Ref: Chase Nyc/Ctr/Bnf=Under The Bridge Consulting Miami Beach, FL 331392439/Ac-000000004479 Rfb=1577646 Imad: 0206D2B74A1C002428 Tm: 2930609037Ff | $20,000.00 |
| 02/11 | Online Transfer From Chk ...8100 Transaction#: 3109943165 | 45.00 |
| **Total Deposits and Additions** | | **$20,045.00** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1174200602  ^ | | 02/11 | $10,000.00 |
| 1174200603  ^ | | 02/13 | 10,000.00 |
| **Total Checks Paid** | | | **$20,000.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

Page 1 of 4



February 01, 2013 through February 28, 2013

Account Number:    000000447937512

## FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 02/06 | Incoming Domestic Wire Fee | $15.00 |
| 02/28 | Service Fee | 15.00 |
| **Total Fees & Other Withdrawals** | | **$30.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 02/06 | $19,955.00 |
| 02/11 | 10,000.00 |
| 02/13 | 0.00 |
| 02/28 | -15.00 |

## SERVICE CHARGE SUMMARY

You were charged a monthly service fee this month.  Your Chase BusinessSelect Checking monthly Service Fee can be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was $4,272.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was $4,271.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. You have no qualifying personal account linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $15.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 2 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **3** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| Net Service Fee | **$15.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$15.00** |

Page 2 of 4



JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

March 01, 2013 through March 29, 2013

Account Number:  **000000447937512**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00002851 DRE 111 052 05913 NNNNNNNNNN  1 000000000 67 0099
HOLD - RETURN MAIL
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



We have reduced our Legal Processing Fee.
On March 24, 2013, we reduced the Legal Processing Fee to a maximum of $75 per order.
This fee is assessed for the processing of any garnishment, tax levy, or other court or
administrative order against an account. This change will be reflected in your account
agreement; all other terms remain the same. If you have questions, please call us at the
telephone number listed on this statement or visit your nearest Chase branch.

### CHECKING SUMMARY     Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | -$15.00 |
| Fees and Other Withdrawals | 1 | - 15.00 |
| Ending Balance | 1 | -$30.00 |

### FEES AND OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/29 | Service Fee | $15.00 |
| | Total Fees & Other Withdrawals | $15.00 |

### DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 03/29 | -$30.00 |

Page 1 of 4



March 01, 2013 through March 29, 2013

Account Number:  000000447937512

## SERVICE CHARGE SUMMARY

You were charged a monthly service fee this month.  Your Chase BusinessSelect Checking monthly Service Fee can be waived in five different ways during any statement period:

- Maintain an average daily balance of $7,500.00.  Your average daily balance was  -$15.00. OR
- Maintain a relationship balance of $25,000.00 or more during the statement period. Your relationship balance was -$15.00. OR
- Link a qualifying personal checking account to your Chase BusinessSelect Checking account. You have no qualifying personal account linked. OR
- Spend at least $1,000.00 on a linked Chase Business Credit Card.  You spent $0.00. OR
- Pay at least $50.00 in qualifying checking-related services or fees.  You paid $0.00.

See your Account Rules and Regulations or stop in to see a banker today to find out more.

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **0** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $15.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$15.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$15.00** |

**Page 2 of 4**



JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

March 30, 2013 through April 30, 2013
Account Number:   000000447937512

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | **1-800-242-7383** |
| Para Espanol: | **1-888-622-4273** |
| International Calls: | **1-713-262-1679** |

00001002 DRE 111 052 12113 NNNNNNNNNNN   1 000000000 67 0099
HOLD - RETURN MAIL
UNDER THE BRIDGE CONSULTING
1111 LINCOLN RD STE 400
MIAMI BEACH FL 33139-2439



## CHECKING SUMMARY    Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | -$30.00 |
| Deposits and Additions | 1 | 30.00 |
| Ending Balance | 1 | $0.00 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/30 | Service Fee Reversal | $30.00 |
| **Total Deposits and Additions** | | **$30.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 04/30 | $0.00 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **0** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

Page 1 of 2

# EXHIBIT V

From: john steele <johnlsteele33140@gmail.com>
Subject: **Re: Discovery Responses II**
Date: February 26, 2014 2:26:33 PM EST
To: "jsweet@boothsweet.com" <jsweet@boothsweet.com>

I have not received any of the documents you are referring to.  And I have stated I do not accept service via email or any other method besides mail.  If and when I do receive any discovery requests that are properly signed and mailed to me, I will review it and respond accordingly.

On a related note, I am preparing a motion for protective order limiting the dissemination of any information you or the other judgment debtors obtain.  What my motion will ask for is that, other than for purposes of collecting a judgment, no one would be allowed to publicize, or distribute the information. There is obviously no purpose to do that, other than harassment and to embarrass me and my family.  The ISP's have already stated that they will not oppose my motion.  I doubt your firm could come up with a good reason to the court why my family's personal life should be broadcast on the Internet.

While others do not have much confidence in appealing to your firm's sense of constraint, I would urge you to do the right thing and agree to our motion for a protective order.  And if you need a selfish reason to agree to my proposed order, let me be clear that any harm that comes to me or my family due to your firm posting personal information online will result in every legal response available to me.


John Steele

# EXHIBIT W

| | |
|---|---|
| From: | "Huffman, Bart" <BHuffman@lockelord.com> |
| Subject: | **RE: Lightspeed v. Smith** |
| Date: | February 26, 2014 3:33:08 PM EST |
| To: | john steele <johnlsteele33140@gmail.com> |
| Cc: | "'Troy A. Bozarth <Troy.Bozarth@heplerbroom.com> (Troy.Bozarth@heplerbroom.com)'" <Troy.Bozarth@heplerbroom.com>, "Jason Sweet (jsweet@boothsweet.com)" <jsweet@boothsweet.com>, "dbooth@boothsweet.com" <dbooth@boothsweet.com>, "Seiver, John <JohnSeiver@dwt.com> (JohnSeiver@dwt.com)" <JohnSeiver@dwt.com> |

John,

Mr. Bozarth, copied on this email, did not receive any request from you.  As I said, he reported to me that you left a voicemail message for another attorney in his firm.  To the extent you have stated to Mr. Sweet or Mr. Booth (or anyone else) that the ISPs have already stated that they will not oppose your motion, that statement was false.

AT&T currently takes no position on your proposed motion for a protective order, but AT&T reserves the right to take a position at a later date upon review of the motion when it is filed.  At a minimum, AT&T should be entitled to review any materials that the judge has requested (such as a certified financial accounting, when and if you submit such an accounting) and any discovery that is otherwise lawfully obtained.

- Bart


Bart W. Huffman
**Locke Lord LLP**
512-305-4746 (direct dial)
210-867-9912 (mobile)
600 Congress Avenue, Ste. 2200
Austin, TX  78701

Licensed in TX, NY, and CA
bhuffman@lockelord.com
www.lockelord.com

Atlanta, **Austin**, Chicago, Dallas, Hong Kong, Houston, London, Los Angeles, New Orleans, New York, Sacramento, San Francisco, Washington DC


**From:** john steele [mailto:johnlsteele33140@gmail.com]
**Sent:** Wednesday, February 26, 2014 1:30 PM
**To:** Huffman, Bart
**Subject:** Re: Lightspeed v. Smith

My request to Mr. Bozarth was to not oppose our upcoming motion for protective order seeking to limiting the publication of any information obtained by discovery.  Mr. Sweet has subpoenaed banks and other financial institutions that my family members use.  There is no legitimate reason to post me or my families personal information online, and I would hope your client would agree to my request.

John Steele


On Wed, Feb 26, 2014 at 2:10 PM, Huffman, Bart <BHuffman@lockelord.com> wrote:
John,
I am writing to you at the e-mail address currently listed in the ECF service list report for the pending Seventh

Circuit appeal.  I understand that you recently called an attorney at Troy Bozarth's firm and left a message concerning this case.  Please direct any inquiries concerning AT&T in connection with this case or the appeal to me.

- Bart


Bart W. Huffman
**Locke Lord LLP**
512-305-4746 (direct dial)
210-867-9912 (mobile)
600 Congress Avenue, Ste. 2200
Austin, TX  78701

Licensed in TX, NY, and CA
bhuffman@lockelord.com
www.lockelord.com

Atlanta, **Austin**, Chicago, Dallas, Hong Kong, Houston, London, Los Angeles, New Orleans, New York, Sacramento, San Francisco, Washington DC

# EXHIBIT X

From:   john steele <johnlsteele33140@gmail.com>
Subject:   **Re: Discovery Responses II**
Date:   February 27, 2014 7:26:35 AM EST
To:   "jsweet@boothsweet.com" <jsweet@boothsweet.com>

I have an email from both ISP's saying they will not oppose my motion, and I suppose we will eventually see if I really do.  As to your claim of sending me discovery documents in the past, feel free to show me proof that I received it, or simply send it to me now.  Its obviously your choice.  This email is simply to put you on notice that I do not have anything and thus cannot respond.  I do remember getting other documents in the mail from your office, but not any discovery directed to me or Paul Hansmeier or Paul Duffy.

John Steele


On Wed, Feb 26, 2014 at 4:40 PM, jsweet@boothsweet.com <jsweet@boothsweet.com> wrote:
John

The discovery requests—which you claim not to have received—were mailed to you more than a month ago at an address you provided to the court. Secondly, the mailing was sent via certified mail, for which we received a confirmation of receipt from the post office. Lastly, the mailing for the discovery requests also included copies of twelve subpoenas—which you later used as exhibits in your motions to quash in both *AF Holdings LLC v. Chowdhury*, No. 12-cv-12105 (D.Mass. 2012); and *Lightspeed Media Corp. v. Smith*, No. 12-cv-00889 (S.D. Ill. 2012).

Regarding your motion for a protective order, of course we would be willing to review any such motion to let you know whether we consent. Please forward a copy for review. As an aside, your assertion that "[t]he ISPs have already stated that they will not oppose my motion", that statement is knowingly false as the co-defendants discussed their positions on the matter last night.

For the sake of clarity, we are not "judgment debtors" as you say. Also, a motion asking that the court limit the use of information to "purposes of collecting a judgment" would not be proper in *Lightspeed*, where the order entered against you is a sanction, not a judgment.

Lastly, your threats ring hollow as they are unnecessary, unwarranted and unsupported.

Please note, that your email and the multiple falsehoods and misrepresentations knowingly made by you within will likely be used in support of any opposition to your pending motion and for additional sanctions against you.

Regards,
Jason

Sent from my iPhone

# EXHIBIT Y

| From: | "Huffman, Bart" <BHuffman@lockelord.com> |
|---|---|
| Subject: | **RE: Lightspeed v. Smith** |
| Date: | February 27, 2014 10:01:14 AM EST |
| To: | john steele <johnlsteele33140@gmail.com> |
| Cc: | "'Troy A. Bozarth <Troy.Bozarth@heplerbroom.com> (Troy.Bozarth@heplerbroom.com)'" <Troy.Bozarth@heplerbroom.com>, "Jason Sweet (jsweet@boothsweet.com)" <jsweet@boothsweet.com>, "dbooth@boothsweet.com" <dbooth@boothsweet.com>, "Seiver, John <JohnSeiver@dwt.com> (JohnSeiver@dwt.com)" <JohnSeiver@dwt.com> |

John,

I understand that you sent Mr. Sweet an email this morning in which you stated that you have an email from both ISPs saying they will not oppose your motion.  That statement is also false.  Your only written communications with AT&T's attorneys concerning your motion appear below.

You also have not spoken with AT&T's attorneys about your motion – you only left a voicemail message with another attorney at Mr. Bozarth's firm.  Incidentally, I understand the attorney for whom you left a voicemail is a first year who is currently out of the office studying for or taking the Missouri bar exam.

We have not even seen a copy of your motion.  We certainly have not stated – in an email message or otherwise – that AT&T will not oppose it.  Please cease with your misrepresentations on this topic.

- Bart

Bart W. Huffman
**Locke Lord LLP**
512-305-4746 (direct dial)
210-867-9912 (mobile)
600 Congress Avenue, Ste. 2200
Austin, TX  78701

Licensed in TX, NY, and CA
bhuffman@lockelord.com
www.lockelord.com

Atlanta, **Austin**, Chicago, Dallas, Hong Kong, Houston, London, Los Angeles, New Orleans, New York, Sacramento, San Francisco, Washington DC

# EXHIBIT Z

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-00889 |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY SMITH, SBC INTERNET SERVICES, | ) | |
| INC., d/b/a AT&T INTERNET SERVICES; AT&T | ) | |
| CORPORATE REPRESENTATIVE #1; COMCAST | ) | |
| CABLE COMMUNICATIONS, LLC, and | ) | |
| COMCAST CORPORATE REPRESENTATIVE #1, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF JASON E. SWEET**

I, Jason E. Sweet, do hereby swear and say as follows:

1. I am an attorney at law licensed to practice before the Courts of the State of Massachusetts and the First and Seventh Circuits, and admitted *pro hac vice* before this Court. I am a partner in the law firm of Booth Sweet LLP, attorneys for Defendant Anthony Smith ("Smith"). Unless otherwise stated, I have personal knowledge of the following facts and, if called and sworn as a witness, could and would competently testify thereto.

2. I was contacted by Ms. Annette Kuklak, a representative of JP Morgan/Chase Bank, regarding subpoena requests in the above-captioned matter on January 23, 2014 at 12:34 pm. The purpose of Ms. Kuklak's call was to request an additional 30 days to comply with the subpoena requests given "the unusually high number of accounts" associated with Plaintiff's Counsel and related non-parties, "at least 26" by her estimate.

3. On March 6, 2014, I called Ms. Kuklak to inquire as to the status of the discovery request.

4. Ms. Kuklak replied that there was a pending motion to quash prohibiting disclosure and that compliance with the subpoena had stopped.

5. I informed Ms. Kuklak that the motion to quash had been denied on February 19, 2014 and asked if she'd like for a copy of the order to be faxed over (and which I later sent her).

6. At this point, Ms. Kuklak admitted confusion. She stated that Paul Duffy had faxed the motion to quash to her three days prior on March 3, 2014, representing that the motion was still pending.

7. During our conversation, Ms. Kuklak referred to correspondence notes she had made contemporaneously when communicating with Mr. Duffy. I asked if it was possible for her to provide me with copies of her notes, but was informed JP Morgan/Chase Bank's policy would not allow her to.

8. On March 12, 2014, the subpoenaed documents were delivered to our offices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 12, 2014

Jason E. Sweet

2

# EXHIBIT AA

Filed in Fourth Judicial District Court
23/8/2013 12:18:58 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 135-27 *SEALED*   Filed 03/20/14   Page 2 of 3
Case: 14-1682      Document: 28-19   PageID 3381   Filed: 07/30/2014      Pages: 197

STATE OF MINNESOTA

COUNTY OF HENNEPIN

---

Guava, LLC,

                                   Plaintiff,

vs.

Spencer Merkel,

                                   Defendant.

---

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
Case Type:  Other Civil

Court File No. 27-CV-12-20976
Hon. Tanya Bransford

**AMENDED ORDER TO SHOW CAUSE**

## TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, based on Minn. R. Civ. P. 11.03(a)(2) and Minn. Stat.

§ 549.211, subd. 4(b), the accompanying notice of motion and motion, affidavit, memorandum

of law, and all the files, records, and proceedings herein, including the arguments, affidavit,

and testimony received at the January 25, 2013 hearing in this matter, the Court having been

fully and duly advised, IT IS HEREBY ORDERED that you, Plaintiff Guava, LLC and its

counsel of record Michael K. Dugas, Esq., Alpha Law Firm LLC, 900 IDS Center, 80 South

8th Street, Minneapolis, MN 55402, PERSONALLY APPEAR AND SHOW CAUSE, if you

have any, before the Honorable Tanya Bransford, Judge of District Court, on April 23, 2013 at

1:30 P.M. or as soon thereafter as counsel may be heard, at the Hennepin County Government

Center, 300 South Sixth Street, Minneapolis, Minnesota 55487, why the Court should not

order you to pay the reasonable attorney fees and costs incurred by the non-parties to this

action who were required to retain legal counsel and incur expenses in presenting the motions

that were heard by this Court on January 25, 2013, which motions sought to quash subpoenas

1

Filed in Fourth Judicial District Court
3/8/2013 12:18:58 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 135-27 *SEALED*   Filed 03/20/14   Page 3 of 3
Case: 14-1682        Document: 28-19  PageID 3382 Filed: 07/30/2014       Pages: 197

issued by you, to seek a protective order against discovery initiated by you, and to dismiss this action.

No later than April 9, 2013, all non-parties having noticed an appearance in this action may file verified attorney-fee and cost petitions with the Court, in accordance with Minn. R. Gen. Pract. 119, and Plaintiff and its counsel may respond thereto no later than April 16, 2013.

A copy of this Order shall be personally served on Plaintiff's counsel of record and filed and served through the Court's electronic filing system.

BY THE COURT

Dated: _March 7, 2013_

By: _____
Tanya M. Bransford
District Court Judge

2

# EXHIBIT BB



**TCF BANK**
*Since 1923*

*Open 7 Days℠*

TCF NATIONAL BANK
801 MARQUETTE AVE
MINNEAPOLIS MN  55402

**Page 1**
STATEMENT DATE
03-29-13

8440485928
1

S T A T E M E N T

1    93 99
ALPHA LAW FIRM LLC
STE 900
80 S 8TH ST
MINNEAPOLIS MN  55402-8773

REFER YOUR FRIENDS TO TCF AND GET
REWARDED! GET $25 FOR EVERY FRIEND
YOU REFER. PICK UP YOUR REFERRAL FORMS
AT ANY TCF BANK OR PRINT THEM ONLINE
AT TCFBANK.COM. OFFER SUBJECT TO
LIMITATIONS AND REQUIREMENTS. SEE A
TCF REPRESENTATIVE FOR DETAILS.

BANK 24 HOURS A DAY ONLINE AT TCFBANK.COM. LOOK UP YOUR BALANCE, VIEW CHECK IMAGES AND STATEMENTS
AND TRANSFER FUNDS TO ANOTHER TCF ACCOUNT.  SAVE PAPER AND REDUCE THE HASSLE OF STORING PAPER
STATEMENTS BY SIGNING UP FOR FREE AND SECURE ONLINE STATEMENTS TODAY.  SEE A TCF BANKER FOR
DETAILS.  MEMBER FDIC

**TCF SMALL BUSINESS CHECKING**                    STATEMENT PERIOD 03-01-13 THROUGH 03-29-13
**ACCOUNT NUMBER   8440485928**
**ACCOUNT SUMMARY**

| BALANCE 02-28-13 | CHECKS/WITHDRAWALS | DEPOSITS/ADDITIONS | BALANCE 03-29-13 |
|---|---|---|---|
| 87,469.64 | 82,482.45 | .00 | 4,987.19 |

INTEREST EARNED IN STATEMENT PERIOD      .00
ANNUAL PERCENTAGE YIELD EARNED      .00%

**CHECKS PAID**

| CHECK NUMBER | AMOUNT PAID | DATE NUMBER | REF NUMBER | CHECK NUMBER | AMOUNT PAID | DATE NUMBER | REF NUMBER | CHECK NUMBER | AMOUNT PAID | DATE NUMBER | REF NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1190 | 80,000.00 | 0313 | 83189485 | | | | | | | | |

**OTHER WITHDRAWALS AND CHARGES**

| DATE | AMOUNT | DESCRIPTION | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 0318 | 112.00 | AUTOMATED WITHDRAWAL<br>EXECUTIVE SUITES    9528515555 | 0320 | 2,370.45 | AUTOMATED WITHDRAWAL<br>AMEX EPayment        ACH PMT |

FOR BALANCE AND CHECKS PAID INFORMATION, DEPOSIT VERIFICATION, FUNDS TRANSFERS, AND OTHER CUSTOMER SERVICE,
VISIT US ONLINE AT TCFBANK.COM OR CALL 1-800-823-2265 OR TDD 1-800-343-6145.  YOU CAN ALSO DIRECT INQUIRIES TO
THE ADDRESS SHOWN AT THE TOP OF THIS PAGE. FOR ALL ACCOUNTS OTHER THAN TCF CHOICE CHECKING, TCF CHARGES $37
FOR OVERDRAFTS AND RETURNED ITEMS. FOR TCF CHOICE CHECKING, TCF CHARGES UP TO $28 FOR EACH DAY YOUR ACCOUNT IS
OVERDRAWN BY MORE THAN $5, AND $27 FOR ANY DAY THAT WE RETURN ITEMS WITHOUT PAYING THEM. SEE REVERSE SIDE FOR
MORE INFORMATION ABOUT OVERDRAFTS.

www.tcfbank.com

Page 2 -X
8440485928



3/13/2013      1190 80,000.00

# EXHIBIT CC

27-CV-12-20976

Filed in Fourth Judicial District Court
8/30/2013 3:21:46 PM
Hennepin County Civil, MN

**STATE OF MINNESOTA**                                  **DISTRICT COURT**

**COUNTY OF HENNEPIN**                          **FOURTH JUDICIAL DISTRICT**

---

Guava LLC,                                                  CASE TYPE: Civil Other/ Misc.
                                                            Court File No. 27-CV-12-20976
           Plaintiff,                          The Hon. Tanya M. Bransford

v.

                                          **MEMORANDUM FOLLOWING**
Spencer Merkel,                                    **ORDER GRANTING IN PART NON-**
                                                  **PARTY JOHN DOES AND NON-**
           Defendant.                          **PARTY ISP'S MOTION FOR**
                                                  **ATTORNEYS' FEES AND COSTS**

---

       The above entitled action came on for hearing before the Honorable Tanya M. Bransford, District Court Judge, on April 23, 2013, upon Non-Party John Does and Non-Party ISPs Motions for Attorneys' Fees and Costs and on an Order to Show Cause. This Court ordered further submissions due on April 26, 2013. The record closed on May 9, 2013 upon the Court's receipt of a letter submitted by Attorney Paul Godfread and a letter in response by Attorney Michael Dugas.

       Michael K. Dugas of Alpha Law Firm LLC, 900 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, appeared on behalf of Plaintiff Guava LLC. No appearances were made by a representative of Guava LLC.

       Trina E. Morrison, Attorney at Law, appeared on behalf of Defendant Spencer Merkel.

       David E. Camarotto of Bassford Remele, P.A., 33 South Sixth Street, Suite 3800, Minneapolis, Minnesota 55402, appeared on behalf of Non-Party ISPs.

       Mark C. Santi of Thompson Hall Santi Cerny & Dooley, 901 Marquette Avenue South, Suite 1675, Minneapolis, Minnesota 55402, appeared on behalf of multiple Non- Party John Does.

       Paul A. Godfread of Godfread Law Firm, P.C., 100 South Fifth Street, Suite 1900, Minneapolis, Minnesota 55402, appeared on behalf of multiple Non-Party John Does.

       Edward P. Sheu of Best & Flanagan LLP, 225 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402, appeared on behalf of one Non-Party John Doe.

       Philip Gainsley of Phillip Gainsley, Attorney at Law, 222 South Ninth Street, Suite 1600, Minneapolis, Minnesota 55402, waived his appearance to the hearing on behalf of one Non-Party John Doe but joined in the Motion for Attorneys' Fees and Costs upon written submissions.

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 3 of 19
Case: 14-1682     Document: 28-39     Filed: 07/30/2014   Pages: 197
PageID 3388

On August 7, 2013, this Court issued an Order Granting in Part Non-Party John Does and Non-Party ISPs' Motions for Attorneys' Fees and Costs. This memorandum follows.

**BY THE COURT:**

Dated: ___August 30, 2013_____     _____
The Honorable Tanya M. Bransford
Judge of the District Court
Fourth Judicial District

**MEMORANDUM**

**PROCEDURAL HISTORY**[1]

On October 17, 2012, Plaintiff Guava, LLC ("Guava" or "Plaintiff"), by and through its

attorney Michael K. Dugas, Esq. ("Dugas") of the Alpha Law Firm LLC, 900 IDS Center, 80

South Eighth Street, Minneapolis, Minnesota 55402 ("Alpha"), filed this action against

Defendant Spencer Merkel ("Merkel"), alleging violations of Minn. Stat. § 626A.02 *et seq.* and a

civil conspiracy. The complaint identified Guava as "a limited liability company that owns and

operates protected computer systems, including computer systems accessible throughout

Minnesota." (Compl. ¶ 2). The complaint does not identify whether Guava is a limited liability

---

[1] This case has a relatively short but peculiar procedural history. This Court was presented with virtually no factual evidence during the pendency of this "litigation." The Non-Party John Does and Non-Party ISPs have requested that this Court take judicial notice of judicial decisions rendered by other courts in various jurisdictions to support the factual contention that Plaintiff and its counsel have perpetrated a sham upon this Court in this case and the requested amount of attorneys' fees and costs are a proper remedy for the fraud in this action. Pursuant to the Minnesota Rules of Evidence, a court may take judicial notice of adjudicative facts in a civil case when a fact is "not subject to reasonable dispute in that it is… capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." Minn. R. Evid. 201(a), (b) (2012). In this case, this Court shall take judicial notice that the decisions were rendered by other courts in various jurisdictions as that fact is readily verifiable and not in dispute. But, this Court makes clear that the factual findings in the noticed decisions are not incorporated herein into this Court's memorandum. The facts presented in other cases are: 1) disputed by the parties and/ or 2) not present in the current action; therefore, the factual findings in other court decisions do not satisfy the requirements of Minn. R. Evid. 201(b) and this Court relies solely on the procedural history of this case. *See generally In the Matter of Zemple*, 489 N.W.2d 818, 819-820 (holding that district court took proper judicial notice of domestic abuse action in civil commitment proceeding but erred by taking judicial notice of testimony in the domestic abuse action that was disputed).

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 4 of 19
PageID 3389
Case: 14-1682      Document: 28-19      Filed: 07/30/2014      Pages: 197

company organized under the laws of any state or country, and Guava's counsel did not provide

any competent evidence of Guava's existence as a corporate entity. The Complaint did not

specify Merkel's location or residence. (Compl. ¶ 3). The substantive allegations in the

Complaint were similarly vague. Plaintiff alleged barebones facts, citing no dates or specific

information regarding Merkel's alleged hacking into its computer systems. Plaintiff additionally

alleged that Plaintiff "operates computer systems that distribute third-party content." (Compl. ¶

7) but instead of alleging factual evidence to explain Plaintiff's operations, Plaintiff used an

analogy to illustrate its operations. *Id*. In alleging civil conspiracy, Plaintiff maintained that

Merkel "colluded with multiple members of a hacking community to intercept electronic

communications taking place on Plaintiff's protected computer systems." (Compl. ¶ 17). Plaintiff

alleged no conduct in Minnesota other than Plaintiff's "computer systems accessible throughout

Minnesota." (Compl. ¶ 2).

On October 30, 2012, attorney Paul R. Hansmeier, Esq. ("Hansmeier"), of Prenda Law,

Inc. ("Prenda"), 40 South Seventh Street, Suite 212-307, Minneapolis, Minnesota 55402, noticed

his appearance for Guava as "of counsel."

On October 25, 2012, Guava filed Plaintiff's Unopposed Discovery Motion for

Authorizing Order. Dugas and Hansmeier appeared before the Court on October 31, 2012, with

no appearance from Merkel, for an order permitting the issuance of subpoenas to over 300

internet service providers ("ISPs"). Guava's stated purpose in seeking court permission in

connection with subpoenas under Minn. R. Civ. P. 45, which does not require court permission,

was to order the ISPs to disclose their customers' names and addresses. Dugas and Hansmeier

represented to the Court that the motion was particularly time sensitive and treated the motion as

an "emergency." Following an October 31, 2012 hearing, this Court denied Guava's motion

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 5 of 19
Case: 14-1682      Document: 28-3      Filed: 07/30/2014      Pages: 197
PageID 3390

finding that Guava did not demonstrate that the personally identifying information was relevant and material to the action and that the request was broad and excessive.  (Nov. 2, 2012 Ord.)

On November 6, 2012, Guava filed Plaintiff's Emergency Renewed Unopposed Discovery Motion for Authorizing Order to the Court requesting an order permitting discovery on 17 ISPs, which the Court granted on the condition that the recipients of any subpoenas would be permitted the opportunity to move to quash the subpoenas. (Nov. 7, 2012 Ord.). At the hearing, Merkel was represented by Trina Morrison, Attorney at Law. Ms. Morrison did not object to the issuance of the order even after inquiry by the Court on the record. On December 19, 2012, at Guava's request, the Court issued a request for judicial assistance to the Alaska Superior Court so that Guava could serve discovery in that state in connection with this action.

In December 2012, several non-parties, including certain ISPs and certain ISP customers ("John Does"), filed motions seeking to quash Guava's subpoenas, a protective order preventing Guava's discovery, and a dismissal of Guava's action. Guava moved to strike portions of certain pleadings. Non-Party ISPs CenturyTel Broadband Services, Inc., Embarq Communications, Inc., Midcontinent Media, Inc., and Qwest Communications Company LLC were represented by David E. Camarotto, Attorney at Law. David E. Weslow and Matthew J. Dowd, licensed attorneys in the District of Columbia and State of Maryland and Timothy M. Gebhart, licensed attorney in the State of South Dakota assisted Mr. Camarotto in the representation of the four Non-Party ISPs in this action. Non-Party John Does 173.23.48.174, 24.179.242.216, 24.107.13.178, 97.90.236.57, 71.83.133.82, 96.41.247.223, 68.117.42.66, 68.114.17.151 and 68.114.237.237 were represented by Mark C. Santi, Attorney at Law. Non-Party John Does 24.111.103.45, 173.19.137.181, 173.18.209.64, 96.3.7.73, 96.3.142.193, 173.28.83.32, 146.115.81.58, 173.20.105.170, 24.197.177.11, 71.9.52.234 and 66.191.233.188 were

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 6 of 19
Case: 14-1682      Document: 28-3   PageID 3391   Filed: 07/30/2014   Pages: 197

represented by Paul A. Godfread, Attorney at Law. Non-Party John Doe 173.19.225.224 was represented by Edward P. Sheu, Attorney at Law. Becky S. Knutson and Matthew A. Warner-Blankenship, licensed attorneys in the State of Iowa, assisted Mr. Sheu in the representation of the Non-Party John Doe in this action. Lastly, one Non-Party John Doe, not identified by IP Address, was represented by Philip Gainsley, Attorney at Law.

On January 25, 2013, the Court heard the ISPs' and John Does' motions, and Guava's motion to strike. At the January 25, 2013 hearing in this matter, Guava's counsel John L. Steele, Esq. ("Steele"), an Illinois attorney who appeared for Guava *pro hac vice*, along with Dugas and Hansmeier, represented that Guava was a limited liability company with an office in Las Vegas, Nevada and that he believed Guava to be based in "Nevis," referring to the Federation of St. Kitts and Nevis.  (Jan. 25, 2013 Hr'g Tr. at 9-11).  When asked by the Court if Guava had any presence in Minnesota, Mr. Steele did not directly respond: "It's my understanding that they do have some computer equipment and various offices and one of the places would be Illinois and Las Vegas."  (Hr'g Tr. at 10). After being pressed by the Court, Mr. Steele stated that the lawsuit was brought in Minnesota "because the location and progress verifying various activities were trying to show that much of the activity, or certain amounts of the activity, was occurring in Minnesota so it's the acts themselves that are occurring in Minnesota." (Hr'g Tr. At 10-11). Stated differently, Mr. Steele did not state that the evidence previously collected pointed toward activity in Minnesota but that Plaintiff was trying to show that "much of the activity or certain amounts of activity, was occurring in Minnesota." *See id*. During the entire hearing, Plaintiff's counsel evaded the Court's inquiry into jurisdiction over this case and did not assert any concrete connections to Minnesota. In response to the Non-Parties' argument that Plaintiff did not file the proper document to bring suit pursuant to Minnesota Statute. §322B.94 subd. 1 (2012),

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 7 of 19
PageID 3392
Case: 14-1682      Document: 28-15      Filed: 07/30/2014      Pages: 197

Plaintiff's counsel maintained that Plaintiff was not transacting business in Minnesota and that if

necessary Plaintiff would file a Certificate of Authority that same day. (*See* Hr'g Tr. at 37-40).

The Court received no evidence that a Certificate of Authority has been filed with the Secretary

of State.

Also at the January 25, 2013 hearing, the Court took sworn testimony of Merkel's

counsel, Trina Morrison, and received into the court record an Affidavit of Spencer Merkel dated

January 24, 2013. ("Merkel Aff."). In the affidavit Merkel stated that he was a Beaverton,

Oregon resident and that he received a September 26, 2012 letter from Prenda's Paul Duffy

("Duffy"), claiming that Merkel had illegally downloaded a movie named *Amateur Allure-*

*MaeLynn*[2] and that Merkel could pay Prenda $3,400 by October 11, 2012 to avoid being named

in the lawsuit, *Hard Drive Productions, Inc. v. Does 1-1,495*, which had been filed in the United

States District Court for the District of Columbia. Merkel Aff. at ¶ 1; Exhibit A. Before the

deadline, Merkel states that he called Prenda Law and spoke with someone named Mike or

Michael. *Id*. at ¶ 2. Merkel attests that he informed "Michael" that he was unable to pay the

settlement amount but inquired if they could settle the case. *Id*.  According to the affidavit,

"Michael" told Merkel that to settle he would have to agree to the following: Merkel would be

sued, Merkel had to provide a bit-torrent log from his computer, and Prenda would dismiss the

claim against Merkel after receiving the bit-torrent information. *Id*. at ¶ 3. During the discussion

with "Michael," Merkel states that he was told that a pro-bono attorney may be willing to take

the case in Minnesota and that "Michael" did not know any pro-bono attorneys in Oregon. *Id*. at

---

[2] This action appears to be markedly similar to a fraudulent scheme as found by Judge Otis Wright, United States
District Judge of the Central District of California. In that case, Judge Wright found that Steele, Hansmeier and Paul
Duffy conspired to send cease and desist letters to IP Address holders, alleging that such IP Address holders illegally
stole a pornographic movie, and offered to settle for $4,000.00 or be sued. *Ingenuity 13 LLC v. Doe*, 2:12-CV-8333-
ODW (JCx), 2013 WL 1898633 (C.D. Cal, May 6, 2013). Judge Wright found that this strategy was vexatious
litigation designed to coerce settlement and extract settlement proceeds from defendants who did not want the social
stigma of litigation relating to stolen pornographic movies attached to their names. *See id*.

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 8 of 19
PageID 3393
Case: 14-1682      Document: 28-15      Filed: 07/30/2014      Pages: 197

¶ 4. Merkel states he agreed to be sued in Minnesota because he could not afford an attorney and

obtained his attorney, Trina Morrison, based upon the information he received from Prenda. *Id.*

Merkel also attests that he had never heard of Guava LLC or Alpha Law Firm LLC until this

lawsuit; he believed that the opposing parties would be Prenda and Hard Drive Productions, Inc.

*Id.* at ¶ 5-6. On January 15, 2013, Merkel received a voicemail from someone at Prenda stating

that he "needed to make payment arrangements or [he] would be sued." *Id.* at ¶ 8. According to

Merkel, Guava had not requested either his bit-torrent log information or the names of any

alleged co-conspirators. *Id.* at ¶ 9.[3] Merkel's counsel testified that she graduated from law school

with Guava's counsel Dugas and that she was approached to represent Merkel on a pro-bono

basis after informing Mr. Dugas and Mr. Hansmeier that she may be interested in taking on a

case pro-bono to gain experience. (*See* Hr'g Tr. At 17-20).

Upon inquiry at the January 25, 2013, Guava's counsel informed the Court that no

discovery had been served upon Merkel since the case had been filed with the Court October 17,

2012, which is consistent with Merkel's statement. (*See* Hr'g Tr. At 28-31); Merkel Aff. ¶ 9.

Merkel never appeared before this Court.

On March 1, 2013, before this Court ruled on the motions to quash, motions for

protective order and motion to strike, Guava and Merkel filed a stipulation for dismissal in which

Guava agreed to dismiss all claims against Merkel with prejudice. This Court signed and filed

the Stipulation of Dismissal with Prejudice and Order on March 5, 2013 and judgment was

---

[3] The Court would note that Attorney Michael Dugas submitted a Declaration of Michael Dugas in Support of
Plaintiff's Response to Court's Order to Show Cause ("Dec. of Dugas"), which states that Dugas is the only
individual by the name of Mike or Michael at either Alpha Law Firm LLC or Prenda Law but that he never spoke to
Merkel. Dec. of Dugas at ¶ 2-3. Dugas also claims that he never offered a settlement to Merkel and the first
discussion of settlement was with Merkel's attorney Trina Morrison on February 14, 2013. *Id.* at ¶ 5-6. Finally,
Dugas claims that this action is wholly unrelated to *Hard Drive Productions, Inc. v. Does 1-1,495*, filed in the
United States District Court for the District of Columbia. *Id.* at ¶ 7. This Court finds that Dugas lacks any credibility
with this Court based upon the actions he has taken in this matter. Therefore, any declaration and testimony offered
is discredited with this Court.

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW Document 135-29 *SEALED* Filed 03/20/14 Page 9 of 19
Case: 14-1682 Document: 28-39 Filed: 07/30/2014 Pages: 197
PageID 3394

entered by Hennepin County District Court Administration. Also on March 1, 2013, one of the non-party John Does in this action, represented by Attorney Sheu, filed a request for attorney fees and costs against Guava and its counsel. This Court issued an Order to Show Cause, dated March 6, 2013, ordering Plaintiff and its attorney Michael K. Dugas to show cause why the Court should not award reasonable attorneys' fees and costs to the Non-Party John Does. An Amended Order to Show Cause, dated March 7, 2013, was issued by the Court, which permitted the John Does and ISPs to file verified fee petitions to this Court in connection with the Motions for Attorneys' Fees and Costs. The Amended Order to Show Cause did not name John Steele, Paul Hansmeier, Prenda Law, Inc., Live Wire Holdings LLC, or the Anti-Piracy Law Group.

On April 23, 2013, the Court heard the John Does' and ISPs' requests for fees and costs and permitted all interested parties and their counsel to be heard. Despite this Court's Amended Order to Show Cause, no corporate representative of Plaintiff Guava appeared before the Court. Plaintiff's counsel Dugas stated that he was appearing on behalf of his client as well as himself; however, Dugas did not represent to the Court that he was a principal or officer of Plaintiff.

## ANALYSIS

### I.   Applicable Law

In Minnesota, foreign companies must conform to certain statutory requirements before an action may be brought within the state. "A foreign limited liability company transacting business in this state may not maintain any action, suit, or proceeding in any court of this state until it possesses a certificate of authority." Minn. Stat. §322B.94 subd. 1 (2012).

In civil actions, a foreign company must post a bond under Minn. Stat. §549.18 (2012), which provides, in relevant part,

> When an action is begun in the district court by a plaintiff who . . . is a nonresident or a foreign corporation . . . such plaintiff shall file a bond to the court administrator, before service of summons . . . in the sum of at least $75,

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 10 of 19
Case: 14-1682   Document: 28-19   Filed: 07/30/2014   Pages: 197
PageID 3395

conditioned for the payment of all costs and disbursements that may be adjudged
against the plaintiff. . .

Minn. Stat. §549.18 (2012). Further,

When any party shall commence an action without filing a bond, or fail to provide
an additional bond when so required, the court, on motion of defendant, may
order a stay of all proceedings in such action, or a dismissal thereof at the cost of
the attorney commencing the same.

Minn. Stat. §549.19 (2012).

Minnesota Statutes and Minnesota Rules of Civil Procedure require all attorneys to plead

cases in good faith to Minnesota Courts. *See* Minn. Stat. §549.211 (2012); *see also* Minn. R. Civ.

P. 11. Minn. Stat. §549.211 states in relevant part:

Subd. 2. Effect of acknowledgment. By presenting to the court, whether by
signing, filing, submitting, or later advocating, a pleading, written motion, or
other paper, an attorney or unrepresented party is certifying that to the best of the
person's knowledge, information, and belief, formed after an inquiry reasonable
under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass or to
cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law
or by a nonfrivolous argument for the extension, modification, or reversal of
existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if
specifically so identified, are likely to have evidentiary support after a reasonable
opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if
specifically so identified, are reasonably based on a lack of information or belief.
Subd. 3. Sanctions may be imposed. If, after notice and a reasonable opportunity
to respond, the court determines that subdivision 2 has been violated, the court
may, subject to the conditions in this section, impose an appropriate sanction upon
the attorneys, law firms, or parties that have violated subdivision 2 or are
responsible for the violation.

Minn. Stat. §549.211 subd. 2; subd. 3 (2012). Furthermore, "[a] sanction imposed for violation

of this section must be limited to what is sufficient to deter repetition of the conduct or

comparable conduct by others similarly situated…" and the sanction may consist of an order to

pay reasonable attorneys' fees and costs of the movant. *Id*. at subd. 5(a). "Monetary sanctions

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 11 of 19
Case: 14-1682      Document: 28-15      Filed: 07/30/2014      Pages: 197
PageID 3396

may not be awarded against a represented party for a violation of subdivision 2, clause (2)." *Id*. at subd. 5(b). But, the statute "does not apply to disclosures and discovery requests, responses, objections, and motions that are subject to discovery provisions and remedies of the Rules of Civil Procedure." *Id*. at subd. 6(a). Additionally, the statute provides a 21-day safe harbor, which prohibits a motion for sanctions from being filed with the Court "unless, within 21 days after service of the motion, or another period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *Id*. at subd. 4(a).

Plaintiff argues that the Non-Party John Does violated the 21-day safe harbor rule by bringing the Motion for Attorneys' Fees and Costs prior to 21 days after service and that Minn. Stat. §549.211 does not apply because the Non-Party John Does and Non-Party ISPs filed this motion pursuant to costs related to Plaintiff's service of a subpoena to the Non-Party ISPs.

This Court questions the applicability of the 21-day safe harbor rule as the case was settled prior to the motions for attorneys' fees and costs being filed with the Court and because Plaintiff had almost two months notice of the hearing. But, even if the statute does not apply to this case, as it undoubtedly concerns discovery requests, the Court finds that an award of attorneys' fees and costs is not barred.

Minnesota Rules of Civil Procedure provide in relevant part:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Minn. R. Civ. P. 45.03(a) (2012).

Minnesota case law holds that

district courts possess inherent authority to impose sanctions as necessary to protect their "vital function—the disposition of individual cases to deliver remedies for wrongs and justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws." *Patton v. Newmar Corp.*, 538 N.W.2d 116, 118 (Minn.1995) (quotations omitted) (excluding expert witness testimony for spoliation of evidence). This includes awarding attorney fees. *Frazier v. Burlington Northern Santa Fe Corp.*, 788 N.W.2d 770, 783 (Minn.App.2010), review granted (Minn. Nov. 23, 2010). Attorney fees may be an appropriate sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (citation omitted). A finding of bad faith is necessary before awarding attorney fees under the court's inherent power. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980); see also *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir.1993) (characterizing *Chambers* and *Roadway* as setting bad-faith standard for attorney fee awards, although not for all exercises of inherent power). While the district court has the inherent authority to award attorney fees as a sanction, the bad-faith basis must be identified and supported by the record.

*Peterson v. 2004 Ford Crown Victoria VIN: 2FAHP74WX4X158445*, 792 N.W.2d 454, 462

(Minn. Ct. App. 2010).

Based upon the record, this Court concludes that Plaintiff Guava LLC and its counsel

Michael K. Dugas of Alpha Law Firm LLC acted in bad faith and without a basis in law and fact

to initiate this action in Minnesota State District Court. This Court finds that an award of

attorneys' fees is an appropriate and just sanction pursuant to the Court's inherent authority.

First, this lawsuit was filed in Hennepin County District Court with none of the parties

residing in Minnesota and none of the alleged unlawful conduct in the Complaint arising out of

Minnesota. Plaintiff is allegedly a limited liability corporation based out of the Federation of

Saint Kitts and Nevis and Defendant is an Oregon resident. If Plaintiff conducted business in this

state, then this lawsuit was filed in violation of Minn. Stat. §322B.94 subd. 1. This violation

alone illustrates bad faith on the part of Plaintiff because it commenced this action without the

Certificate of Authority and when the matter was brought to the Plaintiff's attention, nothing was

done to obtain the Certificate of Authority. If, on the other hand, the Court were to accept

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 13 of 19
Case: 14-1682     Document: 28-15     Filed: 07/30/2014     Pages: 197

Plaintiff's premise that it was not transacting business in Minnesota, jurisdiction of this Court is

further undermined and the vexatious and oppressive nature of this action become clearer

because any connection to the State of Minnesota between these two parties is eliminated. In

either view, Plaintiff's claims were asserted in bad faith from the outset and rests upon an

agreement to be sued in a jurisdiction with no tie to the alleged illegal conduct.

Next, the course of this "litigation" does not support a good faith suit against Merkel in

this case. Plaintiff filed this Complaint, allegedly against Merkel and almost immediately

petitioned this Court for authorization to subpoena Non-Party ISPs citing the need to identify

Merkel's co-conspirators. This fishing expedition for IP addresses of the alleged conspirators

without regard to their relation to Merkel became abundantly clear to the Court during the

January 25, 2013 hearing, over three months after the lawsuit had been filed, when Plaintiff's

attorney admitted that no discovery had been served upon Merkel. (*See* Hr'g Tr. At 28-31).  If

there was a true civil conspiracy at play in this action, the Court cannot imagine a scenario where

discovery of what Merkel knew regarding his alleged co-conspirators would not be vital

information. With no good faith pursuit against Merkel in this case, the Court is left only with

Plaintiff's attempts to harass and burden Non-Parties through obtaining IP addresses to pursue

possible settlement rather than proceed with potentially embarrassing litigation regarding

downloading pornographic movies. Therefore, the Court is using its inherent authority to issue

the sanctions set forth below.

Minn. Gen. R. Prac. 119.01 (2012) provides in relevant part: "In any action or proceeding

in which an attorney seeks the award, or approval, of attorneys' fees in the amount of $1,000.00

for the action, or more, application for award or approval of fees shall be made by motion."

The motion shall be accompanied by an affidavit of any attorney of record which
establishes the following:

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 14 of 19
Case: 14-1682      Document: 28-15   PageID 3399   Filed: 07/30/2014   Pages: 197

1. A description of each item of work performed, the date upon which it was performed, the amount of time spent on each item of work, the identity of the lawyer or legal assistant performing the work, and the hourly rate sought for the work performed;

2. The normal hourly rate for each person for whom compensation is sought, with an explanation of the basis for any difference between the amount sought and the normal hourly billing rate, if any;

3. A detailed itemization of all amounts sought for disbursements or expenses, including the rate for which any disbursements are charged and the verification that the amounts sought represent the actual cost to the lawyer or firm for the disbursements sought; and

4. That the affiant has reviewed the work in progress or original time records, the work was actually performed for the benefit of the client and was necessary for the proper representation of the client, and that charges for any unnecessary or duplicative work has been eliminated from the application or motion.

Minn. Gen. R. Prac 119.02 (2012).

Minnesota follows the lodestar method of calculating reasonable attorney fees. *Milner v. Farmers Ins. Exchange*, 748 N.W.2d 608, 620 (Minn. 2008) (citations omitted). The lodestar method requires the district court to determine the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. *Id*. at 621 (citations omitted) (quotations omitted). "In determining the reasonableness of the hours and the reasonableness of the hourly rates, the court considers all relevant circumstances." *Id*. (citing *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971)) (internal quotations omitted).

Factors considered in determining reasonableness include the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client. When the reasonableness of the requested attorney fees is challenged, the district court must provide a concise but clear explanation of its reasons for the fee award.

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 15 of 19
Case: 14-1682      Document: 28-19      Filed: 07/30/2014   Pages: 197
PageID 3400

*Id.* (citations omitted) (quotations omitted); *See also Green v. BMW*, --- N.W.2d ---, No. A11-0581, 2013 WL 513241 (Minn. February 13, 2013) (affirming the lodestar factors and holding that the amount awarded and the results obtained are relevant factors to consider when determining the reasonable amount of attorneys' fees).

## II.    Attorney Camarotto's Motion for Attorneys' Fees and Costs

Attorney David Camarotto submitted an affidavit requesting attorneys' fees and costs in the amount of $24,383.09, which represents $22,465.00 in attorneys' fees, $618.09 in costs and $1,300.00 in estimated additional costs and fees. Attorney David Weslow submitted an affidavit requesting attorneys' fees and costs in the amount of $43,301.50. Attorney Timothy Gebhart submitted an affidavit requesting attorneys' fees and costs in the amount of $2,709.36. Using the lodestar factors, this Court finds that $21,324.27 is a reasonable award for attorneys' fees and costs for Mr. Camarotto and his colleagues in this case. This total represents $13,000.00 in reasonable attorneys' fees for Mr. Camarotto, $618.09 for costs, $5,000.00 in reasonable attorneys' fees for the services of Mr. Weslow and Mr. Dowd and $2,706.18 in reasonable attorneys' fees for the services of Mr. Gebhart.[4]

This Court utilized the following lodestar factors: the amount of work required, the attorneys' experience and a reasonable hourly rate of $325.00 for Mr. Camarotto. Mr. Camarotto has 12 years of experience as an attorney and has practiced since 2000. Mr. Camarotto represented all four Non-Party ISPs in this action and submitted that his firm completed 70.2 hours of work on this case. This Court does not dispute that significant work was required to represent the Non-Party ISPs; however, using the lodestar factors and all the relevant

---

[4] The discrepancy between the amount request by Mr. Gebhart and the amount awarded by this Court represents a calculation error and not a substantive determination. Mr. Gebhart reported that spent 11.1 hours on this case at a rate of $230.00 per hour for a total amount of $2,556.00. The Court's calculation totals $2,553.00. Taken together with the statutory tax the total amount shall be $2,706.18 and not $2,709.36.

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 16 of 19
Case: 14-1682      Document: 28-19   PageID 3401   Filed: 07/30/2014      Pages: 197

circumstances, the Court concludes that no more than 40 hours of work was required during the

pendency of this action. This case did not go to trial, no discovery was completed and the merits

of the lawsuit were not reached. Mr. Camarotto, as an attorney for Non-Party ISPs, was required

to complete work for two motions before this Court. Thus, 40 hours is a reasonable number of

hours required on this case pursuant to the lodestar test. Attorney David Weslow requested an

additional $43,301.50, which appears to be duplicative and unreasonable when local counsel Mr.

Camarotto appeared in court and prepared all of the motions and supporting documents.

Additionally, the Court finds that the hourly rate claimed by Mr. Weslow and Mr. Dowd of

$450.00 and $445.00 respectively was an unreasonable hourly rate by comparison to legal fees

for equally experienced attorneys in the Minnesota Twin Cities legal market. Mr. Weslow stated

in his affidavit that he has practiced in intellectual property and information technology law since

2001. The affidavit does not contain information regarding Mr. Dowd's years of experience. The

affidavit further states that the charged rates in this case, $450.00 and $445.00, were discounted

from $555.00 and $530.00, respectively. From the information in the affidavit, the Court

concludes that such rates are not reasonable fees in the Twin Cities legal market based upon the

attorneys' experience. The Court therefore reduces the amount of the claimed attorneys' fees

from the D.C. firm to $5,000.00, which is comparable to the awards for the other out of state

attorneys and reasonable in light of the lodestar factors. This Court will not award any estimated

additional costs as this amount is speculative.

### III.     Attorney Santi's Motion for Attorneys' Fees and Costs

Attorney Mark Santi submitted an affidavit requesting attorneys' fees and costs in the

amount of $21,143.00, which represents $17,777.00 in attorneys' fees, $1,046.00 in

disbursements and costs and $2,320.00 in estimated additional costs and fees. Using the lodestar

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 17 of 19
Case: 14-1682      Document: 28-19      PageID 3402      Filed: 07/30/2014      Pages: 197

factors, this Court finds that $12,646.00 is a reasonable award for attorneys' fees, costs and disbursements in this case. This total represents $11,600.00 in reasonable attorneys' fees and $1,046.00 for disbursements and costs. This Court utilized the following lodestar factors: the amount of work required, Mr. Santi's experience and a reasonable hourly rate of $290.00. Mr. Santi represented nine (9) Non-Party John Does in this action. Mr. Santi has been licensed to practice law since 2007 and has six years of experience as an attorney. Mr. Santi submitted an affidavit stating that he completed 61.3 hours of work on this case. This Court does not dispute that significant work was required to represent the Non-Party John Does; however, using the lodestar factors the Court concludes that no more than 40 hours of work was required during the pendency of this action. This case did not go to trial, no discovery was completed and the merits of the lawsuit were not reached. Mr. Santi, as an attorney for Non-Party John Does, was required to complete work for two motions before this Court. Thus, 40 hours is a reasonable number of hours required on this case pursuant to the lodestar test. Furthermore, this Court will not award any estimated additional costs as this amount is speculative.

## IV.   Attorney Godfread's Motion for Attorneys' Fees and Costs

Attorney Paul Godfread submitted an affidavit requesting attorneys' fees and costs in the amount of $4,537.00, which represents $4,347.50 in attorneys' fees and $190.00 in fees and costs. Mr. Godfread was admitted to practice law in 2008 has five years of experience as an attorney. Additionally, Mr. Godfread represented eleven (11) Non-Party John Does in this action. Using the lodestar factors, this Court finds that Mr. Godfread's requested attorneys' fees and costs are reasonable based upon the amount of work required, Mr. Godfread's experience and a reasonable hourly rate of $185.00.

**V.    Attorney Sheu's Motion for Attorneys' Fees and Costs**

Attorney Edward Sheu submitted an affidavit requesting attorneys' fees and costs in the amount of $14,950.25, which represents $13,910.50 in attorneys' fees, $539.75 in disbursements and $500.00 in additional costs and fees. Attorney Becky Knutson submitted an affidavit, on behalf of herself and Matthew Warner-Blankenship, requesting attorneys' fees and costs in the amount of $5,330.05. Using the lodestar factors, this Court finds that $18,334.75 is a reasonable award for attorneys' fees, costs and disbursements in this case for Mr. Sheu and his colleagues. This total represents $13,200.00 in reasonable attorneys' fees for Mr. Sheu, $539.75 for disbursements and $4,595.00 in reasonable attorneys' fees for the services of Ms. Knutson and Mr. Warner-Blankenship. This Court utilized the following lodestar factors: the amount of work required, the attorneys experience and a reasonable hourly rate of $330.00 for Mr. Sheu. Mr. Sheu has been licensed to practice law since 2001 and has twelve years of experience as an attorney. Mr. Sheu represented one (1) Non-Party John Doe in this action but from the Court's perspective, Mr. Sheu was lead counsel for the Non-Parties as he initiated the filing of the motions and made the arguments that other counsel joined. Mr. Sheu contacted this Court to schedule the Order to Show Cause Hearing as well as obtained the Order to Show Cause. For the same reasons stated above, the Court finds that 40 hours of work is the maximum reasonable hours for this matter. In her affidavit, Ms. Knutson stated that the hourly fees were $295.00 for Ms. Knutson and $185.00 for Mr. Warner-Blankenship. The affidavit does not state the years of experience for either attorney. However, the Court finds that the number of hours submitted, 20.2 hours, and the hourly rates of the attorneys are reasonable when compared to the amount of work required and completed by other attorneys in this matter. This Court will not award any estimated additional costs as this amount is speculative. Additionally, Ms. Knutson's request for

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 135-29 *SEALED*   Filed 03/20/14   Page 19 of 19
Case: 14-1682   Document: 28-19 PageID 3404 Filed: 07/30/2014   Pages: 197

$735.05 for legal services performed by Mr. Sheu as a cost is denied as duplicative and therefore unreasonable under the lodestar factors.

**VI.   Attorney Gainsley's Motion for Attorneys' Fees and Costs**

Attorney Philip Gainsley submitted an affidavit requesting attorneys' fees and costs in the amount of $6,750.00. However, upon review of Mr. Gainsley's submitted, itemized list of time and fees, the amount of attorneys' fees total $6,525.00. Mr. Gainsley has been practicing law since 1965 and has 48 years of experience as an attorney. Using the lodestar factors and resolving the discrepancy in favor of the itemized list of fees, this Court finds that Mr. Gainsley's requested attorneys' fees are reasonable based upon the amount of work required, Mr. Gainsley's experience and a reasonable hourly rate of $450.00.

<u>**CONCLUSION**</u>

Based upon the foregoing reasons, this Court invokes its inherent authority to impose sanctions upon Plaintiff Guava LLC and its counsel Michael K. Dugas and Alpha Law Firm LLC for bad faith litigation in this matter. For the reasons stated above, Plaintiff, Dugas and Alpha Law Firm shall be liable to the Non-Party ISPs and Non-Party John Does, jointly and severally, in the total amount of $63,367.52, as itemized in this Court's August 7, 2013 Order Granting in Part Non-Party John Does and Non-Party ISP's Motion for Attorneys' Fees and Costs.

TMB

# EXHIBIT DD

Home (/)        Search (/Business/Search)        Filings (/Business/Filings)

Search » Business Filings

## Business Record Details »

« Back to Search Results

File Amendment or Renewal (/Business/Amendments?filingGuid=f2144a2f-95d4-
e011-a886-001ec94ffe7f)

Order Copies

Minnesota Business Name
**Alpha Law Firm LLC**

Business Type
**Limited Liability Company (Domestic)**

MN Statute
**322B**

File Number
**3679272-2**

Home Jurisdiction
**Minnesota**

Filing Date
**01/22/2010**

Status
**Inactive**

Renewal Due Date:
**12/31/2014**

Registered Office Address
**80 S 8th Str #900**
**Mpls MN 55402**
**USA**

Registered Agent(s)
**(Optional) None provided**

Manager
**Paul Hansmeier**
**80 S 8th St Ste 900**
**Minneapolis MN 55402**
**USA**

Principal Executive Office Address
**80 S 8th St Ste 900**
**Minneapolis MN 55402**
**USA**

Comments
**Law**

| Filing History | Renewal History |

### Filing History

| 01/22/2010 | Original Filing - Limited Liability Company (Domestic) |
| 01/22/2010 | Limited Liability Company (Domestic) Business Name |
| 03/03/2011 | Registered Office and/or Agent - Limited Liability Company (Domestic) |
| 08/04/2011 | Limited Liability Company (Domestic) Other |
| 8/30/2013 | Notice of Dissolution - Limited Liability Company (Domestic) |
| 8/30/2013 | Termination - Limited Liability Company (Domestic) |

Office of the MN Secretary of State Home Page (http://www.sos.state.mn.us)

System Requirements

The MBLS application works with the following web browsers:

- Microsoft Internet Explorer (version 7+)
- Mozilla Firefox (version 3.5+)
- Apple Safari (version 3+)
- Google Chrome

Additional MBLS Information

Terms & Conditions (http://www.sos.state.mn.us/index.asp page=1667)
Contact Us (http://www.sos.state.mn.us/index.asp page=42)
Frequently Asked Questions (FAQ) (http://www.sos.state.mn.us/index.asp page=12)

Copyright 2011 | Secretary of State of Minnesota | All rights reserved

# EXHIBIT EE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRENDA LAW, INC.,                    )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )
                                     )   Case No. 13-cv-4341
PAUL GODFREAD, ALAN COOPER,          )
and JOHN DOES 1-10,                  )   Judge John W. Darrah
                                     )
                    Defendants.      )

## MEMORANDUM OPINION AND ORDER

Defendants Paul Godfread and Alan Cooper filed a Motion for Sanctions against Plaintiff

Prenda Law, Inc. ("Prenda") pursuant to Fed. R. Civ. P. 11.  For the reasons stated below, this

Motion [51] is granted.

## BACKGROUND

Prenda, an Illinois corporation, filed suit against Defendants Paul Godfread,

Alan Cooper (both citizens of Minnesota), and John Does 1-10, in the Circuit Court for the

Twentieth Judicial Circuit, State of Illinois, St. Clair County, on February 12, 2013.  (Petition for

Removal at 1.)  Prenda alleges claims of libel, defamation, and tortious interference with

contractual relationships against Defendants Godfread and Cooper and unidentified John Doe

Defendants.  Thereafter, on March 1, 2013, Defendants removed the case to the Southern District

of Illinois on the basis of diversity, 28 U.S.C. § 1441.  Counsel for Prenda is attorney Paul A. Duffy.[1]

 Prenda filed a motion to remand the case to state court in the Southern District of Illinois. In this first motion for remand, Prenda asserted that an Amended Complaint was filed on February 21, 2013, which included Alpha Law Firm, LLC ("Alpha") as a Plaintiff.  (First Motion for Remand at 2.)   However, because Alpha[2] is a Minnesota company, Prenda asserted, diversity was destroyed and remand was proper.  That Amended Complaint never appeared on the docket of this federal case.

 On June 6, 2013, the Honorable David R. Herndon, Chief Judge of the Southern District of Illinois, entered an order transferring this action to the Northern District of Illinois, noting that "a virtually identical, first-filed action is currently pending in the Northern District of Illinois." (June 6, 2013 Opinion at 2.)  *See Duffy v. Godfread*, Case No 13-cv-1569.  In that Opinion, Judge Herndon further noted, "[P]laintiff has filed a motion to remand (Doc. 12).  The Court adopts the reasoning and assertions of defendants' response in opposition to remand (Doc. 24) and accordingly denies plaintiff's motion to remand."  (June 6, 2013 Opinion at 1 n.1.)  The

---

[1] Prenda, Duffy, and his affiliates are well known to this Court and many other courts around the country.  As Judge Murphy of the Southern District of Illinois recently noted, Duffy and his colleagues "have shown a relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts, and being referred to state and federal bars, the United States Attorney in at least two districts, one state Attorney General, and the Internal Revenue Service."  *Lightspeed Media Corp. v. Smith*, Case No. 12-889-GPM, 2013 WL 3225093, at *5 (S.D. Ill. Nov. 27, 2013) (collecting cases).

[2] It is unclear what part, if any, Alpha plays in the complicated business model of Prenda, which is rife with aliases, alter egos, and purported "clients."  *See Lightspeed Media Corp.*, 2013 WL 3225093, at *3 ("It would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully untangle the relationship" between these individuals and entities.) (citation omitted).

Defendants' reasoning for rejecting Prenda's motion for remand based on the lack of diversity was as follows:

> The crux of Plaintiff's argument in support of remand is that, prior to removal, they allegedly filed an amended complaint in St. Clair County that would destroy diversity by adding a Minnesota plaintiff, Alpha Law Firm. [ECF No. 12, p. 4]. However, the amended complaint referred to by Plaintiff is a legal nullity, and cannot be considered for the purposes of assessing diversity, or for any other purpose.

> Under Illinois law, unlike under the Federal Rules of Civil Procedure, the court must authorize all amendments to pleadings, except those made to conform pleadings to the proof. Plaintiff never filed a motion for leave to amend the St. Clair County complaint, and no order granting such relief was ever issued. Instead, their counsel, Kevin Hoerner, personally delivered the amended complaint to the clerk's office and falsely represented to a supervisor in the clerk's office that no motion to amend was required because none of the defendants had yet been served. Based on that representation, the supervisor accepted the amended complaint and stamped it. However, at the time the amended complaint was filed with the clerk's office, both Defendant Godfread and Defendant Cooper had been served with summons and copies of the original complaint, a fact that was known to Prenda.

(Dkt. No. 24 at 1-2.) Additionally, Defendants assert that Prenda *knew* Defendants had been served with the original complaint but represented to the Clerk of the St. Clair County Court that Defendants had not yet been served in order to file the Amended Complaint, naming Alpha as a Plaintiff, without leave of the court. The supervisor in the Clerk's Office stated in a sworn affidavit that she was informed by one of Prenda's lawyers, Hoerner, on February 21, 2013, that no one had been served with the Original Complaint, and that she stamped the Amended Complaint without a motion for leave to file based on Hoerner's representations. However, it is evident from the affidavits of service that Defendants had been served prior to February 21, 2013, in direct contradiction of Hoerner's representations to the Clerk's Office.

Moreover, Defendants assert that "there is not a single substantive difference between the sham amended complaint and the original complaint other than counsel for Plaintiff having

slapped the name Alpha Law on the caption of the case and at the beginning of the document as a party.  Not a single factual allegation was changed or added to reflect any reason for Alpha to be added as a party."  (Motion for Sanctions at 4 n.2.)  Judge Herndon adopted Defendants' "reasoning and rationale" and rejected Prenda's motion to remand the case to state court. (June 6, 2013 Opinion at 1 n.1.)

Upon transfer of the case to the Northern District of Illinois, it was reassigned to this Court.  At the first status hearing here, on August 14, 2013, Prenda presented a motion for remand that was essentially *identical* to the motion that had been denied by Judge Herndon in his June 6, 2013 Opinion.  In the renewed remand motion, Prenda changed the caption of the motion to indicate that "Alpha Law Firm" was a named Plaintiff, though counsel for Prenda knew Alpha was not properly named as a Plaintiff in this case.  At that hearing, Paul Duffy, attorney and sole officer of Prenda, stated to the Court that the Southern District "denied the motion.  They indicated - - the Court indicated that on the four corners of the complaint, it stated that it was a Minnesota corporation.  However, the complaint also states that its principal place of business is in Minnesota."  (Mot. for Sanctions, Ex. B, 4:18 – 4:22.)  Counsel for Defendants addressed the Court and explained its position and the facts and reasoning previously adopted by Judge Herndon (set out above) when he denied Prenda's motion for remand.  Nowhere in the record does the Southern District of Illinois Court address Alpha and whether or not it was a Minnesota corporation, contrary to Duffy's statement before this Court.

Prenda then filed a motion to withdraw this "Renewed Motion to Remand" and stated, "Plaintiff vehemently disagrees with representations made by Defendants [sic] counsel at the August 14, 2013 hearing regarding its Motion, but nevertheless due to the apparent confusion arising from Plaintiff's Motion, Plaintiff seeks to withdraw it [sic] motion.  Rather than renew its

motion, Plaintiff intends to, at the appropriate time if any, amend its complaint to ad [sic] Alpha Law Group LLC as a Plaintiff."  (Motion to Withdraw Renewed Mot. to Remand ¶ 2.)

Thereafter, Defendants filed a Motion for Sanctions.  The Motion has been fully briefed. Prenda filed a motion for leave to file a surreply on November 4, 2013, but did not provide proper notice or notice of presentment.  Local Rule 78.2 states: "Where the moving party, or . . . counsel for the moving party, delivers a motion . . . without the notice required by LR 5.3(b) and fails to serve notice of a date of presentment within 14 days of delivering the copy of the motion . . . to the court as provided by LR 5.4, the court may on its own initiative deny the motion." Accordingly, Prenda's Motion for Leave to File a Surreply [53] is denied.

## LEGAL STANDARD

Sanctions are governed, in part, by Federal Rule of Civil Procedure 11.  In filing a pleading and advocating for it, an attorney certifies, to the best of its knowledge, information, and belief, that its legal contentions are warranted by existing law and that its factual contentions have evidentiary support. Fed. R. Civ. P. 11(b).  Sanctions are appropriate where the party has not filed a pleading for proper purposes but, instead, asserts its claims simply to harass or cause unnecessary delay or expense. Fed. R. Civ. P. 11(b)(1).  The purpose of Rule 11 sanctions "is to deter baseless filings in the district court." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013).

Also, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  An attorney's liability under Section 1927 is appropriate where an attorney's conduct is marked by bad faith. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994). "The Seventh Circuit

has concluded that such sanctions are appropriate (1) in instances of a serious and studied

disregard for the orderly processes of justice, (2) when an attorney pursues a path that a

reasonably careful attorney would have known, after appropriate inquiry, to be unsound, and/or

(3) where a claim is without a plausible legal or factual basis and lacking in justification."

*Krukowski v. Omicron Technologies, Inc.*, Case No. 10 C 5282, 2013 WL 708042, at *5 (N.D.

Ill. Feb. 26, 2013) (internal quotations and citations omitted).  Whether to award sanctions

pursuant to Section 1927 is within the discretion of the court.  *Jolly Group, Ltd. v.

Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

Additionally, "[j]udges have inherent authority to impose sanctions for misconduct by

litigants, their lawyers, witnesses, and others who participate in a lawsuit over which the judge is

presiding."  *S.E.C. v. First Choice Management Services, Inc.*, 678 F.3d 538 (7th Cir. 2012).  An

award of sanctions under a court's inherent authority can be assessed against an attorney, a party,

or both, while an award of sanctions under Section 1927 may only be levied against attorneys.

*Goldberg v. 401 N. Wabash Venture LLC*, Case No. 09 C 6455, 2013 WL 5376556, at *1 (N.D.

Ill. Sept. 25, 2013) (citation omitted).

## ANALYSIS

Based on the conduct of Prenda and its counsel, it is clear that sanctions are warranted.

Each of their actions with respect to Defendants' Motion is considered in turn.

First, Prenda's conduct before the Clerk's Office of St. Clair County must be addressed.

The following assertions, made by Defendants in response to Prenda's motion for remand, were

adopted by Judge Herndon and are therefore taken to be true for purposes of this analysis.

Prenda filed its Complaint in St. Clair County on February 13, 2013.  Cooper was served with

the Complaint on February 20, 2013; Godfread was served on February 18, 2013, as mentioned

above.  On February 21, 2013, Kevin Hoerner, counsel for Prenda, sought to file an Amended

Complaint in St. Clair County.  Judy Kent, the Supervisor in the Small Claims and Civil Division

of the St. Clair County Circuit Clerk's Office, noted that there was no motion for leave to file an

Amended Complaint and no order from the Circuit Court granting leave for an Amended

Complaint.  Hoerner represented to Kent that "no one had been served with the original

Complaint," which is why Kent file-stamped the Amended Complaint.  However, it is clear from

the record that Defendants *had*, in fact, been served with the original Complaint, despite

Hoerner's assertions to the contrary.  Prenda did not file the affidavits of service to Defendants

until March 5, 2013, so Kent would have no way of knowing whether or not Defendants had

been served, beyond Hoerner's false assertion.

The purported Amended Complaint merely added Alpha Law, a Minnesota corporation,

as a plaintiff to the case, in an attempt to destroy diversity; the purported Amended Complaint is

completely identical to the Original Complaint beyond the addition of that party.  "A plaintiff

may not file an amended complaint adding new parties without leave of court."  *Fischer v.*

*Senior Living Properties, L.L.C.*, 771 N.E.2d 505, 514 (Ill. App. Ct. 2002); *see also*

*Callaghan Paving, Inc. v. Keeneyville Const. Co., Inc.*, 557 N.E.2d 228, 229 (Ill. App. Ct. 1990)

("An amended complaint adding additional parties filed without leave of court is a nullity.").

As discussed above, despite the deception regarding the Amended Complaint, counsel for

Prenda moved for remand in the Southern District of Illinois based on the purported Amended

Complaint.

After the case was transferred to the Northern District of Illinois, Prenda again moved to

remand, filing essentially the same motion that the Court of the Southern District of Illinois had

denied.  Prenda had no legal basis for "renewing" this previously rejected motion.

When pressed, at the remand hearing on August 14, 2013, Duffy, counsel for Prenda, admitted he "filed substantially the same motion in the Southern District." (Mot. for Sanctions, Ex. B, 4:15 – 4:16.) As discussed above, when asked what the Southern District of Illinois said about the motion, Duffy stated to the Court: "They denied the motion. They indicated - - the Court indicated that on the four corners of the complaint, it stated that it was a Minnesota corporation. However, the complaint also states that its principal place of business is in Minnesota." (Mot. for Sanctions, Ex. B, 4:17 – 4:22.) However, the record reflects that the Southern District of Illinois Court said nothing of the sort. Duffy had the opportunity to address this lie in his response to the Motion for Sanctions and did not. To fabricate what a federal judge said in a ruling before another court falls well outside the bounds of proper advocacy and demonstrates a serious disregard for the judicial process.

Following this duplicitous behavior before the Court, Duffy sought to withdraw the renewed motion for remand, generously explaining that the reason for the withdrawal was "due to the apparent confusion arising from [the] motion." (Motion to Withdraw Renewed Mot. to Remand ¶ 2.) At a status hearing on August 20, 2013, the Court granted the motion to withdraw and set a briefing schedule for Defendants' Motion for Sanctions.

*Prenda's Response*

Prenda, through its counsel, Paul Duffy, filed a response to the Motion for Sanctions. In it, they argue that "Defendants have made no showing that attorney Hoerner *was aware* that service had been accomplished at the time he attempted to file the amended complaint." (Resp. to Motion for Sanctions at 10 (emphasis added).) Demonstrating Hoerner was aware that service

*had* been accomplished is not necessary to determine the deception inherent in Hoerner's affirmative (and false) representation to Kent that service *had not* been accomplished.[3]

Indeed, rather than explain their conduct, they seek to attack the form and procedure by which Defendants filed their Motion for Sanctions. Prenda contends it is entitled to the safe harbor provision under Fed. R. Civ. P. 11(c)(2), which provides that a motion for sanctions may not be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . . ." Here, however, Prenda does nothing to explain or withdraw its assertions regarding what the Southern District of Illinois purportedly said about Alpha. Moreover, in its motion to withdraw the renewed motion for remand, Prenda continues to stand on its rejected assertions, insisting that "there was not diversity jurisdiction in this Court" and that Prenda "vehemently disagrees with representations made by Defendants . . . regarding its motion, but nevertheless due to the apparent confusion arising from Plaintiff's motion, Plaintiff seeks to withdraw it." (Motion to Withdraw Renewed Mot. to Remand ¶ 2.) The purpose of Rule 11 is to, in part, emphasize "the duty of candor by subjecting litigants to potential sanctions for **insisting upon a position after it is no longer tenable.**" Fed. R. Civ. P. 11 1993 Advisory Committee's Notes (1993 Amendments) (emphasis added). Moreover, sanctions under Section 1927 and pursuant to the Court's inherent authority are not subject to the safe harbor provision.

Additionally, Prenda asserts that the Motion for Sanctions must be denied because the request for sanctions under Rule 11 was not filed separately from the other requests for sanctions pursuant to Section 1927 and the Court's inherent authority to sanction. Courts are split as to

---

[3] This type of sophistry alone approaches sanctionable conduct.

whether or not separate motions for sanctions are required under Rule 11.  *See Hasham v.*

*California State Board of Equalization*, Case No. 96 C 3326, 2008 WL 4091002, at *4 n.9 (N.D.

Ill. Aug. 21, 2008) (collecting cases).  However, this Court declines to require multiple separate

motions for sanctions which stem from the same vexatious conduct.  *See Ridder v.*

*City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997) ("The drafters instruct that a 'separate'

motion is one that is 'not simply included as an additional prayer for relief contained in another

motion.' As we understand it, this requirement is intended to highlight the sanctions request by

preventing it from being tacked onto or buried in motions on the merits, such as motions to

dismiss or for summary judgment. The requirement does not foreclose combining a Rule 11

request with other provisions regulating attorney behavior, such as § 1988 and § 1927.") (quoting

Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)).

Grasping at straws, Prenda next asserts Defendants failed to serve their Rule 11 motion

pursuant to Fed. R. Civ. P. 5 and that "Duffy has never consented in writing (or otherwise) to

accept service of papers via electronic means."  (Resp. to Motion for Sanctions at 5.)  This is

clearly rebutted by the docket itself, which indicates that Duffy is an E-Filer of the Northern

District of Illinois.  "[S]ubject to the provisions of Fed. R. Civ. P. 5(b)(3), the Notice of

Electronic Filing constitutes service under Fed. R. Civ. P. 5(b)(2)(D) . . . as to all E-Filers in a

case assigned to ECF."  N.D. Ill. General Order 2011-24 – General Order on Electronic Case

Filing ¶ X(C).  Therefore, whether or not Duffy realizes it, as an E-Filer, he has accepted service

by electronic means.

Prenda and Duffy's arguments against the Motion for Sanctions are unpersuasive at best.

In a final act of audacity, Prenda, in response to Defendants' Motion for Sanctions, contends that

the "Court should award Prenda the fees it incurred in defending against Defendants' patently frivolous motion."

## CONCLUSION

For the reasons provided above, Defendants' Motion for Sanctions [51] is granted. Sanctions are awarded to Defendants against Prenda Law, Inc. and Paul A. Duffy, pursuant to the Court's inherent authority to sanction, 28 U.S.C. § 1927, due to his unreasonable and vexatious conduct, and Federal Rule of Civil Procedure 11(c), for violating Rule 11(b)(1),(2), and (3). Defendants shall submit an itemized statement of attorneys' fees occasioned by the misconduct of Prenda Law, Inc. and Paul A. Duffy. Prenda's Motion for Leave to File a Surreply [53] is denied.

Date:   February 3, 2014

_____
JOHN W. DARRAH
United States District Court Judge